JS 44 (Rev. 12/12)

**TON**

# CIVIL COVER SHEET

5:15-cv-6480

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WINN-DIXIE STORES, INC., and
BI-LO HOLDINGS, LLC

**DEFENDANTS**
EASTERN MUSHROOM MARKETING
COOPERATIVE, INC., et al.

15     6480

**(b)** County of Residence of First Listed Plaintiff     Duval County, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     Chester County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Krishna B. Narine, Esquire MEREDITH & NARINE
100 S. Broad Street, Suite 905, Phila., PA 19110 (215) 564-5182

Attorneys *(If Known)*
DONALD M. BARNES  PORTER WRIGHT MORRIS & ARTHUR LLP
1900 K STREET NW SUITE 1110 WASHINGTON, DC 20006-1110
(202) 778-3056

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ❏ 1 | U.S. Government<br>Plaintiff | ☒ 3 | Federal Question<br>*(U.S. Government Not a Party)* |
| ❏ 2 | U.S. Government<br>Defendant | ❏ 4 | Diversity<br>*(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place<br>of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a<br>Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | of Property 21 USC 881 | ❏ 423 Withdrawal | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | ❏ 690 Other | 28 USC 157 | ☒ 410 Antitrust |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | Corrupt Organizations |
| Student Loans | ❏ 340 Marine | Injury Product | | | ❏ 480 Consumer Credit |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 895 Freedom of Information |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding
❏ 2 Removed from
State Court
❏ 3 Remanded from
Appellate Court
❏ 4 Reinstated or
Reopened
❏ 5 Transferred from
Another District
*(specify)*
❏ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Clayton Act, 15 U.S.C. §§ 15(a), 18 and 26, and Sherman Act, 15 U.S.C. §§ 1 and 2
Brief description of cause:
Price-fixing

## VII. REQUESTED IN
COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.
DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:     ☒ Yes     ❏ No

## VIII. RELATED CASE(S)
IF ANY
*(See instructions):*
JUDGE     Thomas O'Neill
DOCKET NUMBER 2:06-cv-00620-TON

DATE
12/07/2015
SIGNATURE OF ATTORNEY OF RECORD

DEC - 7 2015

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

## LIST OF DEFENDANTS

15    6480

EASTERN MUSHROOM MARKETING
COOPERATIVE, INC.
649 West South St.
Kennett Square, PA 19348

ROBERT A. FERANTO, JR t/a
BELLA MUSHROOM FARMS
330 Landenberg Rd
Landenberg, PA 19350

BROWNSTONE MUSHROOM FARMS,
INC.
974 Penn Green Road
Avondale, PA 17340

TO-JO FRESH MUSHROOMS, INC.
974 Penn Green Rd.
Avondale, PA 19311

CARDILE MUSHROOMS, INC.
540 Church Rd.
Avondale, PA 19311

CARDILE BROS. MUSHROOMS
PACKAGING
8790 Gap Newport Rd.
Avondale, PA 19311

COUNTRY FRESH MUSHROOM CO.
Highway 41 S
Avondale, PA 19311

FOREST MUSHROOM INC.
14715 County Road 51
Saint Joseph, MN 56374

FRANKLIN FARMS, INC.
931 Rte. 32
North Franklin, CT 06254

GINO GASPARI & SONS, INC.
GASPARI BROS. INC.
2103 Georgia Rd.
Temple, PA 19560

GIORGI MUSHROOM COMPANY
GIORGIO FOODS, INC.

1813 Hilltop Rd.
Temple, PA 19560

KAOLIN MUSHROOM FARMS, INC.
649 West South St.
Kennett Square, PA 19348

SOUTH MILL MUSHROOM SALES, INC. :
649 West South St.
Kennett Square, PA 19348

LRP MUSHROOMS INC
LRP-M MUSHROOMS LLC
LEONE PIZZINI AND SON, INC.
740 Penn Green Rd
PO Box 366
Landenberg, PA 19350

MODERN MUSHROOM FARMS, INC.
1330 Newark Rd.
Toughkenamon, PA 19374

SHER-ROCKEE MUSHROOM FARM
170 SherRockee Ln.
Lincoln University, PA 19352

C & C CARRIAGE MUSHROOM CO.
1340 Newark Rd.
Toughkenamon, PA 19374

OAKS HIRE MUSHROOM FARM, INC.
295 Thompson Rd.
Kennett Square, PA 19348

PHILLIPS MUSHROOM FARMS, INC.
124 Old Kennett Rd.
Kennett Square, PA 19348

HARVEST FRESH FARMS, INC.
865 Shoemakersville Rd
PO Box 297
Shoemakersville, PA 19555

LOUIS M. MARSON, JR., INC.
459 Greenwood Rd
Kennett Square, PA 19348

MARIO CUTONE MUSHROOM CO.,

INC.
Rts 1 & 41
Avondale, PA 19311
M.D. BASCIANI & SONS, INC.
8874 Gap Newport Pike
Avondale, PA 19311

MONTEREY MUSHROOMS, INC.
260 Westgate Dr.
Watsonville, CA 95076

MASHA & TOTO, INC. *t/a*
M & T MUSHROOMS
519 Hillendale Rd
Avondale, PA 19311

W & P MUSHROOM INC.
4300 Bamsley Chrome Rd
Oxford, PA 19363

MUSHROOM ALLIANCE, INC.
c/o CT Corporation System
520 Pike St.
Seattle, WA

QUINCY FARMS
190 Mannie Gunn Rd
Quincy, FL 32351

CREEKSIDE MUSHROOMS LTD.
One Moonlight Dr.
Worthington, PA 16262-9730

KITCHEN PRIDE MUSHROOMS
County Rd 348
Gonzales, TX 78629

JM FARMS, INC.
7001 S. 580 Road
Miami, OK 74354

UNITED MUSHROOM FARMS
COOPERATIVE, INC.
101 New Garden Rd
Avondale, PA 19311

JOHN PIA
649 West South St.

Kennett Square, PA 19348

MICHAEL PIA
649 West South St.
Kennett Square, PA 19348

# UNITED STATES DISTRICT COURT

15    0480

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 5050 Edgewood Court, Jacksonville, Florida 32254

Address of Defendant: Eastern Mushroom Marketing Cooperative 649 W. South St. Kennett Square, PA 19348 (see attached)

Place of Accident, Incident or Transaction: Throughout the United States

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?   Yes ☒   No ☐

*RELATED CASE, IF ANY:*
Case Number: 2:06-cv-00620-TON   Judge Thomas N. O'Neill   Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☒   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☒ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Krishna Narine _____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: December 7, 2015 _____   /s/ N/a _____   52238 (PA)
                          Attorney-at-Law                          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DEC - 7 2015

DATE: _____   _____   _____
                          Attorney-at-Law               Attorney I.D.#

CIV. 609 (5/2012)

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| WINN-DIXIE STORES, INC., and | : | CIVIL ACTION |
| BI-LO HOLDINGS, LLC, | : | |
| v. | : | 0480 |
| EASTERN MUSHROOM MARKETING | : | NO. |
| COOPERATIVE, INC., et al. | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| | | |
|---|---|---|
| December 7, 2015 | Krishna Narine | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-564-5182 | 267-687-1628 | knarine@m-npartners.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC - 7 2015

| | | |
|---|---|---|
| WINN-DIXIE STORES, INC., and<br>BI-LO HOLDINGS, LLC, | : | 15        0480 |
| | : | Case No. _____ |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| EASTERN MUSHROOM MARKETING | : | COMPLAINT |
| COOPERATIVE, INC., | : | |
| ROBERT A. FERANTO, JR t/a | : | |
| BELLA MUSHROOM FARMS, | : | |
| BROWNSTONE MUSHROOM FARMS, | : | |
| INC., | : | |
| TO-JO FRESH MUSHROOMS, INC., | : | |
| CARDILE MUSHROOMS, INC., | : | |
| CARDILE BROS. MUSHROOMS | : | |
| PACKAGING, | : | |
| COUNTRY FRESH MUSHROOM CO., | : | |
| FOREST MUSHROOM INC., | : | |
| FRANKLIN FARMS, INC., | : | |
| GINO GASPARI & SONS, INC., | : | |
| GASPARI BROS. INC., | : | |
| GIORGI MUSHROOM COMPANY, | : | |
| GIORGIO FOODS, INC., | : | |
| KAOLIN MUSHROOM FARMS, INC., | : | |
| SOUTH MILL MUSHROOM SALES, INC., | : | |
| LRP MUSHROOMS INC., | : | |
| LRP-M MUSHROOMS LLC, | : | |
| LEONE PIZZINI AND SON, INC., | : | |
| MODERN MUSHROOM FARMS, INC., | : | |
| SHER-ROCKEE MUSHROOM FARM, | : | |
| C & C CARRIAGE MUSHROOM CO., | : | |
| OAKSHIRE MUSHROOM FARM, INC., | : | |
| PHILLIPS MUSHROOM FARMS, INC., | : | |
| HARVEST FRESH FARMS, INC., | : | |
| LOUIS M. MARSON, JR., INC., | : | |
| MARIO CUTONE MUSHROOM CO., | : | |
| INC., | : | |
| M.D. BASCIANI & SONS, INC., | : | |
| MONTEREY MUSHROOMS, INC., | : | |
| MASHA & TOTO, INC. t/a | : | |
| M & T MUSHROOMS, | : | |
| W & P MUSHROOM INC., | : | |

| MUSHROOM ALLIANCE, INC., | : |
| QUINCY FARMS, | : |
| CREEKSIDE MUSHROOMS LTD., | : |
| KITCHEN PRIDE MUSHROOMS, | : |
| JM FARMS, INC., | : |
| UNITED MUSHROOM FARMS | : |
| COOPERATIVE, INC., | : |
| JOHN PIA, MICHAEL PIA, | : |
| And JOHN DOES 1-100, | : |
| | : |
| Defendants. | : |
| _____ | X |

## COMPLAINT

Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings LLC ("Plaintiffs") bring this

action, based the December 2004 antitrust complaint filed by the United States Department of

Justice, the Department of Justice's Competitive Impact Statement, and the Final Judgment

regarding the Justice Department's allegations, to which the Eastern Mushroom Marketing

Cooperative, Inc. ("EMMC") consented.

## I. NATURE OF THE ACTION

1. Plaintiffs, direct purchasers of mushrooms, bring this antitrust complaint to

recover damages related to the payment of artificially-inflated prices for the mushrooms they

purchased during the Conspiracy Period due to the illegal price-fixing scheme and conspiracy by

EMMC and its members, with the participation of various nonmember third-parties.

2. Each year American consumers spend over $800 million on mushrooms. The

vast majority are fresh Agaricus mushrooms, the common table variety. During the Conspiracy

Period, EMMC members controlled over 60 percent of all Agaricus mushrooms grown in the

United States and approximately 90 percent of all Agaricus mushrooms grown in the eastern

United States.

2

3. Starting in January 2001, various individuals and entities formed the EMMC solely as a front and pretext for a naked price-fixing and anticompetitive supply control scheme. The actions of EMMC, its members, and co-conspirators inflated the average prices for Agaricus mushrooms by at least 8 percent around the country.

4. EMMC members formed EMMC as a front in order to engage in naked price-fixing, collectively fixed artificially-inflated prices at which its members would sell their products and conspired with nonmember third-parties to increase prices and restrict supply, and implemented a supply control scheme in support thereof. In addition, they concealed the membership and activities of EMMC, collectively interfered with any non-EMMC growers who sought to sell at prices that were below the artificially-inflated prices set by EMMC and used collective acts to pressure independent growers to join EMMC and Defendants' anticompetitive scheme.

5. The conspiracy among EMMC members and nonmember third-parties to fix prices, and to restrict competition from non-EMMC farmers, was a per se illegal restraint of trade in violation of Sections 1 and 2 of the Sherman Act, as well as Section 7 of the Clayton Act. Created simply as a pretext and front for naked price-fixing, EMMC did not engage in collective processing, preparing for market, handling, or marketing the products of its members. Rather, its primary function was to set the prices at which its members individually sold their products. EMMC's actions provided no market efficiencies or other legitimate business value to its members or consumers.

6. As part of this scheme, beginning in May 2001, EMMC, its members, and nonmember third-parties collectively undertook a "Supply Control" campaign to impede and forestall competition from independent, non-EMMC farmers. EMMC and its members

3

implemented their campaign by entering into agreements to eliminate a significant amount of the supply from competing mushroom growers. Starting in May 2001, EMMC, acting as an agent of its members, purchased four mushroom farms with an annual combined growing capacity of approximately 29 million pounds, and then sold the four properties to nonmember purchasers at a combined total loss of over $1.2 million. The non-member purchasers agreed with EMMC to place permanent deed restrictions on the properties. The deed restrictions prohibited the conduct of any business related to the growing of mushrooms. For example, one deed restriction read:

> This property shall never be used for the cultivation, growing, marketing, sale or distribution of fresh mushrooms, canned and/or processed mushrooms or related endeavors.

7. Similarly, in February and August 2002, EMMC, acting as an agent of its members, entered into lease options at a cost of over $1 million, on two additional mushroom farms with a combined annual growing capacity of approximately 14 million pounds. Under the lease options, nonmember third-parties agreed that EMMC could file deed restrictions on the two farms prohibiting any business related to growing mushrooms for a period of 10 years. Even though it never entered into leases on these farms, EMMC did file the deed restrictions. No mushrooms have been grown on the properties EMMC bought or had under lease option since the deed restrictions were imposed by EMMC. EMMC and its members also bought one or more mushroom farms in Texas to remove the mushroom supply of those farms from the market.

8. By imposing deed restrictions on the properties described above, EMMC and its members were able to substantially reduce the amount of land available for mushroom production. EMMC touted the success of the Supply Control campaign to its membership, claiming that it had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production." By reducing the amount

4

of the land and facilities available to produce mushrooms in the United States, EMMC and its members were able to maintain artificial price increases for mushrooms of at least 8%.

## II.    JURISDICTION AND VENUE

9.    Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for the Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18. Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§ 1331, 1337, and 1345.

10.    The Defendants are involved in the production, processing, and/or sale of fresh market mushrooms in interstate commerce. The Defendants' activities in the production, processing, and/or sale of mushrooms substantially affect interstate commerce. The Defendants grow, process, and/or sell mushrooms in both the Eastern and Western parts of the United States and ship mushrooms between states.

11.    Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391 (b) and (c) because during the Conspiracy Period many of the Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## III.    THE PARTIES

12.    Plaintiff Winn-Dixie Stores, Inc., is a corporation organized under the laws of the State of Florida. Its principal place of business is 5050 Edgewood Court, Jacksonville, Florida

32254. During the Conspiracy Period defined below, Plaintiff purchased Agaricus mushrooms directly from one or more Defendants.

13. Bi-Lo Holdings LLC is a limited liability company organized under the laws of the State of Delaware. Its principal place of business is 5050 Edgewood Court, Jacksonville, Florida 32254. During the Conspiracy Period defined below, Plaintiff purchased Agaricus mushrooms directly from one or more Defendants.X

14. Defendant Eastern Mushroom Marketing Cooperative began operations in January 2001, and purports to be the largest mushroom cooperative in the United States. EMMC is incorporated in the Commonwealth of Pennsylvania and is headquartered in Kennett Square, Pennsylvania. EMMC is made up of entities that grow, buy, package, and/or ship mushrooms to retail and food service outlets across the United States. EMMC concealed the identity of its members by refusing to publish or make publicly available a list of its members.

15. EMMC was not formed to process, prepare for market, handle, or market the mushrooms of its members. Rather, EMMC was formed solely as a pretext for naked price-fixing by its members. EMMC set the minimum prices at which its members and nonmembers sold their mushrooms to customers in various geographic regions throughout the United States. At least two members of EMMC did not grow any mushrooms. Furthermore, several members of EMMC were large, vertically-integrated agri-businesses that have extensive processing, distribution and sales operations. During the 2001-2002 growing season, EMMC had approximately 19 members with control of more than 500 million pounds of mushrooms valued in excess of $425 million. During the Conspiracy Period, EMMC members controlled over 60 percent of all Agaricus mushrooms grown in the United States and approximately 90 percent of all Agaricus mushrooms grown in the eastern United States.

6

16.     Defendant Robert A. Ferranto, Jr. is an individual trading as Bella Mushroom Farms ("Bella Mushroom"). The principal office of Bella Mushroom is located in Landenberg, Pennsylvania. Bella Mushroom was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

17.     Defendant Brownstone Mushroom Farms ("Brownstone") has its principal office in Avondale, Pennsylvania. Brownstone was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

18.     Defendant To-Jo Mushrooms, Inc. ("To-Jo") is related to and controlled by Brownstone. To-Jo processes, packs, and ships mushrooms on behalf of Brownstone. To-Jo has a large fleet of refrigerator trucks that deliver mushrooms directly to retail outlets and consumers throughout New England. Upon information and belief, To-Jo was not an EMMC member but participated in the improper conduct alleged herein.

19.     Defendant Cardile Mushrooms, Inc. has its principal offices in Avondale, Pennsylvania. Cardile Mushrooms, Inc. was an EMMC member during the Conspiracy Period. Defendant Cardile Brothers Mushroom Packaging, Inc. does not grow mushrooms and is not a member of EMMC. It is a packager, seller, and distributor with its principal offices in Avondale, Pennsylvania. Both Cardile Mushrooms, Inc. and Cardile Brothers Mushroom Packaging, Inc. are owned and operated by Michael P. Cardile Sr. and Charles Cardile. Both entities participated in the improper conduct alleged herein.

20.     Defendant Country Fresh Mushroom Co. ("Country Fresh") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal office in Avondale, Pennsylvania. Country Fresh is a packing and distribution company owned in its entirety by its directors and officers, Edward A. Leo, Mickey Brosius, and Peter Alonzo.

Country Fresh does not grow mushrooms. Nevertheless, Country Fresh was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

21. Defendant Forest Mushroom Inc. ("Forest") is a vertically-integrated mushroom producer with its principal offices in Saint Joseph, Minnesota. Forest engages in the research, cultivation, and distribution of mushrooms, has its own packaging facility, and delivers its mushrooms directly to consumers by refrigerator truck. Forest was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

22. Defendant Franklin Farms, Inc. ("Franklin") is a vertically-integrated mushroom producer with its principal offices in North Franklin, Connecticut, has over 500 employees, and is the nation's largest grower and harvester of certified organic mushrooms, and one of the largest agricultural businesses in New England. It processes and distributes its products throughout the eastern United States. Franklin was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

23. Defendants Gino Gaspari & Sons, Inc. and Gaspari Bros. Inc. are located in Temple, Pennsylvania. Gaspari Bros. Inc. does not grow mushrooms. One or both entities was an EMMC member during the Conspiracy Period. On information and belief, both entities participated in the improper conduct alleged herein.

24. Defendant Giorgi Mushroom Company is located in Temple, Pennsylvania. Giorgi Mushroom Company was an EMMC member during the Conspiracy Period. The company's website advertises that it is "a fully integrated grower, processor, and distributor of the finest fresh, frozen, canned, jarred, and value-added mushroom products." Defendant Giorgio Foods, Inc. is also located in Temple, Pennsylvania and does not grow mushrooms, operating instead as a cannery and supplier of frozen foods. Giorgio Foods, Inc. is not a member

of EMMC. On information and belief, both Giorgi Mushroom Company and Giorgio Foods, Inc. participated in the improper conduct alleged herein.

25.    Defendant Kaolin Mushroom Farms, Inc. ("Kaolin") is a vertically-integrated mushroom producer organized and existing under the laws of the Commonwealth of Pennsylvania whose principal office is located in Kennett Square, Pennsylvania. Kaolin was an EMMC member during the Conspiracy Period and operates one of the largest mushroom farms in Pennsylvania, claiming to employ over 400 employees. During the Conspiracy Period, Kaolin sold mushrooms to retail, wholesale, food service, and commercial processors, under the South Mill label. Kaolin participated in the improper conduct alleged herein.

26.    Defendant South Mill Mushroom Sales, Inc. ("South Mill") is located in Kennett Square, Pennsylvania, and is related through common ownership to Kaolin. South Mill is a "vertically integrated company" engaged throughout the production, transportation, marketing, and distribution process. South Mill has satellite offices and distribution centers in Louisiana, Texas, and Georgia. South Mill claims that "[a]s a result of vertical integration we maintain total control over supply and quality of our product." On information and belief, South Mill does not grow mushrooms and is not an EMMC member but participated in the improper conduct alleged herein.

27.    Leone Pizzini and Son, Inc. ("Leone Pizzini") is located in Landenberg, Pennsylvania. On information and belief it is entirely owned by its officers, Leone Pizzini Sr. and Linda Pizzini-Johnson. Leone Pizzini is a wholesaler of fruit and vegetables and is not a grower of mushrooms. Nevertheless, Leone Pizzini was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

9

28.     Defendants LRP Mushrooms Inc. and LRP-M Mushrooms LLC are located in Landenberg, Pennsylvania. One or both entities was an EMMC member during the Conspiracy Period. On information and belief, both entities participated in the improper conduct alleged herein.

29.     Defendant Modern Mushroom Farms, Inc. ("Modern") is a vertically-integrated mushroom producer with principal offices in Toughkenamon, Pennsylvania. In addition to growing and processing mushrooms, Modern manufactures canned vegetables, fruits, and jellies. Modern sells its products to food brokers, pizza chains, and supermarkets throughout the eastern half of the United States. Modern was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein. Modern sold Agaricus mushrooms under the Modern Mushroom Farms label.

30.     Defendant Sher-Rockee Mushroom Farm is located in Lincoln University, Pennsylvania, was not a member of EMMC during the Conspiracy Period, but is related through common ownership to Modern. On information and belief, it participated in the improper conduct alleged herein.

31.     Defendant C & C Carriage Mushroom Co. ("C & C") is located in Toughkenamon, Pennsylvania, was not a member of EMMC during the Conspiracy Period, but is related through common ownership to Modern. C & C operates as a mushroom packager and broker. On information and belief, it participated with Modern in the improper conduct alleged herein.

32.     Defendant Oakshire Mushroom Farm, Inc. ("Oakshire") is a vertically-integrated mushroom producer located in Kennett Square, Pennsylvania. Oakshire is a nationwide marketer and distributor, operating growing, packing, cooling, office, and warehouse facilities. Oakshire

was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

33. Defendant Phillips Mushroom Farms, Inc. ("Phillips") is a vertically-integrated mushroom producer with its principal offices located in Kennett Square, Pennsylvania. As of December 2002, Phillips was the largest supplier of specialty mushrooms in the United States, selling 35 million pounds of mushrooms annually. Phillips distributes mushrooms throughout the eastern United States. Phillips was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

34. Defendant Harvest Fresh Farms, Inc. ("Harvest Fresh") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Shoemakersville, Pennsylvania. Harvest Fresh was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

35. Defendant Louis M. Marson, Jr., Inc. ("Marson") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Kennett Square, Pennsylvania. Marson was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

36. Defendant Mario Cutone Mushroom Co., Inc. ("Mario Cutone") is a corporation with a place of business in Avondale, Pennsylvania. Mario Cutone was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

37. Defendant M.D. Basciani & Sons, Inc. ("Basciani") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal place of business is located in Avondale, Pennsylvania. Basciani was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

38.     Defendant Monterey Mushrooms, Inc. ("Monterey") is a vertically-integrated mushroom producer with its principal offices in Watsonville, California. Monterey was an EMMC member during the Conspiracy Period. Monterey is a grower, processor, and shipper of mushrooms with a full line of fresh domestic and specialty mushrooms which it sells to supermarkets, foodservices, and ingredient manufacturing operations. Monterey is the largest grower/shipper and marketer of fresh mushrooms in the United States. Monterey boasts a workforce of approximately 3,000 employees and does nearly $300 million in annual sales. Monterey has farms in Florida, Illinois, California, Texas, Tennessee, and Pennsylvania. In addition, Monterey also sells processed mushrooms that are canned, frozen and glass-jarred, which it processes at facilities and plants in Missouri, California, Pennsylvania, and Texas. Monterey participated in the improper conduct alleged herein.

39.     Defendant Masha & Toto, Inc. is a corporation trading as M & T Mushrooms ("M & T"). Its principal place of business is located in Avondale, Pennsylvania. M & T was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

40.     Defendant W & P Mushroom, Inc. ("W & P") is a corporation with its principal place of business in Oxford, Pennsylvania. W & P was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

41.     Defendant Mushroom Alliance, Inc. ("Mushroom Alliance") is an agricultural cooperative incorporated in Washington. Its designated registered agent is CT Corporation System, 520 Pike St., Seattle, WA 98101. The Mushroom Alliance was an EMMC member during the Conspiracy Period and participated in the improper conduct alleged herein.

42.     Defendant Creekside Mushrooms Ltd. ("Creekside") is a vertically-integrated mushroom producer and member of the Mushroom Alliance. Its principal place of business is in Worthington, Pennsylvania. Creekside grows, processes, and ships its own mushrooms to retailers and directly to consumers. Upon information and belief, Creekside participated in the improper conduct alleged herein.

43.     Defendant Kitchen Pride Mushrooms ("Kitchen Pride") has its principal place of business in Gonzales, Texas. Kitchen Pride was a member of the Mushroom Alliance when the Mushroom Alliance was a member of EMMC during the Conspiracy Period. Kitchen Pride was also itself an EMMC member during the Conspiracy Period. Kitchen Pride participated in the improper conduct alleged herein as a member of the Mushroom Alliance and as a member of the EMMC.

44.     Defendant JM Farms, Inc. ("JM Farms") is a member of the Mushroom Alliance. Its principal place of business is in Miami, Oklahoma. Upon information and belief, JM Farms participated in the improper conduct alleged herein.

45.     Defendant United Mushroom Farms Cooperative, Inc. ("United Mushroom") is a Pennsylvania agricultural cooperative with its principal place of business in Avondale, Pennsylvania. United Mushroom was an EMMC member during the Conspiracy Period, and with its members, participated in the improper conduct alleged herein.

46.     Defendant John Pia was one of the founders and president of EMMC, and is the Chief Executive Officer of defendant Kaolin, one of EMMC's members. On information and belief, John Pia participated in the improper conduct alleged herein.

13

47.     Defendant Michael Pia was an officer of EMMC, and is the President of defendant Kaolin, one of EMMC's members. On information and belief, Michael Pia participated in the improper conduct alleged herein.

48.     Defendants JOHN DOES 1-100 are unidentified individuals and/or entities that were members of EMMC and/or co-conspirators of the Defendants during the Conspiracy Period.

49.     Upon information and belief, each of EMMC members and nonmember third-parties identified herein actively participated in the unlawful conduct alleged herein.

## IV.     TRADE AND COMMERCE

50.     In 2002, domestic sales of all mushrooms were over $800 million, with the vast majority being the common table mushroom, called the Agaricus or "white button" mushroom (agaricus bisporus). According to the United States Department of Agriculture ("USDA"), from 2001-2005, Agaricus mushrooms accounted for 98% of all mushrooms grown in the U.S., and are sold to fresh market retailers such as grocery store chains and food distributors, and also to canneries. The Agaricus mushrooms grown by EMMC members and nonmembers were sold to both the fresh market retailers and canneries in various states, and were shipped by members and nonmembers between states.

51.     The relevant antitrust product market is fresh Agaricus mushrooms, and the relevant geographic market is the United States, or alternatively, the eastern United States.

## V.     DEFENDANTS' ANTICOMPETITIVE CONDUCT

52.     In January 2001 several entities involved in the production, processing, and/or distribution of mushrooms formed EMMC as a pretext for a naked price-fixing and an anticompetitive supply control scheme. Shortly after its formation, EMMC's members agreed to

14

set increased minimum prices at which its members and nonmembers would sell fresh mushrooms in six different geographic regions, covering the entire continental United States. The minimum prices that EMMC members and nonmembers agreed to charge were higher, on average, than the prices prevailing in those regions prior to EMMC's formation. The price increases averaged at least 8 percent nationwide. Various nonmembers of EMMC participated in the conspiracy to increase mushroom prices. Nonmember distributors agreed to sell at prices set by EMMC. Nonmembers involved in the land or lease option transactions agreed to deed restrictions prohibiting the use of certain properties as mushroom farms.

53.     The naked price-fixing activities of EMMC, its members, and nonmember co-conspirators were anticompetitive. EMMC performed no activities that promoted market-efficiency and had no legitimate business justification for its existence. EMMC did not collectively process, prepare for market, handle, or market any of the products of its members. EMMC existed solely for the purpose of carrying out a per se illegal naked price-fixing scheme.

54.     During the applicable Conspiracy Period, EMMC had at least two nongrower members and several members that are vertically-integrated agri-businesses. These entities were not "farmers" under the Capper-Volstead Act. Their membership in EMMC forecloses any antitrust immunity under the Capper-Volstead Act for EMMC and its members individually.

55.     In order to support and maintain the artificial price increases created by their price-fixing scheme, the Defendants eliminated competing mushroom supply, which could otherwise force down the artificially-increased prices. Within three months of instituting the price increases, the Defendants launched a campaign to control the mushroom supply by acquiring and subsequently dismantling non-EMMC mushroom growing operations. These actions did not serve, nor were they intended to serve, any legitimate or lawful purpose.

56.     Mushrooms are grown on farms, usually in one-story windowless cinder block buildings called "doubles," which are kept cool and dark at an optimum ground temperature of 64 degrees year round. Mushrooms are grown in stacks of beds, usually six beds to a stack and 24 beds to a double. Once harvested, mushrooms are usually kept in refrigerated storage on the farms until packaged and shipped in refrigerated trucks to customers.

57.     Depending on the size and location, building a new mushroom growing and production facility costs millions of dollars and generally requires zoning approval, and takes much longer to generate any revenue than purchasing or leasing an existing growing operation. By eliminating the existing available production capacity, the Defendants substantially reduced and impeded competition and substantially forestalled and delayed the entry of new competitors and/or the expansion of existing competitors.

58.     Through membership dues and a "Supply Control Assessment," EMMC collected approximately $6 million from its members during 2001-2002. EMMC, acting as an agent of its members, then spent approximately $3 million to purchase four mushroom farms and to acquire lease options on two additional mushroom farms in the eastern United States for the purpose of shutting them down and reducing the mushroom production capacity available for nonmember non-conspirators to grow mushrooms in competition with the Defendants.

59.     In May 2001, EMMC purchased a farm in Dublin, Georgia at a bankruptcy auction. The Dublin farm had an annual mushroom production capacity of approximately eight million pounds. At the auction, EMMC outbid a non-EMMC mushroom grower based in Colorado attempting to enter mushroom farming in the eastern United States in competition with EMMC. Three months later, EMMC entered into a land exchange with a land developer not connected to the mushroom industry, in which EMMC exchanged the Dublin farm for another

16

mushroom farm consisting of two parcels in Evansville, Pennsylvania, plus cash. As part of the exchange, the developer agreed with EMMC to place a permanent deed restriction on the Dublin farm prohibiting the conduct of any business related to the growing of mushrooms. EMMC lost approximately $525,000 on the Dublin farm purchase and exchange transactions.

60.     Within three months of the Dublin farm/Evansville land exchange, EMMC sold the largest parcel of the Evansville, Pennsylvania farm to a third-party who agreed with EMMC to place a permanent deed restriction on the property prohibiting the conduct of any business related to the growing of mushrooms. Less than a year later, EMMC sold the second parcel to a third-party who agreed to the same permanent deed restriction. The two parcels making up the Evansville, Pennsylvania farm, with an annual mushroom growing capacity of 15 million pounds, were sold at a collective loss of $137,000.

61.     In January 2002, EMMC purchased Gallo's Mushroom Farm ("Gallo's"), in Berks County, Pennsylvania. Gallo's had an annual mushroom-growing capacity of two million pounds. Less than four months later, EMMC sold Gallo's to a third-party at a loss of $77,500. The third-party purchaser agreed with EMMC to a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms.

62.     In February 2002, EMMC agreed to pay $1 million to the owners of Ohio Valley Mushroom Farms for, among other things, a non-compete agreement, a right of first refusal to lease the mushroom growing operations, a right of first refusal to purchase the properties, and the right to record a deed restriction prohibiting the conduct of any business related to mushroom growing on the property for ten years. EMMC did not lease or purchase the property, but did file the deed restriction on the Ohio Valley Farm, which had operated as a mushroom-growing concern with annual capacity of nine million pounds.

63.     In March 2002, EMMC purchased the La Conca D'Oro mushroom farm in Berks County, Pennsylvania, with an annual production capacity of approximately five million pounds. EMMC sold the farm and the mushroom-growing equipment on the farm at a loss of $500,000. The third-party purchaser agreed to a deed restriction prohibiting anyone from conducting any business related to the growing of mushrooms on the property.

64.     In August 2002, EMMC purchased a ten-year lease option, for $230,000 on the Amadio Farm in Berks County, Pennsylvania, which had an annual mushroom production capacity of approximately five million pounds. The owner of the property agreed to a deed restriction on the property prohibiting anyone other than EMMC from conducting any business related to the growing of mushrooms for ten years. EMMC never entered into a lease on the property.

65.     As a result of the agreements between third-parties and EMMC, as an agent for its members, the deed restrictions on these six mushroom farms in the eastern United States, permitted EMMC to remove more than 42 million pounds of annual growing capacity from that region, or approximately 8 percent of the total capacity in the eastern United States.

66.     In addition to the farms in Pennsylvania, Georgia, and Ohio, the Defendants also implemented the Supply Control campaign to buy mushroom farms to restrict mushroom production in other states. For example, EMMC acquired a farm in Hillsborough, Texas, to reduce and forestall the threat of a competitor (Stuart Thomas) from producing mushrooms in Texas. As a result of EMMC's actions in various states, EMMC eliminated at least 50 million pounds of mushroom supply, if not more. The Defendants boasted that the campaign as a whole had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."

67.     The Defendants and non-EMMC third-parties' purpose in entering into the purchase and lease transactions was to reduce or eliminate the Agaricus mushroom growing capacity available to potential independent competitors in the United States. Eliminating or reducing growing capacity improved Defendants' ability to perpetuate its naked price-fixing scheme and maintain the artificially-inflated price increases to which they and nonmember distributors had agreed. Moreover, these land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing the Defendants' mushrooms.

68.     In addition to the property transactions and deed restrictions to restrain mushroom supply alleged above, EMMC members collectively interfered with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by EMMC, and employed collective and conspiratorial acts to pressure independent growers to join EMMC and cooperate in the Defendants' anticompetitive scheme.

69.     Mushroom growers frequently sell fresh mushrooms to each other to fill daily needs. Because EMMC members and co-conspirators control over 60 percent of the national mushroom supply, and approximately 90 percent of the mushroom supply in the eastern United States, EMMC members were able to pressure non-EMMC members to force independent growers to join EMMC (and thus the anticompetitive scheme) or to refrain from selling mushrooms at lower prices that would undermine the agreed-upon anticompetitive prices. EMMC members applied such pressure and coercion by threatening and/or implementing a group boycott in which they would not sell mushrooms to other growers who needed them to meet short-term supply needs and/or selling mushrooms to such independent growers at inflated prices.

70. Through the collective boycotts and other collective efforts to penalize non-EMMC members that threatened to undermine the Defendants' anticompetitive scheme, the Defendants caused the artificial inflation of prices for not only the fresh Agaricus mushrooms that the Defendants sold, but also for the fresh Agaricus mushrooms sold by non-EMMC growers.

71. As a result of Defendants' illegal, anticompetitive conduct, on December 16, 2004, the United States Department of Justice filed a complaint against EMMC, styled *United States of America v. Eastern Mushroom Marketing Cooperative, Inc.*, Civil Case No. 2: 04-CV-S 829 (the "DOJ Complaint"). With the DOJ Complaint, the United States and EMMC filed an agreed-upon proposed Final Judgment that required EMMC to eliminate the deed restrictions from all the properties it shut down. That Final Judgment was subsequently entered on September 9, 2005. None of the documents filed by the DOJ in support of the Final Judgment identify any of the members of EMMC or consider whether they are growers. The only basis the DOJ appears to have considered for abrogating the immunity of EMMC was the predatory conduct of EMMC in buying nonmember farms and selling them to third parties who agreed to deed restrictions limiting the use of the properties for mushroom production. There is no evidence that the DOJ considered whether the members and the conduct of EMMC would otherwise be entitled to immunity. Pursuant to 15 U.S.C. § 16(a), entry of that Final Judgment does not in any way impair this action.

## VI. FRAUDULENT CONCEALMENT

72. Throughout the relevant period, Defendants affirmatively concealed their unlawful conduct from Plaintiffs. Plaintiffs did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged

20

herein until approximately December 2004, when the Justice Department announced that it had

filed a civil complaint against EMMC and that EMMC had consented to entry of a final

judgment against it. Nor could Plaintiffs have discovered the violations earlier than that time

because Defendants and their co-conspirators concealed the identity of EMMC's members,

conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

furtherance thereof, and attempted to conceal from public scrutiny their activities through

various other means and methods designed to avoid detection.

     73.    Defendants and their co-conspirators affirmatively and fraudulently concealed the

existence of the violations alleged through the following actions, among others:

       a.    Concealing the identity of EMMC members, some of whom are not mushroom growers, and avoiding references or discussion in public documents of the identities of EMMC's membership and the anticompetitive scheme and acts alleged herein;

       b.    Concealing the fact that EMMC was formed solely as a pretext for naked price-fixing and that it provided no market efficiencies or legitimate business value to its members or consumers;

       c.    Conducting non-public meetings and communications in which the Defendants agreed upon and implemented the scheme alleged herein;

       d.    Participating in non-public meetings and conversations to monitor and enforce adherence to the conspiracy; and

       e.    Falsely representing that EMMC members' prices were fair and competitive.

     74.    As a result of Defendants' concealment, any applicable statute of limitations

affecting the rights of action of Plaintiffs was tolled. Plaintiffs exercised due diligence to learn

of its legal rights, and, despite the exercise of due diligence, did not discover and could not have

discovered the antitrust violations alleged above at the time they occurred.

75.     As a result of Defendants' continuing violations of federal antitrust laws and the nature of the damages to Plaintiffs, Plaintiffs asserts the tolling of the applicable statute of limitations with respect to any claims and rights of action that Plaintiffs has as a result of the unlawful contract, combination, and conspiracy alleged in this Complaint.

## VII.   CAUSES OF ACTION

### COUNT I

### Violation of Sherman Act § 1 - Anticompetitive Conspiracy

76.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

77.     Defendants have used their illegal conspiracy and unlawfully-gained market power to suppress competition and harm Plaintiffs by enacting an overarching and illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels, the prices of Agaricus mushrooms that were sold, distributed, or obtained in the United States.

78.     Defendants engaged in naked-price fixing and conspired among themselves and in conjunction with nonmember distributors to set artificially-inflated prices. Defendants and their co-conspirators sought to exclude and penalize independent mushroom growers who failed to abide by the prices set and dictated by EMMC. Defendants' actions constitute a conspiracy in unreasonable restraint of trade in violation Section 1 of the Sherman Act, 15 U.S.C. § 1.

79.     To form and effectuate this conspiracy, the Defendants performed multiple acts, including but not limited to the following:

    a.      meeting and agreeing to fix the price of Agaricus mushrooms;

    b.      discussing and agreeing upon the Supply Control campaign and collectively funding it;

c.	buying multiple properties which were resold at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

d.	entering into agreements with nonmembers to place deed restrictions on properties for which the cooperative purchased lease options;

e.	filing deed restrictions on the lease-optioned properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

f.	supporting and reinforcing the price-fixing scheme by collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by EMMC, and collectively pressuring independent growers to join EMMC and the Defendants' anticompetitive scheme.

80.	In addition, the Supply Control campaign adopted and implemented by EMMC in and of itself constitutes a conspiracy between and among EMMC members and nonmember co-conspirators in unreasonable restraint of trade to restrict competition from independent mushroom producers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

81.	EMMC was an agricultural cooperative in name only, and operated as a pretext for naked price-fixing by Defendants. EMMC never engaged in collectively processing, preparing for market, handling, or marketing products of its members as envisioned by the Capper-Volstead Act, 7 U.S.C. § 291, et seq. Consequently, Defendants are not entitled to immunity pursuant to the Capper-Volstead Act.

82.	In addition, under the Capper-Volstead Act, farm cooperatives lose immunity from antitrust liability when they engage in exclusionary practices, monopolize trade, or suppress competition in concert with nonmembers. EMMC and its members conspired with nonmember distributors to engage in naked price-fixing, conspired with nonmember third-parties to eliminate mushroom supply from non-EMMC members, and/or used collective efforts to exclude and

23

penalize non-EMMC members that charged lower prices. These actions did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing the Defendants' mushrooms. They were predatory actions for which no immunity is available under the Capper-Volstead Act.

83. Furthermore, under the Capper-Volstead Act, farm cooperatives are not immune from antitrust liability when even one member of the cooperative is not a "farmer" within the meaning of the Capper-Volstead Act. At least two EMMC members are not "farmers," i.e. they do not grow mushrooms. Many others are vertically-integrated agri-businesses that do not qualify as "farmers" within the meaning of the Capper-Volstead Act.

84. The above-described illegal practices of Defendants have resulted in continuing and accumulating harm to Plaintiffs by allowing Defendants to affect, fix, raise, maintain, and/or stabilize at artificial and non-competitive levels the prices at which Agaricus mushrooms were sold, distributed, or obtained in the United States. The continuing and accumulating harm suffered by Plaintiffs specifically includes being overcharged for Agaricus mushrooms as a result of Defendants' conspiracy.

85. As a direct and proximate result of the Defendants' illegal, overarching price-fixing scheme, Plaintiffs were injured in their business or property by the collusion and conspiracy alleged above which substantially foreclosed and excluded competition in the relevant markets. Without limiting the generality of the foregoing, Plaintiffs have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

### COUNT II

### Violation of Sherman Act § 2 - Conspiracy to Monopolize, Monopolization, or Attempted Monopolization

86.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

87.     At all relevant times, Defendants conspired to possess, possessed, or attempted to acquire monopoly power in the relevant market -- i.e., the market for Agaricus mushrooms in the United States and/or the market for Agaricus mushrooms in the eastern United States.

88.     During the relevant period, Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by willfully and unlawfully conspiring to acquire or maintain, acquiring or maintaining, and/or attempting to acquire or maintain monopoly power by, inter alia:

> a.  setting artificially-inflated prices at which mushrooms could be sold by conspiring with nonmember distributors to enact their naked price-fixing scheme;
>
> b.  seeking to punish and exclude independent mushroom producers who did not sell at the dictated price and/or otherwise cooperate in their anticompetitive scheme;
>
> c.  conducting the Supply Control campaign;
>
> d.  buying multiple properties and reselling them at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;
>
> e.  entering into agreements with nonmembers to place deed restrictions on properties for which the cooperative purchased lease options;
>
> f.  filing deed restrictions on the lease-optioned properties prohibiting the conduct of any business related to the production of mushrooms; and
>
> g.  supporting and reinforcing the scheme by collectively interfering with, penalizing, and retaliating against any non-EMMC growers that sought to sell at prices below the artificially-inflated prices set by EMMC, and collectively pressuring independent growers to join EMMC and the Defendants' anticompetitive scheme.

89.     As set forth herein, Defendants have used their illegal monopoly power to suppress competition and harm Plaintiffs by enacting an overarching, illegal, and predatory

scheme to affect, fix, raise, maintain, and/or stabilize at artificial and non-competitive levels, the prices of Agaricus mushrooms that were sold, distributed, or obtained in the United States. Alternatively, if it is determined that defendants have not yet secured monopoly power, their conduct constitutes attempted monopolization which has harmed Plaintiffs and poses a dangerous possibility of success. Through this illegal conduct, Defendants have violated Section 2 of the Sherman Act.

90. These illegal practices of Defendants have resulted in continuing and accumulating harm to Plaintiffs by allowing Defendants to affect, fix, raise, maintain, and/or stabilize at artificial and non-competitive levels the prices at which Agaricus mushrooms were sold, distributed, or obtained in the United States. The continuing and accumulating harm suffered by Plaintiffs specifically includes being overcharged for Agaricus mushrooms as a result of Defendants' monopoly or attempted monopoly.

91. Acts of monopolization or attempted monopolization such as those of Defendants are not activities protected by the limited exemption from the antitrust laws created by the Capper Volstead Act, 7 U.S.C. § 291, et seq. Further, as discussed in greater detail in Count I, EMMC has lost any claim to immunity by allowing membership by non-grower entities, and engaging in exclusionary and anticompetitive practices with nonmember third-parties. EMMC served as a pretext for the illegal actions of the Defendants. There was no legitimate business justification for the willful conspiracy to acquire or maintain, acquisition or maintenance, and/or attempted acquisition or maintenance of monopoly power by Defendants. EMMC and its actions provided no market efficiencies or other legitimate business value to members or consumers.

92. As a direct and proximate result of the Defendants' willful conspiracy to acquire or maintain, acquisition or maintenance, and/or attempted acquisition or maintenance of

monopoly power, Plaintiffs were injured in their business or property because competition in the relevant markets was substantially foreclosed. Without limiting the generality of the foregoing, Plaintiffs have been forced to pay higher prices for Agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## COUNT III

### Violation of Clayton Act § 7 - Unlawful Acquisition

93.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

94.     EMMC and its members acting through EMMC, unlawfully acquired the assets of their direct competitors, as detailed above, thereby substantially lessening competition in a relevant market -- i.e., the market for Agaricus mushrooms in the United States and/or the market for Agaricus mushrooms grown in the eastern United States. This acquisition violated Section 7 of the Clayton Act, 15 U.S.C. § 18.

95.     By reason of the antitrust violations of Defendants alleged herein, the prices of the mushrooms purchased were higher than they would have been but for Defendants' violation of antitrust laws.

96.     Defendants' acquisition and holding of competitor mushroom farms violated Section 7 of the Clayton Act.

97.     As a direct and proximate result of the Defendants' acquisition of their competitors, Plaintiffs were injured in its business or property by the substantial lessening of competition in the relevant markets. Without limiting the generality of the foregoing, Plaintiffs have been forced to pay higher prices for Agaricus mushrooms in the relevant market than it would have paid in the absence of Defendants' unlawful conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(i)     rule the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 1 of the Sherman Act;

(ii)    rule that the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 2 of the Sherman Act;

(iii)   rule the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 7 of the Clayton Act;

(iv)    award Plaintiffs three-fold the damages determined to have been sustained by them, and enter judgment against Defendants in favor of Plaintiffs;

(v)     require Defendants to take affirmative steps to dissipate the continuing effects of their unlawful conduct; and

(vi)    award Plaintiffs their costs of suit, including reasonable attorney's fees and costs as provided by law.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 7, 2015

Krishna B. Narine, Esquire
MEREDITH & NARINE
100 S. Broad Street, Suite 905
Philadelphia, PA 19110
Telephone: 215-564-5182
Facsimile: 267-687-1628
knarine@m-npartners.com

Patrick Ahern (*Pro Hac Vice* Pending)
AHERN AND ASSOCIATES, P.C.
Three First National Plaza
70 West Madison Street

28

Suite 1400
Chicago, Illinois 60601
Tel: (312) 214-3784
patrick.ahern@ahernandassociatespc.com

***Attorneys for Plaintiffs Winn-Dixie Stores,
Inc. and Bi-Lo Holdings, LLC***