**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WINN-DIXIE STORES, INC., et al.** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **EASTERN MUSHROOM MARKETING** | : | **No. 15-6480** |
| **COOPERATIVE, et al.** | : | |

### MEMORANDUM

**Schiller, J.**                                                    **January 8, 2019**

Now before the Court are four motions to dismiss the Complaint of Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC ("Winn-Dixie Plaintiffs").[1] For the reasons that follow, the Court will grant the motions in part and deny the motions in part.

## I.    BACKGROUND

Winn-Dixie Plaintiffs filed this action on December 7, 2015, while a motion for class certification was pending in the much-earlier-filed antitrust cases in *In re Mushroom Direct Purchaser Antitrust Litigation* ("*In re Mushroom* Litigation" or "Class Litigation"), consolidated at Civil Action No. 06-620.[2] Like that litigation, this case centers on allegations that the Eastern

---

[1]  The four motions to dismiss are brought on behalf of the following Defendants: (1) Cardile Mushrooms, Inc. (Dkt. No. 70); (2) M.D. Basciani & Sons, Inc. (Dkt. No. 71); (3) Creekside Mushrooms Ltd. (Dkt. No. 72); and (4) Brownstone Mushroom Farms, Inc., C & C Carriage Mushroom Co., Country Fresh Mushroom Co., Eastern Mushroom Marketing Cooperative, Inc., Robert A. Feranto, Jr., Forest Mushroom Inc., Gaspari Bros. Inc., Gino Gaspari & Sons, Inc., Kaolin Mushroom Farms, Inc., Louis M. Marson Jr., Inc., Modern Mushroom Farms, Inc., Monterey Mushrooms, Inc., Oakshire Mushroom Farm, Inc., Phillips Mushroom Farms, Inc., John Pia, Michael Pia, Sher-Rockee Mushroom Farm, South Mill Mushroom Sales, Inc., and To-Jo Fresh Mushrooms, Inc. (collectively, "Certain Defendants") (Dkt. No. 73). In addition, defendant JM Farms, Inc. has filed a motion for joinder in Certain Defendants' Motion to Dismiss. (Dkt. No. 75.) Unless otherwise noted, citations to document numbers are for documents docketed in this case (Civ. A. No. 15-6480).

[2]  The initial complaint in the *In re Mushroom* Litigation was filed on February 10, 2006. A consolidated amended class action complaint ("Class Compl.") was filed on June 26, 2006. The operative complaint in the ongoing Class Litigation—the revised consolidated class action

Mushroom Marketing Cooperative ("EMMC"), its members, and certain non-member distributors acted in violation of Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act by conspiring to set artificially-inflated prices for fresh Agaricus mushrooms and implementing a supply control scheme related to the production of mushrooms. Winn-Dixie Plaintiffs allege that, during the conspiracy, they "purchased Agaricus mushrooms directly from one or more Defendants."[3] (Compl. ¶¶ 12–13.) They are pursuing non-class relief and seek "to recover damages related to the payment of artificially-inflated prices for the mushrooms they purchased . . . due to

complaint—was filed on September 25, 2007.

[3] Winn-Dixie Plaintiffs have agreed to dismiss their claims against Defendant Kitchen Pride Mushroom Farms, Inc. The remaining Defendants in this action overlap with the defendants in the *In re Mushroom* litigation and include: the EMMC; Robert A. Feranto, Jr. t/a Bella Mushroom Farms; Brownstone Mushroom Farms, Inc.; To-Jo Mushrooms, Inc.; Cardile Mushrooms, Inc. and Cardile Bros. Mushrooms Packaging, Inc.; Country Fresh Mushroom Co.; Forest Mushroom Inc.; Franklin Farms, Inc.; Gino Gaspari & Sons, Inc. and Gaspari Bros., Inc.; Giorgi Mushroom Company and Giorgio Foods, Inc.; Kaolin Mushroom Farms, Inc.; South Mill Mushroom Sales, Inc.; Leone Pizzini and Son, Inc.; LRP Mushrooms Inc. and LRP-M Mushrooms LLC; Modern Mushroom Farms, Inc.; Sher-Rockee Mushroom Farm; C&C Carriage Mushroom Co.; Oakshire Mushroom Farm, Inc.; Phillips Mushroom Farms, Inc.; Harvest Fresh Farms, Inc.; Louis M. Marson, Jr., Inc.; Mario Cutone Mushroom Co., Inc.; M.D. Basciani & Sons, Inc.; Monterey Mushrooms, Inc.; Masha & Toto, Inc. t/a M&T Mushrooms; W&P Mushroom Inc.; Mushroom Alliance, Inc.; Creekside Mushrooms Ltd.; JM Farms, Inc.; United Mushroom Farms Cooperative, Inc.; John Pia; and Michael Pia. (Compl. ¶¶ 14–47.)

Quincy Farms is also named as a Defendant in the caption of the Winn-Dixie Plaintiffs' Complaint. Plaintiffs in the *In re Mushroom* Litigation voluntarily dismissed their claims against it. (*See* Civ. A. No. 06-620, Dkt. No. 65 (dismissing claims against defendant Quincy Farms on August 14, 2006).) Because Winn-Dixie Plaintiffs' Complaint includes no specific allegations with respect to Quincy Farms (*see* Compl. ¶¶ 14-47) the Court will dismiss the claims against it. *See Hudson v. McKeesport Police Chief*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant who was named only in caption of case).

Also, the Winn-Dixie Plaintiffs' Complaint lists as defendants John Does 1-100: "unidentified individuals and/or entities that were members of EMMC and/or co-conspirators of the Defendants during the Conspiracy Period." (Compl. ¶ 48.) In their response to Defendants' motions to dismiss, Winn-Dixie Plaintiffs state that they are "willing at this time, to remove the reference to John Does from their complaint." (Pls.' Resp. in Opp'n to Defs.' Renewed Mot. to Dismiss [Pls.' Br.], Dkt. No. 76, at 3.) Therefore, the Court will dismiss the Winn-Dixie Plaintiffs' claims against John Doe defendants.

the illegal price-fixing scheme and conspiracy by EMMC and its members, with the participation of various nonmember third-parties." (*Id.* ¶ 1.) Winn-Dixie Plaintiffs' Complaint alleges that "EMMC members formed EMMC as a front in order to engage in naked price-fixing, collectively fixed artificially-inflated prices at which its members would sell their products," and operated primarily "to set the prices at which its members individually sold their products." (*Id.* ¶¶ 4–5.) They contend that "[s]hortly after its formation, EMMC's members agreed to set increased minimum prices at which its members and nonmembers would sell fresh mushrooms in six different geographic regions, covering the entire continental United States" and that the agreed-upon minimum prices "were higher, on average, than the prices prevailing in those regions prior to EMMC's formation." (*Id.* ¶ 52.) Winn-Dixie Plaintiffs also allege that "EMMC members were able to pressure non-EMMC members to force independent growers to join EMMC . . . or to refrain from selling mushrooms at lower prices that would undermine the agreed-upon anticompetitive prices." (*Id.* ¶ 69.) They contend that "EMMC members" did so by "threatening and/or implementing a group boycott in which they would not sell mushrooms to other growers who needed them to meet short-term supply needs and/or selling mushrooms to such independent growers at inflated prices." (*Id.*)

Winn-Dixie Plaintiffs allege that beginning in May 2001, "EMMC and its members implemented [a supply control] campaign by entering into agreements to eliminate a significant amount of the supply from competing mushroom growers." (*Id.* ¶ 6.) They allege that "[s]tarting in May 2001, EMMC, acting as an agent of its members, purchased four mushroom farms . . . and then sold the four properties to nonmember purchasers" who "agreed with EMMC to place permanent deed restrictions on the properties" prohibiting their use for any business related to mushroom growing. (*Id.*) Winn-Dixie Plaintiffs also contend that "in February and August 2002,

EMMC, acting as an agent of its members, entered into lease options . . . on two additional mushroom farms" under which non-member third-parties agreed that the EMMC could place 10-year deed restrictions prohibiting the farms' use for business related to mushroom growing. (*Id.* ¶ 7.) They allege that EMMC funded the real estate and lease option purchases "[t]hrough membership dues and a 'Supply Control Assessment' from its members." (*Id.* ¶ 58.) They contend that "Defendants and non-EMMC third-parties' purpose in entering into the purchase and lease transactions was to reduce or eliminate the Agaricus mushroom growing capacity available to potential independent competitors in the United States;" they further allege the purchases and lease-option transactions did not "serve any legitimate or lawful purpose under the Capper-Volstead Act, such as the promotion of growing or marketing the Defendants' mushrooms." (*Id.* ¶ 67.)

Winn-Dixie Plaintiffs assert that because of Defendants' alleged conduct, the United States Department of Justice filed a complaint against EMMC on December 16, 2004 ("DOJ Complaint"), resulting in a September 9, 2005 Final Judgment "that required EMMC to eliminate the deed restrictions from all the properties it shut down." (*Id.* ¶ 71.) Winn-Dixie Plaintiffs contend that they "did not discover, and could not discover through the exercise of reasonable diligence," Defendants' alleged antitrust violations until the DOJ's announcement that "it had filed a civil complaint against EMMC and that EMMC had consented to entry of a final judgment against it." (*Id.* ¶ 72.) They contend that Defendants "conceal[ed] the identity of EMMC members, some of whom are not mushroom growers, and avoid[ed] references or discussion in public documents of the identities of EMMC's membership and the [alleged] anticompetitive scheme and acts . . . ." (*Id.* ¶ 73.) They also assert that "[n]one of the documents filed by the DOJ in support of the Final Judgment identify any of the members of EMMC or consider whether they are growers." (*Id.* ¶ 71.)

Winn-Dixie Plaintiffs contend that "[a]s a result of Defendants' concealment, any applicable statute of limitations affecting the rights of action of Plaintiffs was tolled." (*Id.* ¶ 74.)

After Winn-Dixie Plaintiffs filed their individual Complaint in 2015, several Defendants filed motions to dismiss. During the pendency of those motions, the Court granted class certification in the *In re Mushroom* Litigation on November 22, 2016. Thereafter, on April 12, 2017, the Court explained that Winn-Dixie Plaintiffs appeared to be members of the *In re Mushroom* Class based on the allegations in their Complaint and denied the pending first round of motions to dismiss Winn-Dixie Plaintiffs' Complaint without prejudice to renewal in the event that they elected to exercise their right to opt out of the Class. (Dkt. No. 62 at 5.) Winn-Dixie Plaintiffs chose to do so, submitting an opt-out notice dated July 25, 2018, to Class Counsel. Winn-Dixie Plaintiffs confirm that they have "opted out of all Classes, contested and settlement . . . ." (Dkt. No. 68, at 2.) Therefore, on September 25, 2018, the Court ordered that any Defendant who wished to file a renewed motion to dismiss the Winn-Dixie Plaintiffs' claims should do so. (Dkt. No. 69.) Those motions are the subject of this Opinion.

## II.   DISCUSSION

### A.   Consequences of Opting Out

Winn-Dixie Plaintiffs argue that the Court should simply use the Court's denial of the motions to dismiss in the Class Litigation when deciding the motions presently before it. However, the Winn-Dixie Plaintiffs may not opt out of the Class Litigation and simultaneously rely on the decisions made in that case. Responding to Defendants' renewed motions to dismiss, the Winn-Dixie Plaintiffs note that the Consolidated Amended Class Action Complaint in the *In re Mushroom* Litigation—a complaint with "similar" or "identical" allegations—withstood dismissal. (*See* Pls.' Br. at 1 and Pls.' Resp. in Opp'n to Kitchen Pride, Creekside, MD Basciani

and JM Farms' Renewed Mots. to Dismiss, Dkt. No. 77, at 1 (*citing* Civ. A. No. 06-620, Mem. and Order of Apr. 25, 2017, Dkt. No. 108).) Winn-Dixie Plaintiffs assert that they "merely point" the Court to the "well-reasoned prior decisions" in the *In re Mushroom* Litigation and contend that they "do not rely on" the doctrine of "offensive collateral estoppel" in seeking to avoid dismissal. (Pls.' Br. at 1 n.1.) Regardless, the Court's April 25, 2007 determination to deny motions to dismiss in the Class Litigation does not decide the fate of Defendants' present motions to dismiss Winn-Dixie Plaintiffs' Complaint. Although Winn-Dixie Plaintiffs were members of the Class in the *In re Mushroom* Litigation at the time of certification, they are not anymore, having elected to opt-out of the Class in favor of proceeding with their own Complaint. Winn-Dixie Plaintiffs' decision to opt-out is not a decision without consequences. Their Complaint must stand on its own.

### B. Dismissal After *Twombly* and *Iqbal*

Winn-Dixie Plaintiffs' Complaint must be assessed under the pleading standard the Supreme Court set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). To withstand dismissal after *Twombly*, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Winn-Dixie Plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "'[B]are-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678. Although the Federal Rules do not impose a probability requirement at the pleading stage, a complaint must contain sufficient "facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). If the Court can infer only "the mere possibility of misconduct," the complaint must be dismissed because it has failed to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211.

### 1. Section 1 Claims

To plead a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, Winn-Dixie Plaintiffs' Complaint must include "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556; *see also In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117 (3d Cir. 1999) ("The existence of an agreement is the hallmark of a Section 1 claim."). Considering a motion to dismiss in this context, "the issue is whether the pleading delineates to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011). The allegations in Winn-Dixie Plaintiffs' Complaint are specific with respect to the EMMC's alleged role in the alleged price fixing and supply control schemes that underlie their Section 1 claims, but it does not otherwise identify any specific Defendant's role therein. Instead, Winn-Dixie Plaintiffs assert that each Defendant (other than the EMMC) "participated in the improper conduct alleged," whether they are alleged to have been a member of the EMMC or not. (Compl. ¶¶ 16–47.) This is not enough. "[T]o connect an individual defendant to an actual agreement," Winn-Dixie Plaintiffs' Complaint must make more than "mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form." *In re Processed Egg*, 821 F. Supp. 2d at 720.

Responding to Defendants' renewed motions to dismiss, Winn-Dixie Plaintiffs argue their

EMMC membership allegations are sufficient to permit their claims to proceed against the EMMC-member Defendants. (Pls.' Br. at 4–7.) They point to their allegations that: (1) "EMMC's members agreed to set minimum prices" (Compl. ¶ 52); (2) "[t]he naked price-fixing activities of EMMC, its members, and nonmember co-conspirators were anticompetitive" (*id.* ¶ 53); and (3) "EMMC, acting as an agent of its members" purchased four mushroom farms and acquired lease options for two other farms in order to make the properties unavailable for mushroom production (*id.* ¶ 58.). Winn-Dixie Plaintiffs argue they have made a plausible showing that each EMMC-member Defendant participated in a Section 1 conspiracy because EMMC membership "provided the opportunity for that Defendant to exchange information or make an agreement, the trade association engaged in anticompetitive conduct, and the Defendant knew of such conduct and acquiesced in it." (Pls.' Br. at 4–5.) They contend that if they have alleged "a Defendant was a member of EMMC (directly or through another cooperative) and paid the Supply Control Assessment (directly or through another cooperative), and/or agreed (directly or through another cooperative) to the minimum prices set by EMMC," they have sufficiently alleged that the Defendant in question participated in the alleged conspiracy. (*Id.* at 7.)

There are several flaws with Winn-Dixie Plaintiffs' EMMC-membership argument. First, common membership in a trade association is "not enough by itself to confer plausibility on an allegation of conspiracy." *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 632 (E.D. Pa. 2010); *see also In re Processed Egg*, 821 F. Supp. 2d at 723 ("[M]ere membership in a trade group . . . cannot alone sufficiently plead agreement to a conspiracy . . . ."). As Certain Defendants argue, without more, "membership in the EMMC is not enough to show any given Defendant reached a 'meeting of the minds' to consciously engage in the challenged activities." (Mem. of Law in Supp. of Certain Defs.' Renewed Mot. to Dismiss the Winn-Dixie Plaintiffs' Claims

[Certain Defs.' Br.], Dkt. No. 73-1, at 7.) More specific allegations regarding Defendants' participation in the EMMC are required under *Twombly*. *See* 550 U.S. at 567 n.12 (rejecting the notion that "common sense" makes an allegation regarding trade association membership sufficient to require a defendant "to devote financial and human capital to hire lawyers, prepare for depositions, and otherwise fend off allegations of conspiracy").

Further, Winn-Dixie Plaintiffs cannot rest on their allegations that the EMMC undertook actions as an "agent" of its members. Their Complaint fails "to assert any facts suggesting the operational control necessary to raise an inference of an agency relationship between them." *Black v. JP Morgan Chase & Co.*, Civ. A. No. 10-848, 2011 WL 4102802, at *32 (W.D. Pa. Aug. 10, 2011), *report and recommendation adopted*, 2011 WL 4089379 (Sept. 14, 2011). After *Twombly*, more is required than a bare allegation of "agency." *Cf. Marrone v. Green*, Civ. A. No. 09-213, 2009 WL 605899, at *3 (E.D. Pa. Mar. 10, 2009) (finding the complaint did not sufficiently plead an agency relationship where it did not allege that the purported principal exerted any control over the purported agent).

Another problem with Winn-Dixie Plaintiffs' Complaint is that they specifically allege only that *some* Defendants were members of the EMMC. (Compl. ¶¶ 16–17, 19–25, 27–29, 32–41, 45.)[4] The following Defendants are not alleged to have been EMMC members: To-Jo Mushrooms, Inc. (*id.* ¶ 18), Cardile Brothers Mushroom Packaging, Inc. (*id.* ¶ 19), Giorgio Foods, Inc. (*id.* ¶ 24), South Mill Mushroom Sales, Inc. (*id.* ¶ 26), Sher-Rockee Mushroom Farm (*id.* ¶ 30), and C & C Carriage Mushroom Co. (*id.* ¶ 31). Instead, they are alleged only to have been

---

[4] Even if EMMC membership allegations were sufficient as to the EMMC-member Defendants, their claims against Gino Gaspari & Sons, Inc and Gaspari Bros. Inc. and LRP Mushrooms or LRP-M Mushrooms would still fail because in each case, the Complaint does not allege which of the two entities was an EMMC member. (Compl. ¶ 23 and ¶ 28.)

related to companies that were EMMC members. Winn-Dixie Plaintiffs' Complaint includes no specific allegations that would tie these Defendants to the alleged violations of Section 1. Without such allegations, Winn-Dixie Plaintiffs' claims against these Defendants fail. *See In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) ("Under *Copperweld* and its progeny, plaintiffs cannot base their § 1 conspiracy claim solely on any agreement between each parent defendant and any of its wholly owned and controlled subsidiaries. . . . [P]laintiffs must set forth facts establishing the parent corporations' direct and independent participation in the alleged conspiracy."); *see also In re Processed Egg*, 821 F. Supp. 2d at 749 ("[T]he entities merely are alleged to have individuals in overlapping ownership or controlling roles, and it cannot be said these allegations plausibly suggest that the entities are under common ownership or control such that a single decision-making source exercises definitive control over each of them.").

Similarly, Creekside Mushrooms, Ltd. and JM Farms, Inc. are not alleged to have been EMMC members. Instead, they are alleged to have been members of the Mushroom Alliance, an agricultural cooperative which is itself alleged to have been a member of the EMMC. (*Id.* ¶¶ 41–42, 44.) Absent more specific allegations regarding their participation in the Mushroom Alliance or the Mushroom Alliance's participation in the EMMC's alleged actions, the Court finds that Winn-Dixie Plaintiffs have not met their burden under *Twombly* and *Iqbal* with respect to their claims against Creekside or JM Farms.

Winn-Dixie Plaintiffs' Complaint also names two individuals as Defendants: (1) John Pia—"one of the founders and president of EMMC" and "the Chief Executive Officer of defendant Kaolin, one of EMMC's members" (*id.* ¶ 46); and (2) Michael Pia—"an officer of EMMC" and Kaolin's "President" (*id.* ¶ 47). It does not, however, include any further factual matter specifying the Pias' participation in the alleged price fixing and supply control schemes. Without more, the

Court cannot say that Winn-Dixie Plaintiffs' Complaint "delineates to some sufficiently specific degree that" either of the Pias "purposefully joined and participated in the conspiracy."[5] *In re Processed Egg*, 821 F. Supp. 2d at 720; *see also Churchill Downs Inc. v. Thoroughbred Horsemen's Grp., LLC*, 605 F. Supp. 2d 870, 889 (W.D. Ky. 2009) (finding that plaintiffs had not sufficiently pled their antitrust claims against individual defendants through the "mere identification of the defendants' roles in the organizations" where their complaint "provide[d] no facts that suggest the role these individuals played in the decision making process").

The Court will dismiss Winn-Dixie Plaintiffs' Section 1 Claims with respect to all Defendants other than the EMMC because their Complaint does not set out sufficient factual matter to show that their claims are facially plausible. However, to the extent Winn-Dixie Plaintiffs can assert allegations in accordance with Federal Rule 8 and the standard set forth in *Twombly* and *Iqbal* against any dismissed defendants, they may do so in amended pleadings.

### 2.    Section 2 Claims

In Count II of their Complaint, Winn-Dixie Plaintiffs claim that "Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by willfully and unlawfully conspiring to acquire or maintain, acquiring or maintaining, and/or attempting to acquire or maintain monopoly power" in the market for Agaricus mushrooms in the United States or in the eastern United States. (Compl. ¶¶ 87–88.) Defendants argue that Winn-Dixie Plaintiffs have failed to state a claim under Section 2 against all Defendants except the EMMC. (Certain Defs.' Br. at 10.)

"In order to sustain their claims of monopolization and attempted monopolization,

---

[5] Winn-Dixie Plaintiffs contend that the Court should deny the motion to dismiss John Pia because the Court denied a motion for summary judgment by John Pia in the *In re Mushroom* Litigation. (Pls.' Br. at 9.) As the Court has explained, Winn-Dixie Plaintiffs' Complaint must stand on its own. To the extent that they can allege John Pia's participation in the alleged Section 1 violations with more specificity, they will be permitted to amend their Complaint.

Plaintiffs must . . . prove the required elements against each individual defendant." *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 699 (E.D. Pa. 2007). Applying this standard in the Class Litigation, the Court dismissed plaintiffs' similar Section 2 claims against the individual defendants under the less stringent pre-*Twombly* pleading standard, explaining that "the allegations regarding monopoly power only appl[ied] to defendant EMMC" and that plaintiffs had "failed to allege that any of the individual member defendants had a dangerous probability of achieving monopoly power." *Id.* at 700–02.

Winn-Dixie Plaintiffs' allegations track the allegations deemed insufficient in the Class Litigation and in their response to Defendants' motions to dismiss they "acknowledge the applicability of" the Court's 2007 decision to their Section 2 claim. (Pls.' Br. at 9 n.6.) The Court will, therefore, dismiss Winn-Dixie Plaintiffs' Section 2 claims as to all Defendants other than the EMMC.

### 3. Section 7 Claims

Section 7 of the Clayton Act, 15 U.S.C. § 18, makes it unlawful for a person to acquire the assets of another person where the acquisition may have anticompetitive effects. On the face of the Winn-Dixie Complaint, it was the EMMC, and not any member nor any affiliate of its members that acquired the land ownership or leasehold interests that Winn-Dixie Plaintiffs allege were anticompetitive. (Compl. ¶¶ 6–7.) Because of this, Certain Defendants argue that Winn-Dixie Plaintiffs' Section 7 claims also must be dismissed against all Defendants except the EMMC. (Certain Defs.' Br. at 11.) In response, Winn-Dixie Plaintiffs argue their Section 7 claim can withstand dismissal "for the same reasons that [the Court] denied Defendants' prior motion to dismiss" in the Class Litigation. (Pls.' Br. at 9.) They assert that "the case-law post-*Twombly* on the issue of each Defendant's participation or knowing acquiescence has either not changed, or

Plaintiffs' allegations here are sufficient." *Id.* The Court disagrees.

In the referenced pre-*Twombly* and *Iqbal* decision in the Class Litigation, the Court declined to dismiss the plaintiffs' Section 7 claims because their "amended complaint allege[d] that the [EMMC] member defendants engaged in something more than mere membership in defendant EMMC and that defendant EMMC, in acquiring the parcels of land at issue, acted 'as an agent of its members.'" *In re Mushroom*, 514 F. Supp. 2d at 703–04. But more is needed after *Twombly* and *Iqbal*. To proceed against Defendants other than the EMMC itself, Winn-Dixie Plaintiffs must plausibly allege some link between them and the allegedly anticompetitive acquisitions made by the cooperative. They must plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Winn-Dixie Plaintiffs' Complaint lacks the necessary allegations.

For Defendants that are alleged to have been members of the EMMC, Winn-Dixie Plaintiffs' allegation that the EMMC "was acting as an agent of its members" is the kind of conclusory allegation that no longer passes muster. Winn-Dixie Plaintiffs have not presented any factual allegations in their Complaint to show how the EMMC's members directed or otherwise participated in the EMMC's allegedly anticompetitive purchases, nor does their Complaint include other allegations in support of the alleged agency relationship. The same is true for those Defendants who are not alleged to have been members of the EMMC.

The Court will dismiss Winn-Dixie Plaintiff's Section 7 claims as to all Defendants except for the EMMC.

## C. Timeliness

In their motions to dismiss, Defendants argue that because Winn-Dixie Plaintiffs did not file their Complaint until 2015, their claims against the EMMC, along with their claims against

the individual Defendants, are time-barred or limited by the statute of limitations; and that, in equity, their claims for injunctive relief should be barred. Although a statute of limitations-type defense generally "cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018). The Court finds it is appropriate to consider Defendants' timeliness arguments because Winn-Dixie Plaintiffs filed their case more than nine years after the commencement of the Class Litigation that was based on nearly identical claims.

Winn-Dixie Plaintiffs' claims are subject to a four-year statute of limitations under the Clayton Act. *See* 15 U.S.C. § 15b. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). In a "continuing violation . . . [such as] a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.,* each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). However, each new overt act "generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Id.*

Defendants make three arguments against the timeliness of Winn-Dixie Plaintiffs' claims: (1) fraudulent concealment is the only basis for tolling that Winn-Dixie Plaintiffs specifically alleged in their Complaint; (2) Winn-Dixie Plaintiffs have failed to meet the pleading standards for fraudulent concealment, relying instead on conclusory allegations and on assertions that are

contrary to information available in the "contemporaneous public record;" and (3) Winn-Dixie Plaintiffs "forfeited any applicable tolling of the statute of limitations under *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)." (Certain Defs.' Br. at 14–19, 23–25.)

In response, Winn-Dixie Plaintiffs defend the timeliness of their claims on several grounds: (1) they are entitled to tolling under both the *American Pipe* doctrine and the statutory tolling provision of the Clayton Act,[6] which they claim dispose of Defendants' other arguments for limiting the scope of their claims; (2) the "continuing violation doctrine" applies to their claims; and (3) they have sufficiently pled fraudulent concealment and that, regardless, it is not dispositive of the timeliness issue. (Pls.' Br. at 10–34.)

### 1.    Class Action or *American Pipe* Tolling

The Court begins its timeliness analysis with the question of whether *American Pipe* tolling preserves Winn-Dixie Plaintiffs' claims. The Supreme Court has long recognized that the commencement of a class action tolls the statute of limitations for putative members of a class. In *American Pipe*, the Supreme Court held that such tolling applies to "all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," at least where certification was denied on numerosity grounds. *American Pipe*, 414 U.S. 538, 553 (1974). The Court has subsequently extended this tolling principle to putative class members who choose to file their own individual claims after class certification is denied. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983). However, neither the Supreme Court nor the Third Circuit has answered the tolling question at issue here: whether the class action tolling doctrine applies when a purported class member chooses to file an individual lawsuit before

---

[6] The section of the Clayton Act that the statutory tolling provision appears in has changed over time. To avoid confusion, the Court will discuss this as § 16(i) tolling.

class certification is decided. For guidance in answering this question, the Court looks to other Circuits that have resolved this issue as well as other district courts in the Third Circuit.

The Second Circuit has held that the commencement of a class action tolls the limitations period for all members of the asserted class "until such time as they ceased to be members of the asserted class, notwithstanding that they also filed individual actions prior to the class certification decision." *See In re Worldcom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007). In reaching this conclusion, the court emphasized that "the Supreme Court has repeatedly stated that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 255. The court also noted that giving the benefit of tolling to plaintiffs who choose to file individual claims before certification is resolved "would not undermine the purposes of statutes of limitations" since "the initiation of a class action puts the defendants on notice of the claims against them." *Id.*

The Ninth and Tenth Circuit Courts of Appeals have adopted the Second Circuit's approach, finding that class tolling applies to putative class members who file their own actions prior to class certification. *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1235 (10th Cir. 2008). At least two district courts in the Third Circuit have followed suit. *See In re Processed Egg Prods. Antitrust Litig.*, Civ. A. No. 08-2002, 2012 WL 6645533, at *7–8 (E.D. Pa. Dec. 20, 2012) (finding that *American Pipe* tolling could apply to the claims of putative class members who filed independent actions before class certification); *McDavitt v. Powell*, Civ. A. No. 09-0286, 2012 WL 959376, at *2–3 (M.D. Pa. Mar. 21, 2012) (deciding before relevant class certification decision that there was "little practical purpose in dismissing" the individual action because "if

class certification is eventually denied, [the plaintiffs] will receive the benefit of *American Pipe* tolling and be able to refile individual claims" and, if it were granted, the plaintiffs could "'opt-out' under Rule 23(c)(2)(B) and refile individual claims").

The Sixth Circuit has diverged from the Second Circuit and its followers. In *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, the Sixth Circuit adopted what is often called the "forfeiture rule": putative class members who choose to file their own cases before a class certification decision give up the benefit of class action tolling. 413 F.3d 553, 569 (6th Cir. 2005).[7] However, even the Sixth Circuit has recently noted that it "may have doubts about its holding." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6th Cir. 2016).

Absent controlling authority in this Circuit, the Court is persuaded by the Second Circuit's reasoning in *Worldcom*. Were the Court to adopt the forfeiture rule, putative members of a class contemplating opting out and filing their own lawsuits would be penalized for giving the defendants and the Court earlier notice. Because putative class members may rely on class tolling if they opt out after a decision on class certification and subsequently file individual claims, the Court believes that the same should be true for those who make this same choice prior to a class certification decision. Applied to this case, Winn-Dixie Plaintiffs' claims against the EMMC are not time barred. Further, they may rely on the class tolling doctrine should they choose to file amended pleadings including factual allegations supporting its applicability against the Defendants

---

[7] Relying on *Wyser-Pratte*, two decisions in the District of New Jersey reached similar conclusions. *See Hubbard v. Corr. Med. Servs., Inc.*, Civ. A. No. 04-3412, 2008 WL 2945988, at *7–8 (D.N.J. July 30, 2008) (citing *Wyser-Pratte* and holding that "[b]ecause Plaintiff filed an independent lawsuit without waiting for a determination on class certification, he does not get the benefit of class action tolling"); *Smart-El v. Corr. Med. Servs., Inc.*, Civ. A. No. 04-3413, 2008 U.S. Dist. LEXIS 44376, at *8–12 (D.N.J. June 5, 2008) (relying on *Wyser-Pratte* in finding that the filing of a class action complaint did not toll the statute of limitations for an independent claim filed four years prior to the court's class certification determination).

whose claims are now being dismissed. Winn-Dixie Plaintiffs would only be barred, at a minimum, from asserting claims accruing before February 10, 2002, four years before the first class action complaint was filed in the *In re Mushroom* Litigation.

### 2. Tolling under 15 U.S.C. § 16(i)

In their response to Defendants' motions to dismiss, Winn-Dixie Plaintiffs also contend that because their claims are subject to *American Pipe* tolling, they are subject to all tolling that applied to the class plaintiffs, including tolling under 15 U.S.C. § 16(i). (Pls.' Br. at 19.) They assert that because Section 16(i) suspends the running of the statute of limitations against private actions during the pendency of a government antitrust lawsuit and for one year thereafter when certain conditions are met, the DOJ action tolled the statute of limitations for their claims beginning on December 16, 2004, for the pendency of the DOJ action and for one year after.[8] (*Id.* at 18–19.) As a result, they contend they can claim damages accruing as far back as December 17, 2000. (*Id.* at 19.)

Section 16(i) states, in relevant part:

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, . . . the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter. *Provided, however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

15 U.S.C. § 16(i) (emphasis in original). The Supreme Court has recognized that Congress passed

---

[8] Their Complaint alleges that the DOJ Complaint was filed against the EMMC on December 16, 2004, and a Final Judgment in the matter requiring "EMMC to eliminate the deed restrictions from all the properties it shut down" was entered on September 9, 2005. (Compl. ¶ 71.)

this tolling provision to "assist private litigants in utilizing any benefits they might cull from government antitrust actions" and that this remedial purpose counsels in favor of construing the provision liberally. *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 317 (1965). In *Leh v. General Petroleum Corp.*, the Supreme Court cautioned that "effect must be given to the broad terms of the statute itself—'based in whole or in part on any matter complained of'—read in light of Congress' belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." 382 U.S. 54, 59 (1965); *see also New Jersey v. Morton Salt Co.*, 387 F.2d 94, 97 (3d Cir. 1967) ("[T]he tolling provision was enacted for the benefit of private parties who were injured[, which] suggest[s] most strongly that the tolling provision, if of doubtful meaning, should be interpreted in a way which will permit a determination on their merits of private claims in this area."). In keeping with this Congressional purpose, "[t]he private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants" to benefit from tolling under § 16(i). *Leh*, 382 U.S. at 59. "[E]ven if the defendant named in the private suit was named neither as a defendant nor as a coconspirator by the Government," tolling under § 16(i) still applies. *Zenith Radio*, 401 U.S. at 335. Nor does the scope of the government action dictate the scope of claims that a private plaintiff may bring with the benefit of tolling: "[a] private action that is substantially broader than a prior Government action may still benefit from § 16(i) tolling where the allegations in the private action incorporate the subject matter of the Government action." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 627 (S.D.N.Y. 2012).

A private antitrust claim is "based in whole or in part on any matter complained of" in the government action, such that § 16(i) tolling applies, if "the matters complained of in the government suit bear a real relation to the private plaintiff's claims for relief." *Leh.*, 382 U.S. at

59. The Third Circuit has interpreted the "real relationship" requirement to mean that there must be "a substantial identity between the matters alleged in the Government's action and those alleged in the private action." *Morton Salt*, 387 F.2d at 98. When assessing whether the two actions bear a real relation, courts have considered whether the alleged violations involve similar "objectives, means, time span, and geographic scope." *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983); *see also Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1067–68 (N.D. Cal. 2016); *Hinds Cnty.*, 885 F. Supp. 2d at 628; *Philip Morris v. Heinrich*, Civ. A. No. 95-0328, 1996 WL 363156, at *10–11 (S.D.N.Y. June 25, 1996). To determine whether there is a real relation between the government action and a later private lawsuit, courts are generally "limited to a comparison of the two complaints on their face." *Leh*, 382 U.S. at 65.

Comparing the DOJ Complaint filed on December 16, 2004 with the Consolidated Amended Class Action Complaint filed by Class Plaintiffs on June 26, 2006,[9] the Court finds that the two actions bear a "substantial identity" to one another. The DOJ action focused on the EMMC's "Supply Control Campaign," in which they purchased mushroom farms and implemented deed restrictions. (DOJ Compl. ¶¶ 3–7.) The DOJ Complaint alleges that this activity "constitute[d] a conspiracy in unreasonable restraint of trade to prevent, forestall and restrict competition from independent mushroom producers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1." (*Id.* ¶ 31.) The Class Complaint similarly sought recovery for all "direct purchasers of mushrooms" who "were caused to pay artificially inflated prices for the mushrooms that they purchased during the Class Period due to the illegal scheme and conspiracy by the EMMC and its

---

[9] The Court has chosen to compare this class action complaint with the DOJ Complaint because it was the last amended class action complaint within the one-year period following the entry of Final Judgment in the DOJ action. All Defendants in Winn-Dixie Plaintiffs' Complaint were named as defendants in that Consolidated Amended Class Action Complaint.

members." (Class Compl., ¶ 1.) To effectuate this scheme, Class Plaintiffs alleged that "the EMMC and its members agreed to set increased minimum prices at which they would sell fresh mushrooms" and "eliminated competing mushroom supply, which could otherwise force down the artificially-increased prices . . . by acquiring and subsequently dismantling non-EMMC mushroom growing operations." (*Id.* ¶¶ 62–63.) The relevant antitrust product market, fresh Agaricus mushrooms, is the same in each complaint, as is the relevant geographic market, the eastern United States.[10] (DOJ Compl. ¶ 30; Class Compl. ¶ 61.)

Although the Class Complaint asserts violations of Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act—whereas the DOJ Complaint alleged violations of Section 1 only—all three violations in the Class Complaint arise, in part, from the alleged Supply Control Campaign, which was the focus of the DOJ Complaint. (Class Compl. ¶¶ 88, 96, 105.) Regardless, it is clear from the face of the two complaints that allegations in the Class Complaint are "based . . . in part" on the conspiracy at issue in the DOJ action, such that the statute of limitations was tolled for the class. *See* 15 U.S.C. § 16(i). The fact that the private action is broader than the earlier government action does not alter the applicability of § 16(i) tolling. *See Hinds Cnty.*, 885 F. Supp. 2d at 627.

Similarly, the inclusion of additional defendants in the private action does not alter the Court's analysis. Although the DOJ action was brought against only the EMMC, the Supreme Court has made clear that § 16(i) tolls claims brought against not only those defendants who were parties to the government action but all defendants in the related private action. *See Zenith Radio*,

---

[10] The Class Complaint states that "[t]he relevant geographic market for this antitrust action is the United States, or alternatively, the eastern United States." (Class Compl. ¶ 61.) The Court finds it immaterial that the class plaintiffs stated a larger geographic market in the alternative.

401 U.S. at 335.

Ultimately, the Court is persuaded that the application of § 16(i) to Class Plaintiffs' claims comports with the provision's statutory language and advances its Congressional goal, which the Supreme Court has repeatedly used as a guidepost in assessing its applicability. And, based on the principles underlying the *American Pipe* doctrine, Winn-Dixie Plaintiffs should be able to benefit from the same tolling regimes that Class Plaintiffs could. To the extent that Winn-Dixie Plaintiffs file amended pleadings, they may rely on § 16(i) tolling, as Class Plaintiffs could.[11] Winn-Dixie Plaintiffs' claims accruing on or after December 17, 2000 will not be time-barred.[12]

### 3. Timeliness of Claims Against Defendants Voluntarily Dismissed by the Class

Regardless of the availability of various tolling doctrines, Defendants also contend that Winn-Dixie Plaintiffs' claims against Defendants who were voluntarily dismissed from the Class

---

[11] If Winn-Dixie Plaintiffs intend to rely on Section 16(i) in asserting claims against the individual defendants in an amended complaint, they would be well advised to make this clear in their pleading. The Court notes that Winn-Dixie Plaintiffs' Complaint does not specifically call for application of Section 16(i) to their claims. Defendants' motions to dismiss do not specifically address Plaintiffs' Section 16(i) tolling argument, but Defendants do argue that the Court may consider only the bases for tolling that Winn-Dixie Plaintiffs included within their pleadings. (*See* Certain Defs.' Br. at 14.) (arguing that because Winn-Dixie Plaintiffs "failed to properly plead fraudulent concealment (and pled no other form of tolling), their Complaint should be dismissed as untimely, or alternatively their claims can reach no farther back than February 11, 2002").

[12] The availability of tolling pursuant to § 16(i) also disposes of Certain Defendants' argument that Winn-Dixie Plaintiffs' "claims against defendants not named in the initial class action complaint must be limited to those accruing within four years of when those defendants were eventually named." (Certain Defs.' Br. at 22–23.) As the Court noted above, *see supra* note 9, all Defendants named by Winn-Dixie Plaintiffs were named in the Class Litigation within one year of the entrance of the Final Judgment in the DOJ action. Thus, the statute of limitations was still tolled by the DOJ action when all Defendants to this action were named in the Class Litigation. Accordingly, claims against any current Defendants who were not named in the initial Class Action Complaint may still extend back to December 17, 2000.

Litigation—Gaspari Bros., Inc., LRP Mushrooms, Inc., and Michael Pia[13]—must be dismissed as untimely or, alternatively, "curtailed based on the time elapsed since the dismissal from the class action." (Certain Defs.' Br. at 21–22.) Winn-Dixie Plaintiffs acknowledge that "one year and one month" passed between Class Plaintiffs' voluntary dismissal of these Defendants on November 13, 2014, and the filing of Winn-Dixie Plaintiffs' complaint against them. (Pls.' Br. at 35.) But Winn-Dixie Plaintiffs treat this period as inconsequential: according to Winn-Dixie Plaintiffs, this elapsed time means they "would only be allowed to go back . . . until March 11, 2003, well within the period of time that the anticompetitive conduct occurred." (*Id.*)

The question, then, is whether the ultimate dismissal of these Defendants from the Class Litigation means that, for purposes of the Winn-Dixie litigation, the Court should treat any claims against them as if the statute of limitations was *never* tolled or was tolled until November 13, 2014, while the Class Litigation was pending against them.

When confronted with the same question, the Seventh Circuit concluded that, in the class action context, the statute of limitations must be treated as tolled for the pendency of claims against a defendant, even if the defendant is ultimately dismissed and the statute of limitations then begins running again. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 561–62 (7th Cir. 2011). Numerous courts have reached the same conclusion. *See Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000); *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 491 (S.D.N.Y. 2013). *But see In re IndyMac Mortgage-Backed*

---

[13] Defendants also assert that the claims against Defendant Quincy Farms, which was voluntarily dismissed without prejudice from the Class Litigation on August 14, 2006, must be dismissed for the same reasons. In response, Winn-Dixie Plaintiffs offer no argument for the timeliness of their claims against Quincy Farms. The Court has already found that dismissal of the claims against Quincy is warranted, see *supra* note 3, and finds no reason to further address them here.

*Sec. Litig.*, 718 F. Supp. 2d 495, 504–05 (S.D.N.Y. 2010). As the Seventh Circuit explained,

> The Supreme Court decided *American Pipe* as it did in order to eliminate any need for members of the putative class to intervene in order to guard against an adverse outcome in the original case. The Court's goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends—denial of class certification by the judge, abandonment by the plaintiff, or any other fashion— is irrelevant.

*Sawyer*, 642 F.3d at 562.

The Court agrees with the Seventh Circuit. Because Gaspari Bros., Inc., LRP Mushrooms, Inc., and Michael Pia were all dismissed from the Class Action with prejudice on November 13, 2014, the statute of limitations was tolled only until that date for these three defendants. In the absence of another form of tolling, any amended claims they file against Gaspari Bros., Inc., LRP Mushrooms, Inc., and Michael Pia can accrue only on or after March 11, 2003, since Winn-Dixie Plaintiffs concede that "one year and one month" passed from the date of dismissal until the date that they filed the Complaint. (*See* Pls.' Br. at 35.)

### 4.      Timeliness of Claims for Injunctive Relief

Finally, Defendants argue that Winn-Dixie Plaintiffs' claims for injunctive relief should be dismissed because they are "barred by the doctrine of laches." (Certain Defs.' Br. at 19–21.) Although Winn-Dixie Plaintiffs claim "it is doubtful that the doctrine of laches has any application to an antitrust claim," they nevertheless "withdraw their request for injunctive relief." (Pls.' Br. at 35 n.27.) Accordingly, Winn-Dixie Plaintiffs' claims for injunctive relief will be dismissed.

## III.      CONCLUSION

For the reasons discussed above, the Court will grant Defendants' motions to dismiss to the extent that they seek to dismiss Winn-Dixie Plaintiffs' Section 1, Section 2 and Section 7 claims against all defendants other than the EMMC. The Court will also grant Defendants' motions

to the extent that they seek to dismiss Winn-Dixie Plaintiffs' claims for injunctive relief. The Court will deny Defendants' motions to the extent that they seek to dismiss Winn-Dixie Plaintiff's claims against the EMMC as being untimely.

Winn-Dixie Plaintiffs will be granted leave to file an amended complaint to the extent they are able to plead sufficient factual allegations to state a claim against any of the dismissed Defendants in accordance with the standard set forth in *Twombly* and *Iqbal.* The basis for the timeliness of any such claim must be specifically pled in the amended complaint. If no amended complaint is filed, Winn-Dixie Plaintiffs may proceed with the claims in their Complaint against Defendant EMMC. An appropriate Order will be docketed separately.