IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WINN-DIXIE STORES, INC., et al. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| EASTERN MUSHROOM MARKETING | : | No. 15-6480 |
| COOPERATIVE, et al. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                  April 8, 2019

Now before the Court are four motions to dismiss the Amended Complaint of Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC ("Winn-Dixie Plaintiffs").[1] For the reasons that follow, the Court will grant the motions in part and deny the motions in part.

**I.**     **BACKGROUND**

Winn-Dixie Plaintiffs contend they paid artificially-inflated prices for Agaricus mushrooms because Defendants conspired to fix mushroom prices, control the supply of mushrooms, and acquire monopoly power in the market for mushrooms. Winn-Dixie Plaintiffs have opted-out of a class action raising similar claims ("Class Litigation") and, in this stand-alone action, seek to recover damages from the Eastern Mushroom Marketing Cooperative ("EMMC"), its members, certain entities alleged to be related to certain EMMC members, the EMMC's

---

[1] The four motions to dismiss are brought on behalf of the following Defendants: (1) M.D. Basciani & Sons, Inc.; (2) Eastern Mushroom Marketing Cooperative, Inc., Robert A. Feranto, Jr. t/a Bella Mushroom Farms, Brownstone Mushroom Farms, Inc., Country Fresh Mushroom Co., Forest Mushroom, Inc., Gaspari Bros., Inc., Gino Gaspari & Sons, Inc., Kaolin Mushroom Farms, Inc., South Mill Mushroom Sales, Inc., Louis M. Marson, Jr., Inc., Modern Mushroom Farms, Inc., Monterey Mushrooms, Inc., Sher-Rockee Mushroom Farm, LLC, C&C Carriage Mushroom Co., Oakshire Mushroom Farm, Inc., Phillips Mushroom Farms, Inc.; To-Jo Fresh Mushrooms, Inc.; Michael Pia; and John Pia (collectively, "Certain Defendants"); (3) Creekside Mushrooms, Ltd.; and (4) Giorgi Mushroom Co. and Giorgio Foods, Inc. (collectively "Giorgi Defendants"). Defendants J-M Farms, Inc., Mushroom Alliance, Inc., and Cardile Mushrooms, Inc. join in Certain Defendants' motion to dismiss. Cardile also joins in the Creekside and Giorgi motions. Creekside joins in the motions of Certain Defendants and the Giorgi Defendants.

president, and one of its officers.

On January 8, 2019, the Court dismissed Winn-Dixie Plaintiffs' claims against all Defendants other than the EMMC because their allegations regarding Defendants' participation in the EMMC failed to satisfy the pleading standard set forth in *Twombly* and *Iqbal*. *Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative*, Civ. A. No. 15-6480, 2019 WL 130535, at *5-6 (E.D. Pa. Jan. 8, 2019). Winn-Dixie Plaintiffs were granted leave to file an amended complaint, *id.* at *12, and on January 22, 2019, they electronically submitted their Amended Complaint to the Court.

The Amended Complaint contains three counts. Count I asserts a violation of Section 1 of the Sherman Act, which prohibits contracts, combinations, or conspiracies "in restraint of trade or commerce." 15 U.S.C. § 1. Winn-Dixie Plaintiffs allege Defendants enacted "an overarching and illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels, the prices of Agaricus mushrooms that were sold, distributed, or obtained in the United States." (Am. Compl. ¶ 330.) They assert that "Defendants engaged in naked-price fixing and conspired among themselves and in conjunction with [non-EMMC member] distributors to set artificially-inflated [mushroom] prices." (*Id.* ¶ 331.) They contend Defendants perpetuated their scheme by "meeting and agreeing to fix the price of Agaricus mushrooms" and "by collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by EMMC." (*Id.* ¶¶ 332(a), (f).)

Count I also asserts that Defendants adopted and implemented an alleged supply control scheme by "buying multiple properties which were resold at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms." (*Id.* ¶ 332(c).) In addition, Defendants allegedly "enter[ed] into agreements with nonmembers to place

2

deed restrictions on properties for which the [EMMC] purchased lease options" and "fil[ed] deed restrictions on the lease-optioned properties prohibiting the conduct of any business related to the production of mushrooms for ten years." (*Id.* ¶¶ 332(d), (e).)

In Count II, Winn-Dixie Plaintiffs allege "Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by willfully and unlawfully conspiring to acquire or maintain, acquiring or maintaining, and/or attempting to acquire or maintain monopoly power." (Am. Compl. ¶ 341.) They contend Defendants did so by "setting artificially-inflated prices at which mushrooms could be sold by conspiring with nonmember distributors to enact their naked price-fixing scheme," by "conducting the Supply Control campaign," and "by collectively interfering with, penalizing, and retaliating against any non-EMMC growers that sought to sell at prices below the artificially-inflated prices set by EMMC, and collectively pressuring independent growers to join EMMC and the Defendants' anticompetitive scheme." (*Id.*)

In Count III, Winn-Dixie Plaintiffs assert a claim for unlawful acquisition under Section 7 of the Clayton Act, alleging that "EMMC and its members acting through EMMC, unlawfully acquired the assets of their direct competitors . . . thereby substantially lessening competition in . . . the market for Agaricus mushrooms in the United States and/or the market for Agaricus mushrooms grown in the eastern United States." (*Id.* ¶ 347.) They contend that the prices of the mushrooms they purchased were higher than they would have been because of Defendants' alleged conduct. (*Id.* ¶ 348.)

## II. STANDARD OF REVIEW

To withstand dismissal, Winn-Dixie Plaintiffs' Amended Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'[B]are-bones' allegations" cannot "survive a motion to dismiss: 'threadbare

3

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the Federal Rules do not impose a probability requirement at the pleading stage, a complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). If the Court can infer only "the mere possibility of misconduct," the complaint must be dismissed because it has failed to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211. In reviewing Defendants' motions to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of Winn-Dixie Plaintiffs. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001).

### III. DISCUSSION

Moving Defendants argue that the allegations in the Amended Complaint fail to state a claim against them. The Court mostly disagrees. Although Winn-Dixie Plaintiffs have failed to allege Section 2 claims against any Defendants other than the EMMC, they have now satisfied the pleading standards against all Defendants on the remaining claims. Winn-Dixie Plaintiffs may proceed against all properly served Defendants on the Section 1 and 7 claims but against only the EMMC on the Section 2 claim.

### A. Section 2 Claims

The Court previously dismissed Winn-Dixie Plaintiffs' claim under Section 2 of the Sherman Act against all Defendants except for the EMMC. *Winn-Dixie Stores, Inc.*, 2019 WL 130535, at *5-6. Count II of Winn-Dixie Plaintiffs' Amended Complaint alleges that "Defendants violated Section 2" and "Defendants conspired to possess, possessed, or attempted to acquire monopoly power in the relevant market." (Am. Compl. ¶¶ 340-341.) To the extent that they have repleaded their Section 2 claims against the individual Defendants, Winn-Dixie Plaintiffs' now contend they have done so to "merely preserve any errors for appeal." (Pls.' Omnibus Resp. in Opp'n to Mots. to Dismiss Amended Compl. [Pls.' Br.] at 31.) Given that Plaintiffs concede that they do not intend to pursue their Section 2 claims against the individual non-EMMC Defendants, the Court will again dismiss the Section 2 claims as to all Defendants other than the EMMC.

### B. Section 1 and Section 7 Claims

To proceed with their Section 1 and Section 7 claims, Winn-Dixie Plaintiffs "must plausibly suggest that [each] individual defendant actually joined and participated in the conspiracy." *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011). Their Amended Complaint must allege "more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy." *Id.* at 720; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (holding that plaintiffs' claims relying on "indeterminate assertions" that "defendants" or "defendants' executives" participated in the alleged conspiracy were insufficient under *Twombly*). A complaint should provide a clue as to who supposedly agreed to conspire or where or when the alleged conspiratorial agreement was made. *Twombly*, 550 U.S. at 565 n.10. The question for the Court is whether the Amended Complaint meets this burden with

respect to each of the Defendants.

### 1. EMMC-Member Defendants

Winn-Dixie Plaintiffs' allegations are now enough to allow their Section 1 and Section 7 claims to proceed against the EMMC-member Defendants. They allege that the following Defendants were members of the EMMC: (1) Robert A. Ferranto, Jr., an individual trading as Bella Mushroom Farms; (2) Brownstone Mushroom Farms; (3) Cardile Mushrooms, Inc.; (4) Country Fresh Mushroom Co.; (5) Forest Mushrooms Inc.; (6) Franklin Farms, Inc.; (7) Gino Gaspari & Sons, Inc.; (8) Gaspari Bros., Inc.; (9) Giorgi Mushroom Company; (10) Harvest Fresh Farms, Inc.; (11) Kaolin Mushroom Farms, Inc.; (12) Leone Pizzini & Son, Inc.; (13) Louis M. Marson, Inc.; (14) LRP-M Mushrooms LLC; (15) Mario Cutone Mushroom Co., Inc.; (16) Masha & Toto, Inc., a corporation trading as M&T Mushrooms; (17) M.D. Basciani & Sons, Inc.; (18) Modern Mushroom Farms, Inc.; (19) Monterey Mushrooms, Inc.; (20) Oakshire Mushroom Farm, Inc.; (21) Phillips Mushroom Farms, Inc.; (22) W&P Mushroom, Inc.; (23) Mushroom Alliance, Inc.; and (24) United Mushroom Farms Cooperative, Inc. (Am. Compl. ¶¶ 22-31, 34-46, 54). Without more, the allegations of EMMC membership are not enough to confer plausibility on Winn-Dixie Plaintiffs' claims. *See In re Processed Egg*, 821 F. Supp. 2d at 723 ("[M]ere membership in a trade group . . . cannot alone sufficiently plead agreement to a conspiracy . . . ."). However, the Amended Complaint no longer relies on generic allegations that "Defendants" engaged in the alleged antitrust violations.

Rather, allegations in the Amended Complaint now tie each of the EMMC members to the claimed antitrust violations. Winn-Dixie Plaintiffs allege that each EMMC-member Defendant attended a meeting of the EMMC on January 9, 2001 where they discussed and signed the EMMC membership agreement. (*See* Am. Compl. ¶¶ 96, 112-134.) "Pricing policies and minimum pricing

for fresh mushroom products by region were discussed" and "were agreed to" at the January 2001 meeting. (*Id.* ¶ 97).

In addition, each of the EMMC-member Defendants is specifically alleged to have attended an EMMC meeting on March 12, 2002. (*See id.* ¶¶ 139, 143, 146, 149, 152, 155, 158, 161, 164, 167, 170, 173, 176, 179, 182, 185, 188, 191, 194, 197, 200, 203, 206, 209, 221.) The Amended Complaint alleges that a pricing list was distributed to each EMMC member present at the March 2002 meeting and that each of the EMMC member Defendants voted to agree upon minimum prices. (*Id.*) Winn-Dixie Plaintiffs allege that every one of the EMMC members also met and voted for another price increase on April 9, 2002. (*Id.* ¶ 141; *see also id.* ¶¶ 144, 147, 150, 153, 156, 159, 162, 165, 168, 171, 174, 177, 180, 183, 186, 189, 192, 195, 198, 201, 204, 207, 210, 222.)

Each EMMC-member Defendant is also specifically alleged to have "agreed to and voted in favor of" an EMMC policy revision on April 24, 2002. The revised policy obligated them to: (1) never "offer pricing below EMMC minimums to obtain the current business of a nonmember in a new or shared account," and (2) "be bound by a 2/3 vote of the EMMC Members" with an agreement that "the EMMC Executive Committee could carry out the actions of the EMMC." (*Id.* ¶¶ 141, 145, 148, 151, 154, 157, 160, 163, 166, 169, 172, 175, 178, 181, 184, 187, 190, 193, 196, 199, 202, 205, 208, 211, 223.)

Finally, with respect to the alleged supply control scheme, the Amended Complaint alleges that every EMMC Member attended a June 5, 2001 meeting where they "agreed . . . on the parameters that the realtor, who represented the EMMC in connection with purchasing or leasing mushroom farms . . ., was to follow." (*Id.* ¶ 238; *see also id.* ¶¶ 242-264, 267.) Each of the EMMC members is specifically alleged to have "agreed to and voted in favor of the purchase of the Dublin, Georgia farm, the exchange of that farm for another mushroom farm in Evansville, Pennsylvania,

7

and the sale of the two parcels of that farm as significant losses." (*Id.* ¶¶ 242-264, 267.)

Defendants argue that these allegations are insufficient to meet Winn-Dixie Plaintiffs' pleading burden because the allegations are identical as to each of the EMMC-member Defendants. (*See* Certain Defs.' Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. [Certain Defs.' Br.] at 3 ("Instead of identifying specific conduct by individual Defendants . . . , Winn-Dixie appends boilerplate allegations stating that each Defendant participated in the alleged conduct."); M.D. Basciani & Sons, Inc.'s Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. [Basciani's Br.] at 7 ("Plaintiffs crafted templates of alleged factual allegations and then asserted them indiscriminately against each individual defendant in an effort to create a semblance of specificity.").) But Winn-Dixie Plaintiffs are not required to allege that each Defendant engaged in conduct that was different from the conduct of other EMMC members. Rather, they are required only to make specific allegations regarding each Defendant's participation. With their amendments, Winn-Dixie Plaintiffs have furnished a clue as to which of the EMMC members allegedly agreed to the alleged conspiratorial scheme and "when and where the illicit agreement took place." *Twombly*, 550 U.S. at 565 n.10. At this stage of the litigation, the Court must accept these allegations as true. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 953 (N.D. Ill. 2018) ("[U]nder Twombly, the Court abdicates probability weighing, assumes that all the well-pleaded allegations in the complaint are true (even if doubtful in fact) and decides whether the totality of those allegations suggest that an agreement was made.") Whether Winn-Dixie Plaintiffs can ultimately prove that each EMMC-member Defendant participated identically—as alleged—in the antitrust violations is not a question for resolution at this stage of the litigation. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.21 (3d Cir. 2010) ("Although *Twombly*'s articulation of the pleading standard for § 1 cases draws from summary judgment

jurisprudence, the standards applicable to Rule 12(b)(6) and Rule 56 motions remain distinct."). Their claims against the EMMC-member Defendants can proceed.[2]

### 2. Mushroom Alliance Members

Winn-Dixie Plaintiffs have pled viable Section 1 and Section 7 claims against Creekside Mushrooms, Ltd. and J-M Farms, Inc. Although these Defendants are not alleged to have been members of the EMMC directly, Winn-Dixie Plaintiffs contend that they were members of the Mushroom Alliance, another agricultural cooperative, when the Mushroom Alliance was a member of the EMMC. (Am. Compl. ¶¶ 48, 52.) As the Court has already noted, these Defendants' alleged membership in the Mushroom Alliance (and its membership in the EMMC) would not, by itself, make Winn-Dixie Plaintiffs' Section 1 and 7 claims plausible. But Winn-Dixie Plaintiffs do not rely solely on these membership allegations to support their claims. Like the EMMC-member Defendants, both Creekside and J-M Farms are alleged to have attended the January 9, 2001 EMMC meeting where they "agreed to and voted in favor of setting . . . minimum prices and [a] pricing policy" for Agaricus mushrooms. (*Id.* ¶¶ 135, 137.) Winn-Dixie Plaintiffs also allege that Creekside and J-M Farms discussed mushroom prices and the pricing policy at the March 12, 2002 EMMC meeting (*id.* ¶¶ 212, 218); "agreed to and voted in favor of the April 24, 2002 EMMC Policy Revision" (*id.* ¶¶ 214, 220); agreed to and voted in favor of the Dublin, Georgia farm purchase; and attended the June 5, 2001 EMMC meeting where the real estate transactions related to the alleged supply control scheme were discussed (*id.* ¶¶ 265-66). Winn-Dixie Plaintiffs may

---

[2] This includes Defendants' claims against Robert A. Ferranto, Jr. Certain Defendants contend that the Amended Complaint "only alleges that his mushroom farm, Bella . . . , was a member of the EMMC" and does not allege conduct that shows that Ferranto "purposefully joined and participated in the conspiracy." (Certain Defs.' Br. at 8.) Winn-Dixie Plaintiffs have pleaded their claims against Ferranto "trading as Bella," and Defendants have not shown that he cannot be sued in this capacity under Rule 17 of the Federal Rules of Civil Procedure. For purposes of a motion to dismiss, their allegations against Ferranto are enough.

9

not ultimately be able to prove that the Mushroom Alliance members were present at each of these meetings,[3] but that is not the question presently before the Court.

### 3. "Affiliated" Entity Defendants

Winn-Dixie Plaintiffs have adequately pleaded their claims against non-EMMC member Defendants alleged to have been "affiliated with" members of the EMMC. (*Id.* ¶ 71.)

Winn-Dixie Plaintiffs allege that each of these "affiliated" Defendants also "participated in and benefitted from the conspiracy." (*Id.*) More specifically, Winn-Dixie Plaintiffs allege that each "[a]greed to sell at prices set by the EMMC" and "[r]eported sales to the EMMC for purposes of determining the membership fees of the EMMC member with which it was affiliated." (*Id.* ¶¶ 55-59, 61-62, 71.) They also allege that "EMMC members that had related non-grower packaging and distribution operations were required to force their non-grower operations to sell at minimum EMMC prices to the non-grower operations' customers" and that for EMMC members who sold mushrooms through related nonmember distributors, "the EMMC pricing applied to sales made by the non-EMMC distributor entity and not the member grower entity." (*Id.* ¶ 111.)

The Amended Complaint alleges that the "affiliated" Defendants had the following relationships with EMMC-member Defendants. Non-EMMC member Cardile Bros. Mushrooms

---

[3] In its motion to dismiss, Creekside argues that Winn-Dixie "attempts to fabricate a connection between Creekside and the EMMC by selectively citing, or more accurately misciting, certain documents." (Creekside Mem. of Law in Support of Mot. to Dismiss Am. Compl. at 9.) They ask the Court to consider information included in exhibits to their motion, including deposition testimony from Creekside's former president, explaining that the latter is "quoted and relied upon in the complaint." (*Id.* at 9 n.3.) Although the deposition testimony and other exhibits may be relevant to Winn-Dixie Plaintiffs' claims, they are not clearly cited in the Amended Complaint and do not appear to be "integral to" their claims. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court declines to consider these materials in conjunction with Creekside's motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

Packaging, Inc., like EMMC-member Defendant Cardile Mushrooms, Inc., is alleged to be "owned and operated by Michael P. Cardile Sr. and Charles Cardile." (*Id.* ¶ 56.) C & C Carriage Mushroom Co. is alleged to be "related through common ownership" to EMMC-member Defendant Modern Mushroom. (*Id.* ¶ 62.) LRP Mushrooms Inc. and EMMC-member Defendant LRP-M Mushrooms Inc. are alleged to be related through a common owner, Lucio Pizzini. (*Id.* ¶ 35.) Pizzini is alleged to be the owner of LRP Mushrooms Inc. and to have a 50% ownership interest in LRP-M Mushrooms. (*Id.*) Both entities are alleged to "sell 100% of their mushrooms to Manfredini Enterprises, Inc." (*Id.*) Sher-Rockee Mushroom Farm is alleged to be "related through common ownership to" EMMC-member Defendant Modern Mushroom. (*Id.* ¶ 61.) South Mill Mushroom Sales, Inc. is alleged to be "related through common ownership" to EMMC-member Defendant Kaolin Mushroom Farms, Inc., with both alleged to be "jointly owned and operated by Defendants John and Michael Pia, each of whom have a 50% interest in each company." (*Id.* ¶¶ 59-60.) To-Jo Mushrooms, Inc. is alleged to be "related to and controlled by" EMMC-member Defendant Brownstone and it allegedly "processes, packs, and ships mushrooms on" Brownstone's behalf. (*Id.* ¶ 55.)

The Amended Complaint does not specifically allege the basis of a relationship between Giorgio Foods and EMMC-member Defendant Giorgi Mushroom Co. Seeking dismissal of the claims against it, Giorgio does not explicitly argue that Winn-Dixie Plaintiffs have not alleged the basis of its affiliation with Giorgi, but rather contends that Winn-Dixie Plaintiffs' claims against it should be dismissed because, at most, Giorgio is alleged to have engaged in conduct that is "merely ancillary" to the alleged conspiracy. (Giorgi's Mem. of Law in Support of Mot. to Dismiss Am. Compl. at 7.) Giorgi's argument parallels that of Certain Defendants: dismissal is warranted because "there is no factual averment that any affiliate participated in or even had knowledge of"

the alleged supply control scheme and the Amended Complaint "offers merely conclusory allegations but no conduct specific to each of the individual affiliated Defendants that ties them to" an alleged agreement to sell mushrooms at prices set by the EMMC. (Certain Defs.' Br. at 4.)

Like the other affiliated Defendants, Giorgio is alleged to have "agreed to sell at prices set by the EMMC" and to have "reported sales to the EMMC for purposes of determining the membership fees of the EMMC member with which it was affiliated." (Am. Compl. ¶ 57.) While minimal, the allegations in the Amended Complaint regarding the affiliated Defendants' participation in and benefits from the alleged conspiracy are more detailed than the allegations that were in Winn-Dixie Plaintiffs' original complaint. Moreover, the Amended Complaint includes more particularized allegations regarding the nature of the affiliated Defendants' relationships with EMMC-member Defendants. And the Court takes notice of Giorgi and Giorgio's joint settlement of the claims against them in the Class Litigation, *see In re Mushroom*, Civ. A. No. 06-620, Dkt. No. 852-2 at 6-27 (E.D. Pa. January 29, 2018), and their joint representation in the Class Litigation and in this action, including their joint motion to dismiss the Amended Complaint.

The Court finds that Winn-Dixie Plaintiffs' claims against the affiliated Defendants (including Giorgio) are sufficient to raise a reasonable expectation that discovery will reveal evidence that they joined and participated in the alleged antitrust violations. Therefore, Winn-Dixie Plaintiffs' claims against the affiliated Defendants may proceed.

### 4. Michael Pia

Certain Defendants also contend that the Amended Complaint fails to state a claim against Michael Pia because "Winn-Dixie merely alleges that Michael Pia was an officer of the EMMC and the President of one of the EMMC Members." (Certain Defs.' Br. at 7-8.) Winn-Dixie Plaintiffs respond that they have alleged that Michael Pia was "an officer or owner of three

defendant companies which between them are representative o[f] every corporate sub-group involved at every level of this conspiracy." (Pls.' Br. at 34.) Indeed, they have alleged that Michael Pia was an officer of the EMMC and that he owned 50% of EMMC-member Defendant Kaolin Mushroom and 50% of affiliated Defendant South Mill. (Am. Compl. ¶¶ 31, 33, 59-60, 63.) The Amended Complaint also includes allegations regarding Kaolin and South Mill's participation in the alleged anticompetitive schemes. Although Winn-Dixie Plaintiffs will ultimately have to submit more evidence in support of their claims against Michael Pia before the Court will impose individual liability upon him, at this stage of the litigation, no more is required for the claims against him to proceed.

### C. Conspiracy Period

Defendants contend the Amended Complaint is deficient because it alleges a conspiracy period from January 1, 2001 through the present when there are allegations in the complaint that "assert that the alleged anticompetitive conduct ended earlier." (Certain Defs.' Br. at 5; *see also* Basciani's Br. at 8 ("[T]he Amended Complaint asserts conflicting allegations with respect to the alleged conspiracy period," and "there are no allegations in the Amended Complaint that assert any alleged events past 2005, much less through 2019.").) In their response to Defendants' motions, Plaintiffs concede that the conspiracy period does not extend beyond December 31, 2008. (Pls.' Br. at 28.) The allegations in the Amended Complaint are sufficient to provide notice to Defendants of when the alleged conspiracy began, and the Court will permit Winn-Dixie Plaintiffs' claims to proceed with respect to an alleged conspiracy that is limited to the period from January 1, 2001 through December 31, 2008.[4]

---

[4] The period of time for which Winn-Dixie Plaintiffs are able to recover may be curtailed with respect to some defendants. *See Winn-Dixie Stores, Inc.*, 2019 WL 130535, at *11 (holding the

### D. Service

Finally, under Rule 4(m) of the Federal Rules of Civil Procedure, a plaintiff has ninety days from filing a complaint to serve the summons and complaint; failure to serve within that time frame leaves the plaintiff open to dismissal of their claims. Despite the Court's notice to the Winn-Dixie Plaintiffs on March 14, 2016 that they had failed to serve some defendants, the docket in this case still does not reflect service of the Complaint (filed on December 7, 2015) or the Amended Complaint on any of the following Defendants: 1) Cardile Brothers Mushroom Packaging, Inc.; 2) Harvest Fresh Farms, Inc.; 3) LRP-M Mushrooms, LLC; 4) LRP Mushrooms Inc.; 5) Masha & Toto, Inc. t/a M&T Mushroom; 6) United Mushroom Farms Cooperative; and 7) W&P Mushrooms, Inc.. The Court will dismiss Winn-Dixie Plaintiffs' claims against the foregoing Defendants without prejudice.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss will be granted in part and denied in part. Winn-Dixie Plaintiffs' claims under Section 2 of the Sherman Act will be dismissed as to all Defendants except the EMMC. They may proceed against Defendants who have been properly served on the remaining claims. However, Winn-Dixie Plaintiffs' claims against Cardile Brothers Mushroom Packaging, Inc., Harvest Fresh Farms, Inc., LRP-M Mushrooms, LLC, LRP Mushrooms Inc., Masha & Toto, Inc. t/a M&T Mushroom, United Mushroom Farms Cooperative, and W&P Mushrooms, Inc. will be dismissed without prejudice for lack of service. An appropriate Order will be docketed separately.

---

statute of limitations for three Defendants dismissed with prejudice from the Class Litigation on November 13, 2014 was tolled only until that date).