```
                UNITED STATES DISTRICT COURT

              EASTERN DISTRICT OF PENNSYLVANIA



WINN-DIXIE STORES, INC.,    )
ET AL,                      )
                            ) Case No. 15-6480
                            )
         Plaintiff(s),      )
                            )
                            )
      v.                    ) Philadelphia, Pennsylvania
                            ) September 4, 2019
EASTERN MUSHROOM            ) 10:30 a.m.
MARKETING COOPERATIVE,      )
INC., ET AL,                )
                            )
         Defendant(s).      )
_____ )


            TRANSCRIPT OF RULE 16 CONFERENCE
         BEFORE THE HONORABLE BERLE M. SCHILLER
            UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Plaintiff(s):    PATRICK J. AHERN, ESQ.
                         AHERN & ASSOCIATES PC
                         8 South Michigan Avenue
                         Suite 3600
                         Chicago, IL 60603


For Eastern Mushroom:    WILLIAM A. DESTEFANO, ESQ.
Marketing Cooperative,   STEVEN & LEE
Inc., ET AL              1818 Market Street, 29th Floor
                         Philadelphia, PA 19103

                         MAXWELL KOSMAN, ESQ.
                         PAUL WEISS RIFKIND WHARTON
                         GARRISON LLP
                         1285 Avenue of the Americas
                         New York, NY 10019-6064

                         JAMES J. RODGERS, ESQ.
                         DILWORTH PAXSON
                         1500 Market Street, Suite 3500
                         Philadelphia, PA 19102

                         JACQUELINE P. RUBIN, ESQ.
                         PAUL WEISS RIFKIND WHARTON
                         GARRISON LLP
                         1285 Avenue of the Americas
                         New York, NY 10019-6064
```

```
APPEARANCES: (continued)


For Eastern Mushroom:   JOEL I. FISHBEIN, ESQ.
Marketing Cooperative,  LITCHFIELD CAVO, LLP
Inc., ET AL             1515 Market Street, Suite 1220
                        Philadelphia, PA 19102-1903

                        DONNA M. ALBANI, ESQ.
                        LAW OFFICES OF DONNA M. ALBANI
                        11 Hamilton Lane
                        Glen Mills, PA 19432

                        BARBARA T. SICALIDES, ESQ.
                        PEPPER HAMILTON LLP
                        300 Two Logan Square
                        18th and Arch Streets
                        Philadelphia, PA 19103
```

```
 1   Court Recorder:                    Chris Campoli

 2                                      Clerk's Office

 3                                      U.S. District

 4

 5

 6

 7   Transcription Service:

 8

 9             Foothill Transcription Company, Inc.

10             8788 Elk Grove Blvd. Bldg. 2, Suite D

11             Elk Grove, CA  95624

12

13

14   Proceeding recorded by electronic sound recording;

15   Transcript produced by transcription service.

16

17

18

19

20

21

22

23

24

25
```

```
 1                    PHILADELPHIA, PENNSYLVANIA

 2                   WEDNESDAY, SEPTEMBER 4, 2019

 3            (PROCEEDINGS HELD IN OPEN COURT:)

 4            HONORABLE JUDGE BERLE M. SCHILLER:  Morning.

 5            MULTIPLE VOICES:  Morning, Your Honor.

 6            THE COURT:  This is case Winn-Dixie Stores, Inc.,

 7   et al, versus Eastern Mushroom Marketing Cooperative, Inc.,

 8   et al, number 15-6480.  Counsel, identify yourselves for

 9   the record and who you represent.

10            MR. PATRICK AHERN:  Patrick Ahern on behalf of

11   the Winn-Dixie Plaintiffs, Your Honor.

12            MR. WILLIAM DESTEFANO:  Good morning, Your Honor.

13   William DeStefano on behalf of the EMMC and various members

14   identified.

15            THE COURT:  Okay.

16            MR. MAXWELL KOSMAN:  Maxwell Kosman on behalf of

17   the Giorgi entity.

18            MS. DONNA ALBANI:  Donna Albani for M.D. Basciani

19   & Sons, Inc., Your Honor.

20            MR. JAMES RODGERS:  James Rodgers for Franklin.

21            MS. BARBARA SICALIDES:  Barbara Sicalides, Pepper

22   Hamilton, on behalf of Creekside Mushrooms.

23            MS. JACQUELINE RUBIN:  Jacqueline Rubin on behalf

24   of Giorgi with Mr. Kosman.

25            THE COURT:  Okay.
```

 1          MR. JOEL FISHBEIN:  Joel Fishbein on behalf of

 2   (inaudible).

 3          THE COURT:  Okay, please be seated.  The purpose

 4   of this Rule 16 was to establish certain ideas about when

 5   you -- what your schedule is proposed.  I saw what you did,

 6   and I have some ideas myself, and I have some questions for

 7   all of you about how we're going to proceed.  So, let me

 8   start with some questions.

 9          First of all, has there been an exchange of the

10   discovery materials from the related class and opt-out

11   litigation?

12          MR. AHERN:  No, Your Honor.  We've asked for it,

13   but we haven't gotten it.

14          MR. DESTEFANO:  We were under the understanding

15   that Mr. Ahern was going to be receiving --

16          THE COURT:  Excuse me?

17          MR. DESTEFANO:  We were under the understanding

18   that --

19          THE COURT:  You can sit down.

20          MR. DESTEFANO:  -- that Mr. Ahern was going to be

21   receiving all of those materials from the other two opt-

22   outs, who have that and have had it for a long time.  And

23   indeed, Mr. Ahern quoted liberally from that discovery in

24   his amended complaint.  So, we were under the assumption

25   that he already had at least part of it and would be

1   receiving those materials from counsel from Publix and

2   Giant Eagle, who already had that -- they participated in

3   the entire 13-year history of this case.  So, they already

4   had it.  So --

5            THE COURT:  Have you -- Have you bothered to ask

6   them for the discovery?

7            MR. AHERN:  I have asked them.  Before Your Honor

8   granted the motion for consolidation -- I mean, denied the

9   motion for consolidation, we did ask Publix and -- and

10  Giant Eagle, and they were in the process of, you know,

11  working out various issues here regarding when this trial

12  was going to be.  So, they did not --

13           THE COURT:  Forget that.  I want them to give you

14  the material.

15           MR. AHERN:  Well, Your Honor, they're not parties

16  to my case right now.  This case is a separate case, and I

17  don't think that our discovery should be truncated.  We are

18  entitled as a separate case, and this is what the

19  Defendants wanted.  So, fine, let's deal with this --

20           THE COURT:  No, it's what I want.

21           MR. AHERN:  Okay.

22           THE COURT:  Forget what they want.

23           MR. AHERN:  Well, Your Honor granted the

24  motion --

25           THE COURT:  I want to know why you don't have any

1  discovery materials.

2          MR. AHERN:  Because -- because --

3          THE COURT:  You're not going to start from square

4  one for discovery.

5          MR. AHERN:  Well, Your Honor --

6          THE COURT:  All this discovery was done already.

7          MR. AHERN:  Your Honor, I'm not saying we would

8  start from square one, but there are documents that the

9  Defendants have.  They're just trying to lighten their own

10 burden to produce the documents that they produced to the

11 DOJ, that should be easy, to produce prior testimony,

12 relevant testimony, and to produce their sales data.  All

13 of that we're entitled to.

14          And Giant and -- Publix and Giant Eagle are not

15 parties to this case.  If they refuse to give it to us, and

16 they indicated they weren't sure if their databases were

17 complete, so they had some reluctance in doing so.  Now,

18 I'm going to have to subpoena them.  That doesn't seem

19 right to me.

20          MR. DESTEFANO:  Your Honor, it was our

21 understanding that -- that -- that Mr. Ahern had already

22 worked out an agreement with Publix and Giant Eagle.  I

23 don't hear him --

24          THE COURT:  Well, he didn't.

25          MR. DESTEFANO:  -- saying that -- that --

1              THE COURT:  He didn't.

2              MR. AHERN:  Yeah.

3              MR. DESTEFANO:  Well, I'm not sure he did, or he

4    didn't.

5              THE COURT:  I don't care whether he did, or he

6    didn't.

7              MR. DESTEFANO:  It's up in the air.

8              THE COURT:  I'm just saying that he wants

9    discovery.  What material -- do you know the materials you

10   want?

11             MR. AHERN:  We do.  We asked -- We propounded

12   discovery requests two years ago.  Those have never been

13   responded to, but at least the three categories that I just

14   mentioned to Your Honor:  The documents that they produced

15   to the DOJ, the -- their sales data, and any prior relevant

16   testimony, which we're entitled to either for impeachment

17   or as party admissions.

18             THE COURT:  All right.  I want -- did you get

19   those requests from him?

20             MR. DESTEFANO:  Well, the DOJ documents are

21   already bundled into the materials produced to Publix and

22   Giant Eagle as well as the class.  So, I'm assuming that if

23   he does get them from Publix and Giant Eagle --

24             THE COURT:  Assume he's not going to get

25   anything.

1          MR. DESTEFANO:  Okay.

2          THE COURT:  He wants to sit.  He doesn't want to

3    do anything except if he gets it from you.  Understand?

4    That's what's going on here --

5          MR. DESTEFANO:  Right.

6          THE COURT:  -- is diligence, a lack of it.

7          MR. AHERN:  Well, Your Honor, to be fair --

8          THE COURT:  You waited 13 years to get off your

9    butt to move this case.

10         MR. AHERN:  Your Honor, to be fair, I never told

11   them that I had made a deal with Publix --

12         THE COURT:  I don't care whether you did, or you

13   didn't.  All the time you've wasted.  You could have asked

14   me.

15         MR. AHERN:  I did ask, and I also asked them.

16         THE COURT:  What did you ask of me?

17         MR. AHERN:  I've asked repeatedly to have

18   those --

19         THE COURT:  You didn't ask me.

20         MR. AHERN:  -- materials given.

21         MR. AHERN:  Well, I -- I asked repeatedly and

22   Judge O'Neill put this on a stay until we opted out of the

23   class, which was maybe nine months to a year ago.  I've

24   been seeking this material for a long time, Your Honor,

25   since we filed.

```
1              THE COURT:  Since you filed.

2              MR. AHERN:  Right.

3              THE COURT:  But never once did you ask me.

4              MR. AHERN:  I apologize for that, Your Honor.

5              THE COURT:  All right.  Now I want those

6    responded to.  All the material that he's asked for, I want

7    it responded to, all right?  You have the documents and so

8    on and so forth, okay?  What else, Mr. Ahern?

9              MR. AHERN:  Your Honor, we have the schedules

10   here.  The big picture is that they're pretty similar.

11   Most of the dates are agreed to or very close.

12             THE COURT:  Well, I'm going to go over some new

13   dates.

14             MR. AHERN:  Okay.  The -- the only issue on the

15   schedule, I would say, is that our -- we have the Daubert

16   deadline, the same as --

17             THE COURT:  Forget the Daubert.  I'm going to go

18   over that with you.

19             MR. AHERN:  Oh, okay.

20             THE COURT:  My question was the discovery

21   materials.  But now we know I want those questions

22   responded to, so that they can get all the discovery

23   they've asked for.

24             MR. DESTEFANO:  We're prepared to give them all

25   the depositions, all the documents that were marked during
```

1    the depositions, and that pretty much does it.  The expert

2    materials that were done, I don't think -- I think he's

3    getting his own expert.  I'm not sure he needs it.

4              THE COURT:  Well, I'm going to find that out.

5              MR. DESTEFANO:  Yeah.

6              THE COURT:  All right?

7              MR. DESTEFANO:  Yeah.

8              THE COURT:  All right.  He'll get that stuff to

9    you.

10             MR. AHERN:  Your Honor, we -- we would like

11   responses to our written discovery requests, including our

12   interrogatories, because we've also served interrogatories

13   on them.  And I'm not sure -- I don't have the

14   interrogatory responses from -- from the previous case, and

15   I'm not sure that --

16             THE COURT:  All right.  Well, let me -- I'm going

17   to deal with that.  I just -- I'm just getting a little

18   understanding of what you've -- people have done or not

19   done.  Mostly, it's not done.  Now, what discovery do

20   Defendants need from the Winn-Dixie/Bi-Lo people?

21             MR. DESTEFANO:  As -- As putting aside expert

22   discovery --

23             THE COURT:  Yeah.

24             MR. DESTEFANO:  -- fact discovery, our best --

25             THE COURT:  You're going to -- you're going to do

```
1   what you have to do to get that discovery, take
2   depositions, et cetera, request documents?
3              MR. DESTEFANO:  Yes, yes.
4              THE COURT:  Okay.  You'll do that in the ordinary
5   course?
6              MR. DESTEFANO:  Yes.
7              THE COURT:  And I'll set a schedule for that.
8   Now, what discovery does Winn-Dixie/Bi-Lo need from
9   Defendants that is specific to Winn-Dixie/Bi-Lo's mushroom
10  purchases?
11             MR. AHERN:  Your Honor, with respect to that, we
12  would be seeking probably very limited depositions, if we
13  need to, 30(b)(6), just on specific things as to just our
14  purchases from them.  We would be looking for their
15  purchase -- their sales data to us, which you've already
16  said is a category that they should provide.
17             THE COURT:  Right.
18             MR. AHERN:  And beyond that, I'm not sure what
19  else, but we would do that in the normal course.
20             THE COURT:  Okay.
21             MR. DESTEFANO:  Can I add something to that?
22             THE COURT:  Yes.
23             MR. DESTEFANO:  Apparently, Mr. Ahern already has
24  Winn-Dixie and Bi-Lo's purchase data because he sent it to
25  us attached to a response to a motion at some point.  So,
```

1    if he already has something, I'm not sure --

2              THE COURT:  I just want to make sure that there's

3    no information that hasn't been turned over in one form or

4    another, whether it was a part of something else or it's

5    part of this.

6              MR. DESTEFANO:  All right.

7              THE COURT:  All right?

8              MR. DESTEFANO:  I believe he has already has the

9    sales --

10             THE COURT:  I'm going to give you a schedule --

11             MR. DESTEFANO:  Yeah.

12             THE COURT:  -- and I want to make sure it's

13   complied with.

14             MR. DESTEFANO:  Sure.

15             MR. AHERN:  Your Honor, just on that one point,

16   oftentimes, the Defendant's data is going to be different

17   in scope of time and other aspects that the Plaintiff's

18   data.  So, the fact that we may have shared our data or

19   attached our data doesn't mean we don't need theirs.

20             THE COURT:  Well, whatever it is, you're going to

21   ask the questions.  You'll get the answers.  So, that was

22   what discovery does Winn-Dixie/Bi-Lo need from the

23   Defendants, specific to Winn-Dixie/Bi-Lo's mushrooms

24   purchased.  Okay.  Has Winn-Dixie/Bi-Lo selected an expert

25   witness?

1          MR. AHERN:  Your Honor, we would probably seek to

2    use Mr. Leffler if -- after he finishes his trial before

3    Your Honor on behalf of Publix and Giant Eagle.  If we

4    can't use him --

5          THE COURT:  Well, let me tell you something.

6          MR. AHERN:  Yes, sir.

7          THE COURT:  I'm not waiting for that trial to be

8    over.  I'm -- I'm going to give you a -- I'm going to give

9    you a pre-trial schedule, and the way I've tentatively

10   drawn it up for myself here is that it all ends July 20th

11   of 2020.  So, there's going to be overlap.  So, if you

12   think you're going to be able to talk to this expert and

13   wait till that trial is over, you may be sorely mistaken.

14         MR. AHERN:  Well, based on Your Honor's comment

15   right now, then if we can't use him, we'll get somebody

16   else.

17         THE COURT:  All right.  Will the Defendants need

18   additional expert testimony?

19         MS. SICALIDES:  Your Honor, on behalf of

20   Creekside Mushroom, we had no expert in the original case

21   because we were settled out of the case.  So, we will need

22   an expert.

23         THE COURT:  Fine.  Okay.  All right.

24         MR. KOSMAN:  The same is true of Giorgi, Your

25   Honor.

```
 1              THE COURT:  Okay.  Is there any reason why the
 2     parties believe they -- well, I'm going to give you the
 3     deadlines, and I want to see what -- what your comments
 4     are?  Now, let me ask you this.  Have you ever sat down
 5     with one another to discuss settlement?  Anybody, anytime,
 6     anywhere?
 7              MS. SICALIDES:  We have endeavored to do so, Your
 8     Honor.
 9              THE COURT:  You've tried to do that?
10              MS. SICALIDES:  We have endeavored to do so, Your
11     Honor.  Yes.
12              MR. AHERN:  Yeah.
13              MS. SICALIDES:  Twice.
14              MR. AHERN:  We have -- well, I mean, to be fair,
15     we made a demand --
16              THE COURT:  Well, no, let's be fair.  Yes, that's
17     right.  It's a good idea.
18              MR. AHERN:  To be fair to Ms. Sicalides' comment,
19     we made a demand, and I don't believe we ever got a
20     response back.  We have had isolated discussions with
21     certain of the Defendants.  We have not had a discussion
22     with -- with all of this -- the EMMC and the certain
23     Defendants.
24              There was a comment that was made that -- that
25     very quickly, at least, they might see whether or not there
```

```
 1   was an opportunity to resolve it, but after that comment

 2   two months ago, three months ago, we haven't heard -- we

 3   haven't heard --

 4        THE COURT:  I can understand why nothing's been

 5   done because things kind of float around, and we got -- you

 6   were kind of put off to the side, considering what was

 7   going on ahead of you.  Go ahead.

 8        MS. SICALIDES:  I'm just going to say that I

 9   disagree with the characterization of the discussions, that

10   we approached them very, very early.  We have spoken to

11   them more than once.  We did make a proposal which counsel

12   apparently has forgotten.  So, I would just say I disagree

13   with the characterization --

14        THE COURT:  Okay.

15        MS. SICALIDES:  -- and leave it at that.

16        THE COURT:  As long as -- I just -- I just wanted

17   to know whether there was any discussions going on.

18        MS. SICALIDES:  Well, there was --

19        THE COURT:  And now there's --

20        MS. SICALIDES:  -- a sincere effort --

21        THE COURT:  -- there's probably --

22        MS. SICALIDES:  -- on Creekside's part to resolve

23   the issues.

24        THE COURT:  Good.  Okay.

25        MR. AHERN:  I mean, one other comment, Your
```

1    Honor.  We have -- we have resolved with -- with at least

2    one of the Defendants.

3              THE COURT:  Excuse me?

4              MR. AHERN:  We have resolved with at least one of

5    the Defendants, and we did that several months ago, and

6    Your Honor did the stipulation for dismissal on that.

7              THE COURT:  Okay.  Do -- I guess there's no

8    disagreement that you believe that settlement discussions

9    would be productive.  The question is when would they be

10   productive?  At this time, in the future, when?  I mean, I

11   want to know are you going to sit down and talk to one

12   another?

13             MR. DESTEFANO:  Yeah, let me -- let me explain

14   what we're doing.  We've done considerable work on Winn-

15   Dixie and Bi-Lo's theoretical damages through our expert

16   because we had that information available, and indeed,

17   during the ongoing class action, both experts did specific

18   regression models regarding and came out with opinions on

19   Winn-Dixie's damages and Bi-Lo's damages.

20             THE COURT:  Right.

21             MR. DESTEFANO:  What we were prepared to do after

22   our settlement got approved, which was just a week ago, I

23   guess, or at least preliminarily approved a week ago, was

24   to make an offer to Mr. Ahern with -- with those numbers in

25   mind.

```
1              THE COURT:  All right.

2              MR. DESTEFANO:  And we'll do so.  Now, that --

3    that can happen, let's say, next week, and --

4              THE COURT:  All right.  Whatever.  I just want to

5    know -- the whole purpose of this line of questioning is to

6    make sure that the parties are actually actively trying to

7    talk to one another.  I don't want last minute kinds of

8    things.  If you're going to talk, then talk.  There's a lot

9    of information out there.  There's been expert reports.

10   There's been studies.  This isn't starting from -- from

11   zero.

12             MR. AHERN:  We don't have access to any of that.

13             THE COURT:  You don't have access to what?

14             MR. AHERN:  To any of that.  So, to the extent

15   that they come up and they say, well, this is what our

16   expert analysis shows, we don't have access to any of that

17   information.

18             THE COURT:  It's your -- it's your comment that

19   you have never seen an expert report that talks about your

20   clients.

21             MR. AHERN:  In this case, correct.

22             THE COURT:  Okay.  All right.  So, there you go.

23             MR. DESTEFANO:  Well, that's because all of that

24   stuff was done in the class action --

25             THE COURT:  Whatever -- whatever the reason is.
```

```
 1              MR. DESTEFANO:  All right.  Yeah.

 2              THE COURT:  If you're going to have a settlement

 3      discussion with Mr. Ahern, give him the material that

 4      you're basing it on.

 5              MR. DESTEFANO:  Of course.

 6              THE COURT:  Okay.  All right.  I'm proposing that

 7      the fact discovery deadline would be January 20th, 2020.

 8      I've seen your proposals.  I'm condensing most of that.

 9              MR. AHERN:  Your Honor, may I just say that I

10      have a two-week trial starting in front of Judge Davis in

11      the middle District of Florida in federal court in

12      Jacksonville.  It's been moved several times.  It's a must-

13      go January 6th.

14              THE COURT:  Good.  Well, you should have that

15      discovery done before January 20th.

16              MR. AHERN:  And I'm also on trial in front of

17      Judge Pratter (phonetic) starting on October --

18              THE COURT:  On the eggs.  I understand that.

19              MR. AHERN:  -- through Christmas.

20              THE COURT:  Good.

21              (Break in Audio)

22              MR. DESTEFANO:  -- Mr. Ahern is willing to sign

23      the confidentiality or it's already in place with -- under

24      Judge O'Neill.

25              THE COURT:  All right.  He's willing to sign it.
```

```
1            MR. DESTEFANO:  Yeah.

2            THE COURT:  So, get a confidentiality order.

3  That's a good point, Ms. Albani.

4            MS. ALBANI:  Albani.  Thank you, sir.

5            THE COURT:  Albani.

6            MS. ALBANI:  That's okay.

7            THE COURT:  Good.  That takes care of that.  Is

8  there anything else?  Now, who's -- who's the -- who's the

9  lead counsel here?  Is it you again, Mr. DeStefano?

10            MR. DESTEFANO:  I'd like to pass the baton to --

11            THE COURT:  Is it Mr. Montague?  You sit here

12  quiet --

13            MR. DESTEFANO:  -- to Paul Weiss.

14            THE COURT:  That's the quietest I've ever seen

15  him in a courtroom.

16            MR. MONTAGUE:  I'm observing, Your Honor.

17            THE COURT:  He's an observer.  Okay.

18            MR. DESTEFANO:  By weight of number of Defendants

19  represented, I guess I have the --

20            THE COURT:  What's that?

21            MR. DESTEFANO:  By weight of number of Defendants

22  represented, I have to default, I suppose, to that, the

23  lead counsel.

24            THE COURT:  All right.  Again, I'm available if

25  you want to have a discussion.  Ms. Albani, you can come
```

1   see me.

2   　　　　MS. ALBANI:  Thank you, Your Honor.

3   　　　　THE COURT:  I won't accuse you of any ex-parte

4   any things and neither will they.  So, we'll try to get

5   this thing resolved if I can be helpful.  I feel good

6   about what we've been able to accomplish up till now.  So,

7   if I can be of further assistance, I'll be happy to do

8   that, so --

9   　　　　MR. AHERN:  Thank you, Your Honor.

10  　　　　THE COURT:  -- all right?  So, I will send out my

11  scheduling order to you all.  All right?

12  　　　　MR. AHERN:  Thank you.

13  　　　　THE COURT:  All right, thank you very much.  I

14  hope you had a good summer and a good Labor Day weekend.

15  Now, we have to come to work.

16  　　　　MR. AHERN:  Thank you, Your Honor.

17  　　　　THE COURT:  All right.

18  　　　　(Proceedings concluded at 10:52 a.m.)

19

```
 1                      CERTIFICATION

 2

 3      I, Wendy Sawyer, court approved transcriber,

 4  certify, that the foregoing is a correct transcript

 5  from the official electronic sound recording of the

 6  proceedings in the above-entitled matter.

 7

 8  October 1, 2019

 9  Date

10

11                   Wendy K. Sawyer

12            _____

13            Wendy K. Sawyer, CDLT, Transcriber

14            FOOTHILL TRANSCRIPTION COMPANY

15

16

17

18

19

20

21

22

23

24

25
```