# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WINN-DIXIE STORES, INC. and BI-LO HOLDINGS, LLC. | : | No. 15-cv-6480 |
| Plaintiffs, | : : : | Related Action: Master File No. 06-cv-0620 |
| v. | : : | |
| EASTERN MUSHROOM MARKETING COOPERATIVE, INC., et al., | : : : | |
| Defendants | : : : | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' PROPOSED SUR-REPLY**

Notwithstanding Defendants' proposed sur-reply, Defendants still agree that Plaintiffs should have until June 8, 2020 to respond to Defendants' Motion for Summary Judgment Against Bi-Lo because Defendants only submitted their Statement of Undisputed Facts this past Tuesday, May 12, 2020. Dkt. 244. However, consistent with their strategy to avoid discovery in this case, Defendants make the erroneous argument that a Rule 56(d) declaration is necessary to support Plaintiffs' Motion to Stay or Extend the time to respond to Defendants' motion.

Contrary to Defendants' contention, Rule 56(d) declarations are typically filed in response to a motion for summary judgment, as was done in both of the cases cited by Defendants. In addition, Defendants' contention that no discovery is necessary with respect to the cost-plus exception doubles down on their refusal to search for and produce documents relating to the Plaintiffs. For example, documents relevant to the cost-plus exception would include contracts between Monterey and Oakshire and Bi-Lo and/or between C&S and Monterey

1

and Oakshire, none of which Bi-Lo possesses, and documents relating to communications between C&S and Monterey and Oakshire and Bi-Lo and Oakshire and Monterey relating to their course of dealing. Plaintiffs have been seeking these documents for months, if not years, even before Oakshire filed for bankruptcy. Thus, contrary to Plaintiffs' Motion to Stay or Extend being an attempt at delay, it is rather Defendants who are attempting to obstruct discovery in this case, which they have consistently done, as evidenced by the numerous Orders from this Court.

The purported deficiency that Defendants contend under Rule 56(d) is not a deficiency since Plaintiffs have not yet filed their Response to Defendants' summary judgment motion, which Defendants now concede should be filed no earlier than June 8, 2020. Indeed, the cases cited by Defendants both deal with a challenge, at the appellate court level, to the grant of summary judgment. Thus, in those decisions, the Third Circuit dealt with a purported Rule 56(d) declaration or affidavit filed in opposition to a summary judgment motion. *See Smith v. Depuy Orthopaedics*, Ltd., 2014 U.S. App. LEXIS 718 at *8-9 (3d. Cir. 2014) (affirming denial of a cross motion for continuance under Rule 54(d) when that motion was made at the same time as the opposition to summary judgment); *Commonwealth v. Sibelius*, 674 F.3d 139, 157 (3d. Cir. 2012) (referring to Rule 56(d) as "When a party opposing summary judgment 'believes that s/he needs additional time for discovery.'"). That is not the case here, as Plaintiffs have not yet filed their response to Defendants' summary judgment motion, and have only challenged the timing of the bringing and briefing of the motion.

Moreover, the case law cited by Defendants holds that a summary judgment motion may be brought at any time as long as the non-movant has had a sufficient opportunity to conduct discovery. *Smith*, 2014 U.S. App. LEXIS 718 at *8-9 ("A district court may grant summary

judgment before discovery is completed as long as the party opposing summary judgment has had 'an adequate opportunity to obtain discovery.'"). Here, Plaintiffs have not had such a sufficient opportunity, as evidenced by this Court's prior Orders and Plaintiffs' current Motion to Enforce the Court's Prior Orders. In addition, expert discovery will not be completed for several months. This is the reason that this Court set the schedule to have summary judgment motions after expert discovery was completed and after *Daubert* motions have been argued. Thus, Defendants' summary judgment should not be brought or briefed until Plaintiffs have had a sufficient opportunity to conduct discovery, which in this case is at least until the Court has ruled on Plaintiffs' Motion to Enforce its Prior Orders and Defendants have complied with any discovery ordered by the Court, and more appropriately according to the current schedule, which is after expert discovery has been completed.

Moreover, while Plaintiffs believe that it is obvious how the discovery into the cost-plus exception would be used to oppose summary judgment, they nevertheless attach to this pleading a Rule 56(d) declaration regarding what discovery is necessary and how it would be used to oppose summary judgment.[1] See declaration of Patrick J. Ahern attached hereto at Ex. 1. That declaration sets forth in detail the facts and expert discovery necessary for the cost-plus exception and how it would be used to oppose Defendants' Motion. Ahern Decl. ¶¶ 2 and 3. With respect to the expert discovery, the declaration demonstrates that expert analysis of Monterey's prices and Oakshire's prices to C&S and C&S' prices to Bi-Lo will be necessary for the cost-plus exception, as well as an analysis of C&S' markup and whether it was set by a formula or mechanism. Ahern Decl. ¶ 5. This necessary expert discovery – the analysis of prices

---

[1] The Ahern Declaration does not contain legal analysis, including citations, relating to the cost-plus exception or to the rule of law allowing for discovery and evidence regarding the parties' intentions in order to resolve a contract ambiguity. However, if the Court desires such analysis on this issue, Plaintiffs are happy to provide it. Of course, such analysis will be provided after discovery in Plaintiffs' response to Defendants' Motion.

3

– is quintessential expert opinion and further argues that Plaintiffs' response to Defendants' Motion should not be required until after expert discovery is completed, and Daubert challenges heard and decided – so, in sum, according to the current case schedule.

In addition, Plaintiffs need discovery into the C&S Assignment regarding the intention of the parties, in light of Defendants' interpretation of the Assignment. For example, Defendants' interpretation of the Assignment at pp. 8-9 of their summary judgment motion (Dkt. 229-1) is contradicted by the seminal conveying language in the Assignment in the definition of "Antitrust Claims," which states that C&S is conveying to Bi-Lo any claim that it has arising out of purchases of mushrooms made by Bi-Lo through C&S and arising out of the antitrust laws. To the extent that Defendants' interpretation creates an ambiguity, discovery into the parties' intentions is necessary.

In addition, Defendants' assertion that Plaintiffs were somehow required to raise the cost-plus exception previously is incorrect. Plaintiffs alleged that Bi-Lo was a direct purchaser. Defendants knew, even before Plaintiffs filed their Complaint, that Bi-Lo purchased mushrooms from them through C&S. Defendants could have served an interrogatory on Bi-Lo asking for the facts and contentions underlying the allegation that Bi-Lo was a direct purchaser. They failed to do so. Thus, Defendants' assertion that Plaintiffs had not raised the cost-plus exception in response in any discovery response must fail because they never served any discovery that would call for or encompass this issue, and they have not referenced or attached any such discovery.

Moreover, it is not incumbent on Plaintiffs to spell out their case to Defendants, absent such an interrogatory. The cost-plus exception is a well-recognized exception to the direct purchaser rule. This is well known to practitioners in antitrust litigation. When the cost-plus exception is satisfied, the plaintiff/purchaser is a direct purchaser. Thus, when Bi-Lo alleged that

it was a direct purchaser, that allegation necessarily encompassed any manner in which Bi-Lo was a direct purchaser, including the cost-plus exception. For these reasons, Defendants' assertion that it was incumbent on Bi-Lo to identify the cost-plus exception before receiving Defendants' summary judgment motion should be rejected.

For the reasons stated above and in Plaintiffs' opening motion and reply brief, this Court should grant Plaintiffs' Motion to Stay Defendants' Motion for Summary Judgment or to Extend the Time to Respond.

Dated: May 15, 2020

    Respectfully submitted,

    */s/ Patrick J. Ahern*
    Patrick J. Ahern
    Theodore B. Bell
    AHERN AND ASSOCIATES, P.C.
    8 South Michigan Avenue
    Suite 3600
    Chicago, Illinois 60603
    Tel: (312) 404-3760
    patrick.ahern@ahernandassociatespc.com

    **Counsel for Plaintiff Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC**

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | x | |
|---|---|---|
| **WINN-DIXIE STORES, INC. and BI-LO HOLDINGS, LLC.** | : | No. 15-cv-6480 |
| | : | |
| Plaintiffs, | : | Related Action: |
| | : | Master File No. 06-cv-0620 |
| v. | : | |
| | : | |
| **EASTERN MUSHROOM MARKETING COOPERATIVE, INC., et al.,** | : | |
| | : | |
| Defendants | : | |
| | : | |
| | x | |

**PLAINTIFFS' RULE 56(d) DECLARATION**

I, Patrick J. Ahern, being duly sworn on oath, make this declaration based on my personal knowledge and pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

1. Defendants' Motion for Summary Judgment Against Bi-Lo (Dkt. 229-1) raises for the first time issues that require and entitle Plaintiffs to conduct additional discovery prior to responding to Defendants' Motion. Those issue are at least the following:

    a. Whether or not Bi-Lo was a direct purchaser under the cost-plus exception to the direct purchaser rule.

    b. Whether C&S and Bi-Lo intended, when they entered into the Assignment, that C&S convey its claims to Bi-Lo arising out of Bi-Lo's purchases of mushrooms from Defendants through C&S.

2. The issue of whether or not Bi-Lo was a direct purchaser under the cost-plus exception to the direct purchaser rule requires at least the following discovery:

1

a. Any contracts between Oakshire and Bi-Lo;

b. Any contracts between Monterey and Bi-Lo;

c. Any contracts between Oakshire and C&S;

d. Any contracts between Monterey and C&S;

e. Any communications between Oakshire and Bi-Lo relating to whether mushrooms purchased by Bi-Lo from Oakshire through C&S were priced to Bi-Lo based on the price from Oakshire to C&S plus a markup from C&S to Bi-Lo, whether the price from Oakshire was a mere pass through to Bi-Lo and whether Bi-Lo was the direct purchaser of mushrooms from Oakshire;

f.  Any communications between Oakshire and C&S relating to whether mushrooms purchased by Bi-Lo from Oakshire through C&S were priced to Bi-Lo based on the price from Oakshire to C&S plus a markup from C&S to Bi-Lo, whether the price from Oakshire was a mere pass through to Bi-Lo, and whether Bi-Lo was the direct purchaser of mushrooms from Oakshire; and/or

g. Any communications between C&S and Bi-Lo relating to whether mushrooms purchased by Bi-Lo from Oakshire through C&S were priced to Bi-Lo based on the price from Oakshire to C&S plus a markup from C&S to Bi-Lo, whether the price from Oakshire was a mere pass through to Bi-Lo, and whether Bi-Lo was the direct purchaser of mushrooms from Oakshire.

h. Any communications between Monterey and Bi-Lo relating to whether mushrooms purchased by Bi-Lo from Monterey through C&S were priced to

      Bi-Lo based on the price from Monterey to C&S plus a markup from C&S to Bi-Lo, whether the price from Monterey was a mere pass through to Bi-Lo and whether Bi-Lo was the direct purchaser of mushrooms from Monterey;

    i. Any communications between Monterey and C&S relating to whether mushrooms purchased by Bi-Lo from Monterey through C&S were priced to Bi-Lo based on the price from Monterey to C&S plus a markup from C&S to Bi-Lo, whether the price from Monterey was a mere pass through to Bi-Lo, and whether Bi-Lo was the direct purchaser of mushrooms from Monterey; and/or

    j. Any communications between C&S and Bi-Lo relating to whether mushrooms purchased by Bi-Lo from Monterey through C&S were priced to Bi-Lo based on the price from Monterey to C&S plus a markup from C&S to Bi-Lo, whether the price from Monterey was a mere pass through to Bi-Lo, and whether Bi-Lo was the direct purchaser of mushrooms from Monterey.

3. The above discovery would be used to opposed Defendants' Motion as follows:

    a. Contracts between Oakshire and C&S, Oakshire and Bi-Lo and Bi-Lo and C&S would be used to determine whether the pricing to Bi-Lo was based on Oakshire's price to C&S plus a mark up from C&S to Bi-Lo and whether the price from Oakshire to Bi-Lo was a mere pass through to Bi-Lo. The determination of the facts above are central to a determination as to whether the arrangement between C&S and Bi-Lo satisfied the cost-plus exception to the direct purchaser rule.

    b. Contracts between Monterey and C&S, Monterey and Bi-Lo and Bi-Lo and

3

C&S would be used to determine whether the pricing to Bi-Lo was based on Monterey's price to C&S plus a mark up from C&S to Bi-Lo and whether the price from Monterey to Bi-Lo was a mere pass through to Bi-Lo. The determination of the facts above are central to a determination as to whether the arrangement between C&S and Bi-Lo satisfied the cost-plus exception to the direct purchaser rule.

c. Communications between and among Oakshire, C&S and Bi-Lo would be used to determine whether the pricing to Bi-Lo was based on Oakshire's price to C&S plus a mark up from C&S to Bi-Lo and whether the price from Oakshire was a mere pass through to Bi-Lo. The determination of the facts above are central to a determination as to whether the arrangement between C&S and Bi-Lo satisfied the cost-plus exception to the direct purchaser rule.

d. Communications between and among Monterey, C&S and Bi-Lo would be used to determine whether the pricing to Bi-Lo was based on Monterey's price to C&S plus a mark up from C&S to Bi-Lo and whether the price from Monterey was a mere pass through to Bi-Lo. The determination of the facts above are central to a determination as to whether the arrangement between C&S and Bi-Lo satisfied the cost-plus exception to the direct purchaser rule.

e. Communications between and among Oakshire and C&S or Bi-Lo would be used to determine whether Oakshire at any time admitted, stated or acknowledged that (i) its price was a mere pass through to Bi-Lo, (ii) the arrangement between Bi-Lo and C&S was a cost-plus arrangement, and (iii) Bi-Lo was the direct purchaser of mushrooms from Oakshire. The

4

       determination of the facts above are central to a determination as to whether the arrangement between C&S and Bi-Lo satisfied the cost-plus exception to the direct purchaser rule.

    f.   Communications between and among Monterey and C&S or Bi-Lo would be used to determine whether Monterey at any time admitted, stated or acknowledged that (i) its price was a mere pass through to Bi-Lo, (ii) the arrangement between Bi-Lo and C&S was a cost-plus arrangement, and (iii) Bi-Lo was the direct purchaser of mushrooms from Monterey. The determination of the facts above are central to a determination as to whether the arrangement between C&S and Bi-Lo satisfied the cost-plus exception to the direct purchaser rule.

4.    Defendants have produced none of the above documents to date. All of the above discovery would include narrowly-tailored requests for documents, emails and depositions to and from Monterey, Oakshire and C&S.

5.    Expert discovery would also be necessary. That discovery would analyze the prices charged from Oakshire and Monterey to C&S, the prices charged from C&S to Bi-Lo, compare those prices, and determine whether the difference between them was determined by a markup that was set by a fixed formula or mechanism, including a formula or mechanism that applies to either the entire markup or components of the mark up. Such an analysis by an expert would be the only way in which to efficiently and reliably present such evidence to a jury. Thus, this evidence would be critical to Bi-Lo proving the cost-plus exception.

6.    The issue of whether C&S and Bi-Lo intended, when they entered into the Assignment, that C&S convey its claims to Bi-Lo arising out of Bi-Lo's purchases of

5

mushrooms from Defendants through C&S requires at least the following discovery:

    a. Communications between C&S and Bi-Lo relating to the Assignment and what their intention was in entering into the Assignment. Specifically, whether their intention was for C&S to convey its claims to Bi-Lo arising out of Bi-Lo's purchases of mushrooms from Defendants through C&S. This discovery would involve narrowly tailored requests for documents, emails and depositions to C&S.

    b. This discovery is necessary because Defendants interpret the Assignment as not assigning C&S' antitrust claim arising out of Bi-Lo's purchases of mushrooms through C&S assignment. However, the definition of "Antitrust Claims" is defined to include C&S' right, title and interest in claims arising out of its purchases of mushrooms and the antitrust laws:

> "Antitrust Claims" means ***C&S's rights, title, and interest in (and to) all claims and causes of action that C&S may have under the antitrust or similar laws*** of the United States or any State thereof, including consumer protection, deceptive trade practice, unfair competition law claims and causes of action, ***arising out of or relating to C&S's purchase of Disputed Products from any of the Defendants*** that C&S sold to SEG during the Relevant Time Periods referenced in Schedule B. The Antitrust Claims are set forth in Schedule B. For the avoidance of doubt, the Antitrust Claims do not include, and this Agreement will not apply to, any claims or causes of action related to C&S's sale of Disputed Products to any person or entity other than SEG.

Assuming arguendo Defendants' interpretation, it creates an ambiguity when read alongside the plain language above conveying C&S' antitrust claims to Bi-Lo. Therefore, given that ambiguity, discovery into the intentions of C&S and Bi-Lo is necessary in order to resolve the ambiguity.

    7.    Discovery into C&S' and Bi-Lo's intentions would potentially clarify and resolve

6

this ambiguity. That discovery would include requests for documents, emails and depositions to and from C&S.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 15, 2020

                                              Respectfully submitted,

                                              Patrick J. Ahern