**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WINN-DIXIE STORES, INC., *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EASTERN MUSHROOM MARKETING | : | |
| COOPERATIVE, *et al.*, | : | No. 15-6480 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                           **July 15, 2020**

Winn-Dixie and Bi-Lo have sued various actors in the mushroom industry for violations of antitrust law. Plaintiffs now move for leave to amend their complaint to add a new theory of antitrust liability – that Defendants engaged in a non-compete agreement – and to expand the alleged antitrust period by two years. For the following reasons, the Court will deny Plaintiffs' motion.

**I.   BACKGROUND**

This case is the last in a long-running series of actions accusing the Eastern Mushroom Marketing Cooperative, its members, and various affiliates of unlawfully colluding to inflate the price of fresh agaricus mushrooms. The saga began in February 2006, when WM Rosenstein & Sons Co. filed a class action complaint, alleging that various players in the mushroom industry colluded to inflate the price of mushrooms by agreeing on minimum prices and by decommissioning various mushroom farms in order to reduce mushroom supply. That complaint was later consolidated with six similar class actions, and a consolidated class action complaint was filed on November 13, 2007. The unified class action was also consolidated with individual actions brought by Publix Super Markets and Giant Eagle, Inc. In the years that followed, the Court

1

adjudicated multiple motions to dismiss, motions for summary judgment on the issue of Capper-Volstead Immunity, motions to adjudicate the case under the rule of reason, and *Daubert* motions. The parties also concluded a lengthy discovery period.

Then, on December 7, 2015, Winn-Dixie and Bi-Lo initiated this action. Their complaint was similar in all meaningful respects to the ones that preceded it, and their action was consolidated with the others on April 12, 2017.

After the Court certified a class of direct purchasers on November 22, 2016, Publix, Giant Eagle, Winn-Dixie and Bi-Lo all opted out of the class litigation. On February 22, 2019, the Court ruled that the three opt-out actions would be tried separately from the class action, and on July 11, 2019 the Court scheduled a trial on Publix and Giant Eagle's claims to begin on March 2, 2020. Plaintiffs moved to try their case alongside Publix and Giant Eagle, arguing that "each [plaintiff] has alleged antitrust claims involving the same core group or sub-set of defendants arising from the same core and common group of facts and legal issues[.]" (Winn-Dixie Pls.' Mem. in Supp. of Their Mot. to Consolidate Their Opt-Out Claims for Trial With The Related Publix and Giant Eagle Opt-Out Claims, at 4, *In Re: Mushroom Direct Purchaser Antitrust Litigation*, 6-620 (E.D. Pa. July. 18, 2019)).

The Court issued a Scheduling Order in this case following a Rule 16 conference on September 4, 2019. The Order set the end of fact discovery for January 20, 2020, the disclosure of expert reports for March 2, 2020, and the filing of motions for summary judgment for June 8, 2020 – deadlines that were later extended to June 18, July 2, and November 6, respectively.

On June 12, 2020, six days before the end of fact discovery, Plaintiffs filed this motion requesting leave to amend their complaint. Plaintiffs seek to add allegations claiming that Defendants implemented a non-compete policy, and to extend the alleged antitrust period by two

2

years, such that it ended in 2010 rather than 2008. According to Plaintiffs, these new claims are "[b]ased on newly discovered evidence" obtained on December 11, 2019.

## II.    STANDARD OF REVIEW

A party who has amended their complaint at least once before may amend again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 instructs that "[t]he court should freely give leave when justice so requires." *Id*. However, "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." 6 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1487 (4th ed. 2020). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir.2000). "The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 224 (E.D. Pa. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The burden is on the party opposing leave.

## III.   DISCUSSION

Certain Defendants and M.D Bascianai & Sons argue that the Court should deny leave to amend because Plaintiffs' proposed amendments are futile, made in bad faith, prejudicial, and come after an impermissibly long delay. Though the first three points can be dispensed with quickly, the Court ultimately agrees with Defendants fourth point and finds that leave must be denied due to Plaintiffs' delay in moving to amend.

First, Defendants have not shown that the amendments are futile. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v.*

3

*Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Here, Defendants do not argue that the allegations in the proposed amended complaint fail to state a violation of antitrust law. Instead, Defendants argue that Plaintiffs lack evidence sufficient to prove Defendants participated in a non-compete agreement. (*See* Defs.' Mem in Opp'n to Pl.s' Mot to File a Second Am. Com. [Certain Defs.' Br.], at 6-7) (arguing that the proposed amendments would be futile because there is no evidence Winn-Dixie's mushroom suppliers participated in any non-compete agreement or changed their prices as a result of one); (Def M.D. Basciani & Sons, Inc.'s Br. in Opp'n to Pls.' Mot. For Leave to File Am. Comp. Alleging Additional Conspiratorial Conduct of the Defs. and to Extend the Conspiracy and Damages Period Through At Least 2010 Based on New Evidence Learned Through Discovery, [Basciani's Br.] at 8-10) (arguing that amendment would be futile because M.D. Basciani was not a member of EMMC when the alleged non-compete period was in effect.) Such arguments cannot show futility because the Court must accept Plaintiffs' well-pleaded factual allegations as true when evaluating whether the amended complaint states a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, Defendants have not shown that the proposed amendments would be futile.

Second, Defendants present no facts from which the Court could conclude that Plaintiffs' motion was made in bad faith. Instead, Defendants argue that, because Plaintiffs allegedly acted in bad faith in the past, they must be acting in bad faith here. Defendants, however, have not demonstrated past acts of bad faith or evidence of bad faith here. Thus, the Court will not deny leave on the basis of bad faith.

Third, while both Certain Defendants and Basciani dedicate a section in their briefs to "prejudice", the prejudice they describe all stems from the timing of Plaintiffs' decision to amend. (Certain Defs.' Br., at 8-9) (arguing that Plaintiffs' amendments would prejudice Defendants

4

because they have litigated antitrust claims for fourteen years and additional claims would further delay resolution of this case); (Basciani's Br., at 7) (arguing that Plaintiffs' amendment would prejudice Defendants because discovery has closed and a motion for summary judgment has already been filed). As a result, Defendants have not presented "prejudice" as a reason to deny leave independent of the issue of "delay". Thus, the Court need not conduct an independent analysis of "prejudice" and will consider Defendants' arguments when evaluating the effect of Plaintiffs' alleged delay.

To that end, the Court agrees with Defendants that leave should be denied because Plaintiffs delayed amending their complaint until the end of fact discovery, and the delay was both prejudicial and undue. "A district court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Accordingly, a court may deny a party's motion for leave if two conditions are met. First, it must be true that the movant could have amended the pleading some (non-trivial) amount of time earlier than it did. Second, "granting leave would [either] unduly postpone the pending litigation . . . [or] circumstances fail to excuse the moving party's lateness in requesting leave to amend." *Langbord v. U.S. Dep't of the Treasury*, 749 F. Supp. 2d 268, 275 (E.D. Pa. 2010). Both conditions are met here.

First, Plaintiffs clearly delayed moving to amend their pleading. In their motion, Plaintiffs seek to amend because they identified "3 known documents of the Defendants that reference Defendants' non-compete agreements." (Pls.' Mot. and Mem. For Leave to File Am. Comp. Alleging Additional Conspiratorial Conduct of the Defs. and to Extend the Conspiracy and Damages Period Through At Least 2010 Based On New Evidence Learned Through Discovery [Pls.' Mem.], at 4). Yet, Plaintiffs had possession of two of these documents since at least

5

December 2019, (*id.* at 5), and referenced them at least as far back as April. (Pls.' Mot. to Enforce Prior Court Order and to Extend the Remaining Case Schedule By 60 Days, Ex. 4, at 1) (stating in an email sent on April 24, 2020 that "there are documents produced by the Defendants that reference a customer allocation conspiracy"). Therefore, Plaintiffs' decision to wait until June 12 to amend constitutes delay.

Second, Plaintiffs' delay was undue, and granting leave now would postpone the pending litigation in a manner prejudicial to Defendants. Six days before the close of fact discovery, Plaintiffs sought to amend their complaint to add both an entirely new theory of antitrust liability and to expand the antitrust period by two years. As a result, the timing of Plaintiffs' filing ensured that any amendment would require a new round of fact discovery, as well as new deadlines for dispositive motions that had already been rescheduled multiple times. In this respect, Plaintiffs' motion is almost identical to a motion for leave denied in *Berger v. Edgewater Steel Co*. There, the Third Circuit upheld a denial of leave to amend when "[t]he motion not only came four and one-half months after the information on which it was based became available, but also after the close of an extended discovery period . . .[and] would entail extensive factual investigation." 911 F.2d 911, 924 (3d Cir. 1990); see 6 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1488 (4th ed. 2020) ("[C]ourts have not allowed amendments to be made that seek to add new claims . . . when allowing the amendment is deemed to be unduly burdensome, given the stage to which the litigation has advanced.") Here, the timing of Plaintiffs' request to amend would prejudice Defendants through additional discovery and delay that would not have occurred had Plaintiffs moved earlier.

Plaintiffs have no reasonable excuse for waiting until the close of discovery here. They have been in possession of the documents they cite in their motion since December 2019 and have

6

offered no excuse for why they waited until June to seek leave to amend. Plaintiffs were on notice of an alleged non-compete agreement before discovery even started, as this is the fourth iteration of an antitrust lawsuit that has been litigated since 2006, and the alleged non-compete agreement was discussed in each of the three preceding cases. Indeed, the experts for both class plaintiffs and for Publix and Giant Eagle all discussed the alleged non-compete agreement, as did Judge O'Neil in his evaluation of the *Daubert* motions in those cases. *In re Mushroom Direct Purchaser Antitrust Litig.*, Civ. A. No. 6-620, 2015 WL 5775600, at *7 (E.D. Pa. Aug. 5, 2015) ("There is also a sufficient factual basis, at least for Dr. Leffler to make an assumption upon which to ground his regression model at the *Daubert* stage, that a form of non-compete agreement between various EMMC members may have existed after the dissolution of the EMMC's official minimum pricing policies and that this agreement may have impacted prices."); *In re Mushroom Direct Purchaser Antitrust Litig.*, Civ. A. No. 06-620, 2015 WL 5767415, at *10 (E.D. Pa. July 29, 2015) ("Prof. Elhauge's decision to use a second agnostic period was based on two considerations: (1) potential lingering effects of the minimum pricing policy and (2) evidence of another possible conspiracy to affect prices through a non-compete agreement after the expiration of the minimum pricing policy.")

      The references to non-compete agreements in the Publix and Giant Eagle litigation is significant, as Plaintiffs had previously represented to this Court that it was substantially familiar with Publix and Giant Eagle's claims. In July 2019, Plaintiffs moved this Court to consolidate its claims for trial with Publix and Giant Eagle and did so primarily on the theory that there was substantial similarity between the legal and factual issues underlying its own claims and those of Publix and Giant Eagle. (Winn-Dixie Pls.' Mem. in Supp. of Their Mot. to Consolidate Their Opt-Out Claims For Trial With the Related Publix and Giant Eagle Opt-Out Claims Opt-Out, at 4);

(Winn-Dixie Pls.' Reply Mem. in Supp. of Their Mot. to Consolidate Their Opt-Out Claims for Trial with the Related Publix and Giant Eagle Opt-Out Claims Opt-Out, at 1-2.) Plaintiffs could not have made such an argument in good faith without researching Publix and Giant Eagle's actual theories of antirust liability, and thus Plaintiffs cannot now argue that they got their first whiff of a possible non-compete agreement this spring. Thus, even if Plaintiffs wanted to wait for document production to add new claims, they were on notice that documents detailing a non-compete agreement existed and should have been prepared to amend promptly after receiving those documents in December. Instead, Plaintiffs delayed moving to amended until the close of discovery in June. Such a delay is both prejudicial and undue, and for that reason Plaintiffs' motion for leave to amend their complaint is denied.

## IV.  CONCLUSION

For the foregoing reasons, the Plaintiffs may not amend their complaint at this stage. An Order consistent with this Memorandum will be docketed separately.