**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WINN-DIXIE STORES, INC., et al.** : | |
| : | **CIVIL ACTION** |
| : | |
| **v.** : | |
| : | |
| **EASTERN MUSHROOM MARKETING** : | **No. 15-6480** |
| **COOPERATIVE, et al.** : | |
| : | |
| : | |

**ORDER**

      **AND NOW**, this          of August, 2020, it is hereby **ORDERED** that Defendants'

Motion for Partial Summary Judgment on Plaintiffs, Winn Dixie Stores, Inc.'s liability and

damage claims based on its purchases of mushrooms from Oakshire Mushroom Sales, Inc. is

hereby **GRANTED**.

      It is further **ORDERED** that Judgment be hereby entered in favor of Defendants and

against Plaintiffs Winn Dixie Stores, Inc  with respect to Plaintiff's  liability and damage claims

against Defendants that are based on its purchases of mushrooms from Oakshire Mushroom

Sales LLC

                         **BY THE COURT**

                         _____

                         **Burl M. Schiller
United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WINN-DIXIE STORES, INC., et al.** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **EASTERN MUSHROOM MARKETING** | : | **No. 15-6480** |
| **COOPERATIVE, et al.** | : | |
| | : | |
| | : | |

**DEFENDATS' MOTION FOR PARTIAL SUMMARYJUDGMENT**
**ON LIABILITY AND DAMAGE CLAIMS BY PLAINTIFF WINN DIXIE STORES, INC,**
**RELATING TO WINN DIXIE'S MUSHROOM PURCHASES FROM OAKSHIRE**
**MUSHROOM SALES LLC**

     **COMES NOW**,  Defendants in the above-captioned civil action  and respectfully moves

the Court to enter an Order entering judgement in favor of Defendants and against Plaintiff,

Winn Dixie  Stores, Inc. on its liability and damage claims related to its mushroom purchases

between 2004 and 2010 from Oakshire Mushroom Sales, LLC.   The grounds for this Motion are

set forth in the Memorandum of Law attached to the Motion and attached documents.

                                      Respectfully Submitted

,
*/s/ William A. DeStefano*
William A. DeStefano
Terri A.. Pawelski
Matthew C. Brunelli
**STEVENS & LEE**
1818 Market Street – 20th Floor
Philadelphia, PA 19103
215-571-1941

wad@stevenslee.com

*Attorneys, for Certain Defendants and Giorgi Mushroom Company and Georgio Foods, Inc*

*/s/ James. J. Rodgers*
James J. Rodgers, I.D. No. 21635
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: 215-575-7000
jrodgers@dilworthlaw.com

*Attorneys for Defendant Fran Organic Mushrooms, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WINN-DIXIE STORES, INC., et al.** | : |
| | :    **CIVIL ACTION** |
| | : |
| **v.** | : |
| | : |
| **EASTERN MUSHROOM MARKETING** | :    **No. 15-6480** |
| **COOPERATIVE, et al.** | : |
| | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF WINN-DIXIE**

Undersigned Defendants submit this Memorandum of Law in Support of their Motion for

Partial Summary Judgment against Plaintiff Winn-Dixie Stores, Inc. ("Winn-Dixie").

Specifically, Defendants seek summary judgment with respect to all claims by Winn-Dixie that

relate to its purchase of Dole-branded mushrooms from non-defendant Oakshire Mushroom

Sales, LLC. ("OMS") during the time period from 2004 to 2008.[1]

## I.    INTRODUCTION AND RELEVANT FACTS

The sales at issue in this motion were made to Winn-Dixie by OMS.  Neither OMS nor

its owner were named as defendants or co-conspirators in this case. *See* Dkt. No. 1 (original

complaint filed in 2015) and Dkt. No. 96 (first amended complaint filed in January 2019 to

---

[1] On June 12, 2020, Plaintiffs filed a motion for leave to file a second amended complaint to allege new theories of antitrust liability that were not alleged in Plaintiffs' original or first amended complaints, and to extend the injury and damage period through 2010.  On July 15, 2020, the Court denied Plaintiffs' motion. *See* Dkt, No. 281.  On July 30th, Plaintiffs filed a Motion for Clarification or Reconsideration of the Court's July 15th Order.  Defendants will file a Memorandum in Opposition to Plaintiffs' Motion for Clarification/Reconsideration in due course.  However, the instant Motion, if granted, would effectively moot Plaintiffs' Motion for clarification or reconsideration because it preclude Plaintiffs liability and damage claims based on mushrooms purchased between 2004 and 2010 from OMS.

comply with the more specific pleading requirements of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) after Winn Dixie opted out of the class action). While neither OMS nor its owner were defendants in the class or other opt-out actions, Winn Dixie knew that it purchased Dole branded agaricus mushrooms from OMS between 2004 and 2010 rather than a commonly owned defendant Oakshire Mushroom Farm, Inc. ("OMF"). This fact is clearly apparent from Winn Dixie's own procurement agreements between OMS/Dole and Winn Dixie Procurement, Inc. attached to the Schroeder Certification as Exhibits "A" and "B".[2] These documents were clearly within Winn Dixie's possession or control substantially prior to the time that it filed its original complaint and amended complaint.

As certified by its owner, Gary Schroeder and further corroborated by EMMC membership records previously provided to the class and opt out plaintiffs, OMS was never a member of EMMC. Nor was it simply a downstream packaging and distribution company for OMF which primarily grew specialty mushrooms (shitake, mytake and oyster mushrooms), along with a relatively small amount of brown agaricus mushrooms (criminis and portabellas). As alleged in Plaintiffs' Complaint, OMF operated its own packaging and distribution facilities.

To the contrary, OMS was formed by Mr. Schroeder well after the EMMC was formed and well after OMF had joined the EMMC in early 2001. Mr. Schroeder formed OMS to obtain a license from Dole (which it obtained in 2003) in order to market and sell mushrooms to large supermarket chains (such as Winn Dixie) or big box food retailers (such as Costco and Walmart) who were already carrying other nationally branded produce category items from Dole. As relevant here, white mushroom sales accounted for about 75% of the agaricus mushroom purchased by these retailers. Since OMF did not grow white agaricus mushrooms OMS

---

[2] The Schroeder Certificaiton is attached hereto as Exhibit "A". It is also being submitted as Defendants' Statement of Material Uncontested Facts.

purchased white the white agarisus mushrooms sold to Winn Dixie from Pennsylvania growers, Kaolin/Southmill and Country Fresh at negotiated prices which included the packaging and delivery costs to Winn Dixie's distribution centers located in Florida and other states in the Deep South, more than 900 miles away from the growing facilities in Pennsylvania.[3]   In addition to the substantial delivery costs to the Winn Dixie distribution centers, OMS was obligated under the terms of its licensing agreement with Dole to pay Dole a net licensing fee of 2.5% on all mushrooms sold under the Dole brand name.

As is clear from the foregoing uncontested facts, OMS had an entirely different business model from the EMMC member companies including OMF.  Rather than growing its own mushrooms and packaging and delivering them directly to fresh market customers as did the EMMC member companies, OMS joined forces with Dole, a nationally branded seller of many other food items within the produce category at a cost not incurred by the EMMC members. It then targeted a narrower group of customers (large supermarket and general merchandizers) who already carried Dole produce and took advantage of the goodwill, national advertising campaigns and other marketing and merchandizing synergies to convince these customers to add mushrooms to the list of other fruits, berries and salad items carried by these customers.  Unlike the EMMC member companies, OMS had to buy the white agaricus mushrooms comprising about 75% of its total sales of agaricus mushrooms to these customers from other Pennsylvania based growers at prices which included the substantial cost of delivery to distant customers including Winn Dixie.  It also had to buy the brown agaricus and specialty mushrooms from its commonly owned but separately organized grower, OMF.

---

[3]  Likewise, OMS purchased brown agaricus and specialty mushrooms from OMF and re-sold the brown agaricus and specialty mushrooms to Winn Dixie at prices reflecting the substantial delivery costs that it paid to have the mushrooms delivered by OMF, Southmill, Country Fresh or common carriers to the 900 mile distant Winn Dixie distribution centers.  *See* Schroeder Certification- Exhibit C.

Thus, we submit that there was no reason for OMS to either join the EMMC or for its owner, Mr. Schroeder to price the mushrooms re-sold to customers such as Winn Dixie in accord with any of the minimum pricing policies, programs or rules adopted by the EMMC. And as certified by Mr. Schroeder, he never agreed that OMS would act in the sale of Dole mushrooms in conformance with the EMMC's minimum pricing policies or regulations.

In late 2003 OMS and Dole representatives convinced Winn Dixie to purchase white and brown agaricus mushroom as well as specialty mushrooms from OMS. Sales Records produced by both OMS and Winn Dixie show that Winn-Dixie began purchasing Dole branded mushrooms from OMS in 2004 while phasing out its mushroom purchases from its historic supplier, EMMC member Monterey Mushrooms, Inc. Monterey is integrated grower, packager and shipper of white and brown agaricus mushrooms with growing facilities in California as well as several Eastern and Midwestern states including Winn Dixie's headquarters state, Florida, Sales records previously provided to Winn Dixie and used by its expert witness, Dr. Leffler also show that about 75% of the agaricus mushrooms purchased by Winn Dixie from OMS were white agaricus purchased by OMS from Kaolin/Southmill or Country Fresh. *See* Chart attached to Schroeder Certification as Exhibit "C".

Sales records further show that by 2005 and through mid-2010, Winn Dixie bought mushrooms exclusively from OMS. In mid-2005 OMS sent a letter to Winn Dixie's chief procurement officer, memorializing the relationship and extending it through mid-2007. (Exhibit "A" to Schroeder Certification). The relationship between OMS and Winn Dixie was renewed in mid-2007 for a three-year term extending into 2010 (Exhibit "B" to Schroeder Certification). Significantly, copies of these documents were produced to Defense Counsel by Counsel for Winn Dixie and were obviously within Winn Dixie's possession or control substantially prior to

the filing of its original complaint in 2015.  Nevertheless, Winn Dixie failed to name OMS or its owner as Defendants or Co-conspirators in its original or amended complaints.

As is apparent from the foregoing uncontested facts, Winn Dixie Stores, Inc. was an indirect purchaser of the agaricus mushrooms sold by OMS between 2004 and 2010.  Thus, Winn Dixie Stores, Inc. has no standing to maintain a claim for injury or damages under Section 4 of the Clayton Act, 15 U.S.C §15, from the defendants in this action for those purchases.

In order to possibly salvage its damage claim for alleged overcharges on at least, the relatively small amount of brown agaricus mushroom purchases from OMS during this time period, Winn Dixie will apparently invoke the "ownership and control" exception to the direct purchaser rule, claiming that OMS was owned and/or controlled by its commonly owned EMMC member company, OMF.  Indeed, Winn Dixie's counsel has already gratuitously made a broader argument regarding all of its mushroom purchases from OMS during all of the time period at issue.  *See* Dkt. No.  256 at pp. 8-14, cited by Plaintiffs at Dkt, No. 260 at p. 8.  But as demonstrated below, this  argument cannot save the day for Winn Dixie for three reasons.

First, there is no genuine issue of material fact that OMS was not owned or controlled by either Kaolin/Southmill or Country Fresh from which it purchased at least 75% of the agaricus mushrooms that it re-sold to Winn Dixie.

Second, Winn Dixie has never sought to amend its already amended Complaint to name OMS as a defendant or a co-conspirator, much less than to allege any facts from which it can be inferred that OMS was owned or controlled by defendant company OMF.  Moreover, the existence of OMS as a company affiliated with OMF was extensively discussed in deposition testimony provided to Winn Dixie's counsel no later than the Fall of 2019 and, as mentioned above, was apparent from purchase agreements in Winn Dixie's possession or control since long

before it opted out of the class and filed its original or amended complaints.  Moreover, the fact

that Winn Dixie was an indirect purchaser of mushrooms sold to it by OMS was discussed with

Winn Dixie's counsel in mid-April of this year, well before the expiration of the fact discovery

pursuant to the Court's Pre-Trial Order.  Under these circumstances, we respectfully submit that

Winn Dixie's "ownership and control" argument comes too late.  Further, this argument is

precluded by the Third Circuit's holding in *Howard Hess Dental Labs., Inc. v. Dentsply Int'l,*

*Inc.*, 424 F.3d 363, 372  (3d Cir. 2005) (requiring the plaintiff to allege one or more of the modes

of control between the manufacturer and distributor in order to avail itself of the ownership and

control exception to the direct purchaser rule.[4]

Finally, the testimony and documents that Winn Dixie will undoubtedly point to in

opposition to this motion, fall short of establishing the degree of ownership and control that is

required to invoke the "ownership or control" exception, under the Third Circuit's precedential

cases.  Judge O'Neill followed those cases in dismissing the claims by one of the Class

Representatives in the mushroom class action, Diversified Foods & Seasonings, Inc. because it

purchased agaricus exclusively from a distribution entity partially owned, but not shown to be

controlled, by the owners of Defendants Kaolin/Southmill.

## II.    ARGUMENT

### A.    THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when the admissible evidence fails to demonstrate a

genuine dispute of material fact and when the moving party is entitled to judgment as a matter of

---

[4]  A suit against OMS would be precluded at this time because OMS and its affiliated company OMF filed Petitions in the Bankruptcy Court in late December of 2018, well after Winn Dixie filed its original complaint against OMF in 2015 and only a few weeks before it filed it First Amended Complaint. Moreover as mentioned above Winn Dixie knew that it bought mushrooms from OMS well before 2015 when it filed its complaint against OMF and thus, should have alleged or amended their Complaint to allege, at minimum, that OMF owned and controlled  OMF, and could have done so at any time before OMF filed its Bankruptcy Petition in late 2018.

law." *Berry v. City of Philadelphia*, 188 F. Supp. 3d 464, 470 (E.D. Pa. 2016) (Schiller, J.) (citing Fed. R. Civ. P. 56(a); and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). "When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides *evidence sufficient to allow a reasonable finder of fact to find in its favor at trial.*" *Id.* (emphasis added) (citing *Anderson*, 477 U.S. at 248). Mere pleadings are not enough.

## B. DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON WINN-DIXIE'S PURCHASES FROM OAKSHIRE MUSHROOM SALES, LLC

### 1. A Damage Recovery Under Section 4 of the Clayton Act is Available Only to Direct Purchasers from a Defendant.

The agaricus mushrooms Winn Dixie purchased from OMS between 2004 and 2008 were direct purchase because of the undisputed that OMS purchased these mushrooms from other entities. This makes Winn-Dixie an indirect purchaser of all mushrooms sold it by OMS.

Section 4 of the Clayton Act gives persons injured as a result of violations of federal antitrust laws the right to pursue a private cause of action for damages. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting 15 U.S.C. § 15). But under the "direct purchaser rule," the Supreme Court limited the ability to bring an antitrust claim under Section 4 of the Clayton Act to "direct purchasers" of the product at issue. *Id.* (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977)); *see also In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2017 WL 696983, at *2 (E.D. Pa. Feb. 22, 2017) ("Pursuant to *Illinois Brick Co. v. Illinois*, there is a 'general rule that only direct purchasers from antitrust violators may recover damages in antitrust suits.'") (quoting *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005) ("*Hess I*")).

Indirect purchasers may only sue under federal antitrust laws if they can establish one of three possible exceptions to the direct purchaser rule: "(1) a 'cost-plus' exception, . . . , (2) a 'co-conspirator' exception and (3) an 'owned or controlled' exception." *In re Mushroom Direct Purchaser Antitrust Litig.*, 2017 WL 696983, at *2 (citing, among others, *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 968 n.22 (3d Cir. 1983), and *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 258–59 (3d Cir. 2010) ("*Hess II*"). None of these exceptions is available for Winn-Dixie's purchases from OMS.[5]

### 2. Winn-Dixie's Claim for Purchases From Oakshire Mushroom Sales, LLC Is Barred by the Direct Purchaser Rule.

Long before it filed its original and amended Complaints in this action, Winn Dixie possessed documents showing that there two separate Oakshire entities—OMF and OMS—and that it only purchased mushrooms from OMS. Yet, in its zeal to opt out of the Class Actin at the 11th hour but at time piggy back on work already done by the class plaintiffs, Winn Dixie neglected to name OMS or its owner, Gary Schroeder, as Defendants or co-conspirators in its original or amended Complaints, much less than allege facts which would showed that OMF owned and controlled OMS. Moreover, since the Fall of 2019, Winn Dixie has had access to deposition testimony by Mr. Schroeder and another employee of OMF who discussed the relationship between OMF and OMS. Indeed, in April of this year, Defense counsel specifically advised Plaintiffs' counsel of the indirect nature of Winn Dixie's mushroom purchases from OMS, well before the expiration of the frequently extended fact discovery cut-off date. However, based on gratuitous arguments made to the Court in connection with submissions regarding discovery disputes, it became evident that the only basis on which Winn-Dixie could argue around the *Illinois Brick* bar would be to claim the benefit of the "ownership or control

---

[5] Winn-Dixie does not appear to be relying on either the "cost-plus" exception or the co-conspirator exception (which would have required it to join OMS as a defendant).

exception". This would apparently be based on an argument that OMS was "owned or controlled" by OMF *See Dkt. No.* 256 at pp. 8-14, cited by Plaintiffs at Dkt, No. 260 at p. 8.

As is uncontested in this case, 75% of the mushrooms purchased by Winn Dixie from OMS were purchased by OMS from either Kaolin/Southmill or Country Fresh (see chart prepared from sales data attached to Schroeder Certification as Exhibit "C"). But there is no allegation or evidence that either of Kaolin/Southmill or Country Fresh owned or controlled OMS. Moreover, to the extent that Winn Dixie attempts to take advantage of the "owned and controlled exception" with respect to the 25% of the agaricus mushrooms that were purchased by OMS from its affiliated company OMF, we submit that Winn Dixie has not and cannot now come forward with sufficient evidence that OMS was owned and controlled by OMF as required by the Third Circuit.

The Third Circuit's only application of the "control" exception to avoid the indirect purchaser bar of *Illinois Brick* was in *In re Sugar Antitrust Litigation (Stotter & Co.),* 579 F.2d 13 (3d Cir. 1978) (purchaser of product containing the price-fixed commodity previously sold by manufacturer's to its wholly owned subsidiary could maintain suit against the manufacturer). Here by contrast, it is undisputed that OMS was not  a subsidiary of OMF, nor was OMS merely a commonly owned downstream packer and distributor for OMF. Rather, it was a separately incorporated entity, organized to market and sell nationally branded Dole mushrooms to a subset of large retail customers who already marketed Dole branded produce and could take advantage of the synergies of adding mushroom to the Dole constellation of produce category offerings.

The Third Circuit next addressed the "control" exception in *Mid-West Paper Products Co. v. Continental Group, Inc.* 596 F.2d 573 (3d Cir. 1979), distinguishing the *Sugar* decision, and holding that the 'control" exception would apply only where the parent entity defendant sold

the product to its subsidiary for resale to the plaintiff and the direct-selling subsidiary is **shown to be dominated and controlled to such an extent that it should be deemed to be the an agent of the parent.** 595 F.2d at 589 [emphasis added].  As later described in *Hess I*, the relationship between the remote seller-defendant and the direct seller must be such that **"there effectively has been only one sale."**  424 F.3d at 372 [emphasis added].  Here, by contrast, it is uncontested that there was a sale of the mushrooms at issue from OMF to OMS at prices not shown to be affected by any EMMC rule or regulation and then, a second sale from OMS to Winn Dixie also at prices that were not affected by the EMMC.

As the Court stated in *Hess I,* [w]e have applied the control exception only when the initial seller owned the direct purchaser." *citing In re Sugar*, 579 F.2d at 18-19 & n. 8.  That scenario is plainly inapplicable where the alleged "parent" (in this case (OMF) did not own the alleged the "subsidiary" (OMS) nor did it control the selling entity's ability to independently price the product for resale to Winn Dixie.

Finally, in his November 22, 2016 Opinion, Judge O'Neill addressed the "owned or controlled" exception and dismissed the claim of named plaintiff Diversified Foods & Seasonings, Inc. ("Diversified").  *In re Mushroom Direct Purchaser Antitrust Litigation,* 319 F.R.D. 158 (E.D. Pa. 2016).  Judge O'Neill also denied reconsideration of this decision.  *In re Mushroom Direct Purchaser Antitrust Litigation,* Master file No. 06-0620, Dkt. No. 809.

Diversified purchased mushrooms grown by EMMC member/defendant Kaolin Mushroom Farms. These mushrooms which were sold to a  50% owned subsidiary, South Mill of New Orleans, and  were then resold by the Subsidiary to  Diversified. 319 F.R.D. at 181. Significantly, Judge O'Neill rejected the argument that the indirect nature of these purchases should be disregarded because Diversified was the first entity to purchase the product at a price

fixed by EMMC. *Id*. Rather, Judge O'Neill recognized that "what matters under Illinois Brick is the nature of the distributor's 'affiliations' with the growers." Id. at 182. Here, we submit that the nature of the relationship between OMF and OMS was merely that of a supplier and negotiated prices of mushrooms that were later sold to a retailer by OMS were at prices over which neither the supplier nor the EMMC had any effective control.

Moreover, we submit that Winn Dixie's earlier arguments boiling down to: 1) the two companies were "affiliated" under the Bankruptcy rule allowing the joint administration of Petitions; 2) that they shared at least one common employee; and 3) they apparently shared a common ordering system. Here by contrast and as pointed out in Mr, Schroeder's Certification, OMF and OMS kept separate books of account and OMS had its own National Sales Manager who focused exclusively on its sales of the Dole branded mushrooms. More importantly, it is uncontested that because of substantially higher costs associated with the sale and delivery of mushrooms to Winn Dixie,  OMS could not price mushrooms according to any of the EMMC minimum pricing policies or other alleged policies.

Quite apart from the foregoing it is significant that in *Hess I,* the Third Circuit  identified certain "modes of control that might qualify for the control exception" and rejected plaintiffs' argument that this exception applied because they did "not allege that [Defendant] exert[ed] any of these modes of control over" the dealers. *Howard Hess Dental Laboratories, Inc., et al. v. Dentsply International, Inc., et al*., 424 F.3d 363, 372 (3rd Cir. 2005).

## III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant partial summary judgment in their favor on the claims against them by Plaintiff Winn-Dixie to the extent they are predicated on purchases from Oakshire Mushroom Sales, LLC.

Dated: August 4, 2020                              Respectfully Submitted

,

*/s/ William A. DeStefano*
William A. DeStefano
Terri A.. Pawelski
Matthew C. Brunelli
**STEVENS & LEE**
1818 Market Street – 20th Floor
Philadelphia, PA 19103
215-571-1941
wad@stevenslee.com
*Attorneys,  for Certain Defendants*
*and Giorgi Mushroom Company and*
*Georgio Foods, Inc*


*/s/ James. J. Rodgers*
James J. Rodgers, I.D. No. 21635
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: 215-575-7000
jrodgers@dilworthlaw.com


*Attorneys for Defendant Franklin*
*Organic Mushrooms, Inc.*

# EXHIBIT

# A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

WINN DIXIE STORES, Inc, and BI LO
HOLDINGS, LLC.,

        Plaintiffs,

    vs.

EASTERN MUSHROOM MARKETING
  COOPERATIVE,  et al.,

        Defendants.

Case No. 15-cv-6480

## CERTIFICATION OF GARY SCHROEDER

I, Gary Schroeder, hereby certify as follows.  I understand that the following facts will be submitted to the Court in the above-captioned civil action in connection with a motion for partial summary judgment regarding mushrooms sold by Oakshire Mushroom Sales LLC. ("OMS") to Plaintiff, Winn Dixie Stores, Inc. between 2004 and 2010.

1.    I am the sole shareholder and President of Oakshire Mushroom Farm, Inc. ("OMF") and Oakshire Mushroom Sales LLC. ("OMS").  OMF was named as a defendant in the above-captioned case as well as in the Class Action and other individual actions filed in 2006 that were consolidated for pre-trial proceedings by the Court.  Neither I nor OMS have been named as defendants or co-conspirators in the above-captioned civil action.

2.    On December 28, 2018 OMF and OMS filed separate Petitions in the United States Bankruptcy Court of the Eastern District of Pennsylvania under Chapter 11 of the United States Bankruptcy Code.  These Petitions are being jointly administered by the Bankruptcy Court.

3.    OMF was incorporated in 1985 for the purpose of growing, packaging and selling specialty mushrooms known as shiitake, maitake and oyster mushrooms at facilities located in Kennett Square, Pennsylvania.  In about 1994 OMF began also growing, packaging and delivering brown Agaricus mushrooms known as crimini and portobello mushrooms.  In 2001, OMF joined an agricultural cooperative known as the Eastern Mushroom Marketing Cooperative ("EMMC") and I was elected as the Treasurer of the EMMC.

1

4.      OMS was not formed until 2002. It was formed for the purpose of obtaining a license from the Dole Company--which it did in 2003--to market and sell all types of mushrooms including white and brown Agaricus mushrooms, under the DOLE brand name, to large supermarkets chains and large multi-location food and general merchandize retailers many, if not all of which already carried DOLE branded produce category items and thus would be willing to add mushrooms to the nationally advertised DOLE branded fruits, vegetables and pre mixed salads.

5.      OMS did not offer or attempt to join the EMMC because it did not grow white Agaricus mushrooms that comprised about 75% of the mushrooms commonly purchased by OMS's targeted customers, including Winn Dixie. Nor did I ever agree on behalf of OMS with the EMMC or any of its members that OMS would follow any of the rules regulations or pricing policies adopted by the EMMC.

6.      In late 2003 OMF and Dole sales representatives convinced Winn Dixie's Procurement Officer to start purchasing Dole branded white and brown mushrooms from OMS beginning in 2004. In 2005 OMS and Winn Dixie Procurement, Inc. entered into a 2-year agreement to purchase several sku's of Dole branded white and brown Agaricus and specialty mushrooms from OMS. A copy of the letter memorializing this agreement is attached to this Certification as Exhibit "A". In 2007 OMS and Winn Dixie Procurement entered into the 3-year supply agreement for various sku's of white and brown Agaricus mushrooms. A copy of this 3-year procurement agreement is attached to the Certification as Exhibit "B".

7.      Approximately 75% of the Agaricus mushrooms purchased from OMS between 2004 and 2010 were white Agaricus mushrooms. A chart showing the breakdown of white and brown Agaricus mushroom sold by OMS to Winn Dixie between 2004 and 2020 is attached to this Certification as Exhibit "C". The prices for all of the mushrooms purchased by Winn Dixie were negotiated between Winn Dixie's Procurement Officers and OMS. These prices were not affected or influenced by any rule, regulation or program adopted by the EMMC.

8.      OMS purchased all of the white Agaricus mushrooms that it resold to Winn Dixie from South Mill Mushrooms and Country Fresh Mushrooms at negotiated prices which included the packaging and delivery costs. OMS purchased the brown Agaricus and specialty mushrooms that it re-sold to Winn Dixie from OMF at prices that included the packaging and delivery costs for the brown and specialty mushrooms grown by OMF in Kennett Square, Pennsylvania.

9.      OMS was also obligated to pay DOLE a net licensing fee of 2.5% of the delivered price all mushrooms that it re-sold under the DOLE label.

10.      OMS hired a National Sale Manager who was responsible for sales of all mushrooms sold by it. OMS also kept separate books and records from OMF regarding its purchases and sales of Agaricus and specialty mushrooms. However, the two companies shared some common employees and used a common ordering system.

2

11.    OMS was at a substantial disadvantage to EMMC members and a non-EMMC member mushroom grower who owned or controlled growing, packing and delivery facilities in Florida during all or part of the time that OMS sold mushrooms to Winn Dixie. These competitors included Monterey Mushrooms and Modern Mushrooms, who were historic suppliers to Winn Dixie and members of the EMMC until they resigned from the EMMC. Quincy Farms was also located in Florida but was never a member of the EMMC. These competitors to OMS had substantially lower delivery costs than OMS which shipped the Agaricus mushrooms sold to Winn Dixie by OMS to Winn Dixie's Distribution Centers located approximately 900 miles away from the growing facilities from which OMS purchased the Agaricus and Specialty mushrooms.

The foregoing statements made by me are true and correct to the best of my knowledge, information and belief. I am aware that if any statement made by me is intentionally false, I am subject to punishment under the perjury and false statement laws of the Commonwealth of Pennsylvania or the United States.

Gary M. Schroeder

3

# EXHIBIT A

 **MUSHROOMS**    **Oakshire Mushroom Sales, LLC.**
P.O. Box 388 Kennett Square, PA 19348

Date:      May 17, 2005
Name:      Mike Krage
Company: Winn Dixie Stores, Inc.
Address:   7595 Centurion Parkway
           Jacksonville, FL 32256-0518

The following constitutes a DOLE Mushroom Proposal from Oakshire Mushroom Sales, LLC ("Oakshire") to Winn Dixie Stores, Inc. Your signature below will serve as evidence of your agreement to and acceptance of the terms of (i) this Mushroom Proposal and (ii) "Oakshire Mushroom Sales, LLC Terms and Conditions Governing Sales," a copy of which is attached hereto as Schedule 1 (the "Terms and Conditions").  Once you have signed below to indicate your acceptance, the terms of this Mushroom Proposal and the Terms and Conditions (together, the "Agreement") shall be binding on you and Oakshire during the Term of this Agreement.

**Term of Agreement:**

This Agreement will cover purchases between June 6, 2005 and June 2, 2007 covering deliveries between June 6, 2005 and June 2, 2007.

**Volume Requirements:**

The required volumes will be that Oakshire's Dole Mushrooms are the exclusive fresh and dried mushrooms purchased and sold by Winn-Dixie.

**Pricing Structure:**

Delivered pricing for non-advertised weeks will be:

| Item | Price |
|------|-------|
| 12/8 oz Whole | $  9.60 |
| 12/8 oz Sliced | $ 10.75 |
| 10/12 oz Whole | $ 11.50 |
| 10/12 oz Sliced | $ 12.00 |
| 8/14 oz Large | $ 12.75 |
| 6/6 oz Port Capped | $  9.50 |
| 6/6 oz Port Sliced | $  9.50 |
| 6-pk Oyster | $  8.00 |
| 6-pk Shiitake | $ 10.25 |
| 6-pk Enoki | $  8.00 |
| 6/8 oz Whole Baby Bella | $  6.25 |
| 6/8 oz Sliced Baby Bella | $  6.50 |
| 6-pk Variety (all) | $  9.00 |
| 3 lb. Bulk White-Large | $  5.40 |
| 3 lb. Bulk Port Cap 3 1/2" | $  9.25 |
| 3 lb. Bulk Shiitake | $ 13.50 |
| 3 lb. Bulk Oyster | $  9.00 |
| Dried 12pk variety | $ 34.00 |

**Promotion allowance**: Four white mushroom SKU's per month at $1.00 discount; eight BOGO white mushroom SKU's per year at $1.50 discount.  Six pack white mushrooms cases are discounted at $.50 and $.75 respectively.  Five specialty

mushroom SKU's per month at $1.00 discount and eight BOGO specialty mushroom SKU's per year at $1.50 discount. Six pack Baby Bella mushrooms cases are discounted at $.50 and $.75 respectively.

### Additional Oakshire Support

### Other Charges:

Oakshire reserves the right to add any other charges that may become necessary to provide you the deliveries as specified hereunder, including, but not limited to, to transfer fees, container usage fees, and ripening fees. You will be promptly notified of any such fees.

### Promotions:

You will be eligible for Oakshire's promotional programs that are in effect during the term of this Agreement. Proof of performance, as determined by Oakshire in its sole discretion, is required for all promotional and advertising programs.

All sales of product under this Agreement are subject to the Terms and Conditions. The Force Majeure clause (Paragraph 18 of the Terms and Conditions) includes, without limitation: (i) inability to perform because of floods, snow, blow-downs, drought or other severe weather patterns, such as El Nino, (ii) any delays or inability to perform due to strikes, slow-downs, or other labor disruptions at ports, and (iii) any delays or inability to perform due to the implementation or enforcement of national or international security measures.

### Third Party Claims; Customer Claims:

Excepting any acts which you are obligated to take under any law or pursuant to this Agreement, Oakshire agrees that in the event of third party claims or legal actions alleging damage for loss to property, death, illness or injuries directly resulting from any mushrooms provided to you by Oakshire hereunder, and arising from any alleged adulteration or misbranding of such DOLE produce, Oakshire will save you harmless in connection therewith provided that: (i) Oakshire receives prompt notification at the address set forth herein (to be sent to the attention of Vice President, Quality Assurance Department, P.O. Box 388 Kennett Square, PA 19348) of any such claims or legal actions, along with a sample of the alleged nonconforming article, no later than five (5) business days after you have received notice of same; (ii) Oakshire is permitted to handle and, if necessary, to cause the disposition of such claims or legal actions at its own discretion by any means deemed appropriate by Oakshire; (iii) any such claims or legal actions shall have been directly caused by the act of Oakshire or by Oakshire's material breach of this Agreement at the time of delivery of the Dole produce as specified hereunder, and (iv) you or a third party under your direction or control did not mishandle or alter the supplied produce, or act negligently with regard to the produce, or contribute to the alleged adulteration or misbranding.

Any claims directly asserted by you as a Buyer shall be governed Paragraph 13 of the Terms and Conditions set forth in Schedule 1.

*        *        *

Upon your acceptance, this Agreement will be a legally binding and enforceable contract and the terms and conditions may not be altered or waived except in writing by both parties. We must receive your signature accepting this Agreement within 21 days of the date of this letter or the Mushroom Proposal will be deemed withdrawn. If the foregoing is acceptable to you, please sign below.

Accepted: Winn-Dixie Stores, Inc.

By: _____

Title: _____ TOM ROBBINS
              Sr. V.P., Merchandising

Date: _____

Accepted: Oakshire Mushroom Sales, LLC

By: _____

Title: _____ C.E.O.

Date: 12/27/05

LEGAL APPROVED
ATTY: _____
DATE: 11/18/05

2

# SCHEDULE 1



## OAKSHIRE MUSHROOM SALES, LLC
## TERMS AND CONDITIONS GOVERNING SALES

THE FOLLOWING TERMS AND CONDITIONS SHALL GOVERN ALL PURCHASES OF BANANAS, MUSHROOMS, CITRUS, DECIDUOUS AND/OR OTHER FRESH FRUITS OR NUTS (HEREIN COLLECTIVELY CALLED "FRUIT") BY A BUYER (HEREIN CALLED "BUYER") FROM OAKSHIRE MUSHROOM SALES, LLC (HEREIN CALLED "SELLER").

### DEFINITIONS:

1. A) "AIR CONTAINER SHIPMENT" MEANS A SHIPMENT OF FRUIT TRANSPORTED IN A CONTAINER BY AIRCRAFT TO A DESIGNATED CITY IN NORTH AMERICA.
   B) "DELIVERED SALE" MEANS A SALE OF FRUIT IN NORTH AMERICA WHERE, AT BUYER'S REQUEST, SELLER OR ITS AGENT DELIVERS THE FRUIT AT SELLER'S COST, BY A CARRIER DESIGNATED BY SELLER, TO THE UNLOADING DOCK OF A RECEIVING FACILITY DESIGNATED BY BUYER.
   C) "DISTRIBUTION CENTER" MEANS A FACILITY OPERATED BY SELLER WHERE A REEFER CONTAINER SHIPMENT OF FRUIT IS UNSTUFFED FROM THE CONTAINER.
   D) "MULTIPLE DROP SALE" MEANS A DELIVERED SALE TO TWO OR MORE BUYERS WHOSE PURCHASES OF FRUIT, IN THE DISCRETION OF SELLER, CAN CONVENIENTLY BE TRANSPORTED TO EACH BUYER'S RECEIVING FACILITY IN ONE VEHICLE.
   E) "NON-CONTAINER SHIPMENT" MEANS A SHIPMENT OF FRUIT TRANSPORTED AS GENERAL CARGO (I.E. NOT IN A CONTAINER) BY AN OCEAN-GOING VESSEL TO A DESIGNATED PORT IN NORTH AMERICA.
   F) "NORTH AMERICA" MEANS THE UNITED STATES OF AMERICA AND CANADA.
   G) "REEFER CONTAINER SHIPMENT" MEANS A SHIPMENT OF FRUIT TRANSPORTED IN A REFRIGERATED CONTAINER BY AN OCEAN-GOING VESSEL TO A DESIGNATED PORT IN NORTH AMERICA.
   H) "ROLLER SALE" MEANS A SALE OF FRUIT THAT TAKES PLACE AFTER THE FRUIT HAS BEEN UNLOADED FROM THE VESSEL AT THE PORT OF DISCHARGE AND WHILE UNDER TRANSPORT ON A VEHICLE ARRANGED BY SELLER.
   I) "SPECIAL SALE" MEANS A SALE OF FRUIT TO A DESTINATION OUTSIDE OF NORTH AMERICA WHICH IS MADE ON A C.I.F., C & F OR F.O.B. BASIS, AS THE CASE MAY BE.
   J) UNIT PRICE" MEANS THE PRICE OF A BOX OF FRUIT OF A STANDARD WEIGHT OR COUNT.

### PRICE:

2. WITH RESPECT TO ANY PURCHASE OF FRUIT, BUYER SHALL PAY SELLER:
   A) THE UNIT PRICE FOR FRUIT FOR THE QUANTITY OF FRUIT ORDERED BY BUYER, WHICH PRICE MAY BE QUOTED BY SELLER ON ANY OF THE FOLLOWING TERMS:
      I) FOB PORT OF DISCHARGE, IN THE CASE OF A REEFER CONTAINER SHIPMENTS OR NON-CONTAINER SHIPMENTS; OR
      II) FOB DISTRIBUTION CENTER NEAREST TO THE PORT OF DISCHARGE, IN THE CASE OF REEFER CONTAINER SHIPMENTS; OR
      III) FOB DESTINATION AIRPORT IN THE CASE OF AIR CONTAINER SHIPMENTS; OR
      IV) FOB BUYER'S DESIGNATED RECEIVING FACILITY, IN THE CASE OF DELIVERED SALES OR MULTIPLE DROP SALES; OR
      V) C.I.F. VESSEL PORT OF DISCHARGE, C & F VESSEL PORT OF DISCHARGE OR FOB VESSEL PORT OF LOADING, AS THE CASE MAY BE, IN THE CASE OF SPECIAL SALES; AND
   B) COSTS, IF ANY, INCURRED BY SELLER FOR THE ACCOUNT OF BUYER PURSUANT TO PARAGRAPH 11; AND
   C) IN THE CASE OF ALL NON-CONTAINER SHIPMENTS AND THOSE REEFER CONTAINER SHIPMENTS WHICH ORIGINATE AT PORTS OTHER THAN IN HAWAII,
      I) THE APPLICABLE FUEL SURCHARGE, TOGETHER WITH ANY ADDITIONAL TRANSPORTATION COSTS AS MAY BE DETERMINED BY SELLER NOT TO BE INCLUDED IN THE UNIT PRICE; AND
      II) THE COST OF HANDLING (INCLUDING WHARFAGE) AT THE PORT OF DISCHARGE INCURRED PRIOR TO THE TENDER OF DELIVERY BY SELLER TO BUYER OR ITS CARRIER OR AGENT IF SUCH COST IS DETERMINED BY SELLER NOT TO BE INCLUDED IN THE UNIT PRICE.

## TITLE & RISK:

3. TITLE TO FRUIT AND RISK OF LOSS AND/OR DAMAGE TO FRUIT SHALL PASS FROM SELLER TO BUYER AT THE TIME THAT SELLER IS DEEMED TO HAVE DELIVERED FRUIT TO BUYER AS HEREINAFTER DESCRIBED.

## DELIVERY:

4. DELIVERY TO BUYER OF A CONTAINER OF FRUIT DESIGNATED FOR THE EXCLUSIVE USE OF BUYER PURSUANT TO A REEFER CONTAINER SHIPMENT SHALL BE DEEMED TO HAVE BEEN MADE BY SELLER TO BUYER AT THE POINT WHERE THE VEHICLE OF BUYER OR ITS CARRIER RECEIVES THE CONTAINER AT THE CONTAINER YARD AT THE PORT OF DISCHARGE OR THE DISTRIBUTION CENTER NEAREST THE PORT OF DISCHARGE, AS THE CASE MAY BE.

5. DELIVERY TO BUYER OF FRUIT PURSUANT TO AN AIR CONTAINER SHIPMENT SHALL BE DEEMED TO HAVE BEEN MADE BY SELLER TO BUYER AT THE POINT AT WHICH THE FRUIT PASSES OVER THE TAILGATE AND INTO THE VEHICLE OF BUYER OR ITS CARRIER AT THE DESTINATION AIRPORT.

6. DELIVERY TO BUYER OF FRUIT PURSUANT TO A DELIVERED SALE OR A MULTIPLE DROP SALE SHALL BE DEEMED TO HAVE BEEN MADE BY SELLER TO BUYER WHEN THE CARRIER TRANSPORTING THE FRUIT TENDERS DELIVERY THEREOF AT THE UNLOADING DOCK OF THE RECEIVING FACILITY DESIGNATED BY BUYER.

7. DELIVERY TO BUYER OF FRUIT PURSUANT TO A ROLLER SALE SHALL BE DEEMED TO HAVE BEEN MADE BY SELLER TO BUYER AT THE LOCATION OF SUCH FRUIT AT THE TIME WHEN BUYER AGREES TO PURCHASE SUCH FRUIT.

8. DELIVERY TO BUYER OF FRUIT PURSUANT TO A SPECIAL SALE SHALL BE DEEMED TO HAVE BEEN MADE BY SELLER TO BUYER AS THE FRUIT CROSSES THE SHIP'S RAIL AT THE PORT OF LOADING.

9. EXCEPT AS OTHERWISE HEREINBEFORE EXPRESSLY PROVIDED, DELIVERY OF FRUIT BY SELLER TO BUYER SHALL BE DEEMED TO HAVE BEEN MADE AT THE POINT AT WHICH THE FRUIT PASSES OVER THE TAILGATE AND INTO THE VEHICLE OF BUYER OR ITS CARRIER AT THE PORT OF DISCHARGE OR AT THE DISTRIBUTION CENTER NEAREST THE PORT OF DISCHARGE, AS THE CASE MAY BE.

10. SELLER SHALL PROVIDE BUYER WITH REASONABLE NOTICE OF THE ESTIMATED DATE AND TIME OF DELIVERY OF THE FRUIT AND BUYER SHALL MAKE TIMELY RECEIPT OF SUCH DELIVERY.

## TRANSPORTATION COSTS:

11. BUYER SHALL BE RESPONSIBLE FOR ALL TRANSPORTATION AND OTHER COSTS INCURRED BEYOND THE POINT OF DELIVERY OF THE FRUIT, WHICH, WITHOUT LIMITATION, SHALL INCLUDE ALL STORAGE, LOADING, UNLOADING, HANDLING AND OTHER CHARGES. IN THE CASE OF ROLLER SALES, BUYER SHALL BE RESPONSIBLE FOR TRANSPORTATION AND OTHER COSTS, AS AFORESAID, FROM THE POINT OF DELIVERY WHICH WOULD HAVE BEEN APPLICABLE IF THE SALE HAD TAKEN PLACE PURSUANT TO PARAGRAPH 9.

## QUANTITY AND WEIGHT:

12. WITH THE EXCEPTION THAT THIS SENTENCE SHALL NOT APPLY TO DELIVERED SALES, MULTIPLE DROP SALES, OR SPECIAL SALES, AFTER TAKING DELIVERY OF A SHIPMENT OF FRUIT, BUYER, THE CARRIER PROVIDED BY BUYER, OR THE RESPECTIVE DULY AUTHORIZED AGENT OR EMPLOYEE OF EITHER, SHALL, AS SOON AS POSSIBLE, DELIVER TO SELLER A COPY OF DRIVER'S RECEIPT FOR SUCH SHIPMENT. SHIPPER'S LOAD AND COUNT, AS EVIDENCED BY THE BILL OF LADING OR SUCH OTHER DOCUMENTATION AS MAY BE USED TO EVIDENCE DELIVERY OF THE SHIPMENT, SHALL IN THE ABSENCE OF FRAUD, BE CONCLUSIVE FOR ALL PURPOSES AS THE QUANTITY AND WEIGHT OF FRUIT DELIVERED TO BUYER IN ANY SHIPMENT.

## CLAIMS:

13. BUYER'S RECEIPT OF ANY FRUIT DELIVERED PURSUANT TO THESE TERMS AND CONDITIONS SHALL BE AN UNQUALIFIED ACCEPTANCE OF, AND A WAIVER BY BUYER OF ANY AND ALL CLAIMS WITH RESPECT TO, SUCH FRUIT, UNLESS BUYER GIVES SELLER NOTICE OF CLAIM, WITHIN TWENTY-FOUR (24) HOURS AFTER SELLER HAS TENDERED DELIVERY OF THE FRUIT, OR, IN THE CASE OF NON-ARRIVAL, WITHIN TWENTY-FOUR(24) HOURS AFTER A REASONABLE TIME FOR DELIVERY HAS ELAPSED. NOTICE OF EVERY CLAIM MUST BE GIVEN TO SELLER'S DISTRICT MANAGER IN THE DISTRICT IN WHICH THE ORDER FOR THE FRUIT WAS RECEIVED BY SELLER. A FULL STATEMENT IN WRITING OF THE CLAIM AND OF THE BASIS THEREFORE SHALL BE FILED WITH SUCH DISTRICT MANAGER WITHIN TEN (10) BUSINESS DAYS AFTER SELLER HAS TENDERED DELIVERY OF THE FRUIT, OR, IN THE CASE OF NON-ARRIVAL, WITHIN TEN (10) BUSINESS DAYS AFTER A REASONABLE TIME FOR DELIVERY AS ELAPSED.

4



14. NOTWITHSTANDING THE PENDENCY OF ANY CLAIM WITH RESPECT TO A SHIPMENT OF FRUIT, OR WITH RESPECT TO ANY OTHER SHIPMENT OF FRUIT, BUYER SHALL PAY SELLER THE FULL AMOUNT OF THE INVOICE FOR SUCH SHIPMENT WITHOUT OFFSET, DISCOUNT OR OTHER DEDUCTION. ACCEPTANCE BY BUYER OF ANY PAYMENT TENDERED BY SELLER IN SETTLEMENT OF ANY CLAIM SHALL CONSTITUTE A FULL AND COMPLETE SATISFACTION AND DISCHARGE OF SUCH CLAIM. NO ALLOWANCE OF ANY CLAIM SHALL CONSTITUTE A PRECEDENT FOR THE ALLOWANCE OF ANY OTHER CLAIM.

## PAYMENT:

15. SELLER SHALL INVOICE BUYER PROMPTLY AFTER EACH SHIPMENT OF FRUIT. TERMS OF PAYMENT SHALL BE NET TEN (10) DAYS FROM THE DATE OF THE INVOICE WITHOUT OFFSET, DISCOUNT OR OTHER DEDUCTION.

16. INTEREST SHALL ACCRUE ON ANY UNPAID BALANCE AT THE RATE OF EIGHTEEN PERCENT (18%) PER ANNUM BEGINNING ON THE THIRTIETH (30TH) DAY OF THE INVOICE DATE.

17. IN THE EVENT ANY ACTION OR PROCEEDING IS COMMENCED TO ENFORCE THE TERMS OF ANY SALES TRANSACTIONS BETWEEN US OR OUR PACA TRUST RIGHTS, THE BUYER AGREES TO PAY ALL ATTORNEYS' FEES, TOGETHER WITH ANY COSTS AND EXPENSES, AS ADDITIONAL SUMS OWED IN CONJUNCTION WITH THIS TRANSACTION.

## FORCE MAJEURE:

18. IN THE EVENT THAT BUYER OR SELLER IS UNABLE TO PERFORM ITS OBLIGATIONS WITH RESPECT TO ANY SALE TO WHICH THESE TERMS AND CONDITIONS APPLY DUE TO EVENTS OF FORCE MAJEURE, INCLUDING BUT NOT LIMITED TO ACTS OF GOD, SEVERE WEATHER DISTURBANCES, GOVERNMENTAL ACTION, FIRES, EXPLOSIONS, STRIKES, SLOWDOWNS OR OTHER CONCERTED ACTS OF WORKMEN, WAR OR HOSTILITIES, INSURRECTIONS, REBELLIONS, RIOTS OR ANY OTHER CIVIL DISORDER, EMBARGOES, WRECKS OR DELAYS IN TRANSPORTATION, INABILITY TO OBTAIN NECESSARY MATERIALS OR EQUIPMENT, CRIMINAL CONDUCT OF THIRD PARTIES, OR ANY FAILURE OF THE OTHER PARTY TO ACT AS REQUIRED BUT SPECIFICALLY EXCLUDING A PARTY'S LOWERED PROFIT, COST OF FINANCING OR OTHER BUSINESS CONSIDERATIONS, THEN IN THAT EVENT, AND THEN ONLY TO THE EXTENT SO JUSTIFIED, THE PARTY UNABLE TO PERFORM SHALL, UPON WRITTEN NOTICE TO THE OTHER PARTY, BE RELIEVED OF ITS OBLIGATIONS, BUT ONLY TO THE EXTENT OF THE EFFECTS OF FORCE MAJEURE AND ONLY FOR SO LONG AS THE EVENT OF FORCE MAJEURE CONTINUES. THE PARTY UNABLE TO PERFORM SHALL USE ITS BEST EFFORTS TO REMEDY THE EFFECTS OF FORCE MAJEURE. SELLER SHALL NOT BE OBLIGATED BY REASON OF FORCE MAJEURE CIRCUMSTANCES, TO PURCHASE FRUIT FROM OTHERS IN ORDER TO ENABLE IT TO DELIVER FRUIT TO BUYER.

## GOVERNING LAW:

19. THE VALIDITY, INTERPRETATION AND PERFORMANCE OF ANY SALE TO WHICH THESE TERMS AND CONDITIONS APPLY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF PENNSYLVANIA EXCEPT THAT THE PRICE OR TRADE TERMS QUOTED BY SELLER FOR ALL SPECIAL SALES SHALL BE INTERPRETED ACCORDING TO INCOTERMS 1980.

## MISCELLANEOUS:

20. THESE TERMS AND CONDITIONS SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE RESPECTIVE SUCCESSORS AND ASSIGNS OF BUYER AND SELLER. NEITHER BUYER NOR SELLER MAY ASSIGN ITS RESPECTIVE RIGHTS AND OBLIGATIONS WITH RESPECT TO ANY SALE GOVERNED BY THESE TERMS AND CONDITIONS WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY, EXCEPT THAT SELLER MAY, WITHOUT SUCH CONSENT, ASSIGN ITS RIGHTS AND OBLIGATIONS WITH RESPECT TO ANY SALE TO ITS PARENT OR TO ANY SUBSIDIARY OR AFFILIATED CORPORATION.

21. EVERY ORDER GIVEN TO OR FOR SELLER WHETHER BY TELEPHONE, TELEGRAPH, TELEX, FACSIMILE, IN WRITING OR OTHERWISE, AND EVERY PURCHASE OF FRUIT FROM SELLER, SHALL BE GOVERNED BY THESE TERMS AND CONDITIONS WHICH SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN BUYER AND SELLER. NO MODIFICATION OR WAIVER OF THESE TERMS AND CONDITIONS SHALL BE BINDING UPON SELLER UNLESS APPROVED IN WRITING BY AN AUTHORIZED REPRESENTATIVE.

22. IF SELLER COMMENCES OR DEFENDS ANY ACTION ARISING OUT OF, OR CONNECTED WITH, THIS SALE, THE FRUIT, TRANSPORTATION, OR ANY RIGHTS OF SELLER OR BUYER WITH RESPECT THERETO, THE PREVAILING PARTY SHALL RECOVER ITS REASONABLE ATTORNEY'S FEES AND COURT COSTS FROM THE OTHER PARTY.

23. THESE TERMS AND CONDITIONS ARE SEVERABLE, AND THE HOLDING OF ANY PROVISION HEREOF VOID OR UNENFORCEABLE SHALL NOT AFFECT THE VALIDITY OR ENFORCEABILITY OF ANY OTHER PROVISION.

# EXHIBIT

# B

# Winn✓Dixie

GOVERNANCE GUIDELINES: REQUIRED APPROVALS
## PLEASE RETURN BOTH SIGNED ORIGINALS TO THE LEGAL DEPT.

CONTRACT VALUE: _4.7 million_

TERM OF CONTRACT: _36 ____ (MOS)_ (36)

BUSINESS CONTACT'S NAME/SVP: _Mike Krage / Dan Portnoy_

DEPT: _Merchandising_

EXECUTIVE SUMMARY:   OTHER PARTY NAME: _Dole / Oakshire Mushroom_

_Mushroom Supply Agreement_

▶ **E-BID?:**            ☐ YES   X NO      ▶ **MINIMUM PURCHASE OR SHELF SPACE?:**   ☐ YES   X NO
*(If yes, must be reviewed by Larry Appel before SVP)*

▶ **LICENSE OR LEASE?:**   ☐ YES   X NO      ▶ **REQUIREMENTS CONTRACT?:**   ☐ YES   X NO
*(If yes, must be reviewed by Mike Byrum before SVP)*        *(If yes, must be reviewed by Larry Appel before SVP)*

| | | |
|---|---|---|
| **LEGAL APPROVAL:** | INITIALS _MMM_ | DATE _9-2-07_ |
| _Cheryl Forehand_ | | |
| **OPERATIONS APPROVAL:** | INITIALS | DATE _9/11/07_ |
| _Chris Scott_ | | |
| **LOGISTICS APPROVAL:** | INITIALS | DATE _9/12/07_ |
| | | |
| **CORP. SOURCING** | INITIALS X | DATE X |
| **& PROCUREMENT:** _D. Portnoy_ | | |
| **SVP/GVP SIGNATURE:** | INITIALS | DATE _9/01/07_ |
| _B. Nussbaum_ | | |
| **CFO REVIEW:** | INITIALS _Bn_ | DATE _9-24-07_ |
| ( ≥ $25,000 OR ≥1 YR) | | |
| **CEO REVIEW:** _P. Lynch_ | INITIALS _PL_ | DATE _9/28/07_ |
| (only if ≥ $250,000) | | |

**LEGAL DEPT. INTERNAL USE ONLY:**
GROUP NAME: _PR_ _____ (BL, CL, EL, LI, RL)
TYPE OF CONTRACT _Procurement_
EFFECTIVE DATE: _6/28/07_
EXPIRATION DATE: _6/13/10_
CORP. ENTITY: _WD Procurement_
BUSINESS UNITS COVERED BY CONTRACT: _ALL_
VENDOR ZIPCODE: _19348_
RENEWAL OPTIONS: _NO_
PURCHASED OPTIONS: _NO_ (Yes/NO)
REVIEW DATE: _2/13/10_
RENEWAL NOTICE DATE: _____
DATE RENEWED: _____
ASSOCIATED DOCUMENTS ID# (WD DOC IDs):
_____
_____
_____
_____

*FOR LEGAL DEPT. INTERNAL USE ONLY:*
GENERAL COMMENTS: _____

_10/8/07_
_gm._

ACCOUNTING ACKNOWLEDGEMENT OF RECEIPT:

INITIALS/NAME & DATE
**\*\*ORIGINAL RETAINED IN LEGAL DEPT. \*\***



Oakshire Mushroom Sales, LLC

# Mushroom Purchase Agreement

# Winn Dixie Procurement, Inc.

### June 28, 2007 to June 13, 2010



# Mushroom Purchase Agreement
## Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

This Mushroom Purchase Agreement ("Agreement") is made by and between **OAKSHIRE MUSHROOM SALES, LLC** ("Dole Mushrooms"), 295 Thompson road, P.O. Box 388, Kennett Square, PA 19348 and **WINN-DIXIE PROCUREMENT, INC.** ("Customer"), 5050 Edgewood Court, Jacksonville, FL 32254 for the period from June 28, 2007 through June 13, 2010.

## New Items

Customer will accept and purchase all future new Dole Mushrooms items which are non-duplicative with the Customer label. Customer will begin purchasing such new items within 45 days of their launch date, and will promote and market the items for no less than 90 days.

**Promotion allowance**: Four white mushroom SKU's per month at $1.00 discount; eight BOGO white mushroom SKU's per year at $1.50 discount. Six pack white mushrooms cases are discounted at $.50 and $.75 BOGO respectively. Five specialty mushroom SKU's per month at $1.00 discount and eight BOGO specialty mushroom SKU's per year at $1.50 discount. Six pack Baby Bella mushrooms cases are discounted at $.50 and $.75 respectively. The promotion allowance for Organic items is $.50 per case for all promotions.

## Product Pricing

The prices to be paid by Customer to Dole Mushrooms for the products subject to this Agreement are set forth in Exhibit A. F.O.B. prices are F.O.B. at Dole Mushrooms' facilities in Pennsylvania. Delivered pricing in Exhibit A is predicated on a defined set of delivery criteria as outlined below:

| Ship to location | Number of orders per week |
|---|---|
| Jacksonville DC | 4 |
| Miam DC | 4 |
| Orlando DC | 5 |
| Montgomery DC | 5 |
| Hammond DC | 3 |

Dole Mushrooms reserves the right to modify delivered pricing should orders exceed these contractual order expectations.

The prices in Exhibit A shall remain in effect for the term of this Agreement except when extraordinary events create disruptions in commodity prices or supplies, or extreme or uncontrollable production costs occur. Price adjustments or surcharges by SKU may be made by Dole Mushrooms in connection with those occurrences. Dole Mushrooms shall provide

2



# Mushroom Purchase Agreement
## Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

Customer with an explanation of the basis for its actions. Customer shall be subject to the same price adjustments as applied to other Dole Mushrooms customers. Dole Mushrooms will make all reasonable efforts to keep prices stable throughout such periods. The initial pricing under this Agreement will be per the attached pricing list in Exhibit A, subject to all applicable surcharges.

## Payment Terms

This Agreement is subject to the Perishable Agricultural Commodities Act and as such, payment on all invoices shall be made pursuant to the terms stated on each invoice from Dole Mushrooms, which include that payment shall be Net 10 after acceptance of product. Interest shall accrue on any past due account balance at a rate of 1.5% per month (18% per annum). Customer shall pay all costs of collection, including attorneys' fees. Dole Mushrooms reserves the right to deduct any unpaid or past due invoices for product purchased by Customer from funds owed by Dole Mushrooms to Customer. These funds may include, but are not limited to, rebates, promotions, or merchandising allowances payable to Customer. Customer hereby waives any notice of such offsets.

## Claims

- Claims will be administered in accordance with the terms and conditions governing sales as noted on the Dole Mushrooms invoice. All claims must be reported to the Dole Mushrooms sales representative within 24 hours of delivery.

- Deductions, including postaudit, taken later than one (1) year from date of shipment will not be honored. Postaudit documentation must be submitted within nine (9) months of date of shipment.

- Documentation to substantiate all claims for credit must be included with the actual deduction and postaudit claim.

- Postaudits done by a third party must also be reviewed and approved by Customer prior to submitting to Dole Mushrooms.

- All postaudits require validation and a research period of not less than 60 days before a deduction may be submitted to Dole Mushrooms. Postaudit deductions taken before the research period concludes and/or not validated by a Dole Mushrooms representative will not be honored.



# Mushroom Purchase Agreement
## Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

## Acquisition; Merger; Other Customers

A.  In the event that Customer acquires, or merges with, another entity which does not have an existing Agreement with Dole Mushrooms to purchase mushroom products, this Agreement shall continue to be binding on Customer and shall also be binding on the acquired entity and/or any successor entity created by merger.  The volume of Dole Mushrooms mushroom products purchased by the acquired entity, or the successor entity created by merger, shall be considered as part of Customer's volume for purposes of determining Customer's compliance with its Purchase Commitment and any other benefits based on volume under this Agreement.

In the event that the acquired or successor entity already has an existing binding mushroom purchase contract other than with Dole Mushrooms, this Agreement shall continue to be binding on Customer and shall become binding on the acquired or successor entity upon the expiration or termination of its existing contract, which shall be effected as soon as legally permitted.

B.  In the event that Customer acquires, or merges with, another entity which does have an existing Agreement with Dole Mushrooms to purchase mushroom products, this Agreement shall continue to be binding on Customer and the other entity shall continue to be bound by its existing Agreement, unless otherwise agreed to by all of the parties. The volume of Dole Mushrooms mushroom products purchased by the acquired entity, or the entity with which Customer merges, shall not be considered as part of Customer's volume for purposes of determining Customer's compliance with its Purchase Commitment or any other benefits based on volume under this Agreement.



# Mushroom Purchase Agreement
### Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

## Termination

1. This Agreement may be terminated by either party in the event that the other party materially breaches any of its obligations hereunder and fails to cure such breach after ninety (90) days' written notice.

2. This Agreement may be terminated by either party in the event that the other party files, or has filed against it, any petition for bankruptcy, reorganization, or similar relief.

3. Customer shall reimburse Dole Mushrooms a pro rata portion of the items paid by Dole Mushrooms under this Agreement, based upon the number of months remaining in this Agreement as of the date of termination or based on the ratio of actual cases purchased by Customer to the total number of cases committed to by Customer during the term of this Agreement, whichever reimbursement is greater, and Dole Mushrooms shall be entitled to recover any other damages to which it is legally entitled, if either of the following occur:

    A. Customer terminates this Agreement for any reason other than Dole Mushrooms' breach; or

    B. Dole Mushrooms terminates this Agreement due to breach by Customer.

4. In the event of a termination by Customer, Customer agrees, without limitation of any other obligation or liability to Dole Mushrooms under this Agreement, to purchase from Dole Mushrooms no fewer than 100,000 12-pack equivalent cases during the 3 months subsequent to notifying Dole Mushrooms of the termination.



# Mushroom Purchase Agreement
### Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

## Notices

All notices under this Agreement shall be in writing and shall be sent by registered or certified mail, postage paid, return receipt requested or personally delivered to the other party at the address listed below or by fax to the other party at the number listed. A notice sent by mail shall be deemed delivered on the fourth (4th) business date after the date of posting. A notice sent by fax shall be deemed delivered on the date on which it is received at the fax number listed below.

| | |
|---|---|
| Dole Mushrooms | Oakshire Mushroom Sales, LLC<br>295 Thompson Road<br>P.O. Box 388<br>Kennett Square, PA 19348<br>Fax:    610-444-3010<br>Attn:   Gary Schroeder |
| Winn-Dixie | Winn Dixie Stores, Inc.<br>5050 Edgewood Court<br>Jacksonville, FL 32254<br>Attn:  Mike Krage, Director, Produce<br>Ph: 904-370-7130 |
| With a copy to: | Office of General Counsel |

## Confidentiality

In the course of performing its obligations under this Agreement, Customer may have access to proprietary information regarding Dole Mushrooms' processes, business plans, and other confidential matters. Customer shall not disclose to any third parties such confidential information received from Dole Mushrooms nor use Dole Mushrooms' confidential information for its own benefit except in connection with the performance of its obligations under this Agreement.

## Governing Law

This Agreement shall be governed, interpreted, and enforced in accordance with the laws of the State of Pennsylvania and the Perishable Agricultural Commodities Act.



# Mushroom Purchase Agreement
## Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

## Entire Agreement/Modification

A.    This Agreement sets forth the entire Agreement between Dole Mushrooms and Customer regarding the subject matter and it may be modified only by a written document signed by an authorized representative of each party.

B.    This Agreement may not be assigned by Customer without Dole Mushroom's prior written consent.

C.    If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, it will not affect the other provisions of this Agreement which shall remain in full force and effect.

D.    Neither party shall be deemed to have waived any rights under this Agreement, by course of dealing or otherwise, unless such waiver is given in writing and signed by the waiving party.

E.    The language of this Agreement shall, in all cases, be construed according to its fair meaning without regard to the identity of the party who drafted or prepared it, and any ambiguity shall not be construed against either party.

F.    The captions contained herein are not part of this Agreement and shall have no effect upon the construction or interpretation of any part hereof.

| WINN-DIXIE PROCUREMENT, INC.: | OAKSHIRE MUSHROOM SALES, LLC |
|---|---|
| BY: _____ | BY: _____ |
| DAN PORTNOY | SIGNATURE |
| SVP, CHIEF MERCHANDISING AND MARKETING OFFICER | NAME: _Gary M. Schroeder_ |
| | TYPED OR PRINTED |
| DATE OF SIGNING:    SEPTEMBER 7, 2007 | TITLE _C.E.O._ |
| | TYPED OR PRINTED |
| LOCATION OF SIGNING:    JACKSONVILLE, FL | DATE OF SIGNING: _10/1/07_ |
| | LOCATION OF SIGNING: _Kennett Sq., PA_ |

LEGAL APPROVED
ATTY:
DATE: 9-7-0

7



# Mushroom Purchase Agreement
## Winn Dixie Stores, Inc.
### June 28, 2007 through June 13, 2010

## *EXHIBIT A* –PRODUCT PRICES

**Pricing Structure:  Delivered Pricing**

| Mushrooms | Effective Dates | | |
|---|---|---|---|
| Item | June 28, 2007 | June 28, 2008 | June 28, 2009 |
| 12/8 oz Whole | $ 10.35 | $ 10.56 | $ 10.77 |
| 12/8 oz Sliced | $ 11.50 | $ 11.73 | $ 11.96 |
| 10/12 oz Whole | $ 12.40 | $ 12.65 | $ 12.90 |
| 10/12 oz Sliced | $ 13.90 | $ 14.18 | $ 14.46 |
| 8/14 oz Large | $ 14.50 | $ 14.79 | $ 15.09 |
| 8/16 oz Whole | $ 13.00 | $ 13.26 | $ 13.53 |
| 6/6 oz Port Capped | $ 10.25 | $ 10.46 | $ 10.66 |
| 6/6 oz Port Sliced | $ 10.25 | $ 10.46 | $ 10.66 |
| 6-pk Oyster | $ 8.65 | $ 8.82 | $ 9.00 |
| 6-pk Shiitake | $ 11.05 | $ 11.27 | $ 11.50 |
| 6-pk Enoki | $ 8.65 | $ 8.82 | $ 9.00 |
| 6/8 oz Whole Baby Bella | $ 6.75 | $ 6.89 | $ 7.02 |
| 6/8 oz Sliced Baby Bella | $ 7.05 | $ 7.19 | $ 7.33 |
| 6-pk Variety (all) | $ 9.70 | $ 9.89 | $ 10.09 |
| 3 lb. Bulk White-Large | $ 5.85 | $ 5.97 | $ 6.09 |
| 3 lb. Bulk Port Cap 3 1/2" | $ 10.00 | $ 10.20 | $ 10.40 |
| 3 lb. Bulk Shiitake | $ 15.50 | $ 15.81 | $ 16.13 |
| 3 lb. Bulk Oyster | $ 9.70 | $ 9.89 | $ 10.09 |
| Dried 12pk variety | $ 36.50 | $ 37.23 | $ 37.97 |
| 4/8oz Ch&Bac Stuffed Port | $ 9.50 | $ 9.69 | $ 9.88 |
| 4/8oz Crab stuffed Port | $ 9.50 | $ 9.69 | $ 9.88 |
| Meal Maker Combo | $ 9.75 | $ 9.95 | $ 10.14 |
| 12/4oz Sliced | $ 7.70 | $ 7.85 | $ 8.01 |
| 6/6oz Port Stuffer | $ 10.40 | $ 10.61 | $ 10.82 |
| 8/8oz Steak Cut | $ 10.20 | $ 10.40 | $ 10.61 |
| Organic Whole White 6/8 oz | $ 8.25 | $ 8.42 | $ 8.58 |
| Organic Baby Port 6/8 oz | $ 10.00 | $ 10.20 | $ 10.40 |
| Organic Port Slice 6/6 oz | $ 12.00 | $ 12.24 | $ 12.48 |
| Organic Port Cap 6/6 oz | $ 12.00 | $ 12.24 | $ 12.48 |
| Organic Shiitake 6/3.5 oz | $ 11.50 | $ 11.73 | $ 11.96 |

# EXHIBIT C

| | Product | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | Total |
|---|---|---|---|---|---|---|---|---|---|
| White | 10OZ WHITE STUFFER MUSHROOM | 1,351 | | | | | | | 1,351 |
| | 12 OZ WHOLE WHITE MUSHROOM | 425,191 | 552,373 | 406,010 | | | | | 1,383,574 |
| | BULK WHOLE WHITE MUSHROOM | 7,454 | 8,220 | 3,107 | 130 | | | | 18,911 |
| | DOLE SLCD SLD PARTNER MUSHROOM | | | 83,043 | 228,203 | 88,011 | | | 399,257 |
| | DOLE THCK STEAK CUT MUSHROOM | | | 177,659 | 223,094 | 211,873 | 180,864 | 143,384 | 936,873 |
| | MUSHROOM WHITE STUFFER | 127,407 | 150,935 | 28,280 | 281,232 | 289,142 | 287,825 | 233,176 | 1,397,997 |
| | MUSHROOMS 8 OZ SLICED WHITE | 931,177 | 1,703,569 | 1,383,632 | 1,332,405 | 1,555,490 | 1,509,499 | 1,197,955 | 9,613,726 |
| | MUSHROOMS 8 OZ WHOLE WHITE | 675,268 | 1,294,597 | 1,111,427 | 1,110,846 | 1,436,426 | 1,353,497 | 1,064,612 | 8,046,673 |
| | ORG WHITE MUSHROOM 8OZ | | | | | 6,263 | 15,892 | 14,707 | 36,862 |
| | WHOLE WHITE MUSHROMS 16OZ. | | | | 33,217 | 274,951 | 532,054 | 386,673 | 1,226,895 |
| Brown | BABY BELLA MUSHROOM | 116,205 | 174,627 | 211,479 | 231,133 | 260,075 | 284,068 | 217,549 | 1,495,136 |
| | BABY BELLA SLICED MUSHROOMS | 136,182 | 220,537 | 266,586 | 298,812 | 340,280 | 352,295 | 275,179 | 1,889,871 |
| | ORGANIC PORTABELLA CAPS | | | | | 5,895 | 16,802 | 18,665 | 41,361 |
| | ORG MUSHROOM BABY BELLA | | | | | | | 3,972 | 3,972 |
| | ORGANIC SLICED PORTABELLA | | | | | 5,699 | 16,989 | 15,308 | 37,997 |
| | 6OZ BABY STUFFER(PORTABELLINI) | | | 13,915 | 22,510 | 44,090 | 44,237 | 32,988 | 157,739 |
| | BULK CAP PORTABELLA MUSHROOM | 7,626 | 4,429 | 495 | | | | 3,630 | 16,180 |
| | PORTABELLA MUSHROOM CAPS | 182,649 | 367,215 | 292,714 | 311,251 | 337,583 | 299,627 | 230,409 | 2,021,449 |
| | PORTABELLA MUSHROOM SLICED | 194,926 | 385,710 | 305,032 | 329,393 | 355,591 | 310,127 | 240,371 | 2,121,149 |
| | Total White | 2,167,848 | 3,709,694 | 3,193,157 | 3,209,127 | 3,862,156 | 3,879,630 | 3,040,508 | 23,062,120 |
| | Total Brown | 637,586 | 1,152,519 | 1,090,221 | 1,193,098 | 1,349,212 | 1,324,145 | 1,038,072 | 7,784,854 |
| | **Grand Total** | **2,805,434** | **4,862,213** | **4,283,378** | **4,402,225** | **5,211,368** | **5,203,775** | **4,078,580** | **30,846,973** |
| | % White | 77.3% | 76.3% | 74.5% | 72.9% | 74.1% | 74.6% | 74.5% | 74.8% |

| | 2004-2005 | | 2004-2008 | | 2004-2010 |
|---|---|---|---|---|---|
| | 76.7% | | 74.9% | | 74.8% |

Source file:  Mushroom Purchases - through 12-31-2010.xlsx
Vendors: DOLE MUSHROOMS and OAKSHIRE MUSHROOM SALES
Excluded products:
8OZ STUFFED CRAB PORTABELLA
BULK OYSTER MUSHROOMS

BULK SHIITAKE MUSHROOM
DOLE MEAL MAKER COMBO PACK
DOLE MEAL MAKER-BACON
DOLE MEAL MAKER-BALSAMIC
DOLE MEAL MAKER-GINGER
DOLE SPIN/CHS STFD MSHRM
DOLE STUFF BACON PORTABELLA
DOLE SW STUFF MUSHROOM
ENOKI MUSHROOM 3.2OZ
MUSHROOM SLICED SHITAKE
MUSHROOMS DRIED EXOTIC
OYSTER MUSHROOM 3.2OZ
SHIITAKE MUSHROOM 3.2OZ
VARIETY PACK MUSHROOM

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WINN-DIXIE STORES, INC., et al. | : |
| | :    CIVIL ACTION |
| | : |
| v. | : |
| | : |
| EASTERN MUSHROOM MARKETING | :    No. 15-6480 |
| COOPERATIVE, et al. | : |
| | : |
| | : |

## CERTIFICATE OF SERVICE

I, William A.DeStefano hereby certify that, on August 4, 2020, a true and correct copy of the foregoing Memorandum in Support of Partial Summary Judgement with Exhibits, including a Certification and Statement of Material Uncontested Facts, on counsel for all parties by ecf filing and notification.

*/s/ William A. DeStefano*

16