IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WINN-DIXIE STORES, INC., *et al.*, | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EASTERN MUSHROOM MARKETING | : | |
| COOPERATIVE, *et al.*, | : | No. 15-6480 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                       **January 26, 2022**

With trial in this matter finally on the horizon, Plaintiff Winn-Dixie and Defendant the Eastern Mushroom Marketing Cooperative (the "EMMC") filed competing motions for summary judgment with respect to the EMMC's ability to invoke the protections of the Capper-Volstead Act. Both parties' motions were filed late. In the normal course, this would be sufficient reason to deny them both. However, given the importance of this issue at the parties' upcoming trial, the Court considered the parties' arguments. The Court will grant Plaintiff's motion and deny Defendant's motion for the reasons that follow.

**I.      Background**

The history in this case, related cases, and "between the parties to this antitrust lawsuit is lengthy, convoluted and contentious." *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d 274, 278 (E.D. Pa. 2009). The underlying facts and procedural labyrinth of this case have been repeated several times since Winn-Dixie opted out of a related class action and sued the EMMC and related entities ("Defendants") in 2015. The Court will not spill unnecessary ink recounting the background in full here and confines its discussion to the precise issue at hand.

As explained further below, in 2009, Judge O'Neill held that the EMMC and its members were not entitled to invoke the protections of the Capper-Volstead Act as a defense to allegations that they violated the federal antitrust laws. *See id.* at 291. Judge O'Neill's ruling was not issued as a part of this action, but rather in a related case against Defendants based on the same underlying facts (the "Direct Purchaser Action"). Although the two cases are similar in many respects, one significant difference is that the plaintiffs in the Direct Purchaser Action only sought to recover damages sustained through August 2005. *See, e.g.*, *In re Mushroom Direct Purchaser Litig.*, 319 F.R.D. 158, 166-67 (E.D. Pa. 2016). Here, Winn-Dixie seeks damages resulting from Defendants' actions "at least through 2008." (First Am. Compl. ¶ 3.)

The parties never addressed whether Judge O'Neill's Capper-Volstead ruling also applied to the EMMC's conduct after August 2005 and, if not, whether the EMMC could invoke the statute's protections with respect to its conduct during that period. At oral argument in November 2021, the Court posed these questions to counsel for both parties. Shortly thereafter, the parties filed the instant motions for summary judgment regarding Capper-Volstead immunity.

**II.     The Capper-Volstead Act**

"The Capper-Volstead Act provides agricultural cooperatives a limited exemption from antitrust laws." *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 282; *see also* 7 U.S.C. §§ 291-92. The statute permits "farmer-producers to organize together, set association policy, fix prices at which their cooperative will sell their produce, and otherwise carry on like a business corporation without thereby violating the antitrust laws." *Md. & Va. Milk Producers Ass'n v. United States*, 362 U.S. 458, 466 (1960). Given farmers' "particularly harsh economic position," Congress enacted the Capper-Volstead Act to enable them "to join together in cooperatives" as a means of "bolster[ing] their market strength and to improve their ability to

2

weather adverse economic periods and to deal with processors and distributors." *Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816, 825-26 (1978).

In order to claim the statute's protection, a cooperative must satisfy the following: (1) the cooperative and its members are "engaged in the production of agricultural products as farmers"; (2) each member must receive an equal vote; (3) the cooperative may not pay dividends exceeding 8% per year; and (4) the cooperative may "not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members." 7 U.S.C. § 291; *see also In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 283 n.8.

With respect to the first requirement, the Supreme Court has held that a cooperative that includes "even one" non-producing member "is not entitled to the limited protection of the Capper-Volstead Act." *Nat'l Broiler*, 436 U.S. at 828-29. "Accordingly, if non-producers participate as members in an agricultural cooperative, that cooperative is not entitled to avail itself of the Capper-Volstead exemption." *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 284. Similarly, a cooperative protected by the Capper-Volstead Act may not "act[] in concert or enter[] into an agreement with persons or entities not engaged in agricultural production." *Id.* at 286.

### A. Judge O'Neill's Direct Purchaser Action Capper-Volstead Ruling

In 2009, Judge O'Neill issued a Memorandum and Order in the Direct Purchaser Action denying the Capper-Volstead Act's protection to the EMMC based on two independent grounds: (1) the EMMC included at least one non-grower member and (2) the EMMC conspired with third parties. *See id.* at 285-86, 290-91.

#### 1. EMMC Membership

First, Judge O'Neill found that EMMC member "M. Cutone was a non-grower member who had the power to participate in the control and policy making of the association through

3

voting." *Id.* at 285. He rejected the EMMC's argument that M. Cutone's membership in the EMMC was "a technical, de minimis violation" that did not destroy Capper-Volstead immunity "because there is complete identity of ownership between M. Cutone, which is not a grower, and M & V, which is a grower." *Id.* at 284. Instead, Judge O'Neill found M. Cutone was "a mushroom distributor and a middleman, the very type of entity from which Capper-Volstead was designed to protect the interests of farmer/producers." *Id.* at 285. Since "even one non-farmer member in an agricultural cooperative is sufficient to destroy Capper-Volstead immunity," Judge O'Neill held that the EMMC could not rely on the statute's protection. *Id.* at 286.

Given the rigidity of the statute's requirements, after determining that M. Cutone destroyed Capper-Volstead immunity, it was unnecessary to "extend [the] analysis to other members of the EMMC which plaintiffs allege have problematic memberships including Leone Pizzini and Son, Inc., Brownstone Mushroom Farms, Inc., and LRP-M Mushrooms LLC." *Id.* at 286 n.13. Judge O'Neill therefore made "no determination" regarding the propriety of their memberships in the EMMC or whether any of them (or any other EMMC member not specifically named) may have independently prevented the EMMC from invoking Capper-Volstead immunity. *Id.*

### 2. Conspiracy with Non-Members

Second, Judge O'Neill held the EMMC impermissibly conspired with third party distributors. *Id.* at 291. The Capper-Volstead "exemption does not extend to protect cooperatives that conspire with non-cooperatives. . . . Cooperatives cannot, for example, conspire or combine with nonexempt entities to fix prices or control supply, even though such activities are lawful when engaged in by cooperatives alone." *Id.* at 286. Judge O'Neill's analysis focused on two EMMC members (Kaolin and LRP-M) and their respective distributors. *See id.* at 289-91.

4

The EMMC argued it was entitled to Capper-Volstead immunity "because each EMMC member and its affiliated distributors are commonly owned and operated" such that they both comprised "a single economic entity." *Id.* at 287. Accordingly, the EMMC member and its distributor would be unable to conspire with one another (and by extension, the EMMC could not have conspired with the distributors) under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) and *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19 (1962). *Id.* at 287-88.

Judge O'Neill rejected this argument and found that EMMC members Kaolin and LRP-M "were not under common control" with their affiliated distributors. *Id.* at 290. Specifically, Kaolin's two owners held only a "50% interest in the distribution centers during the relevant period with another man who also had a 50% interest in the distribution centers" and the two entities were engaged in litigation against each other. *Id.* at 289-90. LRP-M was owned jointly by "Dominic Manfredini and his nephew Lucio Pizzini," but because its affiliated grower was owned by Manfredini's wife, the entities were not commonly controlled. *Id.* at 290. With respect to his conclusion regarding LRP-M's ownership, Judge O'Neill noted that

> [t]he involvement of family relationships in these varying ownerships is immaterial to determining common ownership and control. That partners in a company or between companies are related by blood or marriage—no matter how closely—does not ensure that they will uniformly agree on how to control the companies. Merely because two people are related does not mean that they have the same views and interests in their family businesses.
>
> *Id.*

Since Kaolin and LRP-M and their respective distributors were not a "single enterprise," the price fixing they engaged in "constitute[d] a conspiracy that destroy[ed] the EMMC's Capper-Volstead exemption." *Id.* at 291.[1]

## B. Subsequent Proceedings

Defendants appealed Judge O'Neill's Capper-Volstead decision to the Third Circuit, which found it did not have jurisdiction over the matter and dismissed the appeal. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 655 F.3d 158, 167 (3d Cir. 2011). Defendants later sought reconsideration of Judge O'Neill's ruling based on *American Needle, Inc. v. National Football League*, 560 U.S. 183 (2010) and *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820 (3d Cir. 2010). *See In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d 382, 385-86 (E.D. Pa. 2014). Defendants relied on these cases to reassert their argument that EMMC members Kaolin and LRP-M could not conspire with their affiliated distribution centers because they were each single economic entities. *See id.* at 388-89. They also argued that these decisions called into question Judge O'Neill's determination that M. Cutone was not a proper member of the EMMC. *Id.* at 388.

Judge O'Neill was unable to reach a conclusion with respect to whether LRP-M and its distributor were a single entity based on the limited record before him. *See id.* at 389-90. However, he reiterated his determinations that Kaolin and its distribution centers were not a single economic

---

[1] Judge O'Neill also outlined several other factors bolstering his conclusion that the EMMC was not entitled to Capper-Volstead immunity. First, EMMC members' "dues were based on the total sales of [a member's] affiliated distributors rather than the mushrooms grown by the member," which "shows that the growers were not the focus of the EMMC," contrary to the purpose of the Capper-Volstead Act. *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 291. Second, "the price fixing in which the EMMC admits it participated was applied to integrated and affiliated distributors' sales and not at the growers['] level." *Id.* at 285 n.11. Third, the EMMC did not have any members "unaffiliated with a distributor" and instead "helped them to organize the" EMMC Growers' Association. *Id.*

entity and that M. Cutone was not a proper member of the EMMC because it was not a "producer." *Id.* As a result, he reaffirmed his initial decision that the EMMC was not entitled to the Capper-Volstead Act's protections. *Id.* at 390.

Judge O'Neill certified his Order to allow Defendants to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See id.* at 394-95. However, the Third Circuit summarily denied Defendants' request for permission to file an appeal. *See In re Mushroom Direct Purchaser Antitrust Litig.*, Civ. A. No. 06-620 (E.D. Pa. Dec. 2, 2014), Dkt. 614.

### III.     Standard of Review

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact, and once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial." *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *Anderson*, 477 U.S. at 255.

In order to be entitled to summary judgment on the Capper-Volstead Act, the EMMC must show that it satisfies each of the Act's requirements. *In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d at 390 n.11. By contrast, Winn-Dixie only needs to show that the EMMC fails to satisfy one of the Act's requirements to be awarded summary judgment. *Id.*

IV.   **The Parties' Arguments**

In January 2006, the EMMC formally amended its name to the American Mushroom Cooperative ("AMC"). Winn-Dixie characterizes this as "a mere name change" that has no bearing on the application of the Capper-Volstead Act. (*See* Pl.'s Mem. of Law in Support of Pl.'s Mot. for Summ. J. on Capper-Volstead Immunity for the American Mushroom Cooperative [Pl.'s Mem.] (Dkt. 387-1) at 2.) It argues that the EMMC and AMC are the same legal entity, as evidenced by the fact that the EMMC/AMC members "did not execute a new membership agreement" or implement new bylaws and because members' dues were calculated according to the same formula as they were under the EMMC. (*Id.* at 2, 6-8.) Accordingly, "when the EMMC lost [Capper-Volstead] immunity as a result of Cutone's membership, it lost that immunity for the entirety of the cooperative, from its inception until its termination." (*Id.* at 11.)

Winn-Dixie further argues that even if the Court found the name change to be legally significant, the EMMC/AMC is not entitled to Capper-Volstead immunity because it nonetheless still failed to satisfy the Act's requirements. For example, the issue Judge O'Neill identified related to Kaolin's relationship with its affiliated distributor remained even after the name change. (*Id.* at 8.) It also argues that EMMC/AMC member Leonne Pizzini & Son, Inc. was not a producer as required by the statute. (*Id.* at 12-13.) Further, the EMMC/AMC continued to conspire "with non-member non-grower packer shippers ('distributors') who agreed to follow the EMMC's minimum prices." (*Id.* at 12.) Specifically, Winn-Dixie identifies several EMMC/AMC members that

maintained problematic relationships with distributors who sold mushrooms at EMMC/AMC prices, including Brownstone Mushroom Farms (with To-Jo Foods), Bella Mushroom Farms (with Buona Foods), M.D. Basciani and Sons, Inc. (with Basciani Foods), Cardile Mushrooms (with Cardile Brothers Mushroom Growers), and Masha & Toto, Inc. (with Robert Masha Sales). (*Id.* at 15; *see also* Certain Defs.' Resp. to Pl.'s Statement of Undisputed Facts & Certain Defs.' Statement of Undisputed Facts in Supp. of its Cross-Mot. for Summ. J. [Defs.' Resp.] (Dkt. 405) Ex. A-1 ¶¶ 43-54 (Brownstone Mushroom Farms), 67-74 (Bella Mushroom Farms), 75-82 (M.D. Basciani and Sons, Inc.), 83-91 (Cardile Mushrooms), 92-99 (Masha & Toto, Inc.).)

In response, the EMMC/AMC relies on *Case-Swayne Co. v. Sunkist Growers, Inc.*, 355 F. Supp. 408 (C.D. Cal. 1971) to assert that a cooperative can acquire Capper-Volstead immunity even if it did not originally enjoy the statute's protections. (*See* Defs.' Mem. in Opp. to Winn Dixie's Mot. for Summ. J. on the AMC's Entitlement to Capper Volstead Immunity for Allegedly Anticompetitive Conduct from 2006 Through 2009 and Cross Mot. for Summ. J. on the Same Issue [Defs.' Mem.] (Dkt. 404) at 10-12.) It argues it is entitled to immunity because it cured the issues Judge O'Neill identified in his 2009 ruling when M. Cutone and LRP-M resigned from the EMMC/AMC and when Kaolin "acquired a 100% ownership interest in and full control of [its] distribution companies" in 2004. (*Id.* at 4; *see also id.* at 9.) Several of the allegedly improper members Winn-Dixie identified also withdrew from the cooperative, including Leonne Pizzini & Son, Inc., Masha & Toto, Inc., and M.D. Basciani and Sons, Inc. (*Id.* at 4, 13.) Finally, the remaining members Winn-Dixie identified—Brownstone Mushroom Farms, Bella Mushroom Farms, and Cardile Mushrooms—were producers of mushrooms and should be treated as single economic entities with their respective distributors such that the EMMC/AMC did not conspire with third parties. (*Id.* at 4-5, 13.)

9

**V.     Discussion**

For the purposes of this decision, the Court will assume, without definitively passing judgment on the question, that a cooperative not originally entitled to Capper-Volstead immunity may later acquire it. Whether due to its changes in membership, name, or a combination of both, the Court assumes that the EMMC/AMC would be able to invoke the Capper-Volstead Act to attempt to immunize its conduct postdating the time period governed by Judge O'Neill's original decision. However, as explained below, the Court does not find that the EMMC/AMC satisfies the statute's requirements and therefore determines that the Capper-Volstead Act is inapplicable. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d at 390 n.11.

The Supreme Court has explained that whether two entities should be treated as a single actor incapable of conspiring with one another for antitrust purposes turns on whether they are "separate economic actors pursuing separate economic interests," such that concerted action between them "deprives the marketplace of independent centers of decisionmaking." *Am. Needle*, 560 U.S. at 195 (quoting *Copperweld*, 467 U.S. at 769). The Court focuses its analysis on EMMC/AMC member Bella Mushroom Farms ("Bella") and its distributor, Buona Foods ("Buona").[2]

"Bella sells 100% of its output to Buona Foods." (Defs.' Resp. Ex. A-1 ¶ 68.) The EMMC's "minimum pricing applied to distributor Buona's sales to its customers." (*Id.* ¶ 73; *see also* Statement of Undisputed Facts in Supp. of Pl.'s Mot. for Summ. J. on Defs.' Affirmative Defense of Capper-Volstead Immunity [Pl.'s SUMF] (Dkt. 387-2) ¶ 48). Winn-Dixie asserts that "Bella

---

[2] In his 2009 opinion, Judge O'Neill did not reach the merits of the relationship between Bella and Buona. He noted that "genuine issues of material fact may exist" with respect to these entities but did not analyze them further because he had already determined that the EMMC was not entitled to invoke the Capper-Volstead Act. *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 286 n.14.

and Buona have some, but not complete overlap in ownership. Bella is a general partnership of Robert, Rosemarie, Peter and Robert Jr. in which each owns a 25% share. Buona Foods, Inc. is a corporation with Robert and Rosemarie as the only shareholders (50% each)." (Pl.'s SUMF ¶ 44.) The EMMC/AMC acknowledges that "Mr. and Mrs. Feranto own one part of the family business, and they along with their two sons own the other part," but maintains that the two companies are "part of a single economic unit." (Defs.' Resp. Ex. A-1 at 35-36 & ¶ 70). It further asserts that when the two entities transacted with one another, "[o]ne son, Peter, negotiated for Bella and another son, Robert[,] negotiated for Buona." (*Id.* ¶ 71.)

Simply because these two entities "have individuals in overlapping ownership or controlling roles" does not "suggest that the entities are under common ownership or control such that a single decision-making source exercises definitive control over each of them." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 749 (E.D. Pa. 2011) (rejecting argument that related companies should be treated as a single entity simply because each one was owned by a combination of two of three individuals). "Merely because two people are related does not mean that they have the same views and interests in their family businesses." *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 290.[3] Here, although Bella and Buona's owners are related, their family relationships are not determinative. Further, because EMMC/AMC

---

[3] In his reconsideration opinion, Judge O'Neill acknowledged that a similar line of reasoning he applied in originally concluding that LRP-M and its distributor were not a single entity was "no longer considered to be dispositive" following *American Needle. See In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d at 389 n.10. In that opinion, he noted that the record was "devoid of facts material to whether the relationship between LRP-M and Manfredini Enterprises was one of competitive reality such that an alleged agreement between them to sell mushrooms at fixed EMMC prices would deprive the marketplace of competition." *Id.* at 390. However, because he determined that the EMMC failed to satisfy the Capper-Volstead Act's requirements for other reasons, the relationship between these entities did not impact his ultimate conclusion. *Id.*

prices were set at the distributor level and Buona's sales were governed by the EMMC's minimum pricing policies, (Defs.' Resp. Ex. A-1 ¶ 73), "the price fixing does not protect the economic interests of the grower and therefore the entities' interests are not congruent." *In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 291.[4] Moreover, the fact that Robert (who

---

[4] More broadly, the Court echoes Judge O'Neill's concerns that the calculation of dues for EMMC/AMC members and the implementation of EMMC/AMC minimum pricing at the distributor level strongly suggests the cooperative was set up to benefit distributors rather than producers. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 285 n.11.

Along similar lines, the Court questions (as did Judge O'Neill) the propriety of affording a cooperative immunity under the Capper-Volstead Act if it is composed of vertically integrated members. *See id.* at 284 & 285 n.11; *see also* Defs.' Resp. Sec. II ¶ 10 ("[T]o the extent an [AMC] member distributed mushrooms via an affiliated distributor, all such AMC members owned and controlled such affiliated distributors."). When "the Capper-Volstead Act was enacted, farming was not a vertically integrated industry." *Nat'l Broiler*, 436 U.S. at 830 (Brennan, J., concurring). "At some point along the path of downstream integration, the function of the exemption for its intended purpose is lost," and it is "seriously doubt[ful] that a person engaged in agricultural production beyond that point can be considered to be a farmer, even if he also performs some functions indistinguishable from those performed by persons who are 'farmers' under the Act." *Id.* at 835-36. Stated differently, the statute was enacted to protect individual farmers and allowing "large middlemen themselves to enjoy antitrust protection under the statute, simply by purchasing a farm, would contradict the Act's stated purpose." *In re Processed Egg Prods. Antitrust Litig.*, Civ. A. No. 08-2002, 2016 WL 4922706, at *5 (E.D. Pa. Sept. 13, 2016).

Several other courts have expressed similar doubts regarding the Capper-Volstead Act's reach given the changed economic realities the agriculture industry has undergone in the 100 years since the Act's passage. *See In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1153-54 (D. Idaho 2011) ("[T]he Court agrees with Justice Brennan's concern [that affording fully-integrated operations Capper-Volstead immunity] . . . . would read 'the farmer' requirement out of the statute, ignore congressional intent, and create the potential for abuse."); *United States v. Hinote*, 823 F. Supp. 1350, 1357-58 (S.D. Miss. 1993) ("The court concludes, as did Justice Brennan, that such an expansion of the Act's coverage is simply not supported by the purpose behind its enactment. . . . Justice Brennan's interpretation of the Capper-Volstead Act is not only persuasive, but, in the court's opinion, it is the only construction of the statute which is plausible in view of the Act's legislative history."); *Ripplemeyer v. Nat'l Grape Coop. Ass'n, Inc.*, 807 F. Supp. 1439, 1457 (W.D. Ark. 1992) ("The Court has made clear that when agricultural industries vertically integrate, including non-farmer middlemen such as processors, the economic role of these middlemen exceeds the conduct Congress intended to permit through the Capper-Volstead exemption."); *see also United States v. Elm Spring Farm*, 38 F. Supp. 508, 511-12 (D. Mass. 1941) (rejecting application of Capper-Volstead immunity because the cooperative included members "to give the set-up the color of a producer rather than a handler"), *modified on other grounds*, 127 F.2d 920 (1st Cir. 1942).

12

had no ownership interest in Buona) negotiated for Buona when it dealt with Bella further muddies the waters with respect to whether the parties' agreement and course of dealing impermissibly "join[ed] together separate decisionmakers." *Am. Needle*, 560 U.S. at 195.

Because the Court cannot conclude that the EMMC/AMC has shown that Bella and Buona should be treated as a single entity incapable of conspiring with one another, it finds that the EMMC/AMC cannot invoke the protection of the Capper-Volstead Act. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d at 390 n.11. The Court declines to extend its analysis further and will not pass judgment on any other arguments raised by the parties. *See In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d at 286 n.13.

## VI.     Conclusion

For the reasons discussed above, the Court will deny the EMMC's Motion for Summary Judgment and grant Winn-Dixie's Motion for Summary Judgment. An Order consistent with this Memorandum will be docketed separately.