**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WINN DIXIE STORES, INC.** | : | **CIVIL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **EASTERN MUSHROOM MARKETING** | : | |
| **COOPERATIVE, INC.,** *et al.* | : | **NO. 15-cv-6480** |
| | : | |

**DEFENDANTS' INITIAL PROPOSED JURY INSTRUCTIONS[1]**

---

[1] Defendants have provided proposed jury instruction some of which may apply or not apply depending to the evidence adduced by the parties at trial of this case. Thus, they eserve the right to add, delete or modify the proposed jury instructions at the conclusion of the evidence at trial and upon consideration of any Rule 50 motion that may be made by the Parties.

1

## GENERAL INSTRUCTIONS

### 1.  Introduction and Role of Jury

You have two main duties as jurors.  The first one is to decide the facts, what the facts are from the evidence that you saw and heard here in the courtroom.  You are the sole judges of the facts.  It is your judgment and your judgment alone to determine what the facts are, and nothing I have said or done during trial was meant to influence your decision about the facts.

Your second duty is to take the law as I have given it to you and apply it to these facts. My role is to be the judge of the law.  It is my duty to advise you about the law that you should apply to the facts as you find them.  You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy.  You are bound by the oath that you took at the beginning of this trial to follow the instructions that I give you.  This includes the instructions that I gave you before trial, during the trial, and these instructions as well.

Source:  *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009); Jury Instructions from *In re: Processing Egg Products*, No. 08-md-02002, ECF No. 1781 (Transcript of Trial Day 21) (E.D. Pa. July 12, 2018); adapted from Third Circuit Model Jury Instructions Section 1.1.

## 2. Multiple Parties

There are many Defendants in this case. You must decide the case as to each Defendant separately, even though there are multiple Defendants, and there may be evidence and issues that are common across defendants.

Source: Jury Instructions from *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, ECF No. 341 (Transcript of Proceedings on Aug. 29, 2013) (N.D. Cal. Aug. 30, 2013).

### 3.  Burden of Proof

This is a civil case. Winn Dixie Stores, Inc. is the party that brought this lawsuit.  The Defendants, [list Defendants remaining by time of trial], are the parties against which the lawsuit was filed. The Plaintiff, Winn Dixie has the burden of proving its case by what is called the preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the opposing evidence, has the more convincing force and makes you believe that something is more likely true than not true.  That means that Winn Dixie must prove to you, in light of all the evidence, that its claims are more likely so than not so.  To say it differently: if you were to put the evidence favorable to the Winn Dixie and the evidence favorable to the Defendants on opposite sides of the scales, the Plaintiffs would have to make the scales tip on each of their sides of the scale.  If the scale does not tip in favor of either Winn Dixie or Defendants, you must Winn Dixie has failed to meet its burden, and therefore your verdict must be for the Defendants.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Source: *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009); Third Circuit Model Jury Instructions § 1.10

### 4.  Nature of Evidence

The evidence from which you are to find the facts consists of the following:

1.  The testimony of the witnesses;

2.  Documents and other things received as exhibits;

3.  Any facts that are stipulated--that is, formally agreed to by the parties; and

4.  Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.  Statements, arguments, and questions of the lawyers for the parties in this case;

2.  Objections by lawyers.

3.  Any testimony I tell you to disregard; and

4.  Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection is made. Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the

5

answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered to be stricken struck from the record and you will be instructed to disregard this evidence.  Do not consider any testimony or other evidence that is satricken or is excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your recollection.  The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law and the rules.  An attorney may argue all reasonable conclusions from the evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally believes or thinks about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of these proceedings.

Source:  Third Circuit Model Jury Instructions § 1.5; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009).

## 5.  Direct and Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses - something the witness  has seen, felt, touched or heard or did.  If a witness testified that he saw it raining outside, and you

6

believed him, that would be direct evidence that it was raining.  Another form of direct evidence

is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is

proof of one or more facts from which you could find another fact.  If someone walked into the

courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that

would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you.  The law makes no

distinction in the weight to be given to either direct or circumstantial evidence.  You are to

decide how much weight to give any evidence.

Source:  Third Circuit Model Jury Instructions § 1.6; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009).

### 6. Evidence Introduced for Limited Purpose

At times, I have instructed you that certain evidence can only be used by you for a certain

particular limited purpose.  Such can be considered by you as evidence that for that limited

purpose alone.  It may not be used for any other purpose.

Source:  Adapted from Third Circuit Model Jury Instructions § 2.10; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009).

### 7. Stipulations

The parties have agreed that certain stipulated facts are true, and those stipulations have

been read to you during this trial.  You must therefore treat these facts as having been proved for

the purposes of this case.

Source:  Adapted from Third Circuit Model Jury Instructions § 2.4

**8. Credibility of Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner or demeanor while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

In determining the weight to give the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial. You

8

have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness, or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that a witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse in memory or an intentional falsehood.  And that may depend on whether it concerns an important fact or an unimportant detail.

Source:  Third Circuit Model Jury Instructions § 1.7; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

9

**9. Deposition Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Certain depositions have been presented to you by video. Deposition testimony is entitled to the same consideration and is to be judged in the same way as if the witness had been present to testify.

Source:  Adapted from Third Circuit Model Jury Instructions § 2.5

**10. Expert Testimony**

You have heard testimony containing opinions from [list of testifying expert witnesses]. Opinion testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired through special study or experience.

In weighing this opinion testimony, you may consider the witness's qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinions of these witnesses should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

Where a witness giving opinion testimony has relied on assumptions or mathematical models in arriving at his or her conclusions, you may consider whether the witness has properly justified the validity of those assumptions or mathematical models.

In deciding whether to accept or rely upon the opinion of expert witnesses, you may consider any bias that the witnesses may have, including any bias that may arise from evidence that they have been or will be paid for reviewing the case and testifying.

Source:  Adapted from Third Circuit Model Jury Instructions § 2.11; *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 406 n.36 (3d Cir. 2016).

### 11. Conflicting Expert Testimony

The testimony of these witnesses providing opinion testimony is in conflict. They disagree. You must remember that you are the sole trier of facts, and where their testimony relates to a question of fact, it is your job to resolve the disagreements. The way you resolve the conflict between these witnesses offering opinion testimony is the same way that you decide other fact questions, and the same way that you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion, and the witness' motive, if any, for testifying. You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment and common sense. You may reject the testimony of any opinion witness in whole or in part, if you conclude that the reasons given in support of an opinion are unsound, or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

Jury Instructions from *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, ECF No. 341 (Transcript of Proceedings on Aug. 29, 2013) (N.D. Cal. Aug. 30, 2013).

SL1 1774119v1 107141.00002

**12.  Charts and Summaries in Evidence**

The parties have presented exhibits in the form of charts graphs and summaries.  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

Source:  Third Circuit Model Jury Instructions § 2.7

13

### 13.  Deliberations

When you retire to the jury room to deliberate you must select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict.  Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors.  Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence.  But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any

information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.  Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and if you reach unanimous agreement as to

your verdict, you will fill it in, and have your foreperson date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

Source:  Third Circuit Model Jury Instructions §3.1

16

## LIABILITY INSTRUCTIONS

### 14. Description of Case

The Plaintiffs bring two claims against various Defendants.  Note that these two claims involve different Defendants; the first claim is brought against all Defendants, where the second claim is only brought against those Defendants who were members of the EMMC.

(1) First, Plaintiffs bring a claim under Section 1 of the Sherman Act, a federal antitrust statute.  Plaintiffs allege that Defendants violated antitrust laws by unreasonably engaging in a single overarching conspiracy between 2001 and 2008 comprised of two alleged activities undertaken with the alleged goal of artificially raising prices to supra-competitive levels. Plaintiffs bring this claim against the following Defendants: [list Defendants remaining by time of trial].

To prevail on this claim, Plaintiffs must show that a Defendant entered into a single overarching conspiracy with two component activities (1) circulation of minimum or target price lists along with rules and regulations requiring the members to charge those prices to some customers subject to various exceptions and exclusions and (2) acquiring properties that were historically used for mushroom farming in order to reduce the supply of fresh agaricus mushrooms available to fresh market customers.  Plaintiff must show by a preponderance of evidence that each Defendant joined this alleged conspiracy: that the conspiracy was anticompetitive in that it deprived the marketplace of the benefit of competition and resulted in prices higher than they would be but for the alleged conspiracy; and finally Winn Dixie as  a private plaintiff must show by a preponderance of credible evidence that it itself was  financially injured by the alleged conspiracy.

Defendants deny that there was a single overarching conspiracy.  In addition, Defendants assert that Winn Dixie's claims must fail because, even if there was a single overarching

conspiracy and even if the conspiracy can be shown to be anticompetitive  Plaintiff have failed to show that Defendants caused injury or to the marketplace in general and/or to Winn Dixie.

Second, the second prong of Publix and Giant Eagle's alleged overarching conspiracy under Section 1 of the Sherman Act is an allegation that that the EMMC and EMMC members violated antitrust laws by engaging in a single conspiracy between 2001 and 2008 to reduce the volume of fresh agaricus mushrooms available in the fresh market through the acquisition of properties that were historically used as mushroom farms.  The Plaintiffs bring this claim against the following Defendants:  [list Defendants remaining by time of trial, excluding Defendants who were not EMMC members]

To prevail on this claim, Plaintiffs must show that a Defendant entered into an agreement with a competitor or potential competitor to limit the volume of agaricus mushrooms available to fresh market customers through these transactions, and that this agreement affected interstate commerce and caused Plaintiffs to suffer an injury to their business.[2]  For each Defendant, Plaintiffs must also show that they themselves purchased fresh agaricus mushrooms at inflated prices from (1) a named Defendant that was an integrated grower and distributor, (2) a distributor Defendant that was a co-conspirator in the conspiracy to reduce mushroom volume, or (3) a distributor that was owned or controlled by a named Defendant.

Defendants deny that there was a unlawful conspiracy to reduce the volume of  agaricus mushroom available to fresh market customers.  Defendants also argue that, even if there was a single conspiracy, Winn Dixie has failed to show that it incurred financial injury or overcharges

---

[2] Defendants object to instructing the jury on the *per se* rule and propose this instruction only because of the Court's prior rulings on the standard for Class Plaintiffs' supply control claims. Defendants still respectfully contend that the supply control claims must be analyzed under the rule of reason and reserve their right to appeal this Court's decision applying the *per se* rule to the supply control claims.  *See, e.g.*, Dkt. No. 969 at 2 n.1.

SL1 1774119v1 107141.00002

among other things, the volume of fresh agaricus mushrooms increased during the relevant period and there is evidence that—because of a lack of demand—Defendants sold agaricus mushrooms of fresh market quality to processors below the cost of production.

### 15.  First Claim: Sherman Act Section 1 – Overarching Conspiracy

The Plaintiffs' first claim is under Section 1 of the Sherman Act.  The Plaintiffs challenge the conduct of the following Defendants in forming the EMMC as a means to implement certain pricing policies relating to sales of fresh agaricus mushrooms. : [list of Defendants remaining at trial]

Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.  To establish a violation of Section 1 of the Sherman Act under the Price Fixing Claim, the Plaintiffs must prove the following:

(1)  the existence of a contract, combination, or conspiracy between or among at least two separate entities; and

(2)  that the contract, combination, or conspiracy is anticompetitive in that it deprived customers in the relevant product and geographic markets of the benefits of competition and resulted in supra-competitive pricing in a valid antitrust market; and

(3)  that the restraint is unreasonable (presumed with respect to the supply control program only) **and**

(4)  that the restraint affects interstate commerce (stipulated) **and**

(5)  that the restraint caused Plaintiffs to suffer an injury to its business or property by paying prices that it would not have paid but for the alleged restraints.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at B-2, based on Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

### 16.  Conspiracy or Combination Element

The first element that Plaintiff prove in showing a violation of Section 1 of the Sherman Act is that a particular Defendant participated in a conspiracy to restrain trade.  A conspiracy is an agreement or understanding between two or more persons to restrain trade.

Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)  that the alleged conspiracy existed; and

(2)  that a Defendant knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons or entities. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme.  To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement.  The agreement itself may have been entirely unspoken.  A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.  To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

SL1 1774119v1 107141.00002

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where parties separately accept invitations to participate in a plan to restrain trade. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade that constitutes a conspiracy. Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

If you find that Plaintiffs have proven by a preponderance of the evidence that there was an overarching conspiracy to charge supra-competitive prices then you must determine which Defendants, if any, were members of that conspiracy.

SL1 1774119v1 107141.00002

If you find that Plaintiffs have failed to prove by a preponderance of the evidence that there was an overarching conspiracy to charge supra competitive prices, then you must find in Defendants' favor on this claim and you must discontinue any further evaluation of Plaintiffs' alleged claim.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at A-13.

SL1 1774119v1 107141.00002

### 17.  Liability as a Member of an Organization

During this trial, you have heard discussion of the Eastern Mushroom Marketing Cooperative, or EMMC, which is a cooperative organization.  Businesses that are actual or potential competitors, such as the Defendants here, may lawfully form such organizations to advance common interests and may communicate and meet with one another in furtherance of lawful trade association activities.  For example, such organizations may lawfully keep members informed and hold meetings among their members for topics such as new or changed services, technology, standard practices, or legislation and regulations in the industry.

The issue you must decide is whether Plaintiffs proved that a particular Defendant used its membership in the organization in an anticompetitive manner.

A person or business that belongs to an association and attends association meetings does not become liable for violating the antitrust laws simply because the association is liable for such violation. Instead, the Plaintiffs must prove that a particular Defendant knew of and participated in the conduct that you find unlawful.  Active participation, rather than merely passive presence, is necessary to show that a particular Defendant agreed to the conspiracy.  Identification of a particular Defendant's role in the organization is not sufficient to show that a particular Defendant agreed to the conspiracy.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at C-54; ABA Model Jury Instructions in Civil Antitrust Cases (2016) at C-63; *Winn Dixie Stores, et al. v. E. Mushroom Mktg. Coop.*, No. 15-cv-06480, Slip Op. at 8-11 (E.D. Pa. Jan. 8, 2019); *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 72-23 (E.D. Pa. 2011)

23

### 18. Parallel Conduct

The Plaintiff contend that all Defendants engaged in similar conduct, namely setting prices in accordance with prices set forth in a series of price list.  The Plaintiffs further contend that this conduct, when considered with other evidence, shows that a conspiracy existed among all Defendants.  The mere fact that certain Defendants may have raised prices simultaneously does not by itself establish the existence of a conspiracy among Defendants.  Their behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions.  For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas.  Moreover, under certain conditions, a business may lawfully adopt the same prices, conditions of sale, or other practices, as its competitors. Thus, the mere exchange of price information or circulation of price lists in not unlawful under the Sherman Act.  Moreover, participation in a trade group association and/or attending trade group meetings, even those meetings where key facets of the an alleged price fixing conspiracy were adopted or advanced, are not enough on their own to give rise to the inference of *agreement* to the conspiracy.[3] ..

---

[3] *See Ins. Brokerage,* 618 F.3d at 349 ("[N]either defendants' membership in the [trade association], nor their common adoption of the trade group's suggestions, plausibly suggest conspiracy.... While these allegations [of defendant-brokers' membership in a trade group and their common adoption of the trade group's suggestions], indicate that the brokers had an opportunity to conspire, they do not plausibly imply that each broker acted other than independently ...." (citations omitted)); *see also Travel Agent,* 583 F.3d at 910–11 ("The fact that [defendants] gathered at industry trade association meetings during the seven-year period when defendants reduced commission rates should not weigh heavily in favor of suspecting collusion.. *LaFlamme v. Societe Air France,* 702 F.Supp.2d 136 (E.D.N.Y.2010) ( "[M]embership and participation in a trade association alone does not give rise to a plausible inference of illegal agreement." (citing *Twombly,* 550 U.S. at 567 n. 12, 127 S.Ct. 1955 and *In re Elevator Antitrust Litig.,* No. 04–CV–1178, 2006 WL 1470994, at *30–31 (S.D.N.Y. May 30, 2006), *aff'd,* 502 F.3d 47 (2d Cir.2007)); *In re Graphics Processing Units Antitrust Litig.,* 527 F.Supp.2d 1011, 1024 (N.D.Cal.2007) (determining that because "Plaintiffs have not pleaded that defendants ever

Moreover, a mere opportunity to conspire does not, standing alone, plausibly suggest an illegal agreement because [the defendants'] presence at such trade meetings is more likely explained by their lawful, free-market behavior." (citation omitted));

You must decide whether each individual Defendant's allegedly similar conduct was, more probably than not, the result of an agreement or understanding among them.  In doing so, you may consider the conduct of each individual Defendant along with other evidence.  You cannot infer that a conspiracy existed unless you find that the evidence, when viewed as a whole, makes it more likely than not that the Defendants had an agreement or understanding with one another to engage in unlawful conduct as I have explained, as opposed to acting in otherwise lawful conduct.  In making this determination, you should consider the similar conduct against the entire background in which it took place.  If, after considering all of the evidence, you conclude that Plaintiffs satisfied their burden of proof as to each Defendant that a particular Defendant's similar conduct was the product of an agreement or understanding with one another rather than its own independent decisions, you must find for Plaintiffs on the question of whether Defendants participated in a conspiracy.

However, if you find that Winn Dixie has  failed to satisfy their burden of proof as to each Defendant that that Defendant participated in a conspiracy, you must return a verdict for that Defendant.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at A-17.  See also cases cited in note 3 *supra*.

---

met and agreed to fix prices; they plead at most that defendants had the opportunity to do so because they attended many of the same meetings.").

25

**19. Single Enterprise**

In deciding whether a Defendant participated in a conspiracy, you may be called on to decide whether that Defendant was part of a "single enterprise" with another entity. Where separate persons or corporations are commonly controlled or substantially integrated in their operations, they may be considered a "single enterprise" under our antitrust laws. No combination or conspiracy is possible under the law between corporations that are commonly controlled or substantially integrated and that regularly conduct their business affairs in such a manner as to constitute, in effect, a single business entity or enterprise. The law permits, and, in fact, encourages, cooperation inside an integrated business enterprise to better facilitate competition between that enterprise and other producers. In other words, if a Defendant makes an agreement with entities in which it is in a "single enterprise," and no other entities, then you must find that this Defendant did not enter into a conspiracy.

Factors you may consider in deciding whether entities are part of a single enterprise include whether they share common ownership; whether they share expenses, capital expenditures, profits or losses; whether the businesses they are engaged in are managed independently; and whether the coordination between the entities is necessary to that business.

Source: Adapted from *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009).

SL1 1774119v1 107141.00002

**20. Participation and Intent**

Before you can find that a Defendant was a member of the conspiracy alleged by plaintiff, the evidence must show that this Defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

The mere fact that a particular Defendant may have engaged in certain actions that were consistent with the overall conspiracy alleged by the Plaintiffs does not necessarily mean that this Defendant acted knowingly in joining a conspiracy. If the alleged co-conspirators acted similarly but independently of one another, without any agreement or understanding between the two or more of them, then there would be no conspiracy.

In determining whether a Defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular Defendant's statements and conduct, including any evidence of that Defendant's knowledge and participation in the events involved and any other evidence of that particular Defendant's participation in the conspiracy alleged.

You may not find that a Defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing.

If you find that Plaintiffs have proven that a Defendant acted knowingly or with intent to further the conspiracy, then you should continue to evaluate the remainder of Plaintiffs' alleged claim as to that Defendant.

27

If you find that Winn Dixie has failed to prove that one or more Defendants acted knowingly or with intent to further the overarching conspiracy to fix prices, then you must find in Defendants' favor on this claim as to that Defendant and you must discontinue any further evaluation of Plaintiffs' alleged claim as to that Defendant.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016) at A-21; *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463 (1978); *In re Processed Egg Products Antitrust Litig.*, No. 08-md-02002, Transcript of Day 21 of Trial, ECF No. 1781 (E.D. Pa. July 12, 2018).

**21. Withdrawal**

To find that a Defendant has withdrawn from or abandoned a conspiracy, the evidence must show that the Defendant:

(1)  undertook affirmative steps, inconsistent with continued participation in the conspiracy, to disassociate from the conspiracy; and

(2)  acted in a manner reasonably calculated to notify coconspirators that it was no longer participating in the conspiracy.  Such notification does not require evidence that the Defendant directly informed each alleged co-conspirator of his intention to withdraw.

If you have concluded that a Defendant was a member of a conspiracy, that Defendant bears the burden of proving, by a preponderance of the evidence, that it withdrew from the conspiracy by some affirmative act.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at A-23; *United States v. United States Gypsum Co.*, 438 U.S. 422, 464-65 (1978); *United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 466–67 (3d Cir. 1979).

**22.  Unreasonable Restraint of Trade under Rule of Reason**

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must determine, therefore, whether the price-fixing restraint  challenged here: (1) that Defendants fixed the price of fresh agaricus mushrooms sold to fresh market customers; (2) that Defendants acquired properties that were historically used for mushroom farming to reduce the volume of fresh agaricus mushrooms available to fresh market customers; unreasonable.  These three activities must all be part of a single overarching conspiracy as opposed to, for example, two different conspiracies that were each independent of each other.

To determine whether these restraints constitute one conspiracy, you must look to whether there was a common goal among the conspirators.  Second, whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators.  And, third, the extent to which the participants overlap in the various dealings.  If, after considering these factors, you find that all three of these activities were part of the same conspiracy to artificially inflate the price of fresh agaricus mushrooms, only then must you determine if the actions taken were reasonable.

In making this determination, you must first determine whether Winn Dixie has  proven that the challenged restraints have resulted in a substantial harm to competition in a valid antitrust market.  If you find that Plaintiffs have met this burden, then you must consider whether the restraints produce countervailing competitive benefits.  If you find that it does, then you must balance the competitive harm against the competitive benefit.  The challenged restraints are illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

The first step of this analysis is determining whether the Plaintiffs have met their burden to prove what the relevant valid antitrust market is.  If you find that the Plaintiffs have failed to

30

meet their burden of showing a valid antitrust market, by both product and geography, then the

Plaintiffs cannot show that the Defendants' conduct unreasonably restrained trade.

I will now review each step of the analysis in more detail.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at C-3; *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 830 (3d Cir. 2010); *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 335 (3d Cir. 2018); *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284, 201 L. Ed. 2d 678 (2018); Jury Instructions from *In re: Processing Egg Products*, No. 08-md-02002, ECF No. 1781 (Transcript of Trial Day 21), at 126–27 (E.D. Pa. July 12, 2018).

### 23.  Relevant Product Market

The basic idea of a relevant product market is that the products within it are reasonable

substitutes for each other from the buyer's point of view; that is, the products compete with each

other. In other words, the relevant product market includes the products that a consumer believes

are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test

with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need

not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for

example, if consumers seeking to cover leftover food for storage considered certain types of

flexible wrapping material--such as aluminum foil, cellophane, or even plastic containers--to be

reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must

consider whether a small but significant and non-transitory increase in the price of one product

would result in enough customers switching from that product to another product such that the

price increase would not be profitable.  In other words, will customers accept the price increase

or will so many switch to alternative products that the price increase will be withdrawn?

Generally speaking, a small but significant and non-transitory increase in price is approximately

a 5 percent increase in price not due to cost factors.  If you find that customers would switch and

that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of Plaintiffs and Defendants regarding who their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

The Court has already determined that the term "fresh agaricus mushrooms" includes agaricus mushrooms of fresh market quality, whether they were sold to fresh customers or processor customers.  In this case, Plaintiffs contend that the relevant product market is fresh agaricus mushrooms sold only to fresh customers.  By contrast, Defendants argue that Plaintiffs have failed to prove the proper relevant product market, particularly by failing to account for agaricus mushrooms of fresh market quality that were sold to processors.  If you find that Plaintiffs have proven a relevant product market, then you should continue to evaluate the remainder of Plaintiffs' alleged claim.

If you find that Plaintiffs have failed to prove a relevant product market, then you must find in Defendants' favor on this claim and you must discontinue any further evaluation of Plaintiffs' alleged claim.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at A-108; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009); *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 168 (E.D. Pa. 2016).

### 24.  Relevant Geographic Market

The relevant geographic market is the area in which a Defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  The geographic market is best described as the area where customers would look to buy the product, rather than the area where sellers would attempt to sell the product.

When analyzing the relevant geographic market, you can consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence.  In this case, Plaintiffs claim that the relevant geographic market is the entire non-Western United States.  By contrast, Defendants assert that the relevant market is a series of regional markets.  In determining whether Plaintiffs met their burden and demonstrated that their proposed geographic market is proper, you may take into account the commercial realities of the industry being considered, including:

- the geographic area where each Defendant's customers are located;

— the geographic area to which customers have turned for supply of the product;

— the geographic area to which customers have seriously considered turning; and

— issues customers consider in selecting suppliers, including convenience and the transportation cost differences between areas.

If you find that Plaintiffs have proven a relevant geographic market, then you should continue to evaluate the remainder of Plaintiffs' alleged claim.

If you find that Plaintiffs have failed to prove a relevant geographic market, then you must find in Defendants' favor on this claim and you must discontinue any further evaluation of Plaintiffs' alleged claim.

Source:  Adapted from ABA Model Jury Instructions for Civil Antitrust Cases (2016) at A-113; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009); *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 726 (3d Cir. 1991) ("the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product"); *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 212 (3d Cir. 2005) ("The geographic scope of a relevant product market is a question of fact to be determined in the context of each case in acknowledgment of the commercial realities of the industry being considered").

### 25.  Proof of Competitive Harm

As I mentioned, to prove that the challenged restraints are unreasonable, Winn Dixie first must demonstrate that the restraints have resulted in a substantial harm to competition.  Harm that may occur merely to the individual business of a plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single purchaser or group of purchasers does not necessarily mean that there has been harm to competition.

Furthermore, Plaintiffs must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. Plaintiffs must prove the existence of a relevant market.  If you find that Plaintiffs did not prove the existence of a relevant market, Plaintiffs cannot establish that the alleged restraints resulted in substantial harm to competition.

If you find that Plaintiffs have proven the existence of a relevant market, then you must determine whether Plaintiffs also have proven that the alleged restraints have had a substantial harmful effect on competition in that market.  A harmful effect on competition, or competitive harm, means a reduction in competition that results in the loss of some of the benefits of competition, such as increased output or higher product quality.  If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you must find that the challenged conduct was not unreasonable.

In determining whether the challenged restraints has produced competitive harm, you may look at the following factors:

- the intended, actual, and probable effect of the restraint on prices, output, product quality, and service;

35

- the purpose and nature of the restraint;

- the intention of the Defendants' in adopting the restraint

- the nature and structure of the relevant market, including the profitability of Defendants' businesses;

- any facts unique to the fresh agaricus mushroom industry involving the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- Whether the Defendants possess market power.

If Winn Dixie seek to show competitive harm through an increase in prices, then merely showing that the challenged restraints led to higher prices at some point in time is not sufficient; the Plaintiffs must show that the challenged restraints reduced competition in a way that caused prices to increase in a non-transitory manner.  It is up to you to determine, if prices increased, whether that increase was transitory or sustained and whether that increase came from a reduction in competition or not.  It is possible for a restraint to lead to higher prices in a way that is procompetitive, for example, if the higher prices reflect higher demand for the good or an increase in the quality for the good.  In making these determinations, you should consider whether any higher prices, over the period of time that they may have existed, resulted from factors other than a loss of competition, such as the cost of producing the good; the profitability of the business; the quality of the good; or other circumstances that would render the prices reasonable in the context of the relevant market.  You should also consider whether suppliers entered or exited the market, and whether suppliers would have entered or exited in the absence of the restraint.

SL1 1774119v1 107141.00002

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. Other factors that you may consider in determining whether a Defendant has market power include other ways that the Defendant's power to raise prices might be limited, for example, through the threat of entry from others or by the market power of purchasers. If a Defendant does not possess a substantial market share, it is more probable than not that the Defendant does not possess market power. If the Defendant does not possess market power, it is more probable than not that the alleged restraint did not result in a substantial harmful effect on competition in the market.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at C-5; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009); *Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72, 83 (3d Cir. 1977) (holding that "the intent or purpose underlying the restraint is a crucial variable in aiding the court to assess the competitive effects of the restraint"); *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 211 (3d Cir. 2005) (explaining that "knowledge of intent may help the court to interpret facts and to predict consequences" even though "a good intention will [not] save an otherwise objectionable regulation" (quoting *Board of Trade of the City of Chicago v. United States*, 246 U.S. 231, 238-39 (1918))); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 6322383, at *8 (E.D. Pa. May 26, 2015) (holding that "[i]n applying the rule of reason, the fact finder 'must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect'" (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997))); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 449 (9th Cir. 1979) ("In determining whether a restraint is unreasonable, the primary considerations are whether the intent of the restraint is anticompetitive and whether the restraint itself has significant anticompetitive effects"); *AAA Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 705 F.2d 1203, 1207 (10th Cir. 1982) (explaining that "a rule-of-reason analysis [] requires scrutiny of the intent and effect of the restrictions"); *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) (focusing on profit margins as a relevant fact in determining whether competitive harm had been shown); *Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*, 806 F.2d 722, 727 (7th Cir. 1986) (Judge Easterbrook) (explaining that because "[a]ny form of vertical restraint affects prices … The question is not whether the arrangement affects moment-to-moment rivalry in a

way that raises today's prices, but whether this effect is associated with potential benefits to consumers that are worth the price. Higher quality may come with higher prices. … [F]ixation on the short run effects on price is unlikely to yield a useful answer to such a complex question."); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012) ("allegations that an agreement has the effect of … increasing prices to consumers does not sufficiently allege an injury to competition" because higher prices may be "fully consistent with a free, competitive market").

### 26.  Pro-competitive Benefits

If you find that Plaintiffs have proven that the challenged restraints resulted in substantial

harm to competition in a relevant market, then you next must determine whether the restraints

also benefits competition in other ways.  Examples of procompetitive benefits include

maintaining a stable supply of the product, price stability, increases in output, improvements in

quality, or improvements in service.  In evaluating whether the challenged restraints benefitted

competition, you should also consider the intention of the Defendants in adopting the restraints.

The Defendants bear the burden of showing pro-competitive benefits.

If you find that the alleged restraints do result in competitive benefits, then you also must

consider whether the restraints was reasonably necessary to achieve the benefits.    I will now

explain to you the factors you should weigh in determining whether the alleged restraints were

reasonable.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at
C-8; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of
Trial, ECF No. 235 (D. Del. Oct. 8, 2009); *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 209 (3d
Cir. 2012); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012) (providing
"assur[ing] supply [and] price stability" as examples of procompetitive benefits); *N. Am. Soccer
League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 44 (2d Cir. 2018) (holding that
"[c]ourts can also consider whether evidence of a defendant's stabilizing behavior constitutes a
procompetitive benefit" in the rule of reason context); *Stop & Shop Supermarket Co. v. Blue
Cross & Blue Shield of R.I.*, 373 F.3d 57, 65 (1st Cir. 2004) (listing "stable long-term supply
[and] predictable prices" as "legitimate economic benefits"); *Clorox Co. v. Sterling Winthrop,
Inc.*, 117 F.3d 50, 60 (2d Cir. 1997) ("While … a good intention will not relieve a party from
civil antitrust liability, intent is nonetheless important in judging the pro-competitive purposes,
and thus the likely overall competitive effects, of an alleged restraint").   *See also In re
Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 6322383, at *13 (E.D. Pa.
May 26, 2015) (finding it relevant to the issue of whether per se liability applied that Defendants
contended that "the EMMC member companies believed that the minimum pricing and supply
control policies were necessary to prevent further farm closings and bankruptcies heralded by the
bankruptcy of a large Canadian-based mushroom producer operating several growing, packaging
and distribution facilities in the United States").

### 27.  Weighing Pro-competitive Benefits and Anti-competitive Harms

If you find that the alleged restraints were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraints.

If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraints are not unreasonable.  If the competitive harm does substantially outweigh the competitive benefits, then the challenged restraints are unreasonable.  In conducting this analysis, you must consider the benefits and harm, if any, to competition as a whole and to all consumers, not just to a single competitor or consumer or group of competitors or consumers. Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits. If you find that Plaintiffs have proven that the anticompetitive effect of the conduct substantially outweighs the procompetitive benefits, then you should continue to evaluate the remainder of Plaintiffs' alleged claim.

If you find that Plaintiffs have failed to prove that the anticompetitive effects of the conduct substantially outweighs the procompetitive benefits, then you must find in Defendants' favor on this claim and you must discontinue any further evaluation of Plaintiffs' alleged claim.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at C-9; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

In this case the supply control program has been found to have been unreasonable as a matter of law.  Thus, if your find that there was a separate conspiracy pertaining solely to the EMMC supply control program engaged in by the following defendants                who were members of the EMMC when the supply control program was in effect, and that Plaintiff has shown by a preponderance of evidence that such conspiracy was anticompetitive then you

40

need you are to presume that the separate conspiracy to engage in or participate in the the supply control was unreasonable.

### 28.  Interstate or Foreign Commerce

The Sherman Act applies only to restraints that affect interstate or foreign commerce.  In this case, Plaintiffs contend that the restraints at issue affects interstate commerce.  Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state.

To affect interstate commerce, it is not necessary that the restraints themselves occur in multiple states or directly affects transactions that span across multiple states.  It is enough if some activities of Defendants that were affected by the restraints had some effect on interstate commerce.

<u>Source</u>: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at D-10

SL1 1774119v1 107141.00002

### 29.  Natural Persons as Defendants

Three of Defendants – John Pia Michael Pia and Robert Feranto Jr. (deceased) – are people sued in their individual capacity, who will be held responsible as individuals if found liable.  In order for an individual person to be held liable himself, when acting on behalf of a corporation, Plaintiffs must show that the individual actively and knowingly participated in a conspiracy designed to achieve anti-competitive ends, either by taking direct action himself to violate antitrust laws or by showing knowingly approving or ratifying "inherently unlawful" conduct that violated antitrust laws.  Inherently unlawful conduct is conduct that a reasonable person would understand to be unlawful and was designed to achieve anticompetitive ends.

Source:  *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 852 (N.D. Cal. 1979), aff'd sub nom. *Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981) (explaining that participation is based on approval or ratification, "[s]uch approval or ratification must, however, be of acts or conduct which are inherently unlawful"); *A & D Supermarkets, Inc., No. 2 v. United Food & Commercial Workers, Local Union 880*, 732 F. Supp. 770, 779 (N.D. Ohio 1989); *Brown v. Donco Enterprises, Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) (explaining that under the *Murphy Tugboat* standard, "[i]ndividual liability under the antitrust laws can be imposed only where corporate agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends").  *Cf. Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 827, 833 n.8 (3d Cir. 2010) (noting that the District Court adopted the rule in *Murphy Tugboat* and concluding that "only *per se* antitrust violations are inherently unlawful," without deciding whether the district court acted correctly in making such a determination).

42

**30.  Second Claim: Sherman Act Section 1: Volume Restrictions (Provisional)**

Plaintiffs also claim that those Defendants who are members of the EMMC are competitors and have violated the Sherman Act by engaging in a single conspiracy between 2001 and 2005 to reduce the volume of fresh agaricus mushrooms available in the fresh market through the acquisition of properties that were historically used as mushroom farms.  Plaintiffs bring this claim against the following Defendants: [list Defendants remaining by the time of trial who were EMMC members]

To prevail on this claim against a Defendant, Plaintiffs must prove, as to that Defendant, each of the following elements by a preponderance of the evidence:[4]

    (1)  Defendants were, at the relevant times, competitors or potential competitors;

    (2)  Defendants entered into an agreement;

    (3)  Defendants agreed to limit the production of fresh agaricus mushrooms through their real estate transactions;

    (4)  the agreement occurred in or affected interstate commerce;  and

    (5)  Plaintiffs were injured in its business or property because of the agreement.

If you find that the evidence is sufficient to prove all five elements as to a particular Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' claim with respect to an agreement to reduce the volume of fresh agaricus mushrooms.  If you find that the evidence is insufficient to prove any of these elements as to a particular Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' claim that a particular Defendant conspired to reduce the output of fresh agaricus mushrooms.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at C-42; *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2015 WL 6322383 at

---

[4] Defendants object to instructing the jury on the *per se* rule for two reasons; First the supply control activities may become irrelevant to this case by virtue of the Court's ruling on Defendants' motion in limine to preclude evidence of same because Plaintiffs expert has failed to measure the effects of this restraint on sales to Winn Dixie and concedes that the EMMC's various supply control activities.  Moreover, even if evidence pertaining to the EMMC's supply control campaign is to some extent allowed by the Court, we will present a Rule 50 motion at the close of Plaintiffs Case and/or at the close of all evidence dismissing Winn Dixie's claims because  Plaintiffs have fail as a matter of law to make a sufficient showing that the supply control activities caused any antitrust impact or injury to Winn Dixie.  Second, Defendants only propose this instruction because of the Court's prior rulings on the standard for Class Plaintiffs' supply control claims.  Defendants still respectfully contend that the supply control claims must be analyzed under the rule of reason and reserve their right to appeal this Court's decision applying the *per se* rule to the supply control claims.  *See, e.g.*, Dkt. No. 969 at 2 n.1.

44

*16 (E.D. Pa. May 26, 2015) (characterizing the supply control program as a "straightforward agreement among the members of the EMMC").

SL1 1774119v1 107141.00002

## DAMAGES INSTRUCTIONS

### 31. Injury and Causation

If you find that Plaintiffs satisfied their burden of proof with respect to the Section 1 of the Sherman Act claim against any Defendants, you must also decide whether Plaintiffs are entitled to recover any damages from those particular Defendants.

Plaintiffs cannot recover any damages for an injury to its business or property from any Defendant unless Plaintiffs first establish three elements of injury and causation:

(1)  plaintiffs were in fact injured as a result of the Defendant's alleged violation of the antitrust laws;

(2)  the Defendant's alleged illegal conduct was a material cause of plaintiff's injury; and

(3)  plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."  For Plaintiff  to establish that they are entitled to recover damages, they must prove that they were injured as a result of a Defendant's alleged violation of the antitrust laws.  This requires that Plaintiff proves that it was fact injured by a Defendant's alleged antitrust violation.  If you find that Plaintiff have established by a preponderance of the evidence that it was in fact injured, you may then consider the amount of Plaintiffs' damages, if any.  If you find that Plaintiff has failed to prove by a preponderance of the evidence that it was injured by any Defendant's alleged antitrust violation, you cannot consider the amount of any damages and you must return a verdict in favor of Defendants.  It is important to understand that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

46

Plaintiff must also establish by a preponderance of the evidence that a Defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that Plaintiffs must have proved that they were actually damaged as a result of a Defendant's alleged antitrust violation, and not some other cause.

Finally, Plaintiff must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If the price that alleged injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws. If Plaintiff's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then plaintiff's injuries are antitrust injuries.

In summary, unless Plaintiff can establish that they were in fact injured by a Defendant's conduct, that this Defendant's conduct was a material cause of Plaintiffs' injury, and that this Plaintiffs' injury was the type that the antitrust laws were intended to prevent, then Plaintiffs are not entitled to recover damages for the injury to its business or property.

Source: ABA Model Jury Instructions in Civil Antitrust Cases (2016) at A-300; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

SL1 1774119v1 107141.00002

### 32.  Damages Introduction and Purpose

If you reach a verdict for the Defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.  If, however, you find that any Defendants violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover.  The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe Plaintiffs should, or should not, prevail in this case.

The law provides that Plaintiffs should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred.  The law does not permit you to award damages to punish a wrongdoer-- what we sometimes refer to as punitive damages--or to deter particular conduct in the future. Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016) at B-304

### 33. Calculation of Damages

The amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  You are permitted to make just and reasonable estimates in calculating damages and are not required to calculate damages with mathematical certainty or precision.    Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.  It is the burden of the Plaintiffs to prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence. However, if you find that Plaintiffs have failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016) at B-3; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

### 34. Expert Testimony on Damages

You have heard opinion testimony offered by both the Plaintiffs and the Defendants regarding whether the Plaintiffs have suffered any damages, the amount of damages to which the Plaintiffs claim they are entitled and the proper measure of damages. If you find that any of the pertinent underlying assumptions made by one of these witnesses are not reasonable , or are not proven by a preponderance of the evidence, or if you find that one witness's conclusions depend on comparing things which have not been proven to be comparable, then you should consider those facts in determining the weight you will give to their conclusions.

Source: Adapted from *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009).

### 35. Causation and Disaggregation

If you find that any Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of those Defendants. Plaintiffs bear the burden of showing that their injuries were caused by those Defendants' antitrust violation, as opposed to any other factors. If you find that Plaintiffs' alleged injuries were caused in part by those Defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that was caused by those Defendants' alleged antitrust violation.

Plaintiffs claim that they suffered injury because they paid higher prices, or overcharges, for fresh agaricus mushrooms than they would have paid if the anticompetitive conduct had not occurred. Defendants claim that, if prices increased, any increase was attributable to other factors unrelated to any alleged antitrust violation. These include changes to the underlying cost of producing mushrooms; competitive dynamics including the bankruptcy of competitors; and

other structural factors.  Plaintiffs are not entitled to recover for changes in price that resulted from these or other causes arising from the normal course of business activity.  Plaintiffs only may recover for damages, if any, actually caused by the alleged antitrust violation.

Plaintiffs bear the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes.  If you find that Plaintiffs were injured by Defendants' alleged antitrust violation, and there is a reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, then you may award damages.

However, if you find that Plaintiffs' alleged injuries were caused by factors other than the Defendants' alleged antitrust violation, then you must return a verdict for Defendants.  If you find that there is no reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016) at B-4; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

**36. Overcharge Damages**

To award damages to the Winn Dixie for any overcharges estimated by its expert witness you must find that the expert's estimate must be based on evidence and reasonable inferences. You cannot base your damages award on guesswork or speculation.  If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award any damages.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016) at B-7

### 37. Damages Limited to Direct Purchases

The Plaintiff may only recover damages for overcharges for a particular claim on mushroom sales that they directly purchased from a Defendant who was a co-conspirator in that claim, or from an entity that you found was owned or controlled by a particular Defendant who was a co-conspirator in that claim.  The Plaintiffs may not recover damages based on overcharges for a particular claim on mushroom sales that they did not directly purchase from either a Defendant who was a co-conspirator in that claim or from an entity that you found was owned or controlled by a particular Defendant who was a co-conspirator in that claim.

An entity is owned or controlled by a Defendant where the entity and the Defendant are functionally the same entity and the Defendant makes key decisions.

The Defendants argue that sales to Plaintiff of Dole branded Mushrooms from Oakshire Mushroom Sales LLC (OMF) who is not a defendants or co-conspirator in this case, werr not purchased directly by Winn Dixie from a defendant company in this case including Oakshrie Mushroom Farm,Inc. unless OMS was owned or controlled by OMF  The Plaintiff disputes this. You must decide whether sales from those entities constitute direct sales on which the Plaintiffs may recover overcharges.

Source: *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-00620-BMS, ECF No. 791, slip op. at 18-24 (E.D. Pa. Nov. 22, 2016); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 372 (3d Cir. 2005) (rejecting application of co-conspirator exception where co-conspirators were not joined as Defendants and explaining "owned or controlled" exception).

### 38. Joint and Several Liability

As I discussed earlier, there are multiple Defendants in this case that the Plaintiffs alleged participated in conspiracies.  Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy.  This means that

SL1 1774119v1 107141.00002

each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator.

If you find that any particular Defendant was not a member of the conspiracy, then that Defendant would not be liable for any damages based on Plaintiff's purchases from those alleged conspirators

If you find that Winn Dixie has proven the existence of the alleged conspiracy, that a Defendant participated in the conspiracy, and that Plaintiffs are entitled to recover damages based on the other instructions in this case, then that Defendant, absent withdrawal which I will address in a moment, would be liable for all damages caused by the conspiracy.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016) at B-329; *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-cv-00178, Proceedings from Day 11 of Trial, ECF No. 235 (D. Del. Oct. 8, 2009)

### 39. Damages After Withdrawal

If you find that a particular Defendant has withdrawn from the conspiracy, that Defendant is no longer jointly and severally liable for any damages caused by acts taken by the conspiracy after the withdrawal.  Therefore, the special verdict form instructs you to answer the question of which Defendants you find withdrew from the conspiracy, on what date those Defendants withdrew, and what portion of the damages, if any, for each claim you find that Defendant jointly and severally liable.

In calculating the total overcharge damages attributable to the conspiracy, you can only consider those sales on which the conspiracy was able to cause an actual overcharge.  If you find that a particular Defendant withdrew from the conspiracy and that the conspiracy therefore no longer caused an overcharge to be paid on that Defendant's sales, then those sales should not be included in your calculating of the total overcharge damages.

Source:  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011); *Cole's Wexford Hotel, Inc. v. UPMC*, 127 F. Supp. 3d 387, 415 (W.D. Pa. 2015); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 837 (11th Cir. 1999), amended in part, 211 F.3d 1224 (11th Cir. 2000).

### 40.  Overlapping Damages

The Plaintiffs in this case have presented two claims: a claim regarding a single overarching conspiracy to artificially inflate prices under Section 1 of the Sherman Act. If you find however, that there was a separate conspiracy regarding the EMMC's supply control program and you find that Winn Dixie incurred financial injury solely as a result of this activity you may award damages. you may award damages to Winn Dixie but only for the amount of damages proven to be incurred by Winn Dixie solely as  a result of the supply control program  . For both of these claims, the Plaintiffs assert that they have suffered "overcharge damages" – damages in the form of paying a higher price for fresh agaricus mushrooms than they otherwise would have paid.

The Plaintiff is not entitled to receive damages twice for a single injury that was caused by multiple wrongful acts.  In awarding damages on two claims, you cannot award compensatory

damages more than once for the same injury. Even if Plaintiffs prove their case, they are not entitled to recover more than once for the same loss.

That amount may be different from the sum of the damages you may have awarded for the individual claims, because in calculating the "total damages" amount, you must be careful to eliminate any overlapping damages.

You must base your calculation of both "total damages" and the damages attributable to each claim on the evidence you have heard at trial. In evaluating the damages attributable to each claim, and whether those damages are overlapping or not, you must base your calculations not on guesswork or speculation but rather on reasonable, non-speculative calculations and inferences presented by the parties.

Source: This would yield an unwarranted windfall recovery: *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176-77 (3d Cir. 1993) (affirming a jury instruction stating that "there should not be any overlapping or duplication of damages); *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 897 (10th Cir. 2018); *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 70 n.25 (N.D.N.Y. 2005)

*/s/ William A. DeStefano*
William A. DeStefano
Terri A. Pawelski
Matthew C. Brunelli
STEVENS & LEE
1818 Market Street, 29th Floor
Philadelphia, PA 19103

*/s/ Francis X. Taney, Jr.*
Francis X. Taney, Jr.
TANEY LEGAL, LLC
110 Simi Court
Cherry Hill, NJ 08003

*Counsel for Certain Defendants,* Eastern Mushroom
Marketing Cooperative, Inc. ("EMMC"), Robert A.

56

Ferranto, Jr., t/a Bella Mushroom Farms; Brownstone
Mushroom Farms, Inc.; To-Jo Fresh Mushrooms, Inc.;
Country Fresh Mushroom Co.; Gino Gaspari & Sons, Inc.;
Kaolin Mushroom Farms, Inc.; South Mill Mushroom
Sales, Inc.; Modern Mushroom Farms, Inc.; Sher-rockee
Mushroom Farm, LLC; C&C Carriage Mushroom Co.;
Oakshire Mushroom Farm, Inc.; Phillips Mushroom Farms,
Inc.; Louis M. Marson, Jr., Inc.; Monterey Mushrooms,
Inc.; John Pia

SL1 1774119v1 107141.00002