UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
                                      .
Winn-Dixie Stores Inc., et al,        .
                                      .   Docket #: 5:15-cv-06480-BMS
                                      .
        Plaintiffs,                   .
                                      .   United States Courthouse
        vs.                           .   Philadelphia, PA
                                      .   March 21, 2022
Eastern Mushroom Marketing            .
                                      .   9:41 a.m.
Cooperative, et al,                   .
                                      .
        Defendants.                   .
..........................................................
```

TRANSCRIPT OF CIVIL JURY TRIAL - DAY 15
BEFORE THE HONORABLE BERLE M. SCHILLER
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiff:          Patrick J. Ahern, Esq.
                            Ahern & Associates, PC
                            8 South Michigan Avenue
                            Suite 3600
                            Chicago, IL 60603

For The Defendant:          William A. DeStefano, Esq.
                            Stevens & Lee
                            Centre Square East
                            1500 Market Street, Suite 1800
                            Philadelphia, PA 19102

                            Patrick J. Gallo, Jr., Esq.
                            Macelree Harvey Ltd
                            17 West Miner Street
                            West Chester, PA 19381

Audio Operator:             Michael Cosgrove

Transcribing Firm:          CRC Salomon
                            2201 Old Court Road
                            Baltimore, MD 21208
                            410-821-4888

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| Witnesses For The Plaintiff: |  |  |  |  |  |
| None |  |  |  |  |  |
| Witnesses For The Defendant: |  |  |  |  |  |
| None |  |  |  |  |  |

| EXHIBITS: | Marked | Received |
|---|---|---|
| None |  |  |

THE COURT: Finding          Page: 53

```
 1              THE COURT:  Good morning.

 2              MR. AHERN:  Good morning.

 3              MR. DESTEFANO:  Good morning.

 4              MR. BELL:  Good morning.

 5              MR. BRUNELLI:  Good morning.

 6              THE COURT:  Be seated.  Yes?

 7              MR. AHERN:  Your Honor, I believe at one point you

 8   entered an order saying you were going to --

 9              THE COURT:  I didn't enter an order.

10              MR. AHERN:  Well, saying that you were enter -- you

11   were going to seat eight with two alternates.

12              THE COURT:  I suggested eight, and everyone said we'll

13   do 10, and 10 is it.

14              MR. AHERN:  Oh, okay, all right.  I didn't remember

15   that, so -- but that's fine.  That's fine.  I wouldn't want --

16              THE COURT:  You may lose a couple.

17              MR. AHERN:  Well, I mean, I wouldn't -- you know, I

18   don't somebody who's been here for the whole time to miss out

19   on actually the deciding part, you know.

20              THE COURT:  This is the exciting part.

21              MR. AHERN:  No, the deciding part.  I don't want them

22   to miss out on that.

23              THE COURT:  Okay, good.  Now, they won't.

24              MR. AHERN:  Yeah.

25              THE COURT:  Quiet over there.
```

```
 1              (Jury in at 9:44 a.m.)

 2              THE COURT:  Good morning, everybody.  Welcome back.

 3    I'm glad we all made it this far.  Please be seated.  I hope

 4    your brackets weren't busted over the weekend.

 5              Members of the jury, I want to thank you, once again,

 6    for all of your time and patience over the last three weeks,

 7    and for serving as jurors in this matter.  You sat through a

 8    lot of testimony, seen a lot of documents, and heard a lot from

 9    the lawyers.  Now it's my turn.  I'm going to read you the

10    instructions that will guide your deliberations.

11              You have all heard all the evidence that has been

12    admitted in this trial, and the arguments of counsel.  It's my

13    duty to give you the final instructions as to the law that is

14    applicable to this case.  Use these instructions to guide you

15    in your deliberations.  Before I begin, I should let you know

16    that you'll receive a copy of these instructions in the jury

17    room.  So, you don't have to catch everything I say.

18              All the instructions of law I gave you at the

19    beginning of the trial, during the trial, and these final

20    instructions must guide and govern your deliberations.  It is

21    your duty to follow the law as stated in all the instructions

22    of the Court, and to apply these rules of law to the facts as

23    you find them from the evidence received during the trial.

24    Counsel has referred to some of the applicable rules of law,

25    and the Court's instructions.  They are permitted to do so.  In
```

 1  fact, I gave them copies of these instructions last week.

 2  However, if any difference appears to you between the law, as

 3  stated by Counsel, and that as stated by the Court, you are to

 4  be governed by the Court's instructions.

 5       You're not to single out any one instruction alone as

 6  stating the law.  But you must consider the instructions as a

 7  whole in reaching your decisions.  Likewise, you're not to be

 8  concerned with the wisdom of any rule of law stated by the

 9  Court.  Regardless of any opinion you may have as to what the

10  law ought to be, it would be a violation of your sworn duty to

11  base any part of your verdict on any view or opinion of the

12  law, other than those provided in the Court's instructions.

13  Just as it would be a violation of your sworn duty as the

14  judges of the facts to base your verdict upon anything, but the

15  evidence received in this case, and your common sense.

16       I'm sure you have come to realize whatever you think

17  you knew about trials, about evidence, or about the law as a

18  result of watching T.V. shows, or movies, or reading novel, has

19  no place here.  No one involved in this case should be compared

20  to any T.V. show.  Well, if you like the lawyer in the show,

21  compare him to me.  A T.V. show, any movie, or any actor or

22  actress, this trial was not scripted in that fashion ahead of

23  time.  You were chosen as jurors for this real-life trial to

24  evaluate all of the evidence received, and to decide each of

25  the factual questions presented to you.

 1         As I mentioned, it is not uncommon, especially in long

 2    trials like this one, for there to be some lighthearted

 3    moments.  But, as you know, this is an important and serious

 4    manner.  You must not be persuaded by bias, prejudice, or

 5    sympathy for or against any of the parties to this case, or any

 6    public opinion.

 7         You have two main duties as jurors.  The first one is

 8    to decide what the facts are from the evidence that you saw and

 9    heard here in Court.  Deciding what the facts are is your job,

10    not mine.  And nothing that I have said or done during this

11    trial was meant to influence your decision about the facts, in

12    any way.  You are the sole judges of the facts.

13         Your second duty is to take the law that I give you

14    and apply it to these facts, and the burden of proof that I

15    will explain.  My role is to instruct you about the law that

16    you should apply to the facts as you find them.  I remind you

17    that you are bound by the oath that you took at the beginning

18    of the trial to follow the instructions I give you.  Even if

19    you disagree with the law, you are not to consider whether the

20    principles I state to you are sound, or whether they accord

21    with your own views about policy.  This includes instructions

22    that I gave you before trial, during the trial, and these

23    instructions, as well.

24         When you retire to the jury room to begin your

25    deliberations, you should select one member of the jury as a

 1    foreperson.  That person will preside over the deliberations,

 2    and speak for you here, in open court.  You will be given a

 3    list of the witnesses in the order in which they appear.

 4    Furthermore, if at some point you request the documentary

 5    evidence that was admitted as evidence, the exhibits will be

 6    provided to you.

 7         You may also consult any notes you took during the

 8    trial.  However, you should make use of them only as an aid to

 9    your own memory.  Don't give your notes any precedence over

10    your independent recollection of the evidence or lack of

11    evidence.  And neither should you be unduly influenced by the

12    notes of other jurors.  I emphasize that the notes you may have

13    taken are not entitled to any greater weight than the memory or

14    impression of each juror as to what the testimony or other

15    evidence may have been.  As jurors, you have a duty to consult

16    with each other and to deliberate with the intention of

17    reaching a verdict.

18         Each of you must decide the case for yourself, but

19    only after a full and impartial consideration of all the

20    evidence with your fellow jurors.  Listen to each other

21    carefully in the course of your deliberations.  You should feel

22    free to reexamine your own views, and to change your opinion

23    based upon the evidence.  But you should not give up your

24    honest convictions about the evidence just because of the

25    opinions of your fellow jurors, nor should you change your mind

1    just for the purpose of obtaining enough votes for a verdict.

2              During your deliberation, you should not talk to the

3    Courtroom Deputy, to me, or to anyone but each other about the

4    case.  You must not communicate with or provide any information

5    to anyone by any means about the case.  You may not use any

6    electronic device or media, such as a cell phone, smartphone,

7    or computer of any kind, the internet, including any internet

8    chatroom, blog, website, or social networking service, such as

9    Facebook, Instagram, Twitter, and YouTube to communicate to

10   anyone any information about this case, or to conduct any

11   research about this case until I accept your verdict.

12             You may not use electronic means to investigate or

13   communicate about the case.  It is important that you decide

14   this case based solely on the evidence presented in this

15   courtroom.  Information on the internet or available through

16   the social media might be wrong, incomplete, or inaccurate.

17   Information that you might see on the internet or on social

18   media has not been admitted into evidence, and the parties have

19   not had a chance to discuss it with you.  You should not seek

20   or obtain such information, and it must not influence your

21   decision in this case.

22             If you have any questions or messages for me during

23   your deliberations, you must write them down on a piece of

24   paper, have the foreperson sign them, and give them to the jury

25   officer.  The officer will give them to me, and I will respond

1    as soon as I can.  I may have to talk to the lawyers about what

2    you've asked, so it may take some time to get back to you.  One

3    more thing about messages.  Never write down or tell anyone how

4    you stand on your votes.  For example, do not write down or

5    tell anyone that a certain member is voting one way or another.

6    Your vote should stay secret until you are finished.

7         Your verdict must represent the considered judgment of

8    each juror.  In order for you, as a jury, to return a verdict,

9    each juror must agree to the verdict.  Your verdict must be

10   unanimous.  A document called a Verdict Sheet or Verdict Form

11   has been prepared for you.  It has a series of questions for

12   you to answer.  You will take this form to the jury room, and

13   when you have reached unanimous agreement as to your verdict,

14   you will fill it in and have your foreperson date and sign the

15   form.  You will then return to the courtroom, and your

16   foreperson will give your verdict.  Unless I direct you

17   otherwise, do not reveal your answers until you are discharged.

18        After you have reached a verdict, you are not required

19   to talk with anyone about the case, unless I order you to do

20   so.  Once again, I want to remind you that nothing about my

21   instructions, and nothing about the verdict sheet is intended

22   to suggest or convey in any way or manner what I think your

23   verdict should be.  It is your sole and exclusive duty and

24   responsibility to determine the verdict.

25        This is a civil antitrust case.  Winn-Dixie Stores,

 1    Incorporated brought this lawsuit and is the Plaintiff.  The

 2    parties against whom the lawsuit was brought are the

 3    Defendants.  There are several Defendants in this litigation.

 4    I'll list them for you.  Brownstone Mushroom Farms, Inc., C&C

 5    Carriage Mushrooms Company, Country Fresh Mushroom Company,

 6    Gino Gaspari and Sons, Inc., Giorgi Mushroom Company, Kaolin

 7    Mushroom Farms, Inc., Leone Pizzini and Son, Inc., Louis M.

 8    Marson, Jr., Inc., Modern Mushroom Farms, Inc., Monterey

 9    Mushrooms, Inc., Oakshire Mushroom Farms, Inc., Phillips

10    Mushroom Farms, Inc., South Mill Mushroom Sales, Inc., The

11    Eastern Mushroom Marketing Cooperative, Inc. EMMC, To-Jo Fresh

12    Mushrooms, Inc., and United Mushroom Farm Cooperative, Inc.

13         The Plaintiff, Winn-Dixie, has the burden of proving

14    its case against the Defendants by what is called a

15    preponderance of the evidence.  You may have heard the term,

16    proof beyond a reasonable doubt, and I mentioned in the

17    beginning of this trial, that is a stricter standard of proof

18    and it applies only to criminal cases.  It goes not apply in

19    civil cases, such as this.  So, you should put that concept out

20    of your mind.  The only standard you should consider in your

21    deliberations is the preponderance of the evidence.

22         Preponderance of the evidence means that a plaintiff

23    must prove, in light of all the evidence, that what it claims

24    is more likely true than not true.  To say it differently, if

25    you were to put the evidence favorable to Winn-Dixie on one

side of a scale, and the evidence favorable to the Defendants
on the other side of the scale, Winn-Dixie must have its side
of the scale tipped downwards.  If you find, after considering
all of the evidence, that a claim or fact is more likely so
than not so, or in other words, that side of the scale would
tip slightly downwards, then that claim, or fact has been
proven by a preponderance of the evidence.  If you find, after
considering all of the evidence, that Plaintiff has failed to
meet its burden, either because the scales weigh in favor of
Defendants, or the scales do not tip in favor of either
Plaintiff or Defendants, the verdict must be for Defendants.

In determining whether any fact has been proven by a
preponderance of the evidence, you may, unless otherwise
instructed, consider the testimony of all witnesses, regardless
of whether the Plaintiff or Defendants called it, and all
exhibits received in evidence, regardless of who may have
produced them.  The evidence from which you are to find the
facts consists of the following.  The testimony of the
witnesses, including the testimony presented via video
deposition, documents, and other things received as exhibits,
and stipulated facts that have been agreed to by the parties.

The following things are not evidence, statements of
the lawyers, including opening and closing statements, as well
as any remarks while they examine witnesses, arguments and
questions of the lawyers, even if the lawyers' questions

1    sounded like they were based on facts.  What the lawyers said

2    is not evidence, unless I told you specifically you consider it

3    so.  This even includes those times when lawyers may have said

4    they were summarizing testimony.  So, if you remember the

5    evidence differently from the attorneys, you should rely on

6    your recollection.  Objections by lawyers, even if their

7    objections sounded as though they were based on something

8    sounding like facts are not evidence.  Any testimony I told you

9    to disregard, or which I excluded from evidence.  Anything you

10   may have seen or heard about this case outside of the

11   courtroom.  You must make your decision based only on the

12   evidence that you saw and heard in Court.  Do not let rumors,

13   suspicions, or anything else that you may have seen or heard

14   outside of Court influence your decision in any way.

15        You can and should use your common sense in weighing

16   the evidence.  Consider the evidence in light of your everyday

17   experience with people and events and give it whatever weight

18   you believe it deserves.  So, if your experience tells you that

19   certain evidence reasonable leads to a conclusion, you are free

20   to reach that conclusion.  There are rules that control what

21   can be received into evidence.  When a lawyer asked a question

22   or offered an exhibit into evidence, and a lawyer on the other

23   side thought that it was not permitted by the rules of

24   evidence, that lawyer may have objected.  Indeed, you heard

25   plenty of objections in this trial.

1          Objections simply mean that the lawyer was requesting

2    that I make a decision on a particular pool of evidence.

3    Objections to questions, whether short or lengthy, are not

4    evidence.  Lawyers have an obligation to their clients to make

5    objections when they believe that the evidence being offered is

6    improper under the rules of evidence.  Sometimes they are

7    right.  Sometimes they are not.  You should not be influenced

8    by the fact that there was an objection.  If the objection was

9    sustained, you are to ignore the question and any whole or

10   partial answer to it.  If the objection was overruled, treat

11   the answer like any other.

12         Also, if certain testimony or other evidence was

13   ordered struck from the record, you must disregard that

14   evidence.  Do not consider any testimony or other evidence that

15   was excluded.  Do not speculate about what a witness might have

16   said, or what an exhibit might have shown.  At times, I

17   instructed you that you could only consider certain evidence

18   for a particular limited purpose.  In particular, I told you

19   that with respect to the EMMC Noncompete Policy, you must only

20   assess whether the existence of the noncompete, as well as the

21   EMMC's purpose for implementing it makes it more likely that

22   the EMMC also adopted the Minimum Pricing Policy and / or

23   Target pricing.  You must follow that instruction and may only

24   consider that evidence for that limited purpose.  It may not be

25   used for any other purpose.

1      There are two types of evidence that you may use in

2  reaching your unanimous verdict.  One type of evidence is

3  called direct evidence.  An example of direct evidence is when

4  a witness testifies about something that the witness knows

5  through his or her own senses.  Something the witness has seen,

6  felt, touched, heard, or did.  If a witness testified that she

7  saw it raining outside, and you believed her, that would be

8  direct evidence that it was raining.

9      The other type of evidence is circumstantial evidence.

10  Circumstantial evidence is proof of one or more facts from

11  which you could find another fact.  If someone walked in the

12  courtroom wearing a raincoat covered with drops of water and

13  carrying a wet umbrella, that would be circumstantial evidence

14  from which you could conclude that it was raining.  You should

15  consider both kinds of evidence that are presented to you.  The

16  law makes no distinction in the weight to be given to either

17  direct or circumstantial evidence.  You are to decide how much

18  weight to give any evidence.

19      In deciding what the facts are, you may have to decide

20  what testimony you believe and what testimony you do not

21  believe.  You are the sole judges of the credibility of the

22  witnesses.  Credibility means whether a witness is worthy of

23  belief.  You may believe everything a witness says, only part

24  of it, or none of it.  In deciding what to believe, as I

25  mentioned to you at the start of the trial, you may consider a

1   number of factors, including the following:  The opportunity

2   and ability of a witness to see, or hear, or know the things

3   the witness testifies to; the quality of the witness's

4   understanding and memory; the witness's manner while

5   testifying; whether the witness has an interest in the outcome

6   of the case, or any motive, bias, or prejudice; whether the

7   witness is contradicted by anything the witness said or wrote

8   before trial, or by other evidence; how reasonable the

9   witness's testimony is when considered in the light of other

10  evidence that you believe; and any other factors that bear on

11  believability.

12       The weight of the evidence to prove a fact does not

13  necessarily depend on the number of witnesses who testify.

14  What is more important is how believable the witnesses were,

15  and how much weight you think their testimony deserves.  In

16  fact, you may find that testimony of a small number of

17  witnesses, or even one witness alone, as to any fact is more

18  credible than the testimony of a larger number of witnesses to

19  the contrary.

20       Inconsistencies or discrepancies in the testimony of a

21  witness, or between different witnesses, may or may not cause

22  you to discredit certain testimony.  Two or more people

23  experiencing an event may see or hear it differently.

24  Similarly, just because a witness makes a mistake does not mean

25  that a witness was not telling the truth.  People may tend to

1   forget things or remember things inaccurately.  In this case,

2   some of these events occurred 15 to 20 years ago.  You should

3   not forget to use your commonsense when evaluating the

4   testimony.

5        In weighing the effect of a discrepancy or mistake,

6   you should consider whether it pertains to a matter of

7   importance, or an unimportant detail, and whether the

8   discrepancy results from innocent error or lapse in memory, as

9   opposed to an intentional falsehood.  Give the testimony of

10  each witness such weight, if any, that you think -- that you

11  may think it deserves.  In short, you may accept or reject the

12  testimony of any witness, in whole or in part.

13       As I mentioned a few moments ago, one of the types of

14  evidence you may consider is deposition testimony.  Deposition

15  is the sworn testimony of a witness taken before trial.  The

16  witness is placed under oath and swears to tell the truth.  And

17  lawyers for each party may ask questions.  A court reporter is

18  present and records the questions and answers.  We watched

19  several videos of depositions of certain witnesses who were not

20  able to testify at the trial in person.  The deposition

21  testimony you viewed is entitled to the same consideration and

22  is to be judged in the same way as if the witness had been

23  present to testify at this trial in person.

24       You've heard testimony containing opinions from three

25  individuals in this case, Dr. Keith Leffler for the Plaintiff,

1    Dr. David Beyer and Dr. Jesse David for the Defendants.

2    Opinion testimony is testimony from a person who has a special

3    skill or knowledge in a scientific or professional field.

4    Their skill or  knowledge is not common to the average person,

5    but it has been acquired through their study, training, and /

6    or experience.  As a result, we refer to them as experts during

7    this trial.  But their testimony should be judged just like any

8    other testimony.  It is your obligation to determine their

9    expertise, as well as the credibility and reliability of their

10   testimony.  The testimony of these witnesses is sometimes in

11   conflict.  That is, they disagree at times.

12        You must remember that you are the sole trier of the

13   facts.  And where their testimony relates to a question of

14   fact, it is your job to resolve the disagreements.  The way you

15   resolve the conflict between these witnesses is the same way

16   that you decide other fact questions, and the same way that you

17   decide whether to believe ordinary witnesses.  In weighing

18   opinion testimony, you may consider a witness's qualifications,

19   the reasons for their opinions, the soundness of their

20   opinions, and the reliability of the information, assumptions,

21   and data supporting their opinions.

22        You may also consider the other factors I have

23   mentioned for weighing testimony of any other witness who

24   provided non-opinion testimony.  The opinions of these

25   witnesses should receive whatever weight and credit, if any,

1    you think is appropriate, given all the other evidence in this

2    case.  Whether a witness's opinion relies on assumptions or

3    mathematical models to arrive at his conclusions, you may

4    consider whether the witness has properly justified the

5    validity of those assumptions or mathematical models.  You may

6    also consider any bias that the witness has, including any bias

7    that might arise from evidence that they have been or will paid

8    for reviewing this case and testifying.

9         You should not permit a witness's opinion testimony to

10   be a substitute for your own reason, judgment, and commonsense.

11   You may reject the testimony of any opinion witness in whole or

12   in part, if you conclude the reasons given in support of an

13   opinion are unsound or if you, for other reasons, do not

14   believe the witness.  The determination of the facts in this

15   case rest solely with you.

16        As you have heard, this case involves corporations,

17   partnerships, unincorporated associations, and similar business

18   entities.  You should consider and decide this case as a

19   dispute between persons of equal standing, or of equal worth in

20   the community, and holding the same or similar stations in

21   life.  A corporation, partnership, or unincorporated

22   association, or similar entity is entitled to the same fair

23   trial as a private individuals.  All persons, including

24   corporations, partnerships, unincorporated associations, and

25   other organizations stand equal before the law and are to be

1    treated as equals.  The size or profitability of a company or

2    corporations is irrelevant to the rights and obligations under

3    the law.  Therefore, you should consider and decide this case

4    as a dispute between persons of equal standing in the community

5    of equal worth, and holding the same or similar stations in

6    life.

7            Under the law, a corporation and association or

8    similar body is a person.  But it acts only through its agents.

9    Agents for such an organization include its directors,

10   officers, employees, or others acting on its behalf.  A

11   corporation is not capable under the law of conspiring with its

12   own agents, unincorporated divisions, or its wholly owned

13   subsidiaries.  Through its agents, however, such an

14   organization is capable of conspiring with other outside

15   persons or independent organizations.

16           A corporation or other such organization is legally

17   bound by the acts and statements of its agents done or made

18   within the scope of the agent's employment or apparent

19   authority.  Acts done within the scope of employment are those

20   performed on behalf of the corporation and directly related to

21   the performance of the duties the agent has general authority

22   to perform.  Apparent authority is the authority that persons

23   outside the corporation could reasonably believe the agent

24   would have judging from his or her position with the

25   organization, the responsibilities previously entrusted to the

 1   person or the office, and the circumstances surrounding his or

 2   her past conduct.

 3         To summarize, for a corporation to be legally

 4   responsible for the acts or statements of its agents, you must

 5   find that the agent was acting within the scope of his or her

 6   employment with actual or apparent authority.  Again, an

 7   organization is entitled to the same fair trial as a private

 8   individual.  Its acts are to be judged by the same standard as

 9   the acts of a private individual, and you may hold an

10   organization liable only if such liability is established by

11   the preponderance of the evidence.  Once again, that is because

12   all persons, including corporations, are equal before the law.

13         Plaintiff's claim arises under § 1 of a federal law

14   called the Sherman Act.  The purpose of the Sherman Act is to

15   preserve free and unfettered competition in the marketplace.  §

16   1 of the Sherman Act prohibits contracts, combinations, and

17   conspiracies that unreasonably restrain trade.  Such a

18   restraint must affect interstate commerce.  I'm instructing you

19   that the interstate commerce requirement has already been met,

20   and therefore, you need not consider that requirement in your

21   deliberations.

22         Accordingly, you'll be asked to answer the following

23   questions.  Was there a contract, combination, or conspiracy

24   between or among at least two separate entities?  Two, did that

25   contract, combination, or conspiracy unreasonably restrain

1    trade?  Three, did the contract, combination, or conspiracy

2    cause Plaintiff to suffer an injury to its business or property

3    by paying higher prices than it would have paid without the

4    contract, combination, or conspiracy?  If you answer yes to

5    these questions, you will also determine the proper amount of

6    damages to award the Plaintiff.  I will instruct you on damages

7    later on.

8            In order to prove a relevant contract, combination, or

9    conspiracy, Plaintiff must prove the following by a

10   preponderance of the evidence.  One, an alleged contract,

11   combination, or conspiracy existed.  Two, a Defendant knowingly

12   became a member of the conspiracy.  To act knowingly means to

13   participate deliberately and not because of a mistake or

14   accident.  The basis of a conspiracy is an agreement or

15   understanding between two or more persons or entities.  An

16   agreement or understanding between two or more persons or

17   entities exists when they share a commitment to a common

18   scheme.  A written agreement or contract may satisfy the

19   contract, combination, or conspiracy element of a § 1 claim

20   under the Sherman Act.

21           But to establish the existence of a conspiracy, the

22   evidence need not show that its members entered into any formal

23   or written agreement.  The agreement, itself, may have been

24   entirely unspoken.  A person can become a member of a

25   conspiracy without full knowledge of all the details of the

1   conspiracy, the identity of all its members, or the parts such

2   members played in the charged conspiracy.  The members of the

3   conspiracy need not, necessarily, have met together, directly

4   stated what their object or purpose was to one another, or

5   stated the details or means by which they would accomplish

6   their purpose.

7         But to prove a conspiracy existed, the evidence must

8   show that the alleged members of the conspiracy came to an

9   agreement or understanding among themselves to accomplish a

10  common purpose.  A conspiracy may be formed without all parties

11  coming to an agreement at the same time, such as where parties

12  separately accept invitations to participate in a place to

13  restrain trade at different times.

14        Similarly, it is not essential that all persons act

15  exactly alike, nor is it necessary they all possess the same

16  motive for entering the agreement.  It is also not necessary

17  that all the means or methods claimed by Plaintiff were agreed

18  upon to carry out the alleged conspiracy, nor that all of the

19  means or methods that were agreed upon were actually used or

20  put into operation, nor that all the persons alleged to be

21  members of the conspiracy were actually members.  It is the

22  agreement or understanding to restrain trade within the meaning

23  of § 1 of the Sherman Act that constitutes a conspiracy,

24  regardless of whether the conspiracy actually succeeded or

25  failed.

1          Plaintiff may prove the existence of the alleged

2    conspiracy through direct evidence, circumstantial evidence, or

3    both.  As I mentioned earlier, direct evidence is explicit and

4    requires no inferences to establish the existence of the

5    alleged conspiracy.  Direct evidence of an agreement may not be

6    available, and therefore, a conspiracy also may be shown

7    through circumstantial evidence.  You may infer the existence

8    of a conspiracy from the circumstances, including what you find

9    the alleged members actually did and the words they used.  Mere

10   similarity of conduct among various persons, however, of the

11   fact that they may have associated with one another, and may

12   have met or assembled together, does not, by itself, establish

13   the existence of a conspiracy.

14         If they acted similarly but independently of one

15   another, without any agreement among them, then there would not

16   be a conspiracy.  In determining whether an agreement or

17   understanding between two or more persons has been proved, you

18   must view the evidence as a whole, and not piecemeal.  If you

19   find that Plaintiff has proven by a preponderance of the

20   evidence that there was an overarching conspiracy to charge

21   supercompetitive prices, then you must determine which

22   Defendants, if any, were members of that conspiracy.  If you

23   find that Plaintiff has failed to prove by a preponderance of

24   the evidence that there was an overarching conspiracy to charge

25   supercompetitive prices, then you must find in Defendants favor

1    on this claim.  And you must discontinue any further evaluation

2    of Plaintiff's alleged claim.

3         Before you can find that any given Defendant was a

4    member of the conspiracy alleged by the Plaintiff, the evidence

5    must show that this particular Defendant knowingly joined in

6    the unlawful plan at its inception or at some later time with

7    the intent to further the purpose of the conspiracy.  To act

8    knowingly means to participate deliberately, not because of

9    mistake or accident.  A person may become a member of a

10   conspiracy without full knowledge of all the details of a

11   conspiracy, the identity of all its members, or the parts they

12   played.  Knowledge of the essential nature of a plan is enough.

13        On the other hand, a person who has no knowledge of

14   the conspiracy but happens to act in a way that helps the

15   conspiracy succeed does not thereby become a conspirator.  The

16   mere fact that a particular Defendant may have engaged in

17   certain actions that were consistent with the overall

18   conspiracy alleged by the Plaintiff does not necessarily mean

19   that this Defendant acted knowingly in joining a conspiracy.

20   There are several Defendants in this case.  You must decide the

21   case as to each Defendant, separately, even though there are

22   multiple Defendants, and some of the evidence and issues may be

23   common across Defendants.

24        In determining whether the Defendant was a member of

25   the alleged conspiracy, you should consider only the evidence

1   about that particular Defendant's statements and conduct,

2   including any evidence of that Defendant's knowledge and

3   participation in the events involved, and any other evidence of

4   that particular Defendant's participation in the conspiracy

5   alleged.  You may not find that a Defendant was a member of a

6   conspiracy based only on its association with or knowledge of

7   wrongdoing.  However, this is a factor you may consider in

8   order to determine whether a Defendant was a member of the

9   alleged conspiracy.

10          If you find that Plaintiff has proven that a Defendant

11  acted knowingly, or with intent to further the conspiracy, then

12  you should continue to evaluate the remainder of Plaintiff's

13  alleged claim as to that Defendant.  If you find the Plaintiff

14  has failed to prove that one or more Defendant's acted

15  knowingly or with intent to further the conspiracy, then you

16  must find in the Defendant's favor on that claim as to that

17  Defendant, and you must discontinue any further evaluation of

18  Plaintiff's alleged claim as to that Defendant.

19          If you find that the alleged unlawful contract,

20  combination, or conspiracy existed, then unless the Court has

21  instructed otherwise, the acts and statements of the

22  participants in that contract, combination, or conspiracy are

23  binding on all other participants you find to have knowingly

24  joined the contract, combination, or conspiracy.  A person who

25  knowingly joins an existing conspiracy, or who participates

 1    only in part of a conspiracy with knowledge of the overall

 2    conspiracy is just as responsible as if he or she had been one

 3    of those who formed or began the conspiracy and participated in

 4    every part of it.

 5         Member of a conspiracy may withdraw from the

 6    conspiracy.  To find that a member of a conspiracy has

 7    withdrawn from or abandoned the conspiracy, the evidence must

 8    show that a Defendant, one, undertook affirmative steps

 9    inconsistent with the object of the conspiracy to disavow or

10    defeat the goal or purposes of the conspiracy, and two, acted

11    in a manner reasonably calculated to notify coconspirators that

12    it was no longer participating in the conspiracy.  Mere

13    inactivity in the conspiracy is not proof of withdraw.

14    Furthermore, even if a Defendant tells others of its intention

15    to withdraw, it is not withdrawn if it continues to act in

16    furtherance of the object of the conspiracy.

17         If you have concluded that a Defendant was a member of

18    a conspiracy, that Defendant bears the burden of proving by a

19    preponderance of the evidence that it withdrew from the

20    conspiracy.  There must be evidence of some affirmative act of

21    withdraw.  I'm instructing you now that if you find United

22    Mushroom Farm Cooperative, Inc. joined the alleged conspiracy,

23    then you must find that it withdrew from the alleged conspiracy

24    as of August 31, 2005.

25         There are three Defendants who allege they withdrew

1   from the conspiracy.  It is up to you to determine whether they

2   have satisfied their burden of showing by a preponderance of

3   the evidence that they withdrew.  Those Defendants are Gino

4   Gaspari and Sons, Inc., Monterey Mushrooms, Inc., and Oakshire

5   Mushroom Farm, Inc.  If you find that a party has withdrawn

6   from a conspiracy, you must then determine the extent of the

7   damages for which that party may be liable.  A party that

8   withdraws from a conspiracy is liable for damages flowing from

9   its conduct, and the conduct of its coconspirators, while it

10  was a member of the conspiracy, even if the damages occurred

11  after its withdraw.  As long as the conduct occurred before its

12  withdraw, and the conduct caused damages that occurred after

13  withdraw.  Plaintiff has the burden of proving what portion of

14  damages are attributable to acts of the conspiracy prior to a

15  Defendant's withdraw.

16       Not every contract combination or conspiracy violates

17  § 1 of the Sherman Act.  There are two different tests for you

18  to determine whether a contract, combination, or conspiracy

19  violates § 1 of the Sherman Act.  The test you will be applying

20  in this case is called The Rule of Reason.  I will instruct you

21  now on this test.

22       Plaintiff's claim alleges that Defendants engaged in

23  an overarching conspiracy to raise the price of agaricus

24  mushrooms through circulating minimum and / or target price

25  lists or by acquiring properties that were historically used

1    for mushroom farming to reduce or limit the supply of fresh

2    agaricus mushrooms.  These activities must be part of a single

3    overarching conspiracy as opposed to two different and

4    independent conspiracies.  To prevail on this claim, Plaintiff

5    must show that a Defendant entered into a single overarching

6    conspiracy with two aspects.  One, circulation of minimum or

7    target prices lists along with rules and regulations requiring

8    EMMC members to charge those prices, and two, acquiring

9    properties that were historically used for mushroom farming to

10   reduce or limit the supply of fresh agaricus mushrooms,

11   including by placing deed restrictions on the properties to

12   prevent their future use as mushroom farm.

13        Plaintiff must show by a preponderance of the evidence

14   that each Defendant joined the alleged conspiracy, that the

15   conspiracy was anticompetitive by depriving the marketplace of

16   competition and resulting in prices higher than they would have

17   otherwise been, and that Winn-Dixie was injured by the

18   conspiracy.  To determine whether these alleged restraints

19   constitute one conspiracy, you must look to one, whether there

20   was a common goal among the conspirators.  And two, whether

21   their agreement contemplated bringing to pass a continuous

22   result that will not continue without the continuous

23   cooperation of conspirators.  And three, the extent to which

24   the participants overlap in the various dealings.  If, after

25   considering these factors, you find that these alleged

1    restraints are part of the same conspiracy, only then must you

2    determine if the actions taken were reasonable or unreasonable.

3    There are a number of steps to this inquiry, which I will first

4    summarize before going into detail.

5        If you find such an overarching conspiracy, you will

6    be asked to determine whether the restraint was unreasonable.

7    Under the Rule of Reason, you must decide whether the

8    Defendants overarching conspiracy I just described unreasonably

9    restrained trade.  This involves a multistep analysis, which I

10   will outline briefly now, and explain in more detail.

11       Initially, you must determine whether Plaintiff has

12   proven that the challenged restraint resulted in a substantial

13   harm to competition in a relevant product and geographic

14   market.  If you find that Plaintiff has proven that the

15   challenged restraint results in a substantial harm to

16   competition in a relevant market, then you must consider

17   whether the restraint reduces countervailing competitive

18   benefits.  If you find that it produces countervailing

19   competitive benefits, then you must balance the competitive

20   harm against the competitive benefit.  The challenge restraint

21   is illegal under § 1 of the Sherman Act, only if you find that

22   the competitive harm substantially outweighs the competitive

23   benefit.

24       As I just mentioned, in order to prove a challenged

25   restraint is unreasonable, the Plaintiff must demonstrate that

1    the restraint resulted in substantial harm to competition in a

2    relevant market,  Harm that occurs merely to the Plaintiff's

3    individual business is not sufficient, by itself, to

4    demonstrate harm to competition generally.  Rather, harm to

5    competition must be shown in a broader market, called the

6    relevant market.  There are two aspects of a relevant market.

7    One, a relevant product market, and two, a relevant geographic

8    market.  It is Plaintiff's burden to prove the existence of a

9    relevant market for restraints evaluated under the Rule of

10   Reason.  I will now explain the definitions of relevant product

11   and relevant geographic markets.

12          One common way to think about the relevant product

13   market is whether various products are interchangeable for one

14   reason or another, or whether they are considered substitutes

15   for one another.  If they are, then it is likely they are part

16   of a single product market.  Products need not be identical or

17   precisely interchangeable, as long as they are reasonable

18   substitutes.  To determine whether products are reasonable

19   substitutes for one another, you must consider whether a small

20   insignificant and nontransitory increase in the price of one

21   product would result in enough customers switching from that

22   product to another product such that the price increase would

23   not be profitable.  In other words, would customers accept the

24   price increase and continue buying the original product or will

25   so many switch to alternative products that the price increase

1    will be withdrawn?

2         If you find that customers would switch to alternative

3    products and the price increase would not be profitable, you

4    must conclude the products are in the same product market.  If,

5    on the other hand, you find that customers would not switch,

6    then you must conclude that the two products are not in the

7    same product market.  In this case, Plaintiff contends the

8    relevant product market is fresh agaricus mushrooms sold only

9    to fresh customers.  Defendants argue that Plaintiff failed to

10   prove a proper relevant product market because it did not

11   account for agaricus mushrooms of fresh market quality that was

12   sold to non-fresh customers, such as processors.

13        The relevant geographic market is a given geographic

14   area where the Plaintiffs must show harm.  Plaintiff has the

15   burden of proving a relevant geographic market exists by a

16   preponderance of the evidence.  Plaintiff claims the relevant

17   geographic market is the entire nonwestern United States.

18   Defendant asserts the market is actually made up of a series of

19   regional markets.  If you find that Plaintiff has proven a

20   relevant product and geographic market, you should continue to

21   evaluate the remainder of Plaintiff's claim.  If you find that

22   Plaintiff has not proven a relevant product or geographic

23   market, you should find in favor of Defendants on this claim

24   and discontinue further evaluation of this claim.

25        To prove that the challenge restraint is unreasonable,

1    Plaintiff must demonstrate that it has resulted in substantial

2    harm to competition.  As I mentioned earlier, harm that occurs

3    merely to the individual business of a Plaintiff is not

4    sufficient by itself to demonstrate harm to competition

5    generally.  Rather, harm to competition must be shown in the

6    relevant market.

7         In this case, because the alleged restraint evaluated

8    under the Rule of Reason includes minimum and target prices,

9    coupled with a supply control program, a harmful effect on

10   competition refers to a reduction in competition with respect

11   to mushroom prices that results in higher prices than there

12   would have been absent these restraints.  If the challenged

13   conduct has not resulted in prices higher than the competitive

14   level, then there has been no competitive harm, and you should

15   find that the challenged conduct was not unreasonable.

16        The Plaintiff can satisfy its burden either by

17   directly proving the existence of an actual anticompetitive

18   effect in a relevant market.  In this case, higher mushroom

19   prices than there would have been without the restraint, or by

20   proving the Defendants had market power in the relevant market.

21   In determining whether the challenged conduct has produced

22   competitive harm, you may look at the following factors:  The

23   effect of the restraint on prices, output, product quality, and

24   service; the purpose and nature of the restraint; the nature

25   and structure of the relevant market; the number of competitors

1    in the relevant market, and the level of competition among

2    them, both before and after the restraint was imposed; any

3    facts unique to the fresh agaricus mushroom industry; and

4    whether a Defendant and its alleged coconspirators, together,

5    possessed market power.  The last factor, market power, has

6    been defined as an ability to profitably raise prices for a

7    sustained period of time above those that would be charged in a

8    competitive market.

9         A firm or firms that possess market power, generally,

10   can charge higher prices for the same goods and services than a

11   firm in the same market that does not possess market power.

12   The ability to charge higher prices for better products or

13   services, however, is not market power.  An important factor in

14   determining whether a Defendant possess market power is the

15   Defendant's market share, that is, it's percentage of the

16   products or services sold in the relevant market by all

17   competitors.  If Defendants do not possess a substantial market

18   share, it is less likely that Defendants possess market power.

19   If Defendants do not possess market power, it is less likely

20   that the challenged restraint has resulted in a substantial

21   harmful effect on competition in the market.

22        If you find that Plaintiff has proven that the

23   challenged restraints resulted in substantial harm to

24   competition in a relevant market, you must determine whether

25   the restraint also benefits competition in other ways.  The

1    Defendants bear the burden of showing procompetitive benefits.

2    In considering whether the challenged restraint benefitted

3    competition, you may consider various factors, including but

4    not limited to increase production, increased consumer choice,

5    increased service, decreased prices, or improved product

6    quality.  You may not consider increased producer prices,

7    increase producer profits, decreased producer losses, or

8    helping firms stay in operation as procompetitive benefits.

9        If you find that the challenged restraints results in

10   competitive benefits, then you also must consider whether the

11   restraint was reasonably necessary to achieve the benefits.  If

12   the Plaintiff proves that the same benefits could have been

13   readily achieved by other reasonably available alternative

14   means that creates substantially less harm to competition, then

15   those claimed benefits cannot be used to justify the

16   restraints.

17       If you find that the challenged restraint was

18   reasonably necessary to achieve competitive benefits, then you

19   must balance those competitive benefits against the competitive

20   harm resulting from the same restraint.  If the competitive

21   harm substantially outweighs the competitive benefits, then the

22   challenged restraint is unreasonable.  If the competitive harm

23   does not substantially outweigh the competitive benefits, then

24   the challenged restraint is not unreasonable.

25       In conducting this analysis, you must consider the

1  benefits and harm to competition and consumers, not just to a

2  single competitor or group of competitors.  The Plaintiff bears

3  the burden of proving that the anticompetitive effect of the

4  conduct substantially outweighs its benefits.  If you find that

5  Plaintiff has proven the anticompetitive effects of the conduct

6  substantially outweighs the procompetitive benefits, you should

7  find in favor of the Plaintiff.  If you find that Plaintiff has

8  failed to prove the anticompetitive effects of conduct

9  substantially outweigh the procompetitive benefits, you must

10  find in Defendant's favor.

11        Under the Sherman Act, it is not a defense that

12  Defendants may have acted with good motives, thought their

13  conduct was legal, or that the conduct may have some good

14  results.  During this trial, you have heard discussion of the

15  Eastern Mushroom Marketing Cooperative, or EMMC, which is a

16  cooperative organization.  Business that are actual or

17  potential competitors, such as the Defendants here, may

18  lawfully form into associations to advance common interests.

19  They may also meet and communicate with one another in

20  furtherance of lawful activities.  For example, trade

21  associations may keep members informed of new services or

22  technology in the industry, or perform other valuable services,

23  such as cooperative research, publication of trade journals, or

24  joint representation before legislative or administrative

25  bodies.

 1          However, an association is capable of committing

 2     violations of the antitrust laws.  The actions of a group of

 3     competitors taken through an association to which they belong

 4     present the same issues as the actions of a group of

 5     competitors who have not created a formal organization, such as

 6     a trade association.  A trade association, or similar industry

 7     group, cannot lawfully act to raise, stabilize, or maintain

 8     prices in the market in which its members compete with one

 9     another, or to reduce members collective output of products or

10     services.  These activities constitute an agreement between the

11     association and its members in violation of the Sherman Act,

12     even if the association has not conspired with a nonmember.

13     Under these circumstances, the trade association or industry

14     group is one of the coconspirators or participants in the

15     unlawful agreement.

16          A business that belongs to a trade association does

17     not become liable for violating the antitrust laws simply

18     because the trade association is liable for such violation.

19     Instead, Plaintiff must prove that the member of the trade

20     association knew of and participated in the conduct you find

21     unlawful.  Identification of a particular Defendant's

22     membership or role in the organization is not sufficient to

23     show that a particular Defendant agreed to the conspiracy,

24     itself.

25          The Plaintiff contends that all Defendants engaged in

1    similar conduct, namely setting prices in accordance with

2    prices set forth in a series of price lists.  The Plaintiff

3    further contends that this conduct, when considered with other

4    evidence, shows that a conspiracy existed among all Defendants.

5    The mere fact that certain Defendants may have raised prices

6    simultaneously does not, by itself, establish the existence of

7    a conspiracy among Defendants.  Their behavior may be no more

8    than a result of exercise of independent judgment in response

9    to identical or similar market conditions.  For example,

10   everyone might open their umbrellas on a rainy day.  But that

11   similar behavior would not necessarily mean they had agreed or

12   conspired to open their umbrellas.

13        Moreover, under certain conditions, a business may

14   lawfully adopt the same prices, conditions of sale, or other

15   practices as its competitors, as long as it does so

16   independently, and not as part of an agreement or understanding

17   with one or more of its competitors.  If Defendants acted

18   similarly but independently of one another, without any

19   agreement or understanding between two or more of them, there

20   would not be a conspiracy.  You must decide whether each

21   individual Defendants allegedly similar conduct was more

22   probably than not the result of an agreement or understanding

23   among them.  In doing so, you may consider the conduct of each

24   individual Defendant, along with other evidence.  You cannot

25   infer that a conspiracy existed unless you find that the

1   evidence, when viewed as a whole, make it more likely than not

2   that the Defendants had an agreement or understanding with one

3   another to engage in unlawful conduct, as I have explained, as

4   opposed to acting independently of one another.

5        In making this determination, you should consider the

6   similar conduct against the entire background in which it took

7   place.  The evidence, when viewed all together, must satisfy

8   you that it is more likely that Defendants similar actions were

9   the product of an agreement or understanding with one another,

10  and their own independent decisions.  If, after considering all

11  the evidence, you conclude that Plaintiff showed by a

12  preponderance of the evidence as to a given Defendant that the

13  Defendant's similar conduct was the product of an agreement or

14  understanding with other Defendants, rather than its own

15  independent decision, you must find for Plaintiff on the

16  question of whether that Defendant participated in a

17  conspiracy.  However, if you find that Plaintiff has failed to

18  satisfy its burden of proof as to each Defendant, that the

19  Defendant -- let me start again.

20       However, if you find that Plaintiff has failed to

21  satisfy its burden of proof as to each Defendant, that the

22  Defendant participated in a conspiracy, you must return a

23  verdict for that Defendant.  If you find that Plaintiff

24  satisfied its burden of proof with respect to its claim against

25  any Defendants, you must also decide whether Plaintiff is

1    entitled recover any damages from those particular Defendants.

2    Plaintiff cannot recover any damages for an injury to its

3    business or property from any Defendant unless Plaintiff first

4    establishes three elements of injury and causation.  One,

5    Plaintiff was, in fact, injured as a result of Defendants

6    alleged violation of the antitrust laws.  Two, a Defendant's

7    alleged illegal conduct was a material cause of Plaintiff's

8    injury.  And three, Plaintiff's injury is an injury of the type

9    that the antitrust laws were intended to prevent.  I will now

10   explain each of these elements.

11        The first element is sometimes referred to as injury

12   in fact or fact of damage.  For the Plaintiff to establish that

13   it's entitled to recover damages, it must prove that it was

14   injured as a result of Defendant's alleged violation of the

15   antitrust laws.  This requires that Plaintiff proves that it

16   was in fact injured by a Defendant's alleged antitrust

17   violation, but it does not require that Plaintiff prove the

18   exact dollar amount of its injury.  If you find that Plaintiff

19   has established by a preponderance of the evidence that it was,

20   in fact, injured, you may then consider the amount of

21   Plaintiff's damages, if any.  If you find that Plaintiff has

22   failed to prove by a preponderance of the evidence that it was

23   injured by any Defendant's alleged antitrust violation, you

24   cannot consider the amount of any damages, and you must return

25   a verdict in favor of Defendants.  It is important to

 1   understand that injury and amount of damage are different

 2   concepts and that you cannot consider the amount of damage

 3   unless and until you have concluded that the Plaintiff has

 4   established that they were, in fact, injured.

 5        Next, Plaintiff must also establish by a preponderance

 6   of the evidence that Defendants' alleged illegal conduct was a

 7   material cause of Plaintiff's injury.  This means that

 8   Plaintiff must prove that it suffered some injury as a result

 9   of the alleged antitrust violation and not some other cause.

10   Plaintiff is not required to prove that the alleged antitrust

11   violation was the sole cause of its injury, nor need Plaintiff

12   eliminate all other possible causes of its injury.  It is

13   enough if Plaintiff has proven that the alleged antitrust

14   violation was a material cause of its injury.

15        Finally, Plaintiff must establish that its injury is

16   the type of injury that the antitrust laws were intended to

17   prevent.  This is sometimes referred to as antitrust injury.

18   If Plaintiff's injuries were caused by a reduction in

19   competition, acts that would lead to a reduction in

20   competition, or acts that would otherwise harm competition or

21   consumers, then Plaintiff's injuries are antitrust injuries.

22   For example, if the injury suffered by the Plaintiff is the

23   price it paid for mushrooms being higher than it would have

24   been absent the unlawful restraint, then that would constitute

25   antitrust injury.  On the other hand, if Plaintiff's injuries

1    were caused by heightened competition, the competitive process,

2    itself, or by acts that would benefit consumers, then

3    Plaintiff's injuries are not antitrust injuries, and Plaintiff

4    may not recover damage for those injuries under the antitrust

5    laws.  In summary, if Plaintiff can establish that it was, in

6    fact, injured by a Defendant's conduct, that Defendant's

7    conduct was a material cause of Plaintiff's injury, and that

8    the injury was the type of injury that the antitrust laws were

9    intended to prevent, then Plaintiff is entitled to recover

10   damages for the injury to its business or property.

11        Damages are the amount of money you may award to

12   Plaintiff because of Defendants' violation of the antitrust

13   laws.  If you reach a verdict for the Defendants and determine

14   they did not violate the antitrust laws, you should not

15   consider the issue of damages, and you may disregard the

16   damages instruction that I am about to give.  If, however, you

17   find that any Defendants violated the antitrust laws, and that

18   this violation caused injury to the Plaintiff, then you must

19   determine the amount of damages, if any, Plaintiff is entitled

20   to recover.  The fact that I'm giving you instructions

21   concerning the issue of Plaintiff's damages does not mean that

22   I believe Plaintiff should or should not prevail in this case.

23        The law provides that Plaintiff should be fairly

24   compensated for all damages to its business or property that

25   were a direct result or likely consequence of the conduct that

 1   you have found to be unlawful.  Antitrust damages are only

 2   compensatory, meaning their purpose is to put an injured

 3   Plaintiff as near as possible to the position in which it would

 4   have been had the alleged antitrust violation not occurred.

 5   The law does not permit you to award damages to punish a

 6   wrongdoer, what we sometimes refer to as punitive damages, or

 7   to deter a particular conduct in the future.  Furthermore, you

 8   are not permitted to award to Plaintiff an amount for

 9   attorney's fees or the costs of maintaining this lawsuit.

10         In this case, Plaintiff claims that Defendant's

11   unlawfully increased prices of agaricus mushrooms above the

12   level they would have been in the absence of Defendant's

13   unlawful activity.  If you determine that any Defendants

14   violated § 1 of the Sherman Act, and Plaintiff was injured as a

15   result, you must award damages of the reasonably estimated

16   extra amount that Plaintiff paid for mushrooms because of the

17   violation.  In other words, the amount of damages is the

18   different between what Plaintiff actually paid and what it

19   would have paid in the absence of Defendants conduct.  You must

20   not decrease Plaintiff's damages, even if it avoided harm in

21   some way.  Plaintiff has the burden of proving its reasonably

22   estimated damages by the preponderance of the evidence.

23         You are permitted to make just and reasonable

24   estimates in calculating Plaintiff's damages.  You are not

25   required to calculate damages with mathematical certainty or

 1    precision.  However, damages must have a reasonable basis in

 2    the evidence and must be based on reasonable assumptions and

 3    estimates.  Damages may not be based on guesswork or

 4    speculation.  Plaintiff must prove the reasonableness of each

 5    of the assumptions upon which the damages calculation is based.

 6    If you find that Plaintiff has provided a reasonable basis for

 7    determining damages, you may award damages based on just a

 8    reasonable estimate supported by the evidence.  If you find

 9    that Plaintiff has failed to carry its burden of proving a

10    reasonable basis for determining damages, such that a damages

11    calculation cannot be based on evidence and reasonable

12    inferences, and can only be reached through guesswork or

13    speculation, you may either not award damages, or award nominal

14    damages not to exceed $1.

15        Plaintiff is claiming overcharges on purchases that it

16    made directly from Defendants, as well as on purchases it made

17    from distributors allegedly related to Defendants.  In

18    particular, Plaintiff claims to recover damages for purchases

19    it made from nonparty Oakshire Mushroom Sales, OMS.  To recover

20    damages on purchases from a distributor allegedly related to a

21    Defendant, you must find that a distributor was owned or

22    controlled by a Defendant who was a coconspirator.

23        So, in this case, you must find that OMS was owned or

24    controlled by Oakshire Mushroom Farms, Inc., OMF, and that OMF

25    was a member of a conspiracy.  OMS can be said to be owned or

1  controlled by OMF, where OMS and OMF are functionally the same

2  entity, such that there is in effect a direct sale to Winn-

3  Dixie from OMF.  In other words, Plaintiff must show that OMF

4  owned or had such control over OMS that OMF can be said to have

5  set the prices for OMS's sales to Winn-Dixie.  In assessing

6  whether a distributor and a Defendant have such a relationship,

7  you may consider overlapping or joint ownership, financial

8  independence, and / or joint decision making between the

9  Defendant and its distributor, whether through a corporation or

10  other business entity or individual.

11        However, under the law, two entities under common

12  control cannot conspire with one another.  In other words, if a

13  Defendant makes an agreement with another entity, with which it

14  is under common control, but does not form an agreement with

15  any other entity, then that Defendant did not enter into a

16  conspiracy.  In sum, Plaintiff may not recover damages based on

17  overcharges for mushrooms it purchased from OMS, unless it

18  shows by a preponderance of the evidence, one, it purchased

19  mushrooms from OMS, two, OMS was owned or controlled by OMF

20  such that they are functionally the same entity, and three, OMF

21  was a coconspirator. If you find that OMF participated in the

22  conspiracy, and that OMF and OMS are commonly owned or

23  controlled, then you may award damages based on Plaintiff's

24  purchased of mushrooms from OMF, OMS, and any other conspiracy

25  member.

 1          As I discussed earlier, there are multiple Defendants

 2     in this case.  Each participant in an agreement or conspiracy

 3     that violates the antitrust laws is jointly and severally

 4     liable for all of the damages resulting from the conspiracy.

 5     This means that each participant in the agreement or conspiracy

 6     is fully liable for all of the damages caused by the

 7     conspiracy, and not solely for damages caused by an individual

 8     conspirator.  One who knowingly joins an ongoing conspiracy is

 9     liable for all previous acts of the other participants in the

10     agreement or conspiracy in furtherance of the conspiracy.

11          If you find that any particular Defendant was not a

12     member of the conspiracy, then that Defendant would not be

13     liable for any damages based on Plaintiff's purchases from that

14     Defendant.  If you find that Plaintiff has proven the existence

15     of the alleged conspiracy, and that a Defendant participated in

16     a conspiracy, and that Plaintiff is entitled to recover damages

17     based on the other instructions in this case, then that

18     Defendant, absent withdraw, would be liable for all damages

19     caused by the conspiracy, including any overcharges paid by the

20     Plaintiff for products purchased from another participant in

21     the agreement or conspiracy.

22          If you find that a particular Defendant withdrew from

23     the conspiracy, that Defendant is no longer jointly and

24     severally liable for any damages caused by acts taken by the

25     conspiracy after the withdraw.  Therefore, a special Verdict

 1    Form instructs you to answer the question of which Defendants,

 2    if any, you find withdrew from the conspiracy, on what date

 3    those Defendants withdrew, and what portion of the damages, if

 4    any, for each claim you find the Defendant jointly and

 5    severally liable.

 6           In calculating the total overcharge damages

 7    attributable to the conspiracy, you can only consider those

 8    sales on which the conspiracy was able to cause an actual

 9    overcharge.  If you find that a particular Defendant withdrew

10    from the conspiracy and that the conspiracy therefore no longer

11    caused an overcharge to be paid on that Defendant's sales, then

12    those sales should not be included in your calculation of the

13    total overcharge damages.  A party that withdraws from a

14    conspiracy is only liable for damages flowing from its conduct

15    and the conduct of its coconspirators before it withdrew, even

16    if the damages occurred after its withdraw, as long as the

17    conduct causing the damages occurred before its withdraw.

18    Plaintiff has the burden of proving what portion of damages are

19    attributable to acts of the conspiracy prior to a Defendant's

20    withdraw.

21           Okay.  I'm still here.  And you're still here.  So --

22           COURT OFFICER:  I have the verdict sheets, jury

23    instructions, and the two  (indiscernible).

24           THE COURT:  I'm sending out two copies of the charge

25    for the jury, as well as the two exhibits that have been

 1   admitted into evidence that there's a dispute on the dates of

 2   withdraw for the jury to have in their possession.  And good

 3   luck.  Again, if you have any questions, whoever you elected as

 4   foreman, notify the Court in written.

 5          What was that, an hour-and-a-half?

 6          COURT OFFICER:  Just about, yeah.  Just under an hour-

 7   and-a-half.  Less.

 8          THE COURT:  I don't know is somebody close to the

 9   microphone?  All right.  All right.  Be seated.  Usually we get

10   a question right away, so hang on.

11          COURT OFFICER:  Want more water?

12          THE COURT:  Yeah.

13          COURT OFFICER:  Anything else?

14          THE COURT:  What?

15          COURT OFFICER:  Anything else?

16          THE COURT:  Yes.  A sedative.  Thank you.

17          MR. BRUNELLI:  Your Honor, may I use the restroom?

18          THE COURT:  What's that?

19          MR. BRUNELLI:  May I use the restroom?

20          THE COURT:  Oh, sure.  I don't know if anyone else

21   wants to take a break?

22          MR. AHERN:  I got to go home this weekend.

23          THE COURT:  Oh, that's good.

24          MR. AHERN:  Yeah.  Yeah.

25          THE COURT:  I can tell you did.  The wife wouldn't let

```
 1   you come back here without a shave.  I know.

 2         MR. AHERN:  Got to play double squash twice.  That was

 3   good.

 4         THE COURT:  You all have to deal with that.  I did.

 5         MR. AHERN:  Your Honor, this is Sandy Brown

 6   (phonetic), the General Counsel of Southeastern

 7   (indiscernible).

 8         THE COURT:  Hi.  Come on up.  You don't have to sit

 9   there.  Sit at the counsel table, yeah.  I mean, you're paying

10   him.  You can claim whatever you want.

11         MR. BROWN:  I passed the bar a couple of times, so,

12   thank you sir.

13         THE COURT:  You're the General Counsel for -- did I --

14   what did I hear -- what's his title?

15         MR. AHERN:  I'm sorry, Chief Legal Officer.

16         MR. BROWN:  Chief Legal Officer, Southeastern Grocers,

17   Incorporated.  They took me from General Counsel to Chief Legal

18   Officer so they didn't have to pay me any more money.  You get

19   a new title.  That should be good.

20         THE COURT:  So, you're a CLO.

21         MR. BROWN:  Yes.  (Indiscernible).

22         THE COURT:  You're the CLO Fellow.  Okay.

23      (Jury out at 11:06 a.m.)

24      (Recess at 11:06 a.m., until 2:16 p.m.)

25         THE COURT:  Be seated.  This is a question.  They want
```

 1    Leffler and David's presentation for reference.

 2          MR. AHERN:  Right, and then they --

 3          THE COURT:  They drew a graph of some kind.  Chris,

 4    why don't you give them -- let them look at it and tell me what

 5    they think the question is.

 6          MR. DESTEFANO:  Well, the question seems to be --

 7          THE COURT:  You don't know the question.  Take a look

 8    at the question.

 9          MR. DESTEFANO:  No, no, I looked at it already.

10          THE COURT:  Oh, you looked at it already?

11          MR. DESTEFANO:  Yeah.

12          THE COURT:  Oh, okay.

13          MR. DESTEFANO:  It seems that they're asking for the

14    PowerPoint presentations of both experts, and then they drew a

15    chart, and we're not sure whether that's just an example, or

16    whether that's just that chart, or whatever.  We're not sure.

17    The problem with any of that stuff is, it did not come into

18    evidence.  It was used for demonstrative purposes only and

19    we're not sure what to do, under those circumstances, if

20    anything.

21          MS. SHIELDS:  I agree with Mr. DeStefano.

22          MR. AHERN:  Yeah.

23          THE COURT:  Clear as a bell, right?

24          MR. AHERN:  Exactly.  Exactly.  Well, Your Honor, I

25    mean, they've clearly said it's just for reference.  So I don't

1    -- I mean, and Your Honor can say that this was not admitted

2    into evidence.

3        THE COURT:  That's what I mean, they have to use their

4    memory.

5        MR. AHERN:  Well, but --

6        THE COURT:  It wasn't admitted.

7        MR. AHERN:  But if they're asking for it, you can give

8    them the instruction that it's not admitted into evidence.

9        THE COURT:  Right.

10        MR. AHERN:  But, in terms of what it is, it's either,

11    you know, something like this slide, or it's the scatterplot.

12    But there are a number of slides that are -- that relate to

13    Winn-Dixie prices paid.  And it might be the scatterplot that

14    has --

15        THE COURT:  The bottom line is, it was not admitted

16    into evidence.  They have to use their best recollection.

17        MR. AHERN:  Got it, I don't know that --

18        MR. DESTEFANO:  I think that's (indiscernible).

19        MR. AHERN:  I mean, I don't think -- I mean, these

20    types of things -- none of these types of things are ever

21    admitted into evidence, I don't think, in cases like this.

22        THE COURT:  Well, that's not true.  I've had trials

23    where things were -- charts and everything were admitted into

24    evidence.

25        MR. AHERN:  Okay.

 1          THE COURT:  In fact, the one about who resigned, and

 2   so on --

 3          MR. AHERN:  Right.

 4          THE COURT:  -- was admitted into evidence and that was

 5   a chart.

 6          MR. DESTEFANO:  Right.

 7          THE COURT:  So --

 8          MR. AHERN:  Your Honor, we would say that, if they've

 9   asked for it for reference, then they can be provided to with

10   the limiting instruction.

11          THE COURT:  And what, this is for reference only?

12          MR. AHERN:  Well, that's what they said.  That's what

13   they said.  You know, I would just say that you'd be --

14          THE COURT:  It wasn't admitted into evidence.  I can't

15   send it out.  Let's throw these two out of here.  Chris, I'm

16   saying that it was not admitted into evidence.  Use your best

17   recollection.

18       (Recess from 2:22 p.m., until 2:25 p.m.)

19          MR. DESTEFANO:  Has to be the same answer.

20          THE COURT:  What's that?

21          MR. DESTEFANO:  Has to be the same answer.

22          THE COURT:  I don't remember the chart.  What chart is

23   it?

24          MR. DESTEFANO:  It's the chart that both experts used.

25   I used it in closing.  Yeah, that's one version of it.

```
 1              Mg   EKG.   Your Honor referred to it as an EKG.

 2              MR. AHERN:   Based on the actual data, and it was used

 3     by both --

 4              MR. DESTEFANO:   Well, it was a different version

 5     (indiscernible).   But again --

 6              THE COURT:   Neither one -- none of them was admitted.

 7              MR. DESTEFANO:   No.

 8              THE COURT:   Chart not admitted into evidence.   Use

 9     best recollection.   That's all I can say.

10          (Recess at 2:28 p.m., until 2:38 p.m.)

11          (Jury in 2:39 p.m.)

12          THE COURT:   All right, welcome back.   Everyone please

13     be seated.

14          COURT OFFICER:   Foreperson of the jury, please rise.

15     Members of the jury, in the matter of Winn-Dixie Stores, Inc.,

16     et al vs. Eastern Mushroom Marketing Cooperative, Inc., Civil

17     Action Number 15-6480, as to question 1, do you find by a

18     preponderance of the evidence that there was a single

19     overarching conspiracy to raise the prices of agaricus

20     mushrooms by, one, circulating minimum or target price lists

21     along with rules and regulations requiring EMMC members to

22     charge those prices, and two, acquiring properties that were

23     historically used for mushroom farming to reduce or limit the

24     supply of fresh agaricus mushrooms, including by placing deed

25     restrictions on the properties to prevent their future use as
```

1    mushroom farms.  Yes, or no?

2        JURY FOREMAN:  Yes.

3        COURT OFFICER:  Question two, do you find by a

4    preponderance of the evidence that any of the following

5    Defendants participated in the above-described single

6    overarching conspiracy to raise the prices of agaricus

7    mushrooms, A, Brownstone Mushroom Farms, Inc., yes or no?

8        JURY FOREMAN:  No.

9        COURT OFFICER:  B, C&C Carriage Mushroom Company, yes,

10   or no?

11       JURY FOREMAN:  No.

12       COURT OFFICER:  C, Country Fresh Mushroom Company,

13   yes, or no?

14       JURY FOREMAN:  No.

15       COURT OFFICER:  D, Gino Gaspari and Sons, Inc., yes,

16   or no?

17       JURY FOREMAN:  No.

18       COURT OFFICER:  E, Giorgi Mushroom Company, yes, or

19   no?

20       JURY FOREMAN:  No.

21       COURT OFFICER:  F, Kaolin Mushroom Farms, Inc., yes,

22   or no?

23       JURY FOREMAN:  No.

24       COURT OFFICER:  G, Leone Pizzini and Sons, Inc., yes,

25   or no?

```
 1              JURY FOREMAN:  No.

 2              COURT OFFICER:  H, Louis M. Marson, Jr., Inc., yes, or

 3    no?

 4              JURY FOREMAN:  No.

 5              COURT OFFIER:  I, Modern Mushroom Farms, Inc., yes, or

 6    no?

 7              JURY FOREMAN:  No.

 8              COURT OFFICER:  J, Monterey Mushrooms, Inc., yes, or

 9    no?

10              JURY FOREMAN:  No.

11              COURT OFFICER:  K, Oakshire Mushroom Farms, Inc., yes,

12    or no?

13              JURY FOREMAN:  No.

14              COURT OFFICER:  L, Phillips Mushroom Farms, Inc., yes,

15    or no?

16              JURY FOREMAN:  No.

17              COURT OFFICER:  M, South Mill Mushroom Sales, Inc.,

18    yes, or no?

19              JURY FOREMAN:  No.

20              COURT OFFICER:  N, The Eastern Mushroom Marketing

21    Cooperative, Inc., yes, or no?

22              JURY FOREMAN:  Yes.

23              COURT OFFICER:  O, To-Jo Fresh Mushrooms, Inc., yes,

24    or no?

25              JURY FOREMAN:  No.
```

1          COURT OFFICER:  P, United Mushroom Farm Cooperative,

2    Inc., yes, or no?

3          JURY FOREMAN:  No.

4          COURT OFFICER:  Question three, do you find by a

5    preponderance of the evidence that Defendant, Oakshire Mushroom

6    Farms, Inc., and Oakshire Mushroom Sales, LLC satisfy the

7    ownership and control exception the Court explained, yes, or

8    no?

9          JURY FOREMAN:  Yes.

10         COURT OFFICER:  Question four, do you find by a

11   preponderance of the evidence that the single overarching

12   conspiracy was anticompetitive, such that it caused the price

13   of fresh agaricus mushrooms to be higher than it would have

14   otherwise been, yes, or no?

15         JURY FOREMAN:  No.

16         COURT OFFICER:  Thank you, ladies and gentlemen.

17         THE COURT:  All right.  Ladies and gentlemen of the

18   jury, I want to thank you for your attention, your time, and

19   concentration on what was going on here.  And you're excused

20   from jury service with the thanks of the Court.  And as you go

21   out to the jury room, I'm going to be coming after, because I

22   know you probably have questions of me, and I'm happy to answer

23   them.  All right, thank you very much.  You're excused.

24         JURY FOREMAN:  Thank you.

25         UNKNOWN SPEAKER:  Thank you.

1          (Jury out at 2:45 p.m.)

2          (Court adjourned.)

3                          CERTIFICATION

4    I certify that the foregoing is a correct transcript from the

5    electronic sound recording of the proceedings in the above-

6    entitled matter.

7

8

9    _Elizabeth Knittle_                    March 16, 2022

10        Elizabeth Knittle                    Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**WORD INDEX**

**< $ >**
**$1** 44:*14*

**< § >**
**§** 21:*13, 15*
22:*19* 23:*23*
28:*17, 19* 30:*21*
43:*14*

**< 1 >**
**1** 21:*13, 16*
22:*19* 23:*23*
28:*17, 19* 30:*21*
43:*14* 53:*17*
**10** 4:*13*
**11:06** 49:*23, 24*
**15** 1:*1* 17:*2*
**1500** 1:*1*
**15-6480** 53:*17*
**16** 57:*9*
**17** 1:*1*
**1800** 1:*1*
**19102** 1:*1*
**19381** 1:*1*

**< 2 >**
**2:16** 49:*24*
**2:22** 52:*18*
**2:25** 52:*18*
**2:28** 53:*10*
**2:38** 53:*10*
**2:39** 53:*11*
**2:45** 57:*1*
**20** 17:*2*
**2005** 27:*24*
**2022** 1:*1* 57:*9*
**21** 1:*1*
**21208** 1:*1*
**2201** 1:*1*

**< 3 >**
**31** 27:*24*
**3600** 1:*1*

**< 4 >**
**410-821-4888**
1:*1*

**< 5 >**
**5:15-cv-06480-**
**BMS** 1:*1*
**53** 3:*1*

**< 6 >**
**60603** 1:*1*

**< 8 >**
**8** 1:*1*

**< 9 >**
**9:41** 1:*1*
**9:44** 5:*1*

**< A >**
**a.m** 1:*1* 5:*1*
49:*23, 24*
**abandoned** 27:*7*
**ability** 16:*2*
34:*6, 12*
**able** 17:*20* 47:*8*
**above-described**
54:*5*
**absence** 43:*12,
19*
**absent** 33:*12*
41:*24* 46:*18*
**accept** 9:*11*
17:*11* 23:*12*
31:*23*
**accident** 22:*14*
25:*9*
**accomplish**
23:*5, 9*
**accord** 7:*20*
**account** 32:*11*
**achieve** 35:*11,
18*
**achieved** 35:*13*
**acquired** 18:*5*
**acquiring**
28:*25* 29:*8*
53:*22*
**Act** 21:*14, 16*
22:*12, 20* 23:*14,
23* 25:*7, 14*
27:*15, 20* 28:*17,*

*19* 30:*21* 36:*11*
37:*7, 11* 43:*14*
**acted** 24:*14*
25:*19* 26:*11, 14*
27:*10* 36:*12*
38:*17*
**acting** 20:*10*
21:*5* 39:*4*
**Action** 53:*17*
**actions** 25:*17*
30:*2* 37:*2, 4*
39:*8*
**activities** 29:*2*
36:*20* 37:*10*
**activity** 43:*13*
**actor** 6:*21*
**actress** 6:*22*
**acts** 20:*8, 17,
19* 21:*4, 8, 9*
26:*21* 28:*14*
41:*19, 20* 42:*2*
46:*9, 24* 47:*19*
**actual** 21:*6*
33:*17* 36:*16*
47:*8* 53:*2*
**adjourned** 57:*2*
**administrative**
36:*24*
**admitted** 5:*12*
8:*5* 9:*18* 48:*1*
51:*1, 6, 8, 15, 21,
23* 52:*4, 14, 16*
53:*6, 8*
**adopt** 38:*14*
**adopted** 14:*22*
**advance** 36:*18*
**affect** 21:*18*
**affirmative**
27:*8, 20*
**agaricus** 28:*23*
29:*2, 10* 32:*8,
11* 34:*3* 43:*11*
53:*19, 24* 54:*6*
56:*13*
**agent** 20:*21, 23*
21:*5*
**agents** 20:*8, 9,
12, 13, 17* 21:*4*
**agent's** 20:*18*
**ago** 17:*2, 13*

**agree** 10:*9*
50:*21*
**agreed** 12:*21*
23:*17, 19* 37:*23*
38:*11*
**agreement**
10:*13* 22:*14, 16,
18, 23* 23:*9, 11,
16, 22* 24:*5, 15,
16* 29:*21* 37:*10,
15* 38:*16, 19, 22*
39:*2, 9, 13*
45:*13, 14* 46:*2,
5, 10, 21*
**ahead** 6:*22*
**Ahern** 1:*1* 4:*2,
7, 10, 14, 17, 21,
24* 48:*22, 24*
49:*2, 5, 15* 50:*2,
22, 24* 51:*5, 7,
10, 17, 19, 25*
52:*3, 8, 12* 53:*2*
**aid** 8:*8*
**al** 1:*1* 53:*16*
**alike** 23:*15*
**allege** 27:*25*
**alleged** 22:*10*
23:*8, 18, 20*
24:*1, 5, 9* 25:*2,
4, 18, 25* 26:*5, 9,
13, 18, 19* 27:*22,
23* 29:*14, 18, 25*
33:*7* 34:*4* 40:*6,
7, 14, 16, 23*
41:*6, 9, 10, 13*
43:*4* 46:*15*
**allegedly** 38:*21*
44:*17, 20*
**alleges** 28:*22*
**alternates** 4:*11*
**alternative**
31:*25* 32:*2*
35:*13*
**amount** 22:*5*
40:*18, 20, 24*
41:*1, 2* 42:*11,
19* 43:*8, 16, 17*
**analysis** 30:*9*
35:*25*
**and-a-half** 48:*7*

**answer** 10:*12*
14:*10, 11* 21:*22*
22:*4* 47:*1*
52:*19, 21* 56:*22*
**answers** 10:*17*
17:*18*
**anticompetitive**
29:*15* 33:*17*
36:*3, 5, 8* 56:*12*
**antitrust** 10:*25*
37:*2, 17* 40:*6, 9,
15, 16, 23* 41:*9,
10, 13, 16, 17, 21,
25* 42:*3, 4, 8, 12,
14, 17* 43:*1, 4*
46:*3*
**apparent** 20:*18,
22* 21:*6*
**appear** 8:*3*
**APPEARANCE**
**S** 1:*1*
**appears** 6:*2*
**applicable** 5:*14,
24*
**applies** 11:*18*
**apply** 5:*22*
7:*14, 16* 11:*18*
**applying** 28:*19*
**appropriate**
19:*1*
**area** 32:*14*
**argue** 32:*9*
**arguments** 5:*12*
12:*24*
**arises** 21:*13*
**arrive** 19:*3*
**asked** 10:*2*
13:*21* 21:*22*
30:*6* 52:*9*
**asking** 50:*13*
51:*7*
**aspects** 29:*6*
31:*6*
**assembled**
24:*12*
**asserts** 32:*18*
**assess** 14:*20*
**assessing** 45:*5*
**associated** 24:*11*
**Associates** 1:*1*

**association** 19:22 20:7 26:6 37:1, 3, 6, 11, 12, 13, 16, 18, 20
**associations** 19:17, 24 36:18, 21
**assumptions** 18:20 19:2, 5 44:2, 5
**attention** 56:18
**attorneys** 13:5
**attorney's** 43:9
**attributable** 28:14 47:7, 19
**Audio** 1:1
**August** 27:24
**authority** 20:19, 21, 22 21:6
**available** 9:15 24:6 35:13
**Avenue** 1:1
**average** 18:4
**avoided** 43:20
**award** 22:6 42:11 43:5, 8, 15 44:7, 13 45:23

**< B >**
**back** 5:2 10:2 49:1 53:12
**background** 39:6
**balance** 30:19 35:19
**Baltimore** 1:1
**bar** 49:11
**base** 6:11, 14
**based** 8:23 9:14 13:1, 7, 11 26:6 44:2, 3, 5, 7, 11 45:16, 23 46:13, 17 53:2
**basis** 22:14 44:1, 6, 10
**bear** 16:10 35:1

**bears** 27:18 36:2
**began** 27:3
**beginning** 5:19 7:17 11:17
**behalf** 20:10, 20
**behavior** 38:7, 11
**belief** 15:23
**believability** 16:11
**believable** 16:14
**believe** 4:7 13:18 14:5 15:20, 21, 23, 24 16:10 18:17 19:14 20:23 42:22
**believed** 15:7
**BELL** 4:4 50:23
**belong** 37:3
**belongs** 37:16
**benefit** 30:20, 23 42:2
**benefits** 30:18, 19 34:25 35:1, 8, 10, 11, 12, 15, 18, 19, 21, 23 36:1, 4, 6, 9
**benefitted** 35:2
**BERLE** 1:1
**best** 51:16 52:16 53:9
**better** 34:12
**Beyer** 18:1
**beyond** 11:16
**bias** 7:4 16:6 19:6
**binding** 26:23
**blog** 9:8
**bodies** 36:25
**body** 20:8
**bottom** 51:15
**bound** 7:17 20:17
**brackets** 5:4
**break** 48:21
**briefly** 30:10

**bringing** 29:21
**broader** 31:5
**brought** 11:1, 2
**Brown** 49:5, 11, 18
**Brownstone** 11:4 54:7
**BRUNELLI** 4:5 48:17, 19
**burden** 7:14 11:13 12:9 27:18 28:2, 13 31:8 32:15 33:16 35:1 36:3 39:18, 21, 24 43:21 44:9 47:18
**business** 19:17 22:2 31:3 33:3 36:16 37:16 38:13 40:3 42:10, 24 45:10
**busted** 5:4
**buying** 31:24

**< C >**
**C&C** 11:4 54:9
**calculate** 43:25
**calculated** 27:11
**calculating** 43:24 47:6
**calculation** 44:5, 11 47:12
**called** 10:10 11:14 12:15 15:3 21:14 28:20 31:5
**capable** 20:11, 14 37:1
**carefully** 8:21
**Carriage** 11:5 54:9
**carry** 23:18 44:9
**carrying** 15:13
**case** 5:14 6:15, 19 7:5 8:18 9:4, 5, 10, 11, 13, 14, 21 10:19, 25 11:14 13:10

16:6 17:1, 25 19:2, 8, 15, 16, 18 20:3 25:20, 21 28:20 32:7 33:7, 18 42:22 43:10 44:23 46:2, 17
**cases** 11:18, 19 51:21
**catch** 5:17
**causation** 40:4
**cause** 16:21 22:2 40:7 41:7, 9, 11, 14 42:7 47:8
**caused** 28:12 41:18 42:1, 18 46:6, 7, 19, 24 47:11 56:12
**causes** 41:12
**causing** 47:17
**cell** 9:6
**Centre** 1:1
**certain** 10:5 13:19 14:12, 17 16:22 17:19 25:17 38:5, 13
**certainty** 43:25
**CERTIFICATION** 57:3
**certify** 57:4
**challenge** 30:20 32:25
**challenged** 30:12, 15, 24 33:12, 15, 21 34:20, 23 35:2, 9, 17, 22, 24
**chance** 9:19
**change** 8:22, 25
**charge** 24:20, 24 29:8 34:10, 12 47:24 53:22
**charged** 23:2 34:7
**chart** 50:15, 16 52:5, 22, 24 53:8
**charts** 51:23

**chatroom** 9:8
**Chester** 1:1
**Chicago** 1:1
**Chief** 49:15, 16, 17
**choice** 35:4
**chosen** 6:23
**Chris** 50:3 52:15
**circulating** 28:24 53:20
**circulation** 29:6
**circumstances** 21:1 24:8 37:13 50:19
**circumstantial** 15:9, 10, 13, 17 24:2, 7
**CIVIL** 1:1 10:25 11:19 53:16
**claim** 12:4, 6 21:13 22:19 25:1, 2 26:13, 16, 18 28:22 29:4 32:21, 23, 24 39:24 47:4 49:10
**claimed** 23:17 35:15
**claiming** 44:15
**claims** 11:23 32:16 43:10 44:18
**Clear** 50:23
**clearly** 50:25
**clients** 14:4
**CLO** 49:20, 22
**close** 48:8
**closing** 12:23 52:25
**coconspirator** 44:22 45:21
**coconspirators** 27:11 28:9 34:4 37:14 47:15
**collective** 37:9
**combination** 21:23, 25 22:1,

*4, 8, 11, 19*
*26:20, 22, 24*
*28:16, 18*
**combinations**
21:*16*
**come**  6:*16*
49:*1, 8*  50:*17*
**coming**  23:*11*
56:*21*
**commerce**
21:*18, 19*
**commitment**
22:*17*
**committing**
37:*1*
**common**  6:*15*
13:*15*  18:*4*
22:*17*  23:*10*
25:*23*  29:*20*
31:*12*  36:*18*
45:*11, 14*
**commonly**
45:*22*
**commonsense**
17:*3*  19:*10*
**communicate**
9:*4, 9, 13*  36:*19*
**community**
19:*20*  20:*4*
**Company**  11:*5,*
*6*  20:*1*  54:*9, 12,*
*18*
**compare**  6:*21*
**compared**  6:*19*
**compensated**
42:*24*
**compensatory**
43:*2*
**compete**  37:*8*
**competition**
21:*15*  29:*16*
30:*13, 16*  31:*1,*
*4, 5*  33:*2, 4, 5,*
*10*  34:*1, 21, 24,*
*25*  35:*3, 14*
36:*1*  41:*19, 20*
42:*1*
**competitive**
30:*17, 19, 20, 22*
33:*13, 14, 22*

34:*8*  35:*10, 18,*
*19, 20, 21, 22, 23*
42:*1*
**competitor**  36:*2*
**competitors**
33:*25*  34:*17*
36:*2, 17*  37:*3, 5*
38:*15, 17*
**computer**  9:*7*
**concentration**
56:*19*
**concept**  11:*19*
**concepts**  41:*2*
**concerned**  6:*8*
**concerning**
42:*21*
**conclude**  15:*14*
19:*12*  32:*4, 6*
39:*11*
**concluded**
27:*17*  41:*3*
**conclusion**
13:*19, 20*
**conclusions**
19:*3*
**conditions**  38:*9,*
*13, 14*
**conduct**  9:*10*
21:*2*  24:*10*
26:*1*  28:*9, 11,*
*12*  33:*13, 15, 21*
36:*4, 5, 8, 13*
37:*20*  38:*1, 3,*
*21, 23*  39:*3, 6,*
*13*  40:*7*  41:*6*
42:*6, 7, 25*  43:*7,*
*19*  47:*14, 15, 17*
**conducting**
35:*25*
**conflict**  18:*11,*
*15*
**consequence**
42:*25*
**consider**  6:*6*
7:*19*  11:*20*
12:*14*  13:*2, 16*
14:*14, 17, 24*
15:*15, 25*  17:*6,*
*14*  18:*18, 22*
19:*4, 6, 18*  20:*3*

21:*20*  25:*25*
26:*7*  30:*16*
31:*19*  35:*3, 6,*
*10, 25*  38:*23*
39:*5*  40:*20, 24*
41:*2*  42:*15*
45:*7*  47:*7*
**consideration**
8:*19*  17:*21*
**considered**
10:*7*  16:*9*
31:*14*  38:*3*
**considering**
12:*3, 8*  29:*25*
35:*2*  39:*10*
**consistent**  25:*17*
**consists**  12:*18*
**conspiracies**
21:*17*  29:*4*
**conspiracy**
21:*23, 25*  22:*1,*
*4, 9, 11, 12, 14,*
*19, 21, 25*  23:*1,*
*2, 3, 7, 8, 10, 18,*
*21, 23, 24*  24:*2,*
*5, 6, 8, 13, 16, 20,*
*22, 24*  25:*4, 7,*
*10, 11, 14, 15, 18,*
*19, 25*  26:*4, 6, 9,*
*11, 15, 20, 22, 24,*
*25*  27:*1, 2, 3, 5,*
*6, 7, 9, 10, 12, 13,*
*16, 18, 20, 22, 23*
28:*1, 6, 8, 10, 14,*
*16, 18, 23*  29:*3,*
*6, 14, 15, 18, 19*
30:*1, 5, 8*  37:*23*
38:*4, 7, 20, 25*
39:*17, 22*  44:*25*
45:*16, 22, 24*
46:*2, 4, 5, 7, 8,*
*10, 12, 15, 16, 19,*
*21, 23, 25*  47:*2,*
*7, 8, 10, 14, 19*
53:*19*  54:*6*
56:*12*
**conspirator**
25:*15*  46:*8*
**conspirators**

29:*20, 23*
**conspire**  45:*12*
**conspired**
37:*12*  38:*12*
**conspiring**
20:*11, 14*
**constitute**
29:*19*  37:*10*
41:*24*
**constitutes**
23:*23*
**consult**  8:*7, 15*
**consumer**  35:*4*
**consumers**  36:*1*
41:*21*  42:*2*
**containing**
17:*24*
**contemplated**
29:*21*
**contends**  32:*7*
37:*25*  38:*3*
**continue**  26:*12*
29:*22*  31:*24*
32:*20*
**continues**  27:*15*
**continuous**
29:*21, 22*
**contract**  21:*23,*
*25*  22:*1, 4, 8, 10,*
*18, 19*  26:*19, 22,*
*24*  28:*16, 18*
**contracts**  21:*16*
**contradicted**
16:*7*
**contrary**  16:*19*
**control**  13:*20*
33:*9*  45:*4, 12,*
*14*  56:*7*
**controlled**
44:*22, 24*  45:*1,*
*19, 23*
**convey**  10:*22*
**convictions**  8:*24*
**cooperation**
29:*23*
**Cooperative**
1:*1*  11:*11, 12*
27:*22*  36:*15, 16,*
*23*  53:*16*  55:*21*
56:*1*

**copies**  6:*1*
47:*24*
**copy**  5:*16*
**corporation**
19:*21*  20:*7, 11,*
*16, 20, 23*  21:*3*
45:*9*
**corporations**
19:*16, 24*  20:*2*
21:*12*
**correct**  57:*4*
**Cosgrove**  1:*1*
**costs**  43:*9*
**counsel**  5:*12,*
*24*  6:*3*  49:*6, 9,*
*13, 17*
**countervailing**
30:*17, 18*
**Country**  11:*5*
54:*12*
**couple**  4:*16*
49:*11*
**coupled**  33:*9*
**course**  8:*21*
**COURT**  1:*1*
3:*1*  4:*1, 6, 9, 12,*
*16, 20, 23, 25*
5:*2, 22*  6:*3, 9*
7:*9*  8:*2*  13:*12,*
*14*  17:*17*  26:*20*
47:*22, 24*  48:*4,*
*6, 8, 11, 12, 13,*
*14, 15, 16, 18, 20,*
*23, 25*  49:*4, 8,*
*13, 20, 22, 25*
50:*3, 7, 10, 12,*
*23*  51:*3, 6, 9, 15,*
*22*  52:*1, 4, 7, 11,*
*14, 20, 22*  53:*6,*
*8, 12, 14*  54:*3, 9,*
*12, 15, 18, 21, 24*
55:*2, 5, 8, 11, 14,*
*17, 20, 23*  56:*1,*
*4, 7, 10, 16, 17,*
*20*  57:*2*
**Courthouse**  1:*1*
**Courtroom**  9:*3,*
*15*  10:*15*  13:*11*
*15:12*

Court's 5:25
6:4, 12
covered 15:12
CRC 1:1
created 37:5
creates 35:14
credibility
15:21, 22 18:9
credible 16:18
credit 18:25
criminal 11:18
Cross 3:1
customers
31:21, 23 32:2,
5, 9, 12

< D >
damage 40:12
41:1, 2 42:4
damages 22:6
28:7, 8, 10, 12,
14 40:1, 2, 13,
21, 24 42:10, 11,
15, 16, 19, 21, 24
43:1, 5, 6, 15, 17,
20, 22, 24, 25
44:1, 3, 5, 7, 10,
13, 14, 18, 20
45:16, 23 46:4,
6, 7, 13, 16, 18,
24 47:3, 6, 13,
14, 16, 17, 18
data 18:21
53:2
date 10:14
47:2 57:10
dates 48:1
David 18:1
David's 50:1
DAY 1:1 38:10
deal 49:4
dealings 29:24
decide 6:24
7:8 8:18 9:13
15:17, 19 18:16,
17 19:18 20:3
25:20 30:7
38:20 39:25

deciding 4:19,
21 7:9 15:19,
24
decision 7:11
9:21 13:11, 14
14:2 39:15
45:8
decisions 6:7
39:10
decrease 43:20
decreased 35:5,
7
deed 29:11
53:24
defeat 27:10
Defendant 1:1
3:1 22:11 25:3,
5, 16, 19, 21, 24
26:5, 8, 10, 13,
17, 18 27:8, 14,
17, 18 29:5, 14
32:18 34:4, 14
37:23 38:24
39:12, 16, 18, 19,
21, 22, 23 40:3
44:21, 22 45:6,
9, 13, 15 46:11,
12, 14, 15, 18, 22,
23 47:4, 9 56:5
Defendants 1:1
11:3, 14 12:1,
10, 11, 15 18:1
24:22, 25 25:20,
22, 23 27:25
28:3, 22 30:8
32:9, 23 33:20
34:17, 18, 19
35:1 36:12, 17
37:25 38:4, 5, 7,
17, 21 39:2, 8,
14, 25 40:1, 5,
25 41:6 42:12,
13, 17 43:13, 19
44:16, 17 46:1
47:1, 3 54:5
Defendant's
26:1, 2, 4, 14, 16
28:15 34:15
36:10 37:21
39:13 40:6, 14,

16, 23 42:6
43:10, 12 47:11,
19
defense 36:11
defined 34:6
definitions
31:10
deliberate 8:16
deliberately
22:13 25:8
deliberation 9:2
deliberations
5:10, 15, 20
7:25 8:1, 21
9:23 11:21
21:21
demonstrate
30:25 31:4
33:1, 4
demonstrative
50:18
depend 16:13
deposition
12:20 17:14, 20
depositions
17:19
depriving 29:15
Deputy 9:3
described 30:8
deserves 13:18
16:15 17:11
DeStefano 1:1
4:3 50:6, 9, 11,
13, 21 51:18
52:6, 19, 21, 24
53:4, 7
detail 17:7
30:4, 10
details 22:25
23:5 25:10
deter 43:7
determination
19:14 39:5
determine
10:24 18:8
22:5 24:21
26:8 28:1, 6, 18
29:18 30:2, 6,
11 31:18 34:24
42:13, 19 43:13

determining
12:12 24:16
25:24 33:21
34:14 44:7, 10
device 9:6
difference 6:2
different 16:21
23:13 28:17
29:3 41:1
43:18 53:4
differently
11:24 13:5
16:23
Direct 3:1
10:16 15:3, 8,
17 24:2, 3, 5
42:25 45:2
directly 20:20
23:3 33:17
44:16
directors 20:9
disagree 7:19
18:11
disagreements
18:14
disavow 27:9
discharged
10:17
discontinue
25:1 26:17
32:24
discredit 16:22
discrepancies
16:20
discrepancy
17:5, 8
discuss 9:19
discussed 46:1
discussion 36:14
dispute 19:19
20:4 48:1
disregard 13:9
14:13 42:15
distinction
15:16
distributor
44:20, 21 45:6,
9
distributors

determining
44:17
DISTRICT 1:1
divisions 20:12
Dixie 45:3
Docket 1:1
document 10:10
documentary
8:4
documents 5:8
12:20
doing 38:23
dollar 40:18
double 49:2
doubt 11:16
downwards
12:3, 6
Dr 17:25 18:1
drew 50:3, 14
drops 15:12
duties 7:7
20:21
duty 5:13, 21
6:10, 13 7:13
8:15 10:23

< E >
earlier 24:3
33:2 46:1
East 1:1
EASTERN 1:1
11:11 36:15
53:16 55:20
effect 17:5
33:9, 18, 23
34:21 36:3
45:2
effects 36:5, 8
eight 4:11, 12
either 12:9, 10
15:16 33:16
44:13 51:10
EKG 53:1
elected 48:3
electronic 2:1
9:6, 12 57:5
element 22:19
40:11
elements 40:4,
10

eliminate 41:12
Elizabeth 57:10
EMMC 11:11
14:19, 22 29:8
36:15 53:21
EMMC's 14:21
emphasize 8:12
employees
20:10
employment
20:18, 19 21:6
engage 39:3
engaged 25:16
28:22 37:25
enter 4:9, 10
45:15
entered 4:8
22:22 29:5
entering 23:16
entire 32:17
39:6
entirely 22:24
entities 19:18
21:24 22:15, 17
45:11
entitled 8:13
17:21 19:22
21:7 40:1, 13
42:9, 19 46:16
57:6
entity 19:22
45:2, 10, 13, 15,
20
entrusted 20:25
equal 19:19, 25
20:4, 5 21:12
equals 20:1
error 17:8
especially 7:1
Esq 1:1
essential 23:14
25:12
establish 22:21
24:4, 12 38:6
40:12 41:5, 15
42:5
established
21:10 40:19
41:4

establishes 40:4
estimate 44:8
estimated
43:15, 22
estimates 43:24
44:3
et 1:1 53:16
evaluate 6:24
26:12 32:21
evaluated 31:9
33:7
evaluating 17:3
evaluation 25:1
26:17 32:24
event 16:23
events 13:17
17:2 26:3
everybody 5:2
everyday 13:16
evidence 5:11,
23 6:15, 17, 24
7:8 8:5, 10, 11,
15, 20, 23, 24
9:14, 18 11:15,
21, 22, 23, 25
12:1, 4, 7, 8, 13,
16, 17, 22 13:2,
5, 8, 9, 12, 16, 19,
21, 22, 24 14:2,
4, 5, 6, 12, 14, 17,
24 15:1, 2, 3, 8,
9, 10, 13, 15, 17,
18 16:8, 10, 12
17:14 19:1, 7
21:11 22:10, 22
23:7 24:2, 3, 5,
7, 18, 20, 24
25:4, 22, 25
26:2, 3 27:7, 19,
20 28:3 29:13
32:16 38:4, 24
39:1, 7, 11, 12
40:19, 22 41:6
43:22 44:2, 8,
11 45:18 48:1
50:18 51:2, 8,
16, 21, 24 52:4,
14, 16 53:8, 18
54:4 56:5, 11
exact 40:18

exactly 23:15
50:24
examine 12:24
example 10:4
15:3 36:20
38:9 41:22
50:15
exceed 44:14
exception 56:7
exciting 4:20
excluded 13:9
14:15
exclusive 10:23
excused 56:19,
23
exercise 38:8
exhibit 13:22
14:16
EXHIBITS 3:1
8:5 12:16, 20
47:25
existed 22:11
23:7 26:20
38:4, 25
existence 14:20
22:21 24:1, 4, 7,
13 31:8 33:17
38:6 46:14
existing 26:25
exists 22:17
32:15
experience
13:17, 18 18:6
experiencing
16:23
expertise 18:9
experts 18:6
50:14 52:24
explain 7:15
30:10 31:10
40:10
explained 39:3
56:7
explicit 24:3
extent 28:6
29:23
extra 43:16

< F >
Facebook 9:9

fact 6:1 12:4,
6, 12 14:8
15:11 16:12, 16,
17 18:14, 16
24:11 25:16
38:5 40:5, 12,
16, 20 41:4
42:6, 20 52:1
factor 26:7
34:5, 13
factors 16:1, 10
18:22 29:25
33:22 35:3
facts 5:22 6:14
7:8, 9, 11, 12, 14,
16 12:18, 21
13:1, 8 15:10,
19 18:13 19:14
34:3
factual 6:25
failed 12:8
23:25 24:23
26:14 32:9
36:8 39:17, 20
40:22 44:9
fair 19:22 21:7
fairly 42:23
falsehood 17:9
far 5:3
Farm 11:12
27:22 28:5
29:12 56:1
farming 29:1, 9
53:23
Farms 11:4, 7,
8, 9, 10 44:24
54:1, 7, 21 55:5,
11, 14 56:6
fashion 6:22
favor 12:9, 10
24:25 26:16
32:23 36:7, 10
40:25
favorable 11:25
12:1
federal 21:13
feel 8:21
fees 43:9
fellow 8:20, 25

49:22
felt 15:6
field 18:3
fill 10:14
final 5:13, 19
Finally 41:15
financial 45:7
find 5:23 7:16
12:3, 7, 17
15:11 16:16
21:5 24:8, 19,
23, 25 25:3
26:5, 10, 13, 16,
19, 23 27:6, 21,
23 28:5 29:25
30:5, 14, 18, 21
32:2, 5, 19, 21,
23 33:15 34:22
35:9, 17 36:4, 7,
10 37:20 38:25
39:15, 17, 20, 23
40:18, 21 42:17
44:6, 8, 21, 23
45:21 46:11, 14,
22 47:2, 4, 9
53:17 54:3
56:4, 10
Finding 3:1
fine 4:15
finished 10:6
Firm 1:1 34:9,
11
firms 34:9 35:8
first 7:7 30:3
40:3, 11
flowing 28:8
47:14
follow 5:21
7:18 14:23
following 12:18,
22 16:1 21:22
22:9 33:22
54:4
foregoing 57:4
foreman 48:4
54:2, 8, 11, 14,
17, 20, 23 55:1,
4, 7, 10, 13, 16,
19, 22, 25 56:3,
9, 15, 24

**foreperson** 8:*1* 9:*24* 10:*14, 16* 53:*14*

**forget** 17:*1, 3*

**Form** 10:*10, 12, 15* 36:*18* 45:*14* 47:*1*

**formal** 22:*22* 37:*5*

**formed** 23:*10* 27:*3*

**forth** 38:*2*

**found** 43:*1*

**four** 56:*10*

**free** 8:*22* 13:*19* 21:*15*

**Fresh** 11:*5, 11* 29:*1, 10* 32:*8, 9, 11* 34:*3* 53:*24* 54:*12* 55:*23* 56:*13*

**full** 8:*19* 22:*25* 25:*10*

**fully** 46:*6*

**functionally** 45:*1, 20*

**Further** 3:*1* 25:*1, 7* 26:*11, 15, 17* 32:*24* 38:*3*

**furtherance** 27:*16* 36:*20* 46:*10*

**Furthermore** 8:*4* 27:*14* 43:*7*

**future** 29:*12* 43:*7* 53:*25*

**< G >**

**Gallo** 1:*1*

**Gaspari** 11:*6* 28:*4* 54:*15*

**general** 20:*21* 49:*6, 13, 17*

**generally** 31:*4* 33:*5* 34:*9*

**gentlemen** 56:*16, 17*

**geographic** 30:*13* 31:*7, 11*

32:*13, 15, 17, 20, 22*

**Gino** 11:*6* 28:*3* 54:*15*

**Giorgi** 11:*6* 54:*18*

**give** 5:*13* 7:*13, 18* 8:*9, 23* 9:*24, 25* 10:*16* 13:*17* 15:*18* 17:*9* 42:*16* 50:*4* 51:*7*

**given** 8:*2* 15:*16* 19:*1, 12* 25:*3* 32:*13* 39:*12*

**giving** 42:*20*

**glad** 5:*3*

**go** 48:*22* 56:*20*

**goal** 27:*10* 29:*20*

**goes** 11:*18*

**going** 4:*8, 11* 5:*9* 30:*4* 56:*19, 21*

**Good** 4:*1, 2, 3, 4, 5, 23* 5:*2* 36:*12, 13* 48:*2, 23* 49:*3, 19*

**goods** 34:*10*

**govern** 5:*20*

**governed** 6:*4*

**graph** 50:*3*

**greater** 8:*13*

**Grocers** 49:*16*

**group** 36:*2* 37:*2, 4, 7, 14*

**guesswork** 44:*3, 12*

**guide** 5:*10, 14, 20*

**< H >**

**hand** 25:*13* 32:*5* 41:*25*

**hang** 48:*10*

**happens** 25:*14*

**happy** 56:*22*

**harm** 30:*13, 15, 20, 22* 31:*1, 2, 4*

32:*14* 33:*2, 4, 5, 14, 22* 34:*23* 35:*14, 20, 21, 22* 36:*1* 41:*20* 43:*20*

**harmful** 33:*9* 34:*21*

**Harvey** 1:*1*

**hear** 16:*2, 23* 49:*14*

**heard** 5:*8, 11* 7:*9* 11:*15* 13:*10, 12, 13, 24* 15:*6* 17:*24* 19:*16* 36:*14*

**heightened** 42:*1*

**helping** 35:*8*

**helps** 25:*14*

**Hi** 49:*8*

**higher** 22:*3* 29:*16* 33:*11, 13, 18* 34:*10, 12* 41:*23* 56:*13*

**historically** 28:*25* 29:*9* 53:*23*

**hold** 21:*9*

**holding** 19:*20* 20:*5*

**home** 48:*22*

**honest** 8:*24*

**Honor** 4:*7* 48:*17* 49:*5* 50:*24* 51:*1* 52:*8* 53:*1*

**HONORABLE** 1:*1*

**hope** 5:*3*

**hour** 48:*6*

**hour-and-a-half** 48:*5*

**< I >**

**identical** 31:*16* 38:*9*

**Identification** 37:*21*

**identity** 23:*1* 25:*11*

**ignore** 14:*9*

**IL** 1:*1*

**illegal** 30:*21* 40:*7* 41:*6*

**impartial** 8:*19*

**implementing** 14:*21*

**importance** 17:*7*

**important** 7:*3* 9:*13* 16:*14* 34:*13* 40:*25*

**imposed** 34:*2*

**impression** 8:*14*

**improper** 14:*6*

**improved** 35:*5*

**inaccurate** 9:*16*

**inaccurately** 17:*1*

**inactivity** 27:*13*

**inception** 25:*6*

**include** 20:*9*

**included** 47:*12*

**includes** 7:*21* 13:*3* 33:*8*

**including** 9:*7* 12:*19, 23* 16:*1* 19:*6, 23* 21:*12* 24:*8* 26:*2* 29:*11* 35:*3* 46:*19* 53:*24*

**incomplete** 9:*16*

**Inconsistencies** 16:*20*

**inconsistent** 27:*9*

**Incorporated** 11:*1* 49:*17*

**increase** 31:*20, 22, 24, 25* 32:*3* 35:*4, 7*

**increased** 35:*4, 5, 6* 43:*11*

**independence** 45:*8*

**independent** 8:*10* 20:*15* 29:*4* 38:*8* 39:*10, 15*

**independently** 24:*14* 38:*16, 18* 39:*4*

**Index** 3:*1*

**indiscernible** 47:*23* 49:*7, 21* 51:*18* 53:*5*

**individual** 21:*8, 9* 31:*3* 33:*3* 38:*21, 24* 45:*10* 46:*7*

**individuals** 17:*25* 19:*23*

**industry** 34:*3* 36:*22* 37:*6, 13*

**infer** 24:*7* 38:*25*

**inferences** 24:*4* 44:*12*

**influence** 7:*11* 9:*20* 13:*14*

**influenced** 8:*11* 14:*7*

**information** 9:*4, 10, 15, 17, 20* 18:*20*

**informed** 36:*21*

**Initially** 30:*11*

**injured** 29:*17* 40:*5, 14, 16, 20, 23* 41:*4* 42:*6* 43:*2, 14*

**injuries** 41:*18, 21, 25* 42:*3, 4*

**injury** 22:*2* 40:*2, 4, 8, 11, 18* 41:*1, 7, 8, 11, 12, 14, 15, 16, 17, 22, 25* 42:*7, 8, 10, 18*

**innocent** 17:*8*

**inquiry** 30:*3*

**insignificant** 31:*20*

**Instagram** 9:*9*

**instruct** 7:*15* 22:*6* 28:*20*

**instructed** 12:*14* 14:*17* 26:*21*

**instructing**
21:*18*  27:*21*
**instruction**  6:*5*
14:*23*  42:*16*
51:*8*  52:*10*
**instructions**
5:*10, 13, 14, 16,*
*18, 20, 21, 25*
6:*1, 4, 6, 12*
7:*18, 21, 23*
10:*21*  42:20
46:*17*  47:23
**instructs**  47:*1*
**intended**  10:*21*
40:*9*  41:*16*
42:*9*
**intent**  25:*7*
26:*11, 15*
**intention**  8:*16*
27:*14*
**intentional**  17:*9*
**interchangeable**
31:*13, 17*
**interest**  16:*5*
**interests**  36:*18*
**internet**  9:*7, 15,*
*17*
**interstate**  21:*18,*
*19*
**investigate**  9:*12*
**invitations**
23:*12*
**involved**  6:*19*
26:*3*
**involves**  19:*16*
30:*9*
**irrelevant**  20:*2*
**issue**  42:*15, 21*
**issues**  25:*22*
37:*4*
**its**  11:*14*  12:*2,*
*9*  20:*8, 9, 10, 11,*
*12, 13, 17*  21:*4,*
*8*  22:*22, 23*  *1*
25:*6, 11*  26:*6*
27:*14*  28:*9, 11*
33:*16*  34:*4*
36:*4*  37:*8, 11*
38:*15, 17*  39:*14,*
*18, 21, 24*  40:*2,*

*18*  41:*11, 12, 14,*
*15*  42:*10, 24*
43:*21*  44:*9*
45:*9*  47:*14, 15,*
*16, 17*

**< J >**
**Jesse**  18:*1*
**job**  7:*9*  18:*14*
**joined**  25:*5*
26:*24*  27:22
29:*14*
**joining**  25:*19*
**joins**  26:*25*
46:*8*
**joint**  36:*24*
45:*7, 8*
**jointly**  46:*3, 23*
47:*4*
**journals**  36:*23*
**Jr**  1:*1*  11:*8*
55:*2*
**JUDGE**  1:*1*
**judged**  17:*22*
18:*7*  21:*8*
**judges**  6:*14*
7:*12*  15:*21*
**judging**  20:*24*
**judgment**  10:*7*
19:*10*  38:*8*
**juror**  8:*14*
10:*8, 9*
**jurors**  5:*7*
6:*23*  7:*7*  8:*12,*
*15, 20, 25*
**JURY**  1:*1*  5:*1,*
*5, 16*  7:*24, 25*
9:*24*  10:*8, 12*
47:*22, 25*  48:*2*
49:*23*  53:*11, 14,*
*15*  54:*2, 8, 11,*
*14, 17, 20, 23*
55:*1, 4, 7, 10, 13,*
*16, 19, 22, 25*
56:*3, 9, 15, 18,*
*20, 21, 24*  57:*1*
**justified**  19:*4*
**justify**  35:*15*

**< K >**

**Kaolin**  11:*6*
54:*21*
**keep**  36:*21*
**Keith**  17:*25*
**kind**  9:*7*  50:*3*
**kinds**  15:*15*
**knew**  6:*17*
37:*20*
**Knittle**  57:*10*
**know**  4:*17, 19*
5:*15*  7:*3*  16:*2*
48:*8, 20*  49:*1*
50:*7*  51:*11, 17*
52:*13*  56:22
**knowingly**
22:*11, 12*  25:*5,*
*8, 19*  26:*11, 15,*
*23, 25*  46:*8*
**knowledge**  18:*3,*
*4*  22:*25*  25:*10,*
*12, 13*  26:*2, 6*
27:*1*
**knows**  15:*4*

**< L >**
**lack**  8:*10*
**ladies**  56:*16, 17*
**lapse**  17:*8*
**larger**  16:*18*
**law**  5:*13, 18, 21,*
*22, 24*  6:*2, 6, 8,*
*10, 12, 17*  7:*13,*
*15, 19*  15:*16*
19:*25*  20:*3, 7,*
*11*  21:*12, 13*
42:*23*  43:*5*
45:*11*
**lawful**  36:*20*
**lawfully**  36:*18*
37:*7*  38:*14*
**laws**  37:*2, 17*
40:*6, 9, 15*
41:*16*  42:*5, 8,*
*13, 14, 17*  46:*3*
**lawsuit**  11:*1, 2*
43:*9*
**lawyer**  6:*20*
13:*21, 22, 24*
14:*1*

**lawyers**  5:*9*
10:*1*  12:*23, 25*
13:*1, 3, 6*  14:*4*
17:*17*
**lead**  41:*19*
**leads**  13:*19*
**Lee**  1:*1*
**Leffler**  17:*25*
50:*1*
**legal**  36:*13*
49:*15, 16, 17*
**legally**  20:*16*
21:*3*
**legislative**  36:*24*
**lengthy**  14:*3*
**Leone**  11:*7*
54:*24*
**level**  33:*14*
34:*1*  43:*12*
**liability**  21:*10*
**liable**  21:*10*
28:*7, 8*  37:*17,*
*18*  46:*4, 6, 9, 13,*
*18, 24*  47:*5, 14*
**life**  19:*21*  20:*6*
**light**  11:*23*
13:*16*  16:*9*
**lighthearted**  7:*2*
**Likewise**  6:*7*
**limit**  29:*1, 10*
53:*23*
**limited**  14:*18,*
*24*  35:*4*
**limiting**  52:*10*
**line**  51:*15*
**list**  8:*3*  11:*4*
**Listen**  8:*20*
**lists**  28:*25*
29:*7*  38:*2*
53:*20*
**litigation**  11:*3*
**LLC**  56:*6*
**long**  7:*1*  28:*11*
31:*17*  38:*15*
47:*16*
**longer**  27:*12*
46:*23*  47:*10*
**look**  29:*19*
33:*22*  50:*4, 7*

**looked**  50:*9, 10*
**lose**  4:*16*
**losses**  35:*7*
**lot**  5:*8*
**Louis**  11:*7*
55:*2*
**luck**  48:*3*

**< M >**
**Macelree**  1:*1*
**main**  7:*7*
**maintain**  37:*7*
**maintaining**
43:*9*
**making**  39:*5*
45:*8*
**manner**  7:*4*
10:*22*  16:*4*
27:*11*
**March**  1:*1*
57:*9*
**Marked**  3:*1*
**Market**  1:*1*
30:*14, 16*  31:*2,*
*5, 6, 7, 8, 9, 13,*
*16*  32:*4, 7, 8, 10,*
*11, 13, 15, 17, 18,*
*20, 23*  33:*6, 18,*
*20, 25*  34:*1, 5, 8,*
*9, 11, 13, 14, 15,*
*16, 17, 18, 19, 21,*
*24*  37:*8*  38:*9*
**Marketing**  1:*1*
11:*11*  36:*15*
53:*16*  55:20
**marketplace**
21:*15*  29:*15*
**markets**  31:*11*
32:*19*
**Marson**  11:*8*
55:*2*
**material**  40:*7*
41:*7, 14*  42:*7*
**mathematical**
19:*3, 5*  43:*25*
**matter**  5:*7*
17:*6*  53:*15*
57:*6*
**MD**  1:*1*

**mean** 4:*17*
14:*1* 16:*24*
25:*18* 38:*11*
42:*21* 49:*9*
50:*25* 51:*1, 3,
19*
**meaning** 23:*22*
43:*2*
**means** 9:*5, 12*
11:*22* 15:*22*
22:*12* 23:*5, 17,
19* 25:*8* 35:*14*
41:*7* 46:*5*
**meant** 7:*11*
**media** 9:*6, 16,
18*
**meet** 12:*9*
36:*19*
**member** 7:*25*
10:*5* 22:*12, 24*
25:*4, 9, 24* 26:*5,
8* 27:*5, 6, 17*
28:*10* 37:*19*
44:*25* 45:*25*
46:*12*
**Members** 5:*5*
22:*22* 23:*1, 2, 8,
21* 24:*9, 22*
25:*11* 29:*8*
36:*21* 37:*8, 9,
11* 53:*15, 21*
**membership**
37:*22*
**memory** 8:*9, 13*
16:*4* 17:*8* 51:*4*
**mentioned** 7:*1*
11:*16* 15:*25*
17:*13* 18:*23*
24:*3* 30:*24*
33:*2*
**Mere** 24:*9*
25:*16* 27:*12*
38:*5*
**merely** 31:*2*
33:*3*
**messages** 9:*22*
10:*3*
**met** 21:*19*
23:*3* 24:*12*

**methods** 23:*17,
19*
**Mg** 53:*1*
**Michael** 1:*1*
**Michigan** 1:*1*
**microphone**
48:*9*
**Mill** 11:*10*
55:*17*
**mind** 8:*25*
11:*20*
**mine** 7:*10*
**Miner** 1:*1*
**Minimum**
14:*22* 28:*24*
29:*6* 33:*8*
53:*20*
**mistake** 16:*24*
17:*5* 22:*13*
25:*9*
**models** 19:*3, 5*
**Modern** 11:*8*
55:*5*
**moments** 7:*3*
17:*13*
**money** 42:*11*
49:*18*
**Monterey** 11:*8*
28:*4* 55:*8*
**morning** 4:*1, 2,
3, 4, 5* 5:*2*
**motive** 16:*6*
23:*16*
**motives** 36:*12*
**movie** 6:*21*
**movies** 6:*18*
**multiple** 25:*22*
46:*1*
**multistep** 30:*9*
**Mushroom** 1:*1*
11:*4, 5, 6, 7, 8, 9,
10, 11, 12* 27:*22*
28:*5* 29:*1, 9, 12*
33:*11, 18* 34:*3*
36:*15* 44:*19, 24*
53:*16, 23* 54:*1,
7, 9, 12, 18, 21*
55:*5, 11, 14, 17,
20* 56:*1, 5, 6*

**Mushrooms**
11:*5, 9, 12* 28:*4,
24* 29:*2, 10*
32:*8, 11* 41:*23*
43:*11, 16* 45:*17,
19, 24* 53:*20, 24*
54:*7* 55:*8, 23*
56:*13*

**< N >**
**nature** 25:*12*
33:*24*
**near** 43:*3*
**necessarily**
16:*13* 23:*3*
25:*18* 38:*11*
**necessary**
23:*15, 16* 35:*11,
18*
**need** 21:*20*
22:*22* 23:*3*
31:*16* 41:*11*
**neither** 8:*11*
53:*6*
**networking** 9:*8*
**Never** 10:*3*
**new** 36:*21*
49:*19*
**nominal** 44:*13*
**Noncompete**
14:*19, 20*
**non-fresh** 32:*12*
**nonmember**
37:*12*
**non-opinion**
18:*24*
**nonparty** 44:*19*
**nontransitory**
31:*20*
**nonwestern**
32:*17*
**notes** 8:*7, 9, 12*
**notify** 27:*11*
48:*4*
**novel** 6:*18*
**number** 16:*1,
13, 16, 18* 30:*3*
33:*25* 51:*12*
53:*17*

**< O >**
**Oakshire** 11:*9*
28:*4* 44:*19, 24*
55:*11* 56:*5, 6*
**oath** 7:*17*
17:*16*
**object** 23:*4*
27:*9, 16*
**objected** 13:*24*
**objection** 14:*8,
10*
**Objections**
13:*6, 7, 25* 14:*1,
3, 5*
**obligation** 14:*4*
18:*8*
**obligations** 20:*2*
**obtain** 9:*20*
**obtaining** 9:*1*
**occurred** 17:*2*
28:*10, 11, 12*
43:*4* 47:*16, 17*
**occurs** 31:*2*
33:*2*
**offered** 13:*22*
14:*5*
**office** 21:*1*
**officer** 9:*25*
47:*22* 48:*6, 11,
13, 15* 49:*15, 16,
18* 53:*14* 54:*3,
9, 12, 15, 18, 21,
24* 55:*2, 8, 11,
14, 17, 20, 23*
56:*1, 4, 10, 16*
**officers** 20:*10*
**OFFIER** 55:*5*
**Oh** 4:*14* 48:*20,
23* 50:*10, 12*
**okay** 4:*14, 23*
47:*21* 49:*22*
50:*12* 51:*25*
**Old** 1:*1*
**OMF** 44:*24*
45:*1, 3, 4, 19, 20,
21, 22, 24*
**OMS** 44:*19, 23,
25* 45:*1, 4, 17,*

*19, 22, 24*
**OMS's** 45:*5*
**once** 5:*5* 10:*20*
21:*11*
**ongoing** 46:*8*
**open** 8:*2* 38:*10,
12*
**opening** 12:*23*
**operation**
23:*20* 35:*8*
**Operator** 1:*1*
**opinion** 6:*9, 11*
7:*6* 8:*22* 18:*2,
18* 19:*2, 9, 11,
13*
**opinions** 8:*25*
17:*24* 18:*19, 20,
21, 24*
**opportunity**
16:*1*
**opposed** 17:*9*
29:*3* 39:*4*
**order** 4:*8, 9*
8:*3* 10:*8, 19*
22:*8* 26:*8*
30:*24*
**ordered** 14:*13*
**ordinary** 18:*17*
**organization**
20:*9, 14, 16, 25*
21:*7, 10* 36:*16*
37:*5, 22*
**organizations**
19:*25* 20:*15*
**original** 31:*24*
**ought** 6:*10*
**outcome** 16:*5*
**outline** 30:*10*
**output** 33:*23*
37:*9*
**outside** 13:*10,
14* 15:*7* 20:*14,
23*
**outweigh** 35:*23*
36:*9*
**outweighs**
30:*22* 35:*21*
36:*4, 6*
**overall** 25:*17*
27:*1*

**overarching**
24:20, 24  28:23
29:3, 5  30:5, 8
53:19  54:6
56:11
**overcharge**
47:6, 9, 11, 13
**overcharges**
44:15  45:17
46:19
**overlap**  29:24
**overlapping**
45:7
**overruled**  14:10
**owned**  20:12
44:21, 23, 25
45:4, 19, 22
**ownership**  45:7
56:7

**< P >**
**p.m**  49:24
52:18  53:10, 11
57:1
**PA**  1:1
**Page**  3:1
**paid**  19:7  22:3
41:23  43:16, 18,
19  46:19  47:11
51:13
**paper**  9:24
**part**  4:19, 20,
21  6:11  15:23
17:12  19:12
27:1, 4  29:2
30:1  31:15
38:16
**partial**  14:10
**participant**
46:2, 5, 20
**participants**
26:22, 23  29:24
37:14  46:9
**participate**
22:13  23:12
25:8
**participated**
27:3  37:20
39:16, 22  45:21
46:15  54:5

**participates**
26:25
**participating**
27:12
**participation**
26:3, 4
**particular**  14:2,
18  25:5, 16
26:1, 4  37:21,
23  40:1  43:7
44:18  46:11, 22
47:9
**parties**  7:5
9:18  11:2
12:21  23:10, 11
**partnership**
19:21
**partnerships**
19:17, 24
**parts**  23:1
25:11
**party**  17:17
28:5, 7  47:13
**pass**  29:21
**passed**  49:11
**patience**  5:6
**Patrick**  1:1
**pay**  49:18
**paying**  22:3
49:9
**PC**  1:1
**PENNSYLVANI
A**  1:1
**people**  13:17
16:22, 25
**percentage**
34:15
**perform**  20:22
36:22
**performance**
20:21
**performed**
20:20
**period**  34:7
**permit**  19:9
43:5
**permitted**  5:25
13:23  43:8, 23
**person**  8:1
17:20, 23  18:2,

4  20:8  21:1
22:24  25:9, 13
26:24
**persons**  19:19,
23  20:4, 15, 22
21:12  22:15, 16
23:14, 20  24:10,
17
**persuaded**  7:4
**pertains**  17:6
**Philadelphia**
1:1
**Phillips**  11:9
55:14
**phone**  9:6
**phonetic**  49:6
**piece**  9:23
**piecemeal**  24:18
**Pizzini**  11:7
54:24
**place**  6:19
23:12  39:7
**placed**  17:16
**placing**  29:11
53:24
**Plaintiff**  1:1
3:1  11:1, 13, 22
12:8, 11, 15
17:25  22:2, 6, 9
23:17  24:1, 19,
23  25:4, 18
26:10, 13  28:13
29:4, 13  30:11,
14, 25  32:7, 9,
14, 16, 19, 22
33:1, 3, 16
34:22  35:12
36:2, 5, 7  37:19,
25  38:2  39:11,
15, 17, 20, 23, 25
40:2, 3, 5, 12, 15,
17, 18, 21  41:3,
5, 8, 10, 11, 13,
15, 22  42:3, 5, 9,
12, 18, 19, 22, 23
43:3, 8, 10, 14,
16, 18, 21  44:4,
6, 9, 15, 18  45:3,
16  46:14, 16, 20
47:18

**Plaintiffs**  1:1
32:14
**Plaintiff's**
21:13  25:2
26:12, 18  28:22
31:2, 8  32:21
40:7, 8, 21  41:7,
18, 21, 25  42:3,
7, 21  43:20, 24
45:23  46:13
**plan**  25:6, 12
**play**  49:2
**played**  23:2
25:12
**Please**  5:3
53:12, 14
**plenty**  13:25
**point**  4:7  8:4
**policy**  7:21
14:19, 22
**pool**  14:2
**portion**  28:13
47:3, 18
**position**  20:24
43:3
**possess**  23:15
34:9, 11, 14, 17,
18, 19
**possessed**  34:5
**possession**  48:2
**possible**  41:12
43:3
**potential**  36:17
**power**  33:20
34:5, 9, 11, 13,
14, 18, 19
**PowerPoint**
50:14
**practices**  38:15
**precedence**  8:9
**precisely**  31:17
**precision**  44:1
**prejudice**  7:4
16:6
**prepared**  10:11
**preponderance**
11:15, 21, 22
12:7, 13  21:11
22:10  24:19, 23
27:19  28:2

29:13  32:16
39:12  40:19, 22
41:5  43:22
45:18  53:18
54:4  56:5, 11
**present**  17:18,
23  37:4
**presentation**
50:1
**presentations**
50:14
**presented**  6:25
9:14  12:19
15:15
**preserve**  21:15
**preside**  8:1
**prevail**  29:4
42:22
**prevent**  29:12
40:9  41:17
42:9  53:25
**previous**  46:9
**previously**
20:25
**price**  28:23, 24
31:20, 22, 24, 25
32:3  38:2
41:23  53:20
56:12
**prices**  22:3
24:21, 25  29:7,
8, 16  33:8, 11,
13, 19, 23  34:6,
10, 12  35:5, 6
37:8  38:1, 2, 5,
14  43:11  45:5
51:13  53:19, 22
54:6
**Pricing**  14:22,
23
**principles**  7:20
**prior**  28:14
47:19
**private**  19:23
21:7, 9
**probably**  38:22
56:22
**problem**  50:17
**Proceedings**

2:1  57:5
**process**  42:1
**processors**
32:12
**procompetitive**
35:1, 8  36:6, 9
**produced**  2:1
12:17  33:21
**producer**  35:6,
7
**produces**  30:18
**product**  30:13
31:7, 10, 12, 16,
21, 22, 24  32:4,
7, 8, 10, 20, 22
33:23  35:5
39:9, 13
**production**  35:4
**products**  31:13,
16, 18, 25  32:3,
4, 6  34:12, 16
37:9  46:20
**professional**
18:3
**profitability**
20:1
**profitable**
31:23  32:3
**profitably**  34:6
**profits**  35:7
**program**  33:9
**prohibits**  21:16
**proof**  7:14
11:16, 17  15:10
27:13  39:18, 21,
24
**proper**  22:5
32:10
**properly**  19:4
**properties**
28:25  29:9, 11
53:22, 25
**property**  22:2
40:3  42:10, 24
**prove**  11:23
16:12  22:8, 9
23:7  24:1, 23
26:14  30:24
31:8  32:10, 25
36:8  37:19

40:13, 17, 22
41:8, 10  44:4
**proved**  24:17
**proven**  12:7, 12
24:19  26:10
30:12, 14  32:19,
22  34:22  36:5
41:13  46:14
**proves**  35:12
40:15
**provide**  9:4
**provided**  6:12
8:6  18:24  44:6
52:9
**provides**  42:23
**proving**  11:13
27:18  28:13
32:15  33:17, 20
36:3  43:21
44:9  47:18
**public**  7:6
**publication**
36:23
**punish**  43:5
**punitive**  43:6
**purchased**
45:17, 18, 24
46:20
**purchases**
44:15, 16, 18, 20
46:13
**purpose**  9:1
14:18, 21, 24, 25
21:14  23:4, 6,
10  25:7  33:24
43:2
**purposes**  27:10
50:18
**put**  11:19, 25
23:20  43:2

**< Q >**
**qualifications**
18:18
**quality**  16:3
32:11  33:23
35:6
**question**  13:21
14:9  18:13
39:16  47:1

48:10  49:25
50:5, 6, 7, 8
53:17  54:3
56:4, 10
**questions**  6:25
9:22  10:11
12:25  14:3
17:17, 18  18:16
21:23  22:5
48:3  56:22
**Quiet**  4:25

**< R >**
**raincoat**  15:12
**raining**  15:7, 8,
14
**rainy**  38:10
**raise**  28:23
34:6  37:7
53:19  54:6
**raised**  38:5
**reach**  13:20
42:13
**reached**  10:13,
18  44:12
**reaching**  6:7
8:17  15:2
**read**  5:9
**readily**  35:13
**reading**  6:18
**realize**  6:16
**real-life**  6:23
**reason**  19:10
28:20  30:7
31:10, 14  33:8
**reasonable**
11:16  13:19
16:8  30:2
31:17, 18  43:23
44:1, 2, 6, 8, 10,
11
**reasonableness**
44:4
**reasonably**
20:23  27:11
35:11, 13, 18
43:15, 21
**reasons**  18:19
19:12, 13

**receive**  5:16
18:25
**Received**  3:1
5:23  6:15, 24
12:16, 20  13:21
**Recess**  49:24
52:18  53:10
**recollection**
8:10  13:6
51:16  52:17
53:9
**record**  14:13
**recorded**  2:1
**recording**  2:1
57:5
**records**  17:18
**recover**  40:1, 2,
13  42:4, 9, 20
44:18, 19  45:16
46:16
**Recross**  3:1
**Redirect**  3:1
**reduce**  29:1, 10
37:9  53:23
**reduces**  30:17
**reduction**
33:10  41:18, 19
**reexamine**  8:22
**refer**  18:6  43:6
**reference**  50:1,
25  52:9, 11
**referred**  5:24
40:11  41:17
53:1
**refers**  33:10
**Regardless**  6:9
12:14, 16  23:24
**regional**  32:19
**regulations**
29:7  53:21
**reject**  17:11
19:11
**relate**  51:12
**related**  20:20
44:17, 20
**relates**  18:13
**relationship**
45:6
**relevant**  22:8
30:13, 16  31:2,

6, 7, 9, 10, 11, 12
32:8, 10, 13, 15,
16, 20, 22  33:6,
18, 20, 25  34:1,
16, 24
**reliability**  18:9,
20
**relies**  19:2
**rely**  13:5
**remainder**
26:12  32:21
**remarks**  12:24
**remember**  4:14
13:4  17:1
18:12  52:22
**remind**  7:16
10:20
**reporter**  17:17
**represent**  10:7
**representation**
36:24
**request**  8:4
**requesting**  14:1
**require**  40:17
**required**  10:18
41:10  43:25
**requirement**
21:19, 20
**requires**  24:4
40:15
**requiring**  29:7
53:21
**research**  9:11
36:23
**resigned**  52:1
**resolve**  18:14,
15
**respect**  14:19
33:10  39:24
**respond**  9:25
**response**  38:8
**responsibilities**
20:25
**responsibility**
10:24
**responsible**
21:4  27:2
**rest**  19:15
**restrain**  21:17,

*25* 23:*13*, 22
**restrained** 30:*9*
**restraint** 21:*18*
  30:*6, 12, 15, 17,
  20, 25* 31:*1*
  32:*25* 33:*7, 19,
  23, 24* 34:*2, 20,
  25* 35:*2, 11, 17,
  20, 22, 24* 41:*24*
**restraints**
  29:*18* 30:*1*
  31:*9* 33:*12*
  34:*23* 35:*9, 16*
**restrictions**
  29:*11* 53:*25*
**restroom** 48:*17,
  19*
**result** 6:*18*
  18:*6* 29:*22*
  31:*21* 38:*8, 22*
  40:*5, 14* 41:*8*
  42:*25* 43:*15*
**resulted** 30:*12*
  31:*1* 33:*1, 13*
  34:*20, 23*
**resulting** 29:*16*
  35:*20* 46:*4*
**results** 17:*8*
  30:*15* 33:*11*
  35:*9* 36:*14*
**retire** 7:*24*
**return** 10:*8, 15*
  39:*22* 40:*24*
**reveal** 10:*17*
**reviewing** 19:*8*
**right** 4:*14*
  14:*7* 48:*9, 10*
  50:*2, 23* 51:*9*
  52:*3, 6* 53:*12*
  56:*17, 23*
**rights** 20:*2*
**rise** 53:*14*
**Road** 1:*1*
**role** 7:*15* 37:*22*
**room** 5:*17*
  7:*24* 10:*12*
  56:*21*
**rule** 6:*8* 28:*20*
  30:*7* 31:*9* 33:*8*

**rules** 5:*22, 24*
  13:*20, 23* 14:*6*
  29:*7* 53:*21*
**rumors** 13:*12*

**< S >**
**sale** 38:*14* 45:*2*
**Sales** 11:*10*
  44:*19* 45:*5*
  47:*8, 11, 12*
  55:*17* 56:*6*
**Salomon** 1:*1*
**Sandy** 49:*5*
**sat** 5:*7*
**satisfied** 28:*2*
  39:*24*
**satisfy** 22:*18*
  33:*16* 39:*7, 18,
  21* 56:*6*
**saw** 7:*8* 13:*12*
  15:*7*
**saying** 4:*8, 10*
  52:*16*
**says** 15:*23*
**scale** 12:*1, 2, 3,
  5*
**scales** 12:*9, 10*
**scatterplot**
  51:*11, 13*
**scheme** 22:*18*
**SCHILLER** 1:*1*
**scientific** 18:*3*
**scope** 20:*18, 19*
  21:*5*
**scripted** 6:*22*
**seat** 4:*11*
**seated** 4:*6* 5:*3*
  48:*9* 49:*25*
  53:*13*
**second** 7:*13*
**secret** 10:*6*
**sedative** 48:*16*
**see** 9:*17* 16:*2,
  23*
**seek** 9:*19*
**seen** 5:*8* 13:*10,
  13* 15:*5*
**select** 7:*25*
**send** 52:*15*
**sending** 47:*24*

**sense** 6:*15*
  13:*15*
**senses** 15:*5*
**separate** 21:*24*
**separately**
  23:*12* 25:*21*
**series** 10:*11*
  32:*18* 38:*2*
**serious** 7:*3*
**service** 2:*1* 9:*8*
  33:*24* 35:*5*
  56:*20*
**services** 34:*10,
  13, 16* 36:*21, 22*
  37:*10*
**serving** 5:*7*
**set** 38:*2* 45:*5*
**setting** 38:*1*
**severally** 46:*3,
  24* 47:*5*
**share** 22:*17*
  34:*15, 18*
**shave** 49:*1*
**Sheet** 10:*10, 21*
**sheets** 47:*22*
**Sherman** 21:*14,
  16* 22:*20* 23:*23*
  28:*17, 19* 30:*21*
  36:*11* 37:*11*
  43:*14*
**SHIELDS** 50:*21*
**short** 14:*3*
  17:*11*
**show** 6:*20, 21*
  22:*22* 23:*8*
  25:*5* 27:*8* 29:*5,
  13* 32:*14* 37:*23*
  45:*3*
**showed** 39:*11*
**showing** 28:*2*
  35:*1*
**shown** 14:*16*
  24:*6* 31:*5* 33:*5*
**shows** 6:*18*
  38:*4* 45:*18*
**side** 12:*1, 2, 5*
  13:*23*
**sign** 9:*24* 10:*14*
**similar** 19:*17,
  20, 22* 20:*5, 8*

**sense** 6:*15*
**sense** *...*
**similarity** 24:*10*
**Similarly** 16:*24*
  23:*14* 24:*14*
  38:*18*
**simply** 14:*1*
  37:*17*
**simultaneously**
  38:*6*
**single** 6:*5* 29:*2,
  5* 31:*16* 36:*2*
  53:*18* 54:*5*
  56:*11*
**sir** 49:*12*
**sit** 49:*8, 9*
**size** 20:*1*
**skill** 18:*3, 4*
**slide** 51:*11*
**slides** 51:*12*
**slightly** 12:*6*
**small** 16:*16*
  31:*19*
**smartphone** 9:*6*
**social** 9:*8, 16,
  17*
**sold** 32:*8, 12*
  34:*16*
**sole** 7:*12*
  10:*23* 15:*21*
  18:*12* 41:*11*
**solely** 9:*14*
  19:*15* 46:*7*
**somebody** 4:*18*
  48:*8*
**Son** 11:*7*
**Sons** 11:*6* 28:*4*
  54:*15, 24*
**soon** 10:*1*
**sorry** 49:*15*
**sound** 2:*1* 7:*20*
  57:*5*
**sounded** 13:*1, 7*
**sounding** 13:*8*
**soundness** 18:*19*
**South** 1:*1*
  11:*10* 55:*17*
**Southeastern**
  49:*6, 16*
**speak** 8:*2*

**SPEAKER**
  56:*25*
**special** 18:*2*
  46:*25*
**specifically** 13:*2*
**speculate** 14:*15*
**speculation**
  44:*4, 13*
**Square** 1:*1*
**squash** 49:*2*
**stabilize** 37:*7*
**stand** 10:*4*
  19:*25*
**standard** 11:*17,
  20* 21:*8*
**standing** 19:*19*
  20:*4*
**start** 15:*25*
  39:*19*
**state** 7:*20*
**stated** 5:*21* 6:*3,
  8* 23:*4, 5*
**statements**
  12:*22, 23* 20:*17*
  21:*4* 26:*1, 21*
**STATES** 1:*1*
  32:*17*
**stating** 6:*6*
**stations** 19:*20*
  20:*5*
**stay** 10:*6* 35:*8*
**steps** 27:*8* 30:*3*
**Stevens** 1:*1*
**stipulated** 12:*21*
**Stores** 1:*1*
  10:*25* 53:*15*
**Street** 1:*1*
**stricter** 11:*17*
**struck** 14:*13*
**structure** 33:*25*
**study** 18:*5*
**stuff** 50:*17*
**subsidiaries**
  20:*13*
**substantial**
  30:*12, 15* 31:*1*
  33:*1* 34:*17, 20,
  23*

**substantially** 30:*22* 35:*14, 21, 23* 36:*4, 6, 9*
**substitute** 19:*10*
**substitutes** 31:*14, 18, 19*
**succeed** 25:*15*
**succeeded** 23:*24*
**suffer** 22:*2*
**suffered** 41:*8, 22*
**sufficient** 31:*3* 33:*4* 37:*22*
**suggest** 10:*22*
**suggested** 4:*12*
**Suite** 1:*1*
**sum** 45:*16*
**summarize** 21:*3* 30:*4*
**summarizing** 13:*4*
**summary** 42:*5*

**supercompetitive** 24:*21, 25*
**supply** 29:*1, 10* 33:*9* 53:*24*
**support** 19:*12*
**supported** 44:*8*
**supporting** 18:*21*
**sure** 6:*16* 48:*20* 50:*15, 16, 19*
**surrounding** 21:*1*
**suspicions** 13:*13*
**sustained** 14:*9* 34:*7*
**swears** 17:*16*
**switch** 31:*25* 32:*2, 5*
**switching** 31:*21*
**sworn** 6:*10, 13* 17:*15*
**sympathy** 7:*5*

**< T >**
**T.V** 6:*18, 20, 21*
**table** 49:*9*

**take** 7:*13* 10:*2, 12* 48:*21* 50:*7*
**taken** 8:*13* 17:*15* 30:*2* 37:*3* 46:*24*
**talk** 9:*2* 10:*1, 19*
**Target** 14:*23* 28:*24* 29:*7* 33:*8* 53:*20*
**technology** 36:*22*
**tell** 10:*3, 5* 17:*16* 48:*25* 50:*4*
**telling** 16:*25*
**tells** 13:*18* 27:*14*
**tend** 16:*25*
**term** 11:*15*
**terms** 51:*10*
**test** 28:*19, 21*
**testified** 15:*6*
**testifies** 15:*4* 16:*3*
**testify** 16:*13* 17:*20, 23*
**testifying** 16:*5* 19:*8*
**testimony** 5:*8* 8:*14* 12:*14, 18, 19* 13:*4, 8* 14:*12, 14* 15:*20* 16:*9, 15, 16, 18, 20, 22* 17:*4, 9, 12, 14, 15, 21, 24* 18:*2, 7, 8, 10, 13, 18, 23, 24* 19:*9, 11*
**tests** 28:*17*
**thank** 5:*5* 48:*16* 49:*12* 56:*16, 18, 23, 24, 25*
**thanks** 56:*20*
**thing** 10:*3*
**things** 12:*20, 22* 16:*2* 17:*1* 51:*20, 23*

**think** 6:*16* 10:*22* 16:*15* 17:*10, 11* 19:*1* 31:*12* 50:*5* 51:*18, 19, 21*
**thought** 13:*23* 36:*12*
**three** 5:*6* 17:*24* 22:*1* 27:*25* 29:*23* 40:*4, 8* 45:*20* 56:*4*
**throw** 52:*15*
**time** 4:*18* 5:*6* 6:*23* 10:*2* 23:*11* 25:*6* 34:*7* 56:*18*
**times** 13:*3* 14:*16* 18:*11* 23:*13* 49:*11*
**tip** 12:*6, 10*
**tipped** 12:*3*
**title** 49:*14, 19*
**To-Jo** 11:*11* 55:*23*
**told** 13:*2, 8* 14:*18*
**total** 47:*6, 13*
**touched** 15:*6*
**trade** 21:*17* 22:*1* 23:*13, 22* 30:*9* 36:*20, 23* 37:*6, 13, 16, 18, 19*
**training** 18:*5*
**Transcribing** 1:*1*
**TRANSCRIPT** 1:*1* 2:*1* 57:*4*
**transcription** 2:*1*
**treat** 14:*10*
**treated** 20:*1*
**TRIAL** 1:*1* 5:*12, 19, 23* 6:*22, 23* 7:*11, 18, 22* 8:*8* 11:*17* 13:*25* 15:*25* 16:*8* 17:*15, 20, 23*

18:*7* 19:*23* 21:*7* 36:*14*
**trials** 6:*17* 7:*2* 51:*22*
**trier** 18:*12*
**true** 11:*24* 51:*22*
**truth** 16:*25* 17:*16*
**turn** 5:*9*
**twice** 49:*2*
**Twitter** 9:*9*
**two** 4:*11* 7:*7* 15:*1* 16:*22* 21:*24* 22:*11, 15, 16* 24:*17* 27:*10* 28:*17* 29:*3, 6, 8, 20* 31:*6, 7* 32:*6* 38:*19* 40:*6* 45:*11, 19* 47:*23, 24, 25* 52:*15* 53:*22* 54:*3*
**type** 15:*2, 9* 40:*8* 41:*16* 42:*8*
**types** 15:*1* 17:*13* 51:*20*

**< U >**
**umbrella** 15:*13*
**umbrellas** 38:*10, 12*
**unanimous** 10:*10, 13* 15:*2*
**uncommon** 7:*1*
**understand** 41:*1*
**understanding** 16:*4* 22:*15, 16* 23:*9, 22* 24:*17* 38:*16, 19, 22* 39:*2, 9, 14*
**undertook** 27:*8*
**unduly** 8:*11*
**unfettered** 21:*15*
**unimportant** 17:*7*

**unincorporated** 19:*17, 21, 24* 20:*12*
**unique** 34:*3*
**UNITED** 1:*1* 11:*12* 27:*21* 32:*17* 56:*1*
**UNKNOWN** 56:*25*
**unlawful** 25:*6* 26:*19* 37:*15, 21* 39:*3* 41:*24* 43:*1, 13*
**unlawfully** 43:*11*
**unreasonable** 30:*2, 6, 25* 32:*25* 33:*15* 35:*22, 24*
**unreasonably** 21:*17, 25* 30:*8*
**unsound** 19:*13*
**unspoken** 22:*24*
**Use** 5:*14* 8:*8* 9:*5, 12* 13:*15* 15:*1* 17:*3* 29:*12* 48:*17, 19* 51:*3, 16* 52:*16* 53:*8, 25*
**Usually** 48:*9*

**< V >**
**validity** 19:*5*
**valuable** 36:*22*
**various** 24:*10* 29:*24* 31:*13* 35:*3*
**verdict** 6:*11, 14* 8:*17* 9:*1, 11* 10:*7, 8, 9, 10, 13, 16, 18, 21, 23, 24* 12:*11* 15:*2* 39:*23* 40:*25* 42:*13* 46:*25* 47:*22*
**version** 52:*25* 53:*4*
**video** 12:*19*
**videos** 17:*19*

**view**  6:*11*
24:*18*
**viewed**  17:*21*
39:*1, 7*
**views**  7:*21*
8:*22*
**violate**  42:*14*
**violated**  42:*17*
43:*14*
**violates**  28:*16,*
*19*  46:*3*
**violating**  37:*17*
**violation**  6:*10,*
*13*  37:*11, 18*
40:*6, 14, 17, 23*
41:*9, 11, 14*
42:*12, 18*  43:*4,*
*17*
**violations**  37:2
**vote**  10:6
**votes**  9:*1*  10:*4*
**voting**  10:*5*
**vs**  1:*1*  53:*16*

**< W >**
**walked**  15:*11*
**want**  4:*15, 21*
5:*5*  10:*20*
48:*11*  49:*10, 25*
56:*18*
**wants**  48:*21*
**watched**  17:*18*
**watching**  6:*18*
**water**  15:*12*
48:*11*
**way**  7:*12*  10:*5,*
*22*  13:*14*  17:*22*
18:*14, 15, 16*
25:*14*  31:*12*
43:*21*
**ways**  34:*25*
**wearing**  15:*12*
**website**  9:*8*
**week**  6:*1*
**weekend**  5:*4*
48:*22*
**weeks**  5:*6*
**weigh**  12:*9*
**weighing**  13:*15*
17:*5*  18:*17, 23*

**weight**  8:*13*
13:*17*  15:*16, 18*
16:*12, 15*  17:*10*
18:*25*
**Welcome**  5:*2*
53:*12*
**Well**  4:*10, 17*
6:*20*  7:*23*
12:*23*  14:*20*
18:*9*  44:*16*
47:*25*  50:*6, 24*
51:*5, 22*  52:*12*
53:*4*
**we're**  50:*15, 16,*
*19*
**West**  1:*1*
**wet**  15:*13*
**wholly**  20:*12*
**wife**  48:*25*
**William**  1:*1*
**Winn**  45:2
**Winn-Dixie**  1:*1*
10:*25*  11:*13, 25*
12:*2*  29:*17*
45:*5*  51:*13*
53:*15*
**wisdom**  6:*8*
**withdraw**  27:*5,*
*13, 15, 21*  28:*11,*
*12, 13, 15*  46:*18,*
*25*  47:*16, 17, 20*
48:*2*
**withdrawn**
27:*7, 15*  28:*5*
32:*1*
**withdraws**  28:*8*
47:*13*
**withdrew**  27:*19,*
*23, 25*  28:*3*
46:*22*  47:*2, 3, 9,*
*15*
**witness**  14:*15*
15:*4, 5, 6, 22, 23*
16:*2, 3, 5, 7, 17,*
*21, 24, 25*  17:*10,*
*12, 15, 16, 22*
18:*23*  19:*4, 6,*
*11, 14*
**Witnesses**  3:*1*
8:*3*  12:*14, 19,*

*24*  15:*22*  16:*13,*
*14, 17, 18, 21*
*17:19*  18:*10, 15,*
*17, 25*
**witness's**  16:*3,*
*4, 9*  18:*18*  19:*2,*
*9*
**words**  12:*5*
24:*9*  31:*23*
43:*17*  45:*3, 12*
**worth**  19:*19*
20:*5*
**worthy**  15:22
**write**  9:*23*
10:*3, 4*
**written**  22:*18,*
*23*  48:*4*
**wrong**  9:*16*
**wrongdoer**  43:*6*
**wrongdoing**
26:*7*
**wrote**  16:*7*

**< Y >**
**Yeah**  4:*24*
48:*6, 12, 24*
49:*9*  50:*11, 22*
52:*25*
**years**  17:2
**YouTube**  9:*9*